IN THE UNITED STATES DISTRICT FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONNIE AND METRA HUGHES, d/b/a          *
HISTORICAL RENTALS, INC.,               *    2007 MAR 13  A 10: 31
                                        *
          Plaintiffs,                   *    CIVIL ACTION NO.
                                        *    DEBRA P. HACKETT, CLK
                                        *    U.S. DISTRICT COURT    2:07cv222-MHT
vs.                                     *    MIDDLE DISTRICT ALA
                                        *    IN THE CIRCUIT OF PIKE COUNTY,
                                        *    ALABAMA
GAB ROBINS NORTH AMERICA, INC.,         *
et al.,                                 *
                                        *    CIVIL ACTION NO.: 2006-246-RWB
                                        *
          Defendants.                   *
                                        *

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant RSUI GROUP, INC., whose correct name is RSUI INDEMNITY COMPANY (hereinafter "RSUI"), hereby gives notice of removal of this action from the Circuit Court of Pike County, Alabama to the United States District Court for the Middle District of Alabama. As grounds for removal of the action, Defendant states as follows:

1.      On or about September 22, 2006, Plaintiffs Donnie and Metra Hughes, d/b/a Historical Rentals, Inc., commenced an action in the Circuit of Pike County, Alabama entitled *Donnie and Metra Hughes, d/b/a Historical Rentals, Inc. v. GAB Robins North American, Inc., and Troy Rhoades,* civil action CV-06-246. A summons was issued by the Circuit Court of Pike County on or about September 29, 2006.

2.      On or about November 6, 2006, Plaintiff filed its First Amended Complaint in the Circuit Court of Pike County, Alabama entitled *Donnie and Metra Hughes, d/b/a Historical Rentals, Inc. v. GAB Robins North American, Inc., and Troy Rhoades, Hilb, Rogal & Hobbs Wholesale Insurance Services, Inc., Kirklin & Co., LLC., a/k/a HRH/Kirklin & Co., LLC and*

*RSUI Group, Inc.* A summons was issued to the newly named Defendants on November 7, 2006.

3.    Plaintiff's First Amended Complaint alleges varies causes of action, to include breach of contract, false representation, bad faith, and breach of fiduciary duty.

4.    Plaintiff's First Amended Complaint alleges that the cost of repair of the insured property in this matter is estimated to exceed $400,000.00. *See* Plaintiff's First Amended Complaint, ¶ 15. Plaintiff seeks to recover against the Defendants a sum in the amount of the estimated costs of repairs, plus $500.00 per day for loss of income. *Id.* Plaintiff also seeks unspecified compensatory and punitive damages. It is clear from the face of Plaintiffs First Amended Complaint that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. In addition, Plaintiff seeks damages for bad faith refusal to pay on insurance contract. "[A] review of Alabama case law reveals that damage awards in bad-faith cases generally exceed the $75,000.00 jurisdictional minimum." *Choctaw Carriers, Inc. v. AXA Global Risk*, 1999 US Dist. Lexis 5210 (S.D. Ala. 1999)(citing *Employees' Benefit Association v. Grisset*, 732 So.2d 968, 1998 Ala. LEXIS 256, 1998 WL599498 (Ala. 1998)(jury award on bad faith claim of $150,000.00 in punitive damages); *Liberty National Ins. Co. v. Allen*, 699 So.2d 138 (Ala. 1997)(jury verdict in bad faith in fraud case for $40,000.00 compensatory damages and $2.7 million dollars in punitive damages and $79,589.63 in punitive damages on bad faith claim); *Lowell American Life Insurance Co., Inc. v. Mattiace*, 679 So.2d 229 (Ala. 1996)(jury award of $32,200.00 on breach of contract claim and $75,000.00 punitive damages on bad faith claim)). Further, there are no statutory caps of less than $75,000.00 for the species of punitive damages that Plaintiffs seek to recover. Moreover, punitive damage awards well in excess of the federal jurisdictional amount have been routinely affirmed in Alabama. *See, e.g.*

2

*Acceptance Ins. Co. v. Brown*, 832 So2d. 1 (Ala. 2001)(Alabama Supreme Court conditionally affirming award to Plaintiff in insurance bad faith case remitted $60,000.00 in compensatory damages and $180,000.00 punitive damages); *Chrysler Corp. v. Shiffer*, 736 So.2d 538 (Ala. 1999)($150,000.00 punitive award and fraud action involving sale of truck); *USA Petroleum Corp. v. Hines*, 770 So.2d 589 (Ala. 1999)($200,000.00 punitive award in an assault case); *Union Security Life Insurance Co. v. Crocker*, 727 So.2d 1 (Ala. 1998)(2 million dollar punitive award in insurance fraud case); *National Ins. Ass'n. v. Sockwell*, 829 So.2d 111 (Ala. 2002)($600,000.00 punitive award in insurance bad faith case); *Acceptance Insurance Co. v. Brown* 832 So2.d. 1 (Ala. 2001)($180,000.00 punitive award affirmed in insurance bad faith case). Hence, this case exceeds the amount in controversy threshold for diversity jurisdiction set out at 28 U.S.C. § 1332 (a). *Williams v. Best Buy Co., Inc.*, 269 F. 3rd 1316 (11th Cir. 2001) (amount in controversy, if not stated in complaint, may be established otherwise).

5.    Defendant GAB Robins, Inc., first received a copy of the initial pleadings setting forth Plaintiffs' claims for relief when it was served by certified mail with summons and complaint on October 3, 2006. Defendant Troy Rhoades, first received a copy of the initial pleadings setting forth Plaintiffs' claims for relief when he was served by certified mail with the summons and complaint on November 8, 2006. Defendants HRH/Kirklin and Company, LLC, and RSUI first received a copy of Plaintiffs first amended complaint setting forth Plaintiffs claims for relief when they were both served by certified mail with the summons and complaint on November 10, 2006.

6.    True and correct copies of all process, pleadings and orders served upon Defendants in said action are attached hereto as Exhibit "A."

7.    Pursuant to 28 U.S.C. § 1446 (b):

3

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by a § 1332 of this title more than one year after commensurate of the action.

(emphasis added). In Plaintiffs' First Amended Complaint, it is alleged that Historical Rentals, Inc., is an Alabama Corporation doing business in Pike County, Alabama. Plaintiff alleges that Defendant Troy Rhoades is also an Alabama resident doing business in Pike County, Alabama. Further, Plaintiff alleges that Defendants GAB Robins North America, Inc.; HRH/Kirklin and Company, LLC.; and RSUI are all Delaware Corporations doing business in Alabama. Plaintiffs' original Complaint and First Amended Complaint set forth allegations that Plaintiff is an Alabama Corporation, and Defendant Troy Rhoades is an Alabama resident. Based on these fraudulently pled jurisdictional facts, it appears that the case, as stated by the initial pleadings, is not removable.

8.    On or about February 9, 2007, Plaintiff served Defendant RSUI with its unverified responses to RSUI's first interrogatories and request for production. In response to request for production number 8, Plaintiff provided a copy of the driver's licenses for Donnie and Metra Hughes, and a copy of the Articles of Incorporation for Historical Rentals, Inc. *See* Exhibit "B". Based on the documentation provided by Plaintiff to Defendants, Plaintiffs Donnie and Metra Hughes are residents of the State of Florida, and Historical Rentals, Inc., is a company incorporated in the State of Florida with its principal place of business in Florida. Defendant GAB Robins North America, Inc., is a company incorporated and organized under the laws of the State of Delaware, having its principal place of business in the State of Delaware. Therefore,

4

GAB Robins North America, Inc., is not incorporated in nor does it have its principal place of business in the State of Florida. Defendant Troy Rhoades is an Alabama resident. Therefore, Defendant Troy Rhoades is not a resident of the State of Florida. Defendant HRH/Kirklin and Company, LLC, is a company incorporated and organized under the laws of the State of Delaware, having its principal place of business in the State of Delaware. Therefore, HRH/Kirklin and Company, LLC, is not incorporated in and nor does it have its principal place of business in the State of Florida. Defendant RSUI Indemnity Company is a company incorporated and organized under the laws of the State of Delaware, having its principal place of business in the State of Delaware. Therefore, RSUI, is not incorporated in and nor does it have its principal place of business in the State of Florida. Accordingly, there is complete diversity of the citizenship between the Plaintiffs and each Defendant.

9.    Defendants GAB Robins North America, Inc.; Troy Rhoades; HRH/Kirklin and Co., LLC, consent to this removable as noted in the consent to removal form filed herewith.

10.    Because there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00, this Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1332.

11.    Venue is proper in this District under 28 U.S.C. § 1441 (a) because this district and division embrace the place in which the removed action has been pending.

12.    A copy of this Notice of Removal is being served upon all counsel of record.

13.    A true and correct copy of this Notice of Removal is being filed with the Circuit Court of Pike County, Alabama.

WHEREFORE, Defendant RSUI files this Notice of Removal so as to effect the removal of this action from the Circuit Court of Pike County, Alabama to this Court. Such Defendant

prays that this Honorable Court will make such other and further orders as may be appropriate to effect the preparation and filing of a record in this cause, so that all proceedings that may have been had in the said circuit court are removed to this court. Such Defendant further prays that the removal of this cause to this Court be effected and that no further or other proceedings shall be had with respect to this cause in the Circuit Court of Pike County, Alabama.

Respectfully submitted,

HELEN JOHNSON ALFORD (ALF002)
JUAN C. ORTEGA (ORT001)
Attorneys for Defendant, RSUI Group

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

N.J. Cervera, Esq.
Matthew Baker, Esq.
CERVERA, RALPH & REEVES, LLC
914 South Brundidge Street
Troy, AL 36081

James S. Lloyd, Esq.
Karen D. Farley, Esq.
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, AL 35223

Tom Burgess, Esq.
BURGESS & HALE, L.L.C.

505 North 20th Street, Suite 300
Birmingham, AL  35203

Done this _12TH_ day of __MARCH__ , 2007.

_____
COUNSEL

# EXHIBIT

# A

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO: CV-06-246 |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC. and TROY RHODES, | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## STATEMENT OF THE PARTIES

1.  Historical Rentals, Inc., "Plaintiff", is an Alabama corporation incorporated and doing business in Pike County, Alabama.

2.  GAB Robins North America, Inc., "Defendant GAB", is a corporation incorporated in Delaware, with an Alabama place of business in Montgomery and also doing business in Pike County, Alabama through their agent, Troy Rhodes, an Alabama resident.

3.  Troy Rhodes, "Defendant Rhodes", is an Alabama resident doing business in Pike County, Alabama.

## COUNT 1

4.  Plaintiffs adopt and reallege paragraphs 1 through 3 above as if fully set forth herein.

5.  On or about the 1st day of April 2004, Plaintiffs entered into a written agreement

-1-

with Defendant GAB through Defendant GAB's agent, Defendant Rhodes, by the terms of which Defendant GAB agreed to insure Plaintiffs' property that is rented or leased to others and intended for rental or lease to others for a term of one year.

6. In said agreement, Defendant GAB agreed to pay for damage done to Plaintiffs' property that is rented or leased to others and intended for rental or lease to others.

7. The Plaintiffs' property was damaged on September 16, 2004 by Hurricane Ivan and incurred severe additional damage on September 23, 2004.

8. Shortly thereafter, Plaintiffs' promptly notified Defendant GAB of the damage to the property.

9. On or about the 6th day of January 2005, Defendant GAB notified Plaintiffs that Defendant GAB had no intention of paying for the cost of repair, thereby breaching said agreement by failing to cover the losses incurred by Plaintiffs because of the damaged property.

10. As a proximate consequence to Defendant GAB's said breach, Plaintiffs have not been able to repair the property and therefore unable to rent or lease the piece of property to any tenants. The cost of repair has been estimated at over $400,000.00. Plaintiffs are able to rent the piece of property at a rate of $500.00 per day.

**WHEREFORE,** Plaintiffs demand judgment against Defendant in the sum of the estimated cost of repair plus the loss of income from not being able to rent or lease the property, interest and costs.

-2-

## COUNT 2

11. Plaintiffs adopt and reallege paragraphs 1 through 10 above as if fully set forth herein.

12. In the course of negotiating an agreement to insure Plaintiffs, Defendant GAB, by and through its agent, Defendant Rhodes, represented to Plaintiff that Defendant GAB would pay for the cost of repairing damages done to Plaintiffs' property that is rented or leased to others and intended for rental or lease to others.

13. The representations Defendant Rhodes and Defendant GAB made were false, and Defendants knew they were false when made. Defendant GAB did not pay for the repair of the damaged property. Defendants made such representations with the intention that Plaintiffs should rely upon them.

14. Plaintiffs believed the representations and relied on them in the purchase of the insurance agreement. As a result, Plaintiffs did not receive monies owed in order to repair the damaged property and lost and continues to lose money for not being able to rent or lease the damaged property.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in an amount a jury deems appropriate.

## COUNT 3

15. Plaintiffs adopt and reallege paragraphs 1 through 14 above as if fully set forth herein.

16. Plaintiffs made a claim with Defendant GAB on said policy agreement, but Defendant GAB intentionally refused to pay Plaintiff's claim and denied the same without justification.

17. Defendant's refusal to pay said claim was not based on any reasonably legitimate, arguable or debatable reason for denying the Plaintiffs' claim, or, in the alternative, Defendant GAB intentionally failed to determine whether there was a lawful basis for its refusal to pay said claim.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount a jury deems appropriate.

## COUNT 4

18. Plaintiffs adopt and reallege paragraphs 1 through 17 above as if fully set forth herein.

19. Shortly after the 23rd day of September, 2004 the Plaintiffs reported the damage to their property to Defendant GAB in accordance with the insurance agreement.

20. Under the terms of the insurance agreement, Defendant GAB agreed to pay for covered loss or damage.

21. Defendant GAB did not ever pay these claims.

22. Defendant GAB did not pay these claims in the time period that Defendant GAB and plaintiff agreed upon, thus causing plaintiff to lose money by not being able to rent or lease the property.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in an amount a jury deems appropriate.

N.J. Cervera (CER001)
Attorney for the Plaintiffs

Matthew Baker (BAK017)
Attorney for the Plaintiffs

OF COUNSEL:
**CERVERA, RALPH & REEVES, LLC**
P. O. Box 325
914 South Brundidge Street
Troy, Alabama 36081
(334) 566-0116

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues of the cause.

Of Counsel for Plaintiffs

-5-

| State of Alabama<br>Unified Judicial System<br><br>Form ARCIvP-93    Rev. 5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>`C V 2006 ___ ___ 3 4 6 ___`<br>Date of Filing:  Judge Code:<br>`09` `22` `2006`<br>Month  Day  Year |
|---|---|---|

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF <u>PIKE COUNTY</u>                              , ALABAMA
*(Name of County)*

<u>DONNIE and METRA HUGHES, dba Historical Rentals, Inc.,</u> v. <u>GAB ROBINS NORTH AMERICA, INC. and TROY RHODES</u>
Plaintiff                                                    Defendant

First Plaintiff    ☑ Business    ☑ Individual        First Defendant    ☑ Business    ☐ Individual
                  ☐ Government   ☐ Other                                ☐ Government  ☐ Other

**NATURE OF SUIT:**    Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☒ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*    F ☑ INITIAL FILING        A ☐ APPEAL FROM DISTRICT COURT        O ☐ OTHER: _____
                            R ☐ REMANDED                T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**    ☑ YES  ☐ NO        Note: Checking "Yes" does not constitute a demand for a jury trial (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED        ☐ NO MONETARY AWARD REQUESTED

ATTORNEY CODE:    `BAK017`        SEPTEMBER 22, 2006        _____
                                  Date                       Signature of Attorney/Party filing this form

MEDIATION REQUESTED:    ☐ YES  ☐ NO  ☑ UNDECIDED

State of Alabama
Unified Judicial System

**SUMMONS**

-CIVIL-

Case Number:

CV-2006- _246_

Form C-34     Rev.6/88

IN THE _____**CIRCUIT**_____ COURT OF _____**PIKE**_____COUNTY

Plaintiff **Donnie and Metra Hughes dba Historical Rentals, Inc.** v. Defendant **GAB Robins North America, Inc. and Troy Rhodes**

NOTICE TO: **GAB ROBINS NORTH AMERICA. INC. , National Registered Agents Inc., 150 South Perry Street, Montgomery, AL 36104**
The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written answer, either admitting or denying each allegation in the complaint with the Clerk of this Court. A copy of your answer must be mailed or hand delivered by you or your attorney to the Plaintiff or Plaintiff's Attorney: **MATTHEW M. BAKER** whose address is **Cervera, Ralph & Reeves, L.L.C., 914 S. Brundidge St., P.O. Box 325, Troy, AL, 36081, (334) 566-0116.**

This answer must be mailed or delivered with **30** days after this Summons and Complaint were delivered to you or a judgment by default may be entered against you for the money or other things demanded in the Complaint.

**TO ANY SHERIFF OR PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant

XX     Service by certified mail of this Summons is initiated upon the written request of **Matthew M. Baker** pursuant to the Alabama Rules of Civil Procedure.

Date: September 29, 2006
By: _____          _____
                                                   Clerk/Register

XX Certified mail requested: _____
                                     Plaintiff's Attorney Signature

**RETURN ON SERVICE:** _____

☐ Return receipt of certified mail



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage)
For delivery information visit our website at www.us

| | |
|---|---|
| Postage | $ .63 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | 3.70 |
| Total Postage & Fees | $ 8.58 |

Sent To
GAB Robins North America, I
National Registered Agents, Ir
150 South Perry Street
Montgomery, AL 36104

7005 3110 0003 1382 7197

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GAB Robins North America, Inc.
National Registered Agents, Inc.
150 South Perry Street
Montgomery, AL 36104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7005 3110 0003 1382 7197

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

| **STATE OF ALABAMA** Unified Judicial System | Revised 2/14/05 | **Case No.** |
|---|---|---|
| 55-PIKE | ☐ District Court  ☑ Circuit Court | CV200600024600 |

| DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL | **CIVIL MOTION COVER SHEET** *Name of Filing Party*  D001 - GAB ROBINS NORTH AMERICA, IN |
|---|---|

| *Name, Address, and Telephone No  of Attorney or Party  If Not Represented* KAREN FARLEY 2501 20TH PLACE SOUTH, STE 300 BIRMINGHAM, AL 35223 *Attorney Bar No :*  FAR035 | ☐ Oral Arguments Requested |
|---|---|

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50 00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i e  Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50 00) | ☐ Amend |
|  | ☐ Change of Venue/Transfer |
|  | ☐ Compel |
| ☐ Judgment on the Pleadings ($50 00) | ☐ Consolidation |
|  | ☐ Continue |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50 00) | ☐ Deposition |
|  | ☐ Designate a Mediator |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings. or other Dispositive Motion not pursuant to Rule 12(b)) ($50 00) | ☐ Judgment as a Matter of Law (during Trial) |
|  | ☐ Disburse Funds |
|  | ☐ Extension of Time |
| ☐ Summary Judgment pursuant to Rule 56($50 00) | ☐ In Limine |
|  | ☐ Joinder |
| ☐ Other _____ | ☐ More Definite Statement |
| pursuant to Rule _____ ($50 00) | ☑ Motion to Dismiss pursuant to Rule 12(b) |
|  | ☐ New Trial |
| *Motion fees are enumerated in §12-19-71(a)  Fees pursuant to Local Act are not included  Please contact the Clerk of the Court regarding applicable local fees. | ☐ Objection of Exemptions Claimed |
|  | ☐ Pendente Lite |
|  | ☐ Plaintiff's Motion to Dismiss |
| ☐ Local Court Costs $ _____ | ☐ Preliminary Injunction |
|  | ☐ Protective Order |
|  | ☐ Quash |
|  | ☐ Release from Stay of Execution |
|  | ☐ Sanctions |
|  | ☐ Sever |
|  | ☐ Special Practice in Alabama |
|  | ☐ Stay |
|  | ☐ Strike |
|  | ☐ Supplement to Pending Motion |
|  | ☐ Vacate or Modify |
|  | ☐ Withdraw |
|  | ☐ Other _____ |
|  | pursuant to Rule _____ (Subject to Filing Fee) |

| Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship  ☐ | Date: 11/2/2006 1:09:24 PM | Signature of Attorney or Party: /s KAREN FARLEY |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion  Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee



ELECTRONICALLY FILED
11/2/2006 1:10 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| **Plaintiffs;** | ) | |
| | ) | |
| v. | ) | Civil Action No.:  CV-06-246 |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC. and TROY RHODES, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANT GAB ROBINS NORTH AMERICA, INC.'S
### MOTION TO DISMISS

---

COMES NOW the Defendant, GAB Robins, North America, Inc., (Hereinafter referred to as "GAB Robins") pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u> and moves this Court for entry of an Order dismissing the claims against Defendant GAB Robins in the Plaintiffs' complaint on the grounds that the Plaintiffs have failed to state a claim upon which relief may be granted.  In support thereof, Defendant GAB Robins shows unto the Court as follows:

1. On or about September 22, 2006, the Plaintiffs Donnie and Metra Hughes d/b/a Historical Rentals, Inc. filed suit in the Circuit Court of Pike County, Alabama against GAB Robins North America, Inc. and Troy Rhodes.

2. The Complaint sets forth various causes of action, including the following:

    a. Breach of Contract;

    b. Fraudulent Misrepresentation;

    c. Fraudulent Suppression; and

    d. Bad Faith.

3.    Specifically, in the Complaint, the Plaintiffs, Donnie and Metra Hughes, allege that on or about April 1, 2004 the Plaintiffs entered into an insurance contact with Defendant, GAB Robins, by and through its alleged agent, Defendant Troy Rhodes. The Complaint alleges further that said agreement contained terms, by which Defendant GAB Robins, allegedly agreed to insure Plaintiffs' property, which Plaintiffs intended for rental or lease for a term of one year. The Complaint alleges further that by the terms of said agreement, Defendant GAB Robins allegedly agreed to pay for damage done to Plaintiffs' property that is to be used for rental or lease purposes.

4.    Plaintiffs allege further that said property was damaged on September 16, 2004 by Hurricane Ivan and suffered additional damage on September 23, 2004. Plaintiffs allege further that they promptly notified Defendant GAB Robins of the damage to said property.

5.    Plaintiffs also allege that on or about January 6, 2005 Defendant GAB Robins notified Plaintiff that Defendant GAB Robins had no intention of paying for the cost of repair, thereby allegedly breaching said agreement. Plaintiffs allege damages consisting of the cost of repairs for said property and loss of income from said property.

6.    Defendant GAB Robins is not an insurance company nor does it provide insurance benefits to any individual or entity. (Exhibit A - Affidavit of Thomas Santangelo, Esquire). GAB Robins does not underwrite and issue insurance policies. (Exhibit A). Furthermore, GAB Robins provides services

for loss adjusting, appraisals and the third party administration of claims, but is not an insurer. (Exhibit A).

7.    Pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>, Plaintiffs claims for breach of contract, fraudulent misrepresentation, fraudulent suppression and bad faith against Defendant GAB Robins are due to be dismissed for failure to state a claim upon which relief can be granted. As GAB Robins does not underwrite insurance policies, it could not have entered into an insurance contract with the Plaintiffs. Therefore, the Plaintiffs cannot maintain any cause of action for breach of an insurance contract, bad faith failure to pay on an insurance claim or fraud in the making of an insurance contract against GAB Robins.

WHEREFORE, PREMISES CONSIDERED, Defendant GAB Robins North America, Inc. respectfully requests that this Honorable Court enter an Order dismissing all claims brought by the Plaintiffs against Defendant GAB Robins North America, Inc. pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>.

Respectfully submitted this the 1st day of November, 2006.

                                                    s/Karen D. Farley
                                                    JAMES S. LLOYD(LLO004)
                                                    KAREN D. FARLEY(FAR035)
                                                    Attorneys for Defendant, GAB Robins
                                                    North America, Inc.

OF COUNSEL:
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North,
Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822

Facsimile:   205-967-2380
Email:       jlloyd@lgwpc.com
             kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System, by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 1st day of November, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:   334-566-0116
Facsimile:   334-566-4073
Email:       mbaker@troycable.net
             ncervera@troycable.net

s/Karen D. Farley
Of Counsel



ELECTRONICALLY FILED
11/2/2006 1:10 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

# EXHIBIT A

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, | ) |
| d/b/a HISTORICAL RENTALS, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GAB ROBINS NORTH AMERICA, | ) |
| INC. and TROY RHODES, | ) |
| | ) |
| Defendants. | ) |

Civil Action No.:  CV06-246

## AFFIDAVIT OF THOMAS SANTANGELO, ESQUIRE

STATE OF NEW JERSEY)

COUNTY OF MORRIS)

      Before me, the undersigned authority, a Notary Public in and for said County and in said State, personally appeared Thomas Santangelo, Deputy General Counsel for GAB Robins North America, Inc. and after first being duly sworn, testified as follows:

1.     My name is Thomas Santangelo and I am over the age of nineteen (19) years. I am Deputy General Counsel for GAB Robins North America, Inc. and was so at all times relevant to the above-styled lawsuit.

2.     GAB Robins North America, Inc.'s headquarters is located in Parsippany, New Jersey. GAB Robins North America, Inc. is not an insurance company or an insurer. It does not underwrite and issue insurance policies. GAB Robins North America, Inc. provides services for loss adjusting, appraisals and third party administration of claims, but is not an insurer.

3.     I have personal knowledge of the foregoing.

Further Affiant saith not.

_Thomas Santangelo_
Thomas Santangelo, Esquire

STATE OF _New Jersey_ )
COUNTY OF _Morris_ )

    Sworn to and subscribed before me on this _1st_ day of _November_, 2006.

_Jocelyn E Gilmore_
Notary Public
My commission expires:

(Seal)

JOCELYN E GILMORE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Sept. 18, 2008



**AlaFile E-Notice**

55-CV-2006-000246.00
Judge: ROBERT W BARR

To:  KAREN FARLEY
     kfarley@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 11/2/2006 1:10:45 PM

**D001 GAB ROBINS NORTH AMERICA, IN**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:     11/2/2006 1:10:45 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  GAB ROBINS NORTH AMERICA, IN (PRO SE)
NATIONAL REGISTERED AGTS
150 SOUTH PERRY ST
MONTGOMERY, AL 36104

# NOTICE OF ELECTRONIC FILING

**IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA**

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following matter was FILED on 11/2/2006 1:10:45 PM

**D001 GAB ROBINS NORTH AMERICA, IN**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:        11/2/2006 1:10:45 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  RHODES TROY          (PRO SE)
     8130 OLD FEDERAL RD
     MONTGOMERY, AL 36117

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 11/2/2006 1:10:45 PM

D001 GAB ROBINS NORTH AMERICA, IN

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: FARLEY KAREN DIANNE]

Notice Date:     11/2/2006 1:10:45 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  BAKER MATTHEW MICHAEL
     mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following matter was FILED on 11/2/2006 1:10:45 PM

**D001 GAB ROBINS NORTH AMERICA, IN**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:       11/2/2006 1:10:45 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  CERVERA N J
    ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 11/2/2006 1:10:45 PM

D001 GAB ROBINS NORTH AMERICA, IN

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: FARLEY KAREN DIANNE]

Notice Date:    11/2/2006 1:10:45 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov

AVSO352

```
                                    CASE: CV 2006 000246.00
                                    JUDGE: ROBERT W BARR
-----------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                   CASE ACTION SUMMARY CONTINUATION
                           CIRCUIT CIVIL
-----------------------------------------------------------------
   IN THE CIRCUIT COURT OF     PIKE        COUNTY                |
                                                                 |
   DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL |
   FILED: 09/22/2006 TYPE:  BAD FAITH/FRAUD/MISR TYPE TRIAL: JURY   TRACK:
*****************************************************************
 DATE1:            CA:                  CA DATE:
 DATE2:            AMT:        5.00   PAYMENT:
*****************************************************************
```

10.10.06  Mot to Cervera/Bakers Dool svd on 10/3/06.

11.3.06  ▲ GAB Robins Mot to Dismiss

11/6/06  The Plaintiff shall respond to Defendant's Motion to Dismiss
         w/have Thirty (30) days    Robert Barr Circuit Judge

         cc: Cervera/Bakers, Hoga/Riley

JAS   09/29/2006

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CASE NO: CV-2006-246-RWB** |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC. and TROY RHOADES, | ) | |
| HILB, ROGAL & HOBBS | ) | |
| WHOLSALE INSURANCE SERVICES, | ) | |
| INC., KIRKLIN & CO., LLC, a/k/a | ) | |
| HRH/KIRKLIN & CO., LLC and | ) | |
| RSUI GROUP, INC. | ) | |
| | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, the Plaintiffs in the above-styled matter, pursuant to Rule 15 (a) of the

Alabama Rules of Civil Procedure, and do hereby amend their original complaint against GAB

Robins North America, Inc., and Troy Rhoades to add Hilb, Rogal and Hobbs Wholesale

Insurance Services, Inc. and Kirklin & Co., LLC a/k/a/ HRH/Kirklin & Co., LLC and RSUI

Group, Inc. as parties to the action and also so that the complaint shall read as follows:

## STATEMENT OF THE PARTIES

1.    Historical Rentals, Inc., "Plaintiff",  is an Alabama corporation incorporated and

doing business in Pike County, Alabama.

2.    GAB Robins North America, Inc., "Defendant GAB", is a corporation

incorporated in Delaware, with an Alabama place of business in Montgomery and

-1-

also doing business in Pike County, Alabama through their agent, Troy Rhoades, an Alabama resident.

3.    Troy Rhoades, "Defendant Rhodes", is an Alabama resident doing business in Pike County, Alabama.

4.    Hilb, Rogal and Hobbs Wholesale Insurance Services, Inc. is a corporation incorporated in Delaware doing business in Pike County, Alabama through GAB Robins North America, Inc., Troy Rhodes, and Kirklin and Co., LLC.

5.    Kirklin and Co., LLC. is a corporation incorporated in Delaware doing business in Pike County, Alabama through GAB Robins North America, Inc. and Troy Rhoades.

6.    Hilb, Rogal and Hobbs Wholesale Insurance Services, Inc. and Kirklin and Co., LLC are also known as and do business as HRH/Kirklin & Co., LLC, hereinafter referred to as "Defendant HRH/Kirklin."

7.    RSUI Group, Inc. is a corporation incorporated in Delaware doing business in Pike County, Alabama through GAB Robins North America, Inc., Troy Rhoades, Hilb, Rogal and Hobbs Wholesale Insurance Services, Inc. and Kirklin and Co., LLC.

## COUNT 1

8.    Plaintiffs adopt and reallege paragraphs 1 through 7 above as if fully set forth herein.

9.    On or about the 1st day of April 2004, Plaintiff entered into a written agreement with Defendant HRH/Kirklin and Defendant RSUI through by the terms of which

-2-

Defendant HRH/Kirklin on the authorized behalf of Defendant RSUI agreed to insure Plaintiff's property that is rented or leased to others and intended for rental or lease to others for a term of one year.

10. In said agreement, Defendant RSUI agreed to pay for damage done to Plaintiff's property that is rented or leased to others and intended for rental or lease to others.

11. Further, in said agreement, Defendant GAB was named as the adjusting company for said policy with Defendant Rhoades as the named adjuster.

12. The Plaintiff's property was damaged on September 16, 2004 by Hurricane Ivan and incurred severe additional damage on September 23, 2004.

13. Shortly thereafter, Plaintiff promptly notified Defendant HRH/Kirklin and Defendant GAB of the damage to the property.

14. On or about the 6th day of January 2005, Defendant GAB on behalf of Defendant RSUI notified Plaintiff that they had no intention of paying for the cost of repair, thereby breaching said agreement by failing to cover the losses incurred by Plaintiff because of the damaged property.

15. As a proximate consequence to the Defendants' said breach, Plaintiff has not been able to repair the property and therefore unable to rent or lease the piece of property to any tenants. The cost of repair has been estimated at over $400,000.00. Plaintiff is able to rent the piece of property at a rate of $500.00 per day.

WHEREFORE, Plaintiff demands judgment against the Defendants in the sum of the estimated cost of repair plus the loss of income from not being able to rent or lease the property, interest and costs.

## COUNT 2

16. Plaintiff adopts and realleges paragraphs 1 through 15 above as if fully set forth herein.

17. In the course of negotiating an agreement to insure Plaintiff, Defendant HRH/Kirklin represented to Plaintiff that Defendant would pay for the cost of

-3-

repairing damages done to Plaintiff's property that is rented or leased to others and intended for rental or lease to others.

18. The representations Defendant HRH/Kirklin made were false, and Defendants knew they were false when made. Neither Defendant HRH/Kirklin nor Defendant RSUI ever paid for the repair of the damaged property. Defendants made such representations with the intention that Plaintiff should rely upon them.

19. Plaintiff believed the representations and relied on them in the purchase of the insurance agreement. As a result, Plaintiff did not receive monies owed in order to repair the damaged property and lost and continues to lose money for not being able to rent or lease the damaged property.

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount a jury deems appropriate.

## COUNT 3

20. Plaintiff adopts and realleges paragraphs 1 through 19 above as if fully set forth herein.

21. Plaintiff made a claim with Defendants GAB, RSUI and/or HRH/Kirklin on said policy agreement, but Defendant GAB on or about January 5, 2005, on behalf of Defendant RSUI intentionally refused to pay Plaintiff's claim and denied the same without proper justification.

22. Defendant GAB's refusal to pay said claim was not based on any reasonably legitimate, arguable or debatable reason for denying the Plaintiff's claim, or, in the alternative, Defendant GAB intentionally failed to determine whether there was a lawful basis for its refusal to pay said claim.

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount a jury deems appropriate.

## COUNT 4

23.   Plaintiff adopts and realleges paragraphs 1 through 22 above as if fully set forth herein.

24.   Shortly after the 23rd day of September, 2004 the Plaintiffs reported the damage to their property to Defendants GAB, RSUI and/or HRH/Kirklin in accordance with the insurance agreement.

25.   Under the terms of the insurance agreement, Defendants GAB by and through Defendant Rhoades was to act as the adjuster of the property, thus a fiduciary duty existed between Defendants GAB and its agent Defendant Rhoades to the Plaintiffs.

26.   Defendant GAB, through Defendant Rhoades did not ever properly adjust these claims, thereby breaching said fiduciary duty.

27.   As a result of Defendant GAB's and Defendant Rhoades' said breach, Defendants HRH/Kirklin and RSUI did not eever pay these claims thus causing plaintiff to lose money by not being able to rent or lease the property.

## COUNT 5

28.   Plaintiff adopts and realleges paragraphs 1 through 27 above as if fully set forth

29.   Shortly after the 23rd day of September, 2004 the Plaintiffs reported the damage to their property to Defendants GAB, RSUI and/or HRH/Kirklin in accordance with the insurance agreement.

30.   Under the terms of the insurance agreement, Defendants HRH/Kirklin and/or RSUI agreed to pay for covered loss or damage within a reasonable time of receiving the sworn proof of loss from plaintiff.

31.   Defendants HRH/Kirklin and RSUI did not ever pay these claims.

32.   Defendants HRH/Kirklin and RSUI did not ever pay these claims in the time period that the Defendants and plaintiffs agreed upon thus causing the plaintiffs to

-5-

lose money by not being able to rent or lease the property.

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount a jury deems appropriate.

N.J. Cervera (CER001)
Matthew Baker (BAK017)
Attorneys for the Plaintiff


OF COUNSEL:
**CERVERA, RALPH & REEVES, LLC**
914 South Brundidge Street
Troy, Alabama 36081
(334) 566-0116


### JURY DEMAND

Plaintiff demands a trial by jury on all issues of the cause.

Of Counsel for Plaintiff

-6-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on this the 6th day of November, 2006 upon:

James S. Lloyd, Esq.
Karen D. Farley, Esq.
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place North
Suite 300
Birmingham, Alabama 35223

OF COUNSEL

-7-

| State of Alabama<br>Unified Judicial System | | **SUMMONS** | **Case Number:** |
| --- | --- | --- | --- |
| | | | **CV-2006-246-RWB** |

Form C-34    Rev.6/88                      -CIVIL-

IN THE_____**CIRCUIT**_____COURT OF _____**PIKE**_____COUNTY

Plaintiff **DONNIE and METRA HUGHES, dba HISTORICAL RENTALS, INC.**    v. Defendant **GAB ROBINS NORTH AMERICA, INC, and TROY RHOADES, HILB, ROGAL & HOBBS WHOLESALE INS. SERVICES, INC, KIRKLIN & CO., LLC aka HRH/Kirklin & CO., LLC and RSUI GROUP, INC.**

**NOTICE TO: TROY RHOADES, GAB ROBINS NORTH AMERICA, INC., National Registered Agents, Inc., 150 South Perry Street, Montgomery, AL 36104.**
The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written answer, either admitting or denying each allegation in the mail contained in the Complaint with the Clerk of this Court. A copy of your answer must be mailed or hand delivered by you or your attorney to the Plaintiff or Plaintiff's Attorney: **MATTHEW M. BAKER** whose address is **Cervera, Ralph & Reeves, L.L.C., 914 S. Brundidge St., P.O. Box 325, Troy, AL, 36081, (334) 566-0116.**

This answer must be mailed or delivered within **30** days after this Summons and Complaint were delivered to you or a judgment by default may be entered against you for the money or other things demanded in the Complaint.

**TO ANY SHERIFF OR PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

               You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant

    **XXX**      Service by certified mail of this Summons is initiated upon the written request of Matthew M. Baker pursuant to the Alabama Rules of Civil Procedure.

Date: 11.8.06
~~Nov. 3, 2006.~~
By: _Brenda M. Peacock_
    Clerk/Register

Certified mail requested: _____
          Plaintiff's Attorney Signature

**RETURN ON SERVICE:**

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
**(Domestic Mail Only; No Insurance Coverage**

For delivery information visit our website at www.

| | |
| --- | --- |
| Postage | $ .63 |
| Certified Fee | 2.40 |
| Return Receipt Fee<br>(Endorsement Required) | 1.85 |
| Restricted Delivery Fee<br>(Endorsement Required) | 3.70 |
| Total Postage & Fees | $ 8.34 |

Sent To
  Troy Rhoades
Street, Apt. No.;
or PO Box No.  GAB Robins North Ame
City, State, ZIP+4  National Registered Age
  150 South Perry St.
  Montgomery, AL 36104;

7004 1160 0004 7820 9472

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Troy Rhoades
GAB Robins North America, Inc.
National Registered Agents, Inc.
150 South Perry St.
Montgomery, AL 36104

CV06-2440 D008

2. Article Number
(Transfer from service label)

7004 1160 0004 7820 9472

PS Form 3811, February 2004    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _D Brown_    ☐ Agent
          ☒ Addressee
B. Received by (Printed Name)    C. Date of Delivery
_D Brown_    11/8/06

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

102595-02-M-1540

| State of Alabama<br>Unified Judicial System | **SUMMONS** | Case Number:<br>**CV-2006-246-RWB** |
|---|---|---|

Form C-34     Rev.6/88     -CIVIL-

IN THE_____**CIRCUIT**_____ COURT OF _____**PIKE**_____COUNTY

Plaintiff **DONNIE and METRA HUGHES, dba HISTORICAL RENTALS, INC.__ v. Defendant_GAB ROBINS NORTH AMERICA, INC, and TROY RHOADES, HILB, ROGAL & HOBBS WHOLESALE INS. SERVICES, INC, KIRKLIN & CO., LLC aka HRH/Kirklin & CO., LLC and RSUI GROUP, INC.**

NOTICE **TO:KIRKLIN & COMPANY, LLC, Registerd Agent, Corporation Service Company, 2711 Centerville Road, Ste. 400, Wilmington, DE 19808.**
The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written answer, either admitting or denying each allegation in the complaint with the Clerk of this Court. A copy of your answer must be mailed or hand delivered by you or your attorney to the Plaintiff or Plaintiff's Attorney: **MATTHEW M. BAKER** whose address is **Cervera, Ralph & Reeves, L.L.C., 914 S. Brundidge St., P.O. Box 325, Troy, AL, 36081, (334) 566-0116.**

This answer must be mailed or delivered with **30** days after this Summons and Complaint were delivered to you or a judgment by default may be entered against you for the money or other things demanded in the Complaint.

**TO ANY SHERIFF OR PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant

XXX     Service by certified mail of this Summons is initiated upon the written request of
Matthew M. Baker pursuant to the Alabama Rules of Civil Procedure.

Date: _11-7-06_
~~Nov. 3, 2006~~
By:
Clerk/Register _Dinita W. Peacock_

Certified mail requested:

---

**RETURN ON SERVICE:**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kirklin & Company, LLC
Registered Agent
Corporation Serv. Co.
2711 Centerville Road, Ste. 400
Wilmington, DE 19808

CV06-246  N004

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
_Laura Cooper_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
_Laura Cooper_

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☑ Yes

7004 1160 0004 7820 9458

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage)*

For delivery information visit our website at www.

| | |
|---|---|
| Postage | $ .63 |
| Certified Fee | 2.40 |
| Return Receipt Fee<br>(Endorsement Required) | 1.85 |
| Restricted Delivery Fee<br>(Endorsement Required) | 3.70 |
| Total Postage & Fees | $ 8.34 |

Sent To   Kirklin & Company, LLC
Street, Apt. No.;   Registered Agent
or PO Box No.   Corporation Serv. Co.
City, State, ZIP+4   2711 Centerville Road, S..
Wilmington, DE 19808

PS Form 3800, Jun

7004 1160 0004 7820 9458

| State of Alabama<br>Unified Judicial System | SUMMONS | Case Number: |
|---|---|---|
| | | CV-2006-246-RWB |

Form C-34   Rev.6/88       -CIVIL-

IN THE _____ CIRCUIT _____ COURT OF _____ PIKE _____ COUNTY

Plaintiff DONNIE and METRA HUGHES, dba HISTORICAL RENTALS, INC. v. Defendant GAB ROBINS NORTH AMERICA, INC. and TROY RHOADES, HILB, ROGAL & HOBBS WHOLESALE INS. SERVICES, INC, KIRKLIN & CO., LLC aka HRH/Kirklin & CO., LLC and RSUI GROUP, INC.

NOTICE TO:RSUI GROUP, INC., The Registerd Agent, The Corporation Trust Co., Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.
The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written answer, either admitting or denying each allegation in the complaint with the Clerk of this Court. A copy of your answer must be mailed or hand delivered by you or your attorney to the Plaintiff or Plaintiff's Attorney: MATTHEW M. BAKER whose address is Cervera, Ralph & Reeves, L.L.C., 914 S. Brundidge St., P.O. Box 325, Troy, AL, 36081, (334) 566-0116.

This answer must be mailed or delivered with 30 days after this Summons and Complaint were delivered to you or a judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

        You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant

XXX     Service by certified mail of this Summons is initiated upon the written request of Matthew M. Baker pursuant to the Alabama Rules of Civil Procedure.

Date: 11-7-06 Nov. 3, 2006
By: _____
Clerk/Register

Certified mail requested: _____
Plaintiff's Attorney Signature

RETURN ON SERVICE:

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usp...

| | |
|---|---|
| Postage | $ .63 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | 3.70 |
| Total Postage & Fees | $ 8.34 |

Sent To RSUI GROUP, INC.
The Registered Agent
The Corporation Trust Co.
Corporation Trust Ctr., 1209 C-
Wilmington, DE 19801

PS Form 3800

7004 1160 0004 7820 9465

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

RSUI GROUP, INC.
The Registered Agent
The Corporation Trust Co.
Corporation Trust Ctr., 1209 Orange
Wilmington, DE 19801

CV06-246 Doos

2. Article Number
(Transfer from service label) 7004 1160 0004 7820 9465

PS Form 3811, February 2004   Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by (Printed Name)   1 0 NOV 2006
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)  ☑ Yes

102595-02-M-1540

State of Alabama
Unified Judicial System

**SUMMONS**

Case Number:

CV-2006-246-RWB

Form C-34    Rev.6/88                -CIVIL-

IN THE _____**CIRCUIT**_____ COURT OF _____**PIKE**_____ COUNTY

Plaintiff **DONNIE and METRA HUGHES, dba HISTORICAL RENTALS, INC.**  v. Defendant **GAB ROBINS NORTH AMERICA, INC, and TROY RHOADES, HILB, ROGAL & HOBBS WHOLESALE INS. SERVICES, INC, KIRKLIN & CO., LLC aka HRH/Kirklin & Co., LLC and RSUI GROUP, INC.**

NOTICE TO:**HILB, ROGAL & HOBBS WHOLESALE INS. SERVICES, INC., Registerd Agent, Corporation Service Company, 2711 Centerville Road, Ste. 400, Wilmington, DE 19808.**
The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written answer, either admitting or denying each allegation in the complaint with the Clerk of this Court. A copy of your answer must be mailed or hand delivered by you or your attorney to the Plaintiff or Plaintiff's Attorney: **MATTHEW M. BAKER** whose address is **Cervera, Ralph & Reeves, L.L.C., 914 S. Brundidge St., P.O. Box 325, Troy, AL, 36081, (334) 566-0116.**

This answer must be mailed or delivered with **30** days after this Summons and Complaint were delivered to you or a judgment by default may be entered against you for the money or other things demanded in the Complaint.

**TO ANY SHERIFF OR PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant

XXX    Service by certified mail of this Summons is initiated upon the written request of Matthew M. Baker pursuant to the Alabama Rules of Civil Procedure.

Date: 11.7.06
~~Nov. 3, 2006~~
By:
Clerk/Register

Certified mail requested:

Plaintiff's Attorney Signature

**RETURN ON SERVICE:**

<table>
<tr><td colspan="2">

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage)

For delivery information visit our website at www.usp

OFFICIAL

| | |
|---|---|
| Postage | $ .63 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | 3.70 |
| Total Postage & Fees | $ 8.34 |

Sent To    Hilb, Rogal & Hobbs Wholesa
Services, Inc.
Street, Apt. No. or PO Box No    Corporation Service Co.-Register
City, State, Zip    2711 Centerville Road, Suite 4
Wilmington, DE 19808

PS Form 38

</td><td>

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hilb, Rogal & Hobbs Wholesale Ins.
Services, Inc.
Corporation Service Co.-Registered Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808

CV06-246 D003

2. Article Number
(transfer from service label)    7004 1160 0004 7820 9441

PS Form 3811, February 2004    Domestic Return Receipt

</td><td>

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
x Laura Cooper    ☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
2.21.03    (90)

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

NOV 1 3 2006

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

102595-02-M-1540

</td></tr>
</table>

| STATE OF ALABAMA<br>Unified Judicial System | Revised 2/14/05 | Case No. |
| --- | --- | --- |
| 55-PIKE | ☐ District Court ☑ Circuit Court | CV200600024600 |

| DONNIE HUGHES, ETALS  VS  GAB ROBINS<br>NORTH AMERICA, INC, ETAL | **CIVIL MOTION COVER SHEET**<br>*Name of Filing Party:*  D001 - GAB ROBINS NORTH AMERICA, IN |
| --- | --- |

| *Name, Address, and Telephone No. of Attorney or Party  If Not Represented.*<br>KAREN FARLEY<br>2501 20TH PLACE SOUTH, STE 300<br>BIRMINGHAM, AL 35223<br>*Attorney Bar No .*  FAR035 | ☐ Oral Arguments Requested |
| --- | --- |

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
| --- | --- |
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| | ☐ Designate a Mediator |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Disburse Funds |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Extension of Time |
| | ☐ In Limine |
| | ☐ Joinder |
| ☐ Other | ☐ More Definite Statement |
| pursuant to Rule _____ ($50.00) | ☑ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included . Please contact the Clerk of the Court regarding applicable local fees | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| ☐ Local Court Costs $ _____ | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship ☐ | Date:<br>12/5/2006 2:29:53 PM | Signature of Attorney or Party:<br>/s KAREN FARLEY |
| --- | --- | --- |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion  Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee



ELECTRONICALLY FILED
12/5/2006 2:30 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, d/b/a HISTORICAL RENTALS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: CV-06-246 |
| GAB ROBINS NORTH AMERICA, INC. and TROY RHODES, | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT GAB ROBINS NORTH AMERICA, INC.'S SECOND MOTION TO DISMISS

COMES NOW the Defendant, GAB Robins, North America, Inc., (hereinafter referred to as "GAB Robins") pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u> and moves this Court for entry of an Order dismissing the claims against Defendant GAB Robins in the Plaintiffs' First Amended Complaint on the grounds that the Plaintiffs have failed to state a claim upon which relief may be granted. In support thereof, Defendant GAB Robins shows unto the Court as follows:

1.     On or about November 6, 2006, the Plaintiffs Donnie and Metra Hughes d/b/a Historical Rentals, Inc. filed their First Amended Complaint in the above-styled matter in the Circuit Court of Pike County, Alabama against GAB Robins North America, Inc. and Troy Rhodes. Plaintiff's added as party Defendants, Hilbe, Rogal & Hobbs Wholesale Insurance Services, Inc.; Kirklin & Co., LLC a/k/a HRH/Kirklin& Co., LLC and RSUI Group, Inc.

2.     The Plaintiffs' First Amended Complaint sets forth various causes of action, including the following:

a. Breach of Contract;

b. Fraudulent Misrepresentation;

c. Fraudulent Suppression;

d. Bad Faith;

e. Breach of Fiduciary Duty; and

f. Negligence in the adjustment of an insurance claim.

3. Specifically, in the Plaintiffs' First Amended Complaint, the Plaintiffs, Donnie and Metra Hughes, allege that on or about April 1, 2004 the Plaintiffs entered into an insurance contract with Defendant, HRH/Kirklin& Co., LLC and RSUI Group, Inc. and that in said agreement, Defendant GAB Robins, by and through its alleged agent, Defendant Troy Rhodes was named as the adjusting company. The Plaintiffs' First Amended Complaint alleges further that said agreement contained terms, by which Defendants, allegedly agreed to insure Plaintiffs' property, which Plaintiffs intended for rental or lease for a term of one year. The Plaintiffs' First Amended Complaint alleges further that by the terms of said agreement, Defendant GAB Robins was allegedly contacted to evaluate damage done to Plaintiffs' property that is to be used for rental or lease purposes.

4. Plaintiffs allege further that said property was damaged on September 16, 2004 by Hurricane Ivan and suffered additional damage on September 23, 2004. Plaintiffs allege further that they promptly notified Defendant GAB Robins of the damage to said property.

5.    Plaintiffs also allege that on or about January 6, 2005 Defendant GAB Robins notified Plaintiffs that Defendant GAB Robins, on behalf of Defendant RSUI, had no intention of paying for the cost of repair, thereby allegedly breaching said agreement. Plaintiffs allege damages consisting of the cost of repairs for said property and loss of income from said property.

6.    Plaintiffs allege further that Defendant GAB Robins and Defendant Troy Rhodes breached a fiduciary duty owed to the Plaintiffs in the adjustment of the Plaintiffs property damage claim.

7.    Defendant GAB Robins is not an insurance company nor does it provide insurance benefits to any individual or entity. (Exhibit A - Affidavit of Thomas Santangelo, Esquire). GAB Robins does not underwrite and issue insurance policies. (Exhibit A). Furthermore, GAB Robins provides services for loss adjusting, appraisals and the third party administration of claims, but is not an insurer. (Exhibit A).

8.    Pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure,</u> Plaintiffs claims for breach of contract, fraudulent misrepresentation, fraudulent suppression, breach of fiduciary duty and bad faith against Defendant GAB Robins are due to be dismissed for failure to state a claim upon which relief can be granted. As GAB Robins does not underwrite insurance policies, it could not have entered into an insurance contract with the Plaintiffs. Therefore, the Plaintiffs cannot maintain any cause of action for breach of an insurance contract, bad faith failure to pay on an insurance claim, breach of fiduciary duty or fraud in the making of an insurance contract against GAB

Robins. Any duty owed by GAB Robins in the adjustment of the claim was owed to Defendants RSUI Group, Inc. and Defendant HRH/Kirklin& Co., LLC.

WHEREFORE, PREMISES CONSIDERED, Defendant GAB Robins North America, Inc. respectfully requests that this Honorable Court enter an Order dismissing all claims brought by the Plaintiffs First Amended Complaint against Defendant GAB Robins North America, Inc. pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>.

Respectfully submitted this the 5th day of November, 2006.

<u>s/Karen D. Farley</u>
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendant, GAB Robins
North America, Inc.

<u>OF COUNSEL:</u>

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North,
Suite 300
Birmingham, Alabama 35223
Telephone:     205-967-8822
Facsimile:     205-967-2380
Email:         jlloyd@lgwpc.com
               kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System, by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 5th day of November, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:     334-566-0116
Facsimile:      334-566-4073
Email:           mbaker@troycable.net
                   ncervera@troycable.net

*s/Karen D. Farley*
Of Counsel

ELECTRONICALLY FILED
12/5/2006 3:04 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, )<br>d/b/a HISTORICAL RENTALS, INC., )<br> )<br>    **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>GAB ROBINS NORTH AMERICA, )<br>INC. and TROY RHOADES, )<br>HILB, ROGAL & HOBBS )<br>WHOLSALE INSURANCE SERVICES, )<br>INC., KIRKLIN & CO., LLC, a/k/a )<br>HRH/KIRKLIN & CO., LLC and )<br>RSUI GROUP, INC. )<br> )<br> )<br>    **Defendants.** ) | **CASE NO: CV-2006-246-RWB**<br><br><br><br><br><br><br>**TRIAL BY JURY DEMANDED** |

## PLAINTIFFS' RESPONSE TO DEFENDANT
## GAB ROBINS NORTH AMERICA, INC'S MOTION TO DISMISS

**COME NOW**, the Plaintiffs in the above-styled matter, and in response to Defendant GAB Robins North America, Inc.'s Motion to Dismiss, hereinafter referred to as Defendant GAB, does hereby state the following:

1. That on or about January 5, 2005 and January 25, 2005, Defendant GAB explicitly rejected insurance claims made by the Plaintiffs regarding damage to their property as evidenced by the two letters attached as Exhibits A and B.

2. Additionally, on or about February 8, 2005, Defendant GAB attempted to resolve a claim with a payment made by check, a copy of which is attached hereto as Exhibit C.

3. Said payment was made by Defendant GAB by one of Defendant GAB's

-1-

company checks.

4.   Exhibits A, B and C would show that Defendant GAB was the entity that was responsible for handling, investigating, rejecting and/or paying claims made by the Plaintiffs regarding the property in Pike County.

5.   The letters further evidence the fact that Defendant GAB was the entity which was indeed contacted, that they conducted an investigation and that they subsequently rejected the Plaintiff's claims.

6.   Both letters (Exhibits A and B) are written on Defendant GAB's letterhead and signed by one Bruce Clapp, who identifies himself as a branch manager who is employed by Defendant GAB and is writing on behalf of RSUI Indemnity Company, a named defendant in the amended complaint.

7.   In the letterhead of Exhibits A and B, Bruce Clapp's email address is listed as clappb@gabrobins.com, another indication of his employment with Defendant GAB and Defendant GAB's involvement.

8.   All evidence points to Defendant GAB as the primary entity who handled Plaintiff's claims from start to finish and their involvement in Plaintiff's claims cannot be disputed.

9.   As evidenced by Plaintiff's Exhibits A, B, and C, Defendant GAB was involved in Plaintiff's allegations of fraudulent misrepresentation, fraudulent suppression, breach of contract, and bad faith refusal to pay claims.

10.  Additionally, Plaintiff has since amended the original complaint to include other entities involved in the fraudulent misrepresentation, fraudulent

-2-

suppression, breach of contract, and bad faith refusal to pay Plaintiff's claims and said amended complaint more specifically allege Defendant GAB's involvement and wrongdoings.

**WHEREFORE**, it is respectfully requested that this Court deny Defendant GAB's motion to dismiss and require them to answer the complaint in a timely manner.

Respectfully submitted, this the 5th day of December, 2006.

s/ Matthew Baker
N. J. Cervera (CER001)
Matthew Baker (BAK017)
Attorneys for the Plaintiffs

OF COUNSEL:
**CERVERA, RALPH & REEVES, LLC**
914 South Brundidge Street
P.O. Box 325
Troy, Alabama 36081
(334) 566-0116 phone
(334) 566-4073 facsimile

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the above and foregoing has been electronically delivered and put in the United States mail on this the 5th day of December, 2006 upon:

James S. Lloyd, Esq.
Karen D. Farley, Esq.
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place North
Suite 300
Birmingham, Alabama 35223

s/ Matthew Baker
OF COUNSEL

-3-

 

GAB Robins North America, Inc.



T: 317-815-3400
F: 317-815-3410
E mail: clappb@gabrobins.com

January 6, 2005

**Reservation of Rights**
Certified Mail Return Receipt Request & US Regular Mail

Gamma Gamma Chapter of PKPhi
C/O Historical Rentals, Inc.
P.O. Box 215
Pahhokee, FL 33476

Attn: Donny Hughes

| | |
|---|---|
| Our Insured: | Gamma Gamma Chapter of PKPhi |
| Claim Number: | 55820-37670 |
| Policy Number: | NHD332474 |
| Date of Loss: | 9/16/04 |

We have received notice of a claim being made under the above referenced policy of insurance. Specifically, claim made for hurricane damage as a result of Hurricane Ivan. Indications were made that interior damage may have also occurred as a result.

Gamma Gamma Chapter of PKPhi was issued a policy of insurance policy number NHD332474, by RSUI Indemnity Company for the policy period of 4/1/2004 to 4/1/2005. You are now seeking benefits under the above referenced policy of insurance.

First, we respectfully wish to call your attention to sections of this policy as they relate to your duties after a loss occurs, and other insurance clauses:
Form SB 86 01 (11/97) States on page 2-3 under Loss Conditions:
"C. Duties In the Event of Loss or Damage
    (1) You must see that the following are done in the event of loss or damage to
        Covered Property:
        a. Notify the police if a law may have been broken
        b. Give us prompt notice of the loss or damage. Include a description of the property involved
        c. As soon as possible, give us a description of how, when, and where the loss or damage occurred.
        d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered property from such loss, for consideration in the settlement of the claim. However, we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a covered Cause of Loss. This will not increase the Limit of Insurance.

Form CR0167 (Rev. 1/98)

55820-37670                                                                    Page 2

    e.  Also, if feasible, set damaged property aside and in the best possible order, for examination.

    f.  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    g.  As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    h.  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    i.  Cooperate with us in the investigation or settlement of the claim."

Form SB 86 01 (11/97) States on page 4 under Loss Conditions:

" F. Other Insurance

    (1)  You may have other insurance subject to the same plan, terms, conditions And provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

    (2)  If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage."

Secondly, we respectfully wish to call your attention to other areas of concern relative to our handling of this matter:

Form SB 86 01 (11/97) States on page 5 under Loss Conditions:

" J. Vacancy

    (3)  Vacancy Provisions

        If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

        a.  We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

           ...(4) water damage;"

Form SB 86 02 (04/99) States on page 4 under Exclusions:

"2. We will not pay for loss or damage caused by or resulting from any of the following:

    ...d.

        (1)  Wear and tear;

        (2)  Rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality in property that causes it to damage or destroy itself;"

The issues mentioned above refer to both general duties after a loss and concerns expressed specifically for this claim as they relate to potential vacancy of the property prior to this loss and as they relate to the general conditions of the property prior to the loss limiting our ability to pay for loss due to wear and tear as well as general deterioration of the property.

Form 139 (Rev 8/97)

Page 3

The fact of this claim are too vague to determine at this time whether or not the claims being asserted will be covered by the provisions of the policy. Your interests and the Company's interests may be better served and protected by an investigation of the facts concerning the questions of coverage and your potential liability. Therefore, RSUI Indemnity Company will proceed to investigate this matter under a full and complete reservation of all our rights and defenses. This reservation of rights extends to all facts, known and unknown, as they may pertain to this claim.

Any action taken by us in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses we have under the subject policy of insurance. The Company further reserves the right to deny coverage and withdraw from any further participation in this matter altogether, should facts be developed that determine the above captioned policy does not cover this loss

By naming the specific grounds for the possibility of no coverage or benefits, we do not waive any of our rights or any of the other provisions of the policy of insurance and specifically reserve all of our rights and remedies under this policy and under the statutes and common law.

Sincerely,

RSUI Indemnity Company by
Bruce G. Clapp, AIC
Indiana ICS Branch Manager
GAB Robins N.A., Inc.

cc:    Mr. Dan Durbin, RSUI Indemnity Company
       Mr. Mark Schwartz, RSUI Indemnity Company
       Mr. Richard Jungman, Hobbs group / Kirklin & Co., LLC

Form 139 (Rev. 8/97)





GAB Robins North America, Inc.

450 E. 96ᵗʰ Street, Suite 320
Indianapolis, IN 46240
T: 317-815-3400
F: 317-815-3410
E mail: clappb@gabrobins.com

January 25, 2005

Gamma Gamma Chapter of PKPhi
C/O Historical Rentals, Inc.
P.O. Box 215
Pahhokee, FL 33476

Attn: Donny Hughes

Our Insured:      Gamma Gamma Chapter of PKPhi
Claim Number:     55820-37669
Policy Number:    NHD332474
Date of Loss:     9/23/04

This acknowledges our investigation of the above captioned claim. Specifically, claim made for vandalism from members of the local fraternity. Gamma Gamma Chapter of PKPhi was issued a policy of insurance policy number NHD332474, by RSUI Indemnity Company for the policy period of 4/1/2004 to 4/1/2005. You are now seeking benefits under the above referenced policy of insurance. Consequently, we have completed our investigation into this matter.

Our field adjuster prepared an estimate of what *may* be construed as *vandalism* by person(s) unknown. You have alleged that the fraternity members, as tenants of this house are responsible for this damage. I should point out to you, the specific definition for vandalism as it relates to your claim.

Adjustment of Property Losses. Thomas/Reed, 1977, on page 116 discusses the peril of vandalism and describes that as "..willful destruction of works of art & beauty..." as well as "willful and malicious injury to or destruction of the property of others with malicious intent." Based upon this accepted definition, accidental damage nor wear and tear, whether normal or excessive, would be considered vandalism and recoverable under this policy. Our adjuster prepared an estimate for what may be construed as possible vandalism but it is, at replacement cost, well under the $ 10,000 deductible for this peril.

You have expressed concerns as well with electrical wiring done by the tenant. Your policy form SB8602 (Ed. 04/99) provides on page 5, under Section C. Exclusions:

"3. We will not pay for loss or damage caused by or resulting from any of the following:
    ...c Faulty, inadequate or defective:
       (2).design, specifications, workmanship, repair, construction, renovation,

Form CR0167 (Rev. 1/98)

remodeling, grading, compaction: ... of part or all of any property on or off the described premises."

It is the therefore the position of RSUI Indemnity Company that there will be no payment forthcoming on this claim to Gamma Gamma Chapter of PKPhi C/O Historical Rentals, Inc under the above mentioned policy of insurance.    Therefore, we must respectfully contend that _Gamma Gamma Chapter of PKPhi C/O Historical Rentals, Inc is not entitled to benefits under the above referenced policy of insurance.

Our decision has been based on all facts presently available to us.  If you have additional knowledge or facts relevant to this matter, please notify us in writing immediately so that we can evaluate the additional information and/or new allegations for potential coverage under the above policy.  Please note that any action taken by us in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses we have under the subject policy of insurance

Any action taken by us in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses we have under the subject policy of insurance. The Company further reserves the right to deny coverage and withdraw from any further participation in this matter altogether, should facts be developed that determine the above captioned policy does not cover this loss

By naming the specific grounds for the possibility of no coverage or benefits, we do not waive any of our rights or any of the other provisions of the policy of insurance and specifically reserve all of our rights and remedies under this policy and under the statutes and common law.

Sincerely,


RSUI Indemnity Company  by
Bruce G. Clapp, AIC ...
Indiana ICS Branch Manager
GAB Robins N.A., Inc.
cc:     Mr. Dan Durbin, RSUI Indemnity Company
        Mr. Mark Schwartz, RSUI Indemnity Company
        Mr. Richard Jungman, Hobbs group / Kirklin & Co., LLC

Form 139 (Rev. 8/97)

(C)

## CLAIM INFORMATION

CLAIMANT NAME: GAMMA GAMMA CHAPTER OF PK
OCCURRENCE DATE: 09/16/04
GAB FILE NUMBER: 55820-37670
INSURANCE COMPANY:
POLICY NUMBER:
INSURED NAME: GETTYSBURG NATIONAL INDEMNITY (SAC)
CLAIM NUMBER: N/A

PHONE: 317-815-2400
FAX: 317-815-3410

DATE: 02/03/05

CONTACT GAB IF YOU HAVE ANY QUESTIONS CONCERNING THIS CHECK

## PAYMENT INFORMATION

PAYMENT FOR:

INVOICE NUMBER:
CHECK NUMBER: 5135588
CHECK AMOUNT: $3,105.61

THE FACE OF THIS DOCUMENT HAS A MULTICOLOR BACKGROUND • HOLD TO LIGHT TO VIEW

GAB Robins North America, Inc.
INDIANAPOLIS IN - ICS
450 EAST 96TH STREET
INDIANAPOLIS, IN 46240-3759

CHECK NO.: 5135588
CHECK DATE: 02/03/05
GAB FILE NO.: 55820-37670    $3,105.61

GAB Robins North America, Inc.
In behalf of GETTYSBURG NATIONAL INDEMNITY CO

Three thousand one hundred five and 61/100 Dollars

PAY TO THE
ORDER OF    GAMMA GAMMA CHAPTER OF PKPHI &T
            HISTORICAL RENTALS INC.

CITIBANK DELAWARE
ONE PENNS WAY, NEW CASTLE, DE 19720

VOID AFTER 90 DAYS



**AlaFile E-Notice**

55-CV-2006-000246.00
Judge: ROBERT W BARR

To:  KAREN FARLEY
     kfarley@lgwpc com

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following matter was FILED on 12/5/2006 2:30:35 PM

**D001 GAB ROBINS NORTH AMERICA, IN**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**
[Attorney: FARLEY KAREN DIANNE]

Notice Date:    12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To: HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
CORPORATION SERVICE CO
2711 CENTERVILLE RD/400
WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

**D001 GAB ROBINS NORTH AMERICA, IN**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:        12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  KIRKLIN & COMPANY, LLC       (PRO SE)
2711 CENTERVILLE RD
STE. 400
WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

D001 GAB ROBINS NORTH AMERICA, IN
MOTION TO DISMISS PURSUANT TO RULE 12(B)
[Attorney: FARLEY KAREN DIANNE]

Notice Date:        12/5/2006 2:30:35 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  RHODES TROY          (PRO SE)
%GAB ROBINS NORTH AMERICA
150 S. PERRY ST.
MONTGOMERY, AL 36104

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

### D001 GAB ROBINS NORTH AMERICA, IN
### MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: FARLEY KAREN DIANNE]

Notice Date:      12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  RSUI GROUP, INC          (PRO SE)
% CORPORATION TRUST CO
1209 ORANGE ST
WILMINGTON, DE 19801

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

**D001 GAB ROBINS NORTH AMERICA, IN**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**
[Attorney: FARLEY KAREN DIANNE]

Notice Date:      12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To: BAKER MATTHEW MICHAEL
mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

**D001 GAB ROBINS NORTH AMERICA, IN**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**
[Attorney: FARLEY KAREN DIANNE]

Notice Date:        12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  CERVERA N J
     ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following matter was FILED on 12/5/2006 2:30:35 PM

**D001 GAB ROBINS NORTH AMERICA, IN**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**
[Attorney: FARLEY KAREN DIANNE]

Notice Date:     12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00
Judge: ROBERT W BARR

To:  FARLEY KAREN DIANNE
    kfarley@lgwpc com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

D001 GAB ROBINS NORTH AMERICA, IN
MOTION TO DISMISS PURSUANT TO RULE 12(B)
[Attorney: FARLEY KAREN DIANNE]

Notice Date:     12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 2:30:35 PM

**D001 GAB ROBINS NORTH AMERICA, IN**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:        12/5/2006 2:30:35 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  MATTHEW BAKER
     mbaker@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

**C001 HUGHES DONNIE D/B/A HISTORIC**
**C002 HUGHES METRA D/B/A HISTORICA**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:     12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
CORPORATION SERVICE CO
2711 CENTERVILLE RD/400
WILMINGTON, DE 19808

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

C001 HUGHES DONNIE D/B/A HISTORIC
C002 HUGHES METRA D/B/A HISTORICA
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:      12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  KIRKLIN & COMPANY, LLC      (PRO SE)
     2711 CENTERVILLE RD
     STE. 400
     WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

C001 HUGHES DONNIE D/B/A HISTORIC
C002 HUGHES METRA D/B/A HISTORICA
MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:      12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  RHODES TROY          (PRO SE)
     %GAB ROBINS NORTH AMERICA
     150 S. PERRY ST.
     MONTGOMERY, AL 36104

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

**C001 HUGHES DONNIE D/B/A HISTORIC**

**C002 HUGHES METRA D/B/A HISTORICA**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:      12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To: RSUI GROUP, INC          (PRO SE)
% CORPORATION TRUST CO
1209 ORANGE ST
WILMINGTON, DE 19801

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

C001 HUGHES DONNIE D/B/A HISTORIC

C002 HUGHES METRA D/B/A HISTORICA

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:      12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  BAKER MATTHEW MICHAEL
mbaker@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

C001 HUGHES DONNIE D/B/A HISTORIC
C002 HUGHES METRA D/B/A HISTORICA
MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:     12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  CERVERA N J
    ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

C001 HUGHES DONNIE D/B/A HISTORIC
C002 HUGHES METRA D/B/A HISTORICA
MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:      12/5/2006 3:05:00 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  FARLEY KAREN DIANNE
kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

**C001 HUGHES DONNIE D/B/A HISTORIC**
**C002 HUGHES METRA D/B/A HISTORICA**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:      12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  LLOYD JAMES S
jlloyd@lgwpc com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/5/2006 3:05:00 PM

C001 HUGHES DONNIE D/B/A HISTORIC
C002 HUGHES METRA D/B/A HISTORICA
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: BAKER MATTHEW MICHAEL]

Notice Date:       12/5/2006 3:05:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda peacock@alacourt gov

AVSO352

CASE: CV 2006 000246.00
JUDGE: ROBERT W BARR

```
|------------------------------------------------------------------------|
|                   ALABAMA JUDICIAL DATA CENTER                         |
|                 CASE ACTION SUMMARY CONTINUATION                       |
|                         CIRCUIT CIVIL                                  |
|------------------------------------------------------------------------|
|  IN THE CIRCUIT  COURT OF    PIKE         COUNTY                   |    |
|                                                                        |
|   DONNIE HUGHES, ETALS   VS  GAB ROBINS NORTH AMERICA, INC, ETAL        |
|   FILED: 09/22/2006 TYPE:  BAD FAITH/FRAUD/MISR TYPE TRIAL:  JURY   TRACK: |
|************************************************************************|
|   DATE1:            CA:              CA DATE:                           |
|   DATE2:            AMT:          $ .00  PAYMENT:                       |
|************************************************************************|
```

| 10-10-06 | Not. to Cervera / Bakere DOOL svd on 10/3/06. |
| 11-3-06 | △ GAB Robins Not. to Dismiss |
| 11-6-06 | The Plaintiff shall respond to Defendant's Motion to Dismiss |
| | w/have thirty (30) days          Robert Barr Circuit Judge |
| | cc: Cervera/Baker, Hoga/Farley |
| 11-6-06 | Π's 1st Amended Complaint |
| 11-7-06 | S#C to DOO3 - DOO5 by cert. mail |
| 11-7-06 | S#C returned to DOO2 @ new address |
| 11-14-06 | Not. to Cervera/Baker - DOO2 svd on 11-8-06 |
| 11-14-06 | Not. to Cervera/Baker - DOO4 svd on 11-10-06 |
| 11-20-06 | Not. to Cervera/Baker - DOO5 svd on 11-10-06 |
| 11-20-06 | Not. to Cervera/Baker - DOO3 svd on 11/13/06 |
| 12-5-06 | △ GAB Robins 2nd Motion to Dismiss |
| 12-5-06 | Π's Resp. to △'s Mot to Dismiss |
| 12-12-06 | Defendant's Motion to Dismiss is denied |
| | cc: Cervera/Baker, Hoya/Farley     Robert Barr Circuit Judge |

JAS   09/29/2006

| STATE OF ALABAMA  Unified Judicial System | Revised 2/14/05 | Case No. |
|---|---|---|
| 55-PIKE | ☐ District Court  ☑ Circuit Court | CV200600024600 |

| DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL | CIVIL MOTION COVER SHEET  Name of Filing Party:  D002 - RHODES TROY |
|---|---|

| Name, Address, and Telephone No. of Attorney or Party  If Not Represented:  KAREN FARLEY  2501 20TH PLACE SOUTH, STE 300  BIRMINGHAM, AL 35223  Attorney Bar No  FAR035 | ☐ Oral Arguments Requested |
|---|---|

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50 00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50 00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50 00) | ☐ Continue |
| | ☐ Deposition |
| | ☐ Designate a Mediator |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Judgment as a Matter of Law (during Trial) |
| | ☐ Disburse Funds |
| ☐ Summary Judgment pursuant to Rule 56($50 00) | ☐ Extension of Time |
| | ☐ In Limine |
| ☐ Other _____ | ☐ Joinder |
| pursuant to Rule _____ ($50.00) | ☐ More Definite Statement |
| | ☑ Motion to Dismiss pursuant to Rule 12(b) |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| ☐ Local Court Costs $ _____ | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship  ☐ | Date:  12/7/2006 1:24:55 PM | Signature of Attorney or Party:  /s/ KAREN FARLEY |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
12/7/2006 1:26 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, ) | |
| d/b/a HISTORICAL RENTALS, INC., ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No.:  CV-06-246** |
| ) | |
| GAB ROBINS NORTH AMERICA, ) | |
| INC. and TROY RHODES, ) | |
| ) | |
| **Defendants.** ) | |

---

## DEFENDANT TROY RHODES' MOTION TO DISMISS

---

COMES NOW the Defendant, Troy Rhodes, pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure and moves this Court for entry of an Order dismissing the claims against Defendant Troy Rhodes in the Plaintiffs' complaint on the grounds that the Plaintiffs have failed to state a claim upon which relief may be granted.  In support thereof, Defendant Troy Rhodes shows unto the Court as follows:

1.  On or about September 22, 2006, the Plaintiffs Donnie and Metra Hughes d/b/a Historical Rentals, Inc. filed suit in the Circuit Court of Pike County, Alabama against GAB Robins North America, Inc. (hereinafter referred to as "GAB Robins") and Troy Rhodes.  Plaintiffs allege in their Complaint that at all times material thereto, Troy Rhodes was an agent or employee of Defendant GAB Robins North America, Inc.  Defendant Troy Rhodes was served by certified mail on November 8, 2006.

2.  The Complaint sets forth various causes of action, including the following:

    a.  Breach of Contract;

    b.  Fraudulent Misrepresentation;

    c.  Fraudulent Suppression; and

    d.  Bad Faith.

3.    Specifically, in the Complaint, the Plaintiffs, Donnie and Metra Hughes, allege that on or about April 1, 2004 the Plaintiffs entered into an insurance contract with Defendant, GAB Robins, by and through its alleged agent or employee, Defendant Troy Rhodes. The Complaint alleges further that said agreement contained terms, by which Defendant GAB Robins, allegedly agreed to insure Plaintiffs' property, which Plaintiffs intended for rental or lease for a term of one year. The Complaint alleges further that by the terms of said agreement, Defendant GAB Robins, by and through its agent or employee Troy Rhodes, allegedly agreed to pay for damage done to Plaintiffs' property that is to be used for rental or lease purposes.

4.    Plaintiffs allege further that said property was damaged on September 16, 2004 by Hurricane Ivan and suffered additional damage on September 23, 2004. Plaintiffs allege further that they promptly notified Defendant GAB Robins, through its alleged agent Troy Rhodes of the damage to said property.

5.    Plaintiffs also allege that on or about January 6, 2005 Defendant GAB Robins notified Plaintiff that Defendant GAB Robins had no intention of paying for the cost of repair, thereby allegedly breaching said agreement. Plaintiffs allege damages consisting of the cost of repairs for said property and loss of income from said property.

6.  Defendant GAB Robins is not an insurance company nor does it provide insurance benefits to any individual or entity. (Exhibit A - Affidavit of Thomas Santangelo, Esquire). Additionally, Defendant Troy Rhodes, to the extent that he is alleged to be an agent or employee of GAB Robins, North America, Inc. does not provide insurance benefits to any individual or entity. GAB Robins does not underwrite and issue insurance policies. (Exhibit A). Further, to the extent that Defendant Troy Rhodes is alleged to be an agent or employee of GAB Robins North America, Inc., he does not underwrite or issue insurance benefits on behalf of GAB Robins North America, Inc.

7.  Pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>, Plaintiffs claims for breach of contract, fraudulent misrepresentation, fraudulent suppression and bad faith against Defendant Troy Rhodes, to the extent that he is alleged to be an agent or employee of Defendant GAB Robins North America, Inc. are due to be dismissed for failure to state a claim upon which relief can be granted. As Defendant Troy Rhodes, to the extent that he is alleged to be an agent or employee of Defendant GAB Robins North America, Inc., does not, in such a capacity underwrite insurance policies, Defendant Troy Rhodes could not have entered into an insurance contract with the Plaintiffs. Therefore, the Plaintiffs cannot maintain any cause of action for breach of an insurance contract, bad faith failure to pay on an insurance claim or fraud in the making of an insurance contract against Troy Rhodes, to the extent that he is alleged to be an agent or employee of Defendant GAB Robins North America, Inc.

WHEREFORE, PREMISES CONSIDERED, Defendant Troy Rhodes respectfully requests that this Honorable Court enter an Order dismissing all claims brought by the Plaintiffs against Defendant Troy Rhodes pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure.

Respectfully submitted this the 7th day of December, 2006.

s/Karen D. Farley
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendant, GAB Robins
North America, Inc. and Troy Rhodes

OF COUNSEL:
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North,
Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:        jlloyd@lgwpc.com
              kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 7th day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:    334-566-0116
Facsimile:    334-566-4073
Email:        mbaker@troycable.net
              ncervera@troycable.net

s/Karen D. Farley
Of Counsel



ELECTRONICALLY FILED
12/7/2006 1:26 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

# EXHIBIT A

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV06-246 |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC. and TROY RHODES, | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF THOMAS SANTANGELO, ESQUIRE

STATE OF NEW JERSEY)

COUNTY OF MORRIS)

Before me, the undersigned authority, a Notary Public in and for said County and in said State, personally appeared Thomas Santangelo, Deputy General Counsel for GAB Robins North America, Inc. and after first being duly sworn, testified as follows:

1. My name is Thomas Santangelo and I am over the age of nineteen (19) years. I am Deputy General Counsel for GAB Robins North America, Inc. and was so at all times relevant to the above-styled lawsuit.

2. GAB Robins North America, Inc.'s headquarters is located in Parsippany, New Jersey. GAB Robins North America, Inc. is not an insurance company or an insurer. It does not underwrite and issue insurance policies. GAB Robins North America, Inc. provides services for loss adjusting, appraisals and third party administration of claims, but is not an insurer.

3. I have personal knowledge of the foregoing.

Further Affiant saith not.

Thomas Santangelo, Esquire

STATE OF _New Jersey_ )

COUNTY OF _Morris_ )

Sworn to and subscribed before me on this _1st_ day of _November_,
2006.

Notary Public

(Seal)                My commission expires:     JOCELYN E. GILMORE
                                         NOTARY PUBLIC OF NEW JERSEY
                                         My Commission Expires Sept. 18, 20_08_



**AlaFile E-Notice**

55-CV-2006-000246.00
Judge: ROBERT W BARR

To:   KAREN FARLEY
       kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:       12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
     CORPORATION SERVICE CO
     2711 CENTERVILLE RD/400
     WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:     12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  KIRKLIN & COMPANY, LLC     (PRO SE)
2711 CENTERVILLE RD
STE. 400
WILMINGTON, DE 19808

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:     12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To: RHODES TROY            (PRO SE)
%GAB ROBINS NORTH AMERICA
150 S. PERRY ST.
MONTGOMERY, AL 36104

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**
[Attorney: FARLEY KAREN DIANNE]

Notice Date:        12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  RSUI GROUP, INC          (PRO SE)
     % CORPORATION TRUST CO
     1209 ORANGE ST
     WILMINGTON, DE 19801

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:      12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  BAKER MATTHEW MICHAEL
mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

D002 RHODES TROY
MOTION TO DISMISS PURSUANT TO RULE 12(B)
[Attorney: FARLEY KAREN DIANNE]

Notice Date:     12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  CERVERA N J
     ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:    12/7/2006 1:26:25 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:   FARLEY KAREN DIANNE
      kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)**
[Attorney: FARLEY KAREN DIANNE]

Notice Date:      12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 12/7/2006 1:26:25 PM

**D002 RHODES TROY**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)**

[Attorney: FARLEY KAREN DIANNE]

Notice Date:     12/7/2006 1:26:25 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov

AVSO352

```
------------------------------------------------------------
              ALABAMA JUDICIAL DATA CENTER
           CASE ACTION SUMMARY CONTINUATION
                    CIRCUIT CIVIL
------------------------------------------------------------
   IN THE CIRCUIT  COURT OF   PIKE      COUNTY

   DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
   FILED: 09/22/2006 TYPE:  BAD FAITH/FRAUD/MISR TYPE TRIAL:  JURY    TRACK:
------------------------------------------------------------
*****************************************************************
DATE1:                 CA:              CA DATE:
DATE2:                 AMT:        $.00 PAYMENT:
*****************************************************************
```

| | |
|---|---|
| 10.10.06 | Not. to Cervera/Baker D001 svd on 10/3/06 |
| 11.3.06 | A GAB Robins Mot. to Dismiss |
| 11/6/06 | The Plaintiff shall respond to Defendant's Motion to Dismiss w/in Thirty (30) days   Robert Barr Circuit Judge |
| | cc: Cervera/Baker, Lloyd/Farley |
| 11.6.06 | II's 1st Amended Complaint |
| 11.7.06 | S&C to D003-D005 by cert. mail |
| 11.7.06 | S&C reissued to D002 @ new address |
| 11.14.06 | Not. to Cervera/Baker- D002 svd on 11.8.06 |
| 11.14.06 | Not. to Cervera/Baker - D004 svd on 11.10.06 |
| 11.20.06 | Not. to Cervera/Baker - D005 svd on 11.10.06 |
| 11.20.06 | Not. to Cervera/Baker - D003 svd on 11/13/06 |
| 12.5.06 | A GAB Robins 2nd Motion to Dismiss |
| 12.5.06 | II's Resp. to A's Mot to Dismiss |
| 12/7/06 | Defendant's Motion to Dismiss is denied   Robert Barr Circuit Judge |
| | cc: Cervera/Baker, Lloyd/Farley |
| 12.7.06 | A Ray Rhodes' Mot. to Dismiss |
| 12.7.06 | Docket for 2.5.07 to Cervera/Baker, Lloyd/Farley, D003, D004 & D005 |
| 12/8/06 | Defendant Rhodes' Motion to Dismiss is denied   Robert Barr Circuit Judge |
| | cc: Cervera/Baker, Lloyd/Farley |

JAS    09/29/2006



ELECTRONICALLY FILED
12/18/2006 11:54 AM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  CV-06-246 |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC., TROY RHOADES, HILB, | ) | |
| ROGAL & HOBBS WHOLESALE | ) | |
| INSURANCE SERVICES, INC., | ) | |
| KIRKLIN & CO., LLC, A/K/A | ) | |
| HRH/KIRKLIN & CO., LLC and  RSUI | ) | |
| GROUP, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER OF DEFENDANT GAB ROBINS NORTH AMERICA, INC.

COMES NOW the Defendant, GAB Robins, North America, Inc., (hereinafter referred to as "GAB Robins") and for Answer to the Complaint and each count and paragraph thereof and Plaintiffs' First Amended Complaint and each count and paragraph thereof, sets down and assigns the following separate and several defenses, without waiving any substantive or procedural deficiencies in the Plaintiffs' Complaint or Amended Complaint:

### STATEMENT OF THE PARTIES

1.    Upon information and belief, GAB Robins admits the allegations of this paragraph.

2.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 2, therefore, the allegations are denied and Defendant demands strict proof thereof.

- 1 -

3.     Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

### COUNT ONE

4.     The allegations of paragraph 4 are denied and Defendant demands strict proof thereof.

5.     Defendant GAB Robins denies the allegations of paragraph 5 of the Plaintiffs' Complaint and demands strict proof thereof.

6.     Defendant GAB Robins denies the allegations of paragraph 6 of the Plaintiffs' Complaint and demands strict proof thereof.

7.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

8.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 8, therefore, the allegations are denied and Defendant demands strict proof thereof.

9.     Defendant GAB Robins denies the material allegations of paragraph 9 and demands strict proof thereof.

10.    Defendant GAB Robins denies that as a proximate consequence of a breach of contract that the plaintiffs have not been able to repair property and therefore unable to rent or lease the aforedescribed property and demands strict proof thereof. Defendant GAB Robins is without sufficient information to admit or deny the balance of the allegations set forth in paragraph 10 and, therefore, denies the same and demands strict proof thereof.

## COUNT TWO

11.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

12.    Defendant GAB Robins denies the material allegations of paragraph 12 and demands strict proof thereof.

13.    Defendant GAB Robins denies the material allegations of paragraph 13 and demands strict proof thereof.

14.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 14 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

15.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

16.    Defendant GAB Robins denies the material allegations of paragraph 16 and demands strict proof thereof.

17.    Defendant GAB Robins denies the material allegations of paragraph 17 and demands strict proof thereof.

## COUNT FOUR

18.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

19.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 19 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.     Defendant GAB Robins denies the material allegations of paragraph 20 and demands strict proof thereof.

21.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 21 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.     Defendant GAB Robins denies the material allegations of paragraph 22 and demands strict proof thereof.

23.     Defendant GAB Robins denies the allegations of Plaintiffs' Complaint, contests damages and demands strict proof thereof of all claims.

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

1.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 1 of the Plaintiffs' First Amended Complaint and, therefore the allegations are denied and Defendant demands strict proof thereof.

2.     The allegations of paragraph 2 are admitted.

3.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 3, therefore, the allegations are denied and Defendant demands strict proof thereof.

4.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 4, therefore, the allegations are denied and Defendant demands strict proof thereof.

5.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 5, therefore, the allegations are denied and Defendant demands strict proof thereof.

- 4 -

6.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 6, therefore, the allegations are denied and Defendant demands strict proof thereof.

7.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

**COUNT ONE**

8.    The allegations of paragraph 8 are denied and Defendant demands strict proof thereof.

9.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 9, therefore, the allegations are denied and Defendant demands strict proof thereof.

10.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 10, therefore, the allegations are denied and Defendant demands strict proof thereof.

11.   Upon information and belief, GAB Robins admits the allegations of this paragraph.

12.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 12, therefore, the allegations are denied and Defendant demands strict proof thereof.

13.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 13, therefore, the allegations are denied and Defendant demands strict proof thereof.

14.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 14, therefore, the allegations are denied and Defendant demands strict proof thereof.

15.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 15, therefore, the allegations are denied and Defendant demands strict proof thereof.

16.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 16, therefore, the allegations are denied and Defendant demands strict proof thereof.

17.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 17, therefore, the allegations are denied and Defendant demands strict proof thereof.

18.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 18, therefore, the allegations are denied and Defendant demands strict proof thereof.

19.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 19, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 20, therefore, the allegations are denied and Defendant demands strict proof thereof.

21.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 21, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.  Defendant GAB Robins denies the material allegations of paragraph 22 and demands strict proof thereof.

<u>**COUNT TWO**</u>

23.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 23, therefore, the allegations are denied and Defendant demands strict proof thereof.

24.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 24, therefore, the allegations are denied and Defendant demands strict proof thereof.

25.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 25, therefore, the allegations are denied and Defendant demands strict proof thereof.

26.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 26, therefore, the allegations are denied and Defendant demands strict proof thereof.

27.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 27, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

28.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 28, therefore, the allegations are denied and Defendant demands strict proof thereof.

29.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 29, therefore, the allegations are denied and Defendant demands strict proof thereof.

30.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 30, therefore, the allegations are denied and Defendant demands strict proof thereof.

31.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 31, therefore, the allegations are denied and Defendant demands strict proof thereof.

32.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 32, therefore, the allegations are denied and Defendant demands strict proof thereof.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Complaint and the Amended Complaint fails to state a cause of action upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The allegations in the Complaint and the Amended Complaint against Defendant GAB Robins are untrue.

- 8 -

## THIRD AFFIRMATIVE DEFENSE

The damages asserted on behalf of the Plaintiffs are the result of an intervening and/or superseding cause.

## FOURTH AFFIRMATIVE DEFENSE

The claims against Defendant GAB Robins are barred by the applicable statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, release, accord and satisfaction.

## SIXTH AFFIRMATIVE DEFENSE

Imposing damages for mental anguish or emotional distress is unconstitutional under the United States Constitution and the Constitution of the State of Alabama. Current Alabama procedures relative to damages for mental anguish and emotional distress provide no objective, logical or reasonable standards or criteria to govern the award or the amount of such damages; therefore, this Defendant is denied due process and equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I Sections 1, 6, 10, 11, 13, and 22 of the Alabama Constitution, separately and severally.

## SEVENTH AFFIRMATIVE DEFENSE

There are no procedural safeguards for the imposition of damages for emotional distress and mental anguish. Therefore, because such damages are left to the standardless discretion of the jury, any such award would be improper and unconstitutional.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable insurance laws and regulations.

- 9 -

## NINTH AFFIRMATIVE DEFENSE

This Defendant denies they are guilty of conduct for which punitive damages could or should be awarded and denies Plaintiffs have produced clear and convincing evidence to support or sustain an award of punitive damages against this Defendant.

## TENTH AFFIRMATIVE DEFENSE

Your Defendant contests damages alleged in all Counts and paragraphs of the Complaint and the Amended Complaint and demands strict proof thereof. Specifically with regard to the claim for punitive damages, your Defendant pleads the following punitive damage defenses:

1. Plaintiffs' claim of punitive damages violates the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 6 of the Constitution of Alabama, on the following grounds:

(a) It is violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United Sates Constitution to impose punitive damages, which are penal in nature, against a civil Defendant upon the Plaintiffs' satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b) The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(c) The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant, which thereby violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards, or provide vague or insufficient standards, for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(e) The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(f) The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(g) The procedures pursuant to which punitive damages are awarded fail to require that an award of punitive damages be proportion, or bear a reasonable relationship, to the actual harm incurred;

(h) The procedures pursuant to which punitive damages are awarded fail to provide mitigating factors for the jury's consideration in awarding punitive damages.

2.  Plaintiffs' claim of punitive damages violates the due process clause of Article I, Section 6 of the Constitution of Alabama on the following grounds:

(a) It is a violation of the due process clause to impose punitive damages, which are penal in nature, upon a civil Defendant upon the Plaintiffs' satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b) The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against the Defendant;

(c) The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages; and

(e) The award of the punitive damages in this case constitutes a deprivation of property without due process of law.

3. Plaintiffs' attempt to impose punitive or extra contractual damages on this Defendant, on the basis of vicarious liability for the conduct by others, violates the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

4. The award of punitive damages to the Plaintiffs in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

5. The award of punitive damages against the Defendant in this action would violate the prohibition against laws that impair the obligations of contracts in violation of Article I, Section 22 of the Constitution of Alabama.

6. The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the amount established by the legislature under **Alabama Code**, Section 27-1-17 (1975), in violation of the Due Process Clause of the Fifth and

- 12 -

Fourteenth Amendments of the United States Constitution and Article I, Section 6, of the Alabama Constitution.

### ELEVENTH AFFIRMATIVE DEFENSE

Awarding punitive damages in this case against this Defendant would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

### TWELFTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would have a chilling effect upon the Defendant's right to open access to the courts of this state, in violation of the United States Constitution and Alabama Constitution, separately and severally.

### THIRTEENTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would violate the Contracts Clause of Article I, Section 10 of the United States Constitution, as an award of punitive damages would impair the contractual obligations arising out of the transaction between the Plaintiff and this Defendant.

### FOURTEENTH AFFIRMATIVE DEFENSE

Based upon Alabama procedures relative to punitive damages, which provide no objective, logical, reasonable standards or criteria which govern an award, and the amount of the award, of punitive damages, this Defendant are denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article I, Sections 1, 6 and 22 of the Alabama Constitution, separately and severally

## FIFTEENTH AFFIRMATIVE DEFENSE

The demand for punitive damages in this case is subject to those limitations established by the Alabama Legislature set forth in Sections 6-11-21 of the Alabama Code. The Alabama Supreme Court's action in abolishing the legislatively created cap on punitive damages was unconstitutional. Under the Constitutions of the United States and the State of Alabama, the Alabama Supreme Court cannot abolish the cap created by the legislature as to punitive damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' own actions or inactions caused or contributed to their damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

This Defendant breached no duty owed to the Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the merger doctrine and the parole evidence rule.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## TWENTY FIRST AFFIRMATIVE DEFENSE

The insurance transactions at issue in this case were arms-length transactions.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Defendant GAB Robins has not breached the contract at issue in this case.

- 14 -

## TWENTY THIRD AFFIRMATIVE DEFENSE

An insurance adjuster, not being a party to the insurance contract cannot be held liable for bad faith. Thus, any claims against GAB Robins are due to be dismissed.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Defendant GAB Robins owed no duty to the Plaintiffs.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

The Complaint and Amended Complaint contain a misjoinder of parties and is due to be dismissed.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Defendant GAB Robins pleads the general issue and states they are not guilty of the matters charged.

## TWENTY SEVENTH AFFIRMATIVE DEFENSE

Defendant, GAB Robins pleads any other matter constituting an avoidance or affirmative defense not specifically set forth herein and hereby reserves the right to amend this Answer to include any such avoidance or affirmative defense.

Respectfully submitted this the 18th day of December, 2006.

s/Karen D. Farley
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendants, GAB Robins
North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:        jlloyd@lgwpc.com
              kfarley@lgwpc.com

- 15 -

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 18th day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:    334-566-0116
Facsimile:    334-566-4073
Email:       mbaker@troycable.net
               ncervera@troycable.net


       I hereby certify that a copy of the above and foregoing has been served on the following parties by placing a copy of the same in the United States Mail, properly addressed and postage prepaid on this the 18th day of December, 2006:

HILB, ROGAL & HOBBS WHOLESALE
INSURANCE SERVICES, INC.
Corporation Service Co.
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

KIRKLIN & COMPANY, LLC
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

RSUI GROUP, INC.
C/O Corporation Trust Co.
1209 Orange Street
Wilmington, Deleware 19801


                                    _s/Karen D. Farley_____
                                      Of Counsel



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KAREN FARLEY
     kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:       12/18/2006 11:54:57 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:   HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
      CORPORATION SERVICE CO
      2711 CENTERVILLE RD/400
      WILMINGTON, DE 19808

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:      12/18/2006 11:54:57 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KIRKLIN & COMPANY, LLC      (PRO SE)
     2711 CENTERVILLE RD
     STE. 400
     WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:      12/18/2006 11:54:57 AM

                                              **BRENDA PEACOCK**
                                           **CIRCUIT COURT CLERK**
                                             PIKE COUNTY, ALABAMA
                                            120 WEST CHURCH STREET
                                                TROY, AL 36340

                                                  334-566-4622
                                        brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  RSUI GROUP, INC        (PRO SE)
     % CORPORATION TRUST CO
     1209 ORANGE ST
     WILMINGTON, DE 19801

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:      12/18/2006 11:54:57 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: BAKER MATTHEW MICHAEL
mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:    12/18/2006 11:54:57 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  CERVERA N J
ncervera@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:     12/18/2006 11:54:57 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  FARLEY KAREN DIANNE
    kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:    12/18/2006 11:54:57 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:54:57 AM

Notice Date:        12/18/2006 11:54:57 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



ELECTRONICALLY FILED
12/18/2006 11:56 AM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, ) | |
| d/b/a HISTORICAL RENTALS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.:  CV-06-246 |
| ) | |
| GAB ROBINS NORTH AMERICA, ) | |
| INC., TROY RHOADES, HILB, ) | |
| ROGAL & HOBBS WHOLESALE ) | |
| INSURANCE SERVICES, INC., ) | |
| KIRKLIN & CO., LLC, A/K/A ) | |
| HRH/KIRKLIN & CO., LLC and RSUI ) | |
| GROUP, INC. ) | |
| ) | |
| Defendants. ) | |

## ANSWER OF DEFENDANT TROY RHOADES

COMES NOW the Defendant, Troy Rhoades (incorrectly identified as "Troy Rhodes") and for answer to the Complaint and each count and paragraph thereof and Plaintiffs' First Amended Complaint and each count and paragraph thereof, sets down and assigns the following separate and several defenses, without waiving any substantive or procedural deficiencies in the Plaintiffs' Complaint or Amended Complaint:

### STATEMENT OF THE PARTIES

1. Upon information and belief, Troy Rhoades admits the allegations of this paragraph.

2. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 2, therefore, the allegations are denied and Defendant demands strict proof thereof.

- 1 -

3.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

## COUNT ONE

4.    The allegations of paragraph 4 are denied and Defendant demands strict proof thereof.

5.    Defendant Troy Rhoades denies the allegations of paragraph 5 of the Plaintiffs' Complaint and demands strict proof thereof.

6.    Defendant Troy Rhoades denies the allegations of paragraph 6 of the Plaintiffs' Complaint and demands strict proof thereof.

7.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

8.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 8, therefore, the allegations are denied and Defendant demands strict proof thereof.

9.    Defendant Troy Rhoades denies the material allegations of paragraph 9 and demands strict proof thereof.

10.    Defendant Troy Rhoades denies that as a proximate consequence of a breach of contract that the plaintiffs have not been able to repair property and therefore unable to rent or lease the aforedescribed property and demands strict proof thereof.  Defendant Troy Rhoades is without sufficient information to admit or deny the balance of the allegations set forth in paragraph 10 and, therefore, denies the same and demands strict proof thereof.

- 2 -

## COUNT TWO

11.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

12.    Defendant Troy Rhoades denies the material allegations of paragraph 12 and demands strict proof thereof.

13.    Defendant Troy Rhoades denies the material allegations of paragraph 13 and demands strict proof thereof.

14.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 14 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

15.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

16.    Defendant Troy Rhoades denies the material allegations of paragraph 16 and demands strict proof thereof.

17.    Defendant Troy Rhoades denies the material allegations of paragraph 17 and demands strict proof thereof.

## COUNT FOUR

18.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

19.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 19 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.   Defendant Troy Rhoades denies the material allegations of paragraph 20 and demands strict proof thereof.

21.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 21 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.   Defendant Troy Rhoades denies the material allegations of paragraph 22 and demands strict proof thereof.

23.   Defendant Troy Rhoades denies the allegations of Plaintiffs' Complaint, contests damages and demands strict proof thereof of all claims.

## PLAINTIFFS' FIRST AMENDED COMPLAINT

1.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 1 of the Plaintiffs' First Amended Complaint and, therefore the allegations are denied and Defendant demands strict proof thereof.

2.   The allegations of paragraph 2 are admitted.

3.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 3, therefore, the allegations are denied and Defendant demands strict proof thereof.

4.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 4, therefore, the allegations are denied and Defendant demands strict proof thereof.

5.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 5, therefore, the allegations are denied and Defendant demands strict proof thereof.

6. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 6, therefore, the allegations are denied and Defendant demands strict proof thereof.

7. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT ONE

8. The allegations of paragraph 8 are denied and Defendant demands strict proof thereof.

9. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 9, therefore, the allegations are denied and Defendant demands strict proof thereof.

10. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 10, therefore, the allegations are denied and Defendant demands strict proof thereof.

11. Upon information and belief, Troy Rhoades admits the allegations of this paragraph.

12. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 12, therefore, the allegations are denied and Defendant demands strict proof thereof.

13. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 13, therefore, the allegations are denied and Defendant demands strict proof thereof.

14.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 14, therefore, the allegations are denied and Defendant demands strict proof thereof.

15.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 15, therefore, the allegations are denied and Defendant demands strict proof thereof.

16.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 16, therefore, the allegations are denied and Defendant demands strict proof thereof.

17.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 17, therefore, the allegations are denied and Defendant demands strict proof thereof.

18.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 18, therefore, the allegations are denied and Defendant demands strict proof thereof.

19.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 19, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 20, therefore, the allegations are denied and Defendant demands strict proof thereof.

21.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 21, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.    Defendant Troy Rhoades denies the material allegations of paragraph 22 and demands strict proof thereof.

## COUNT TWO

23.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 23, therefore, the allegations are denied and Defendant demands strict proof thereof.

24.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 24, therefore, the allegations are denied and Defendant demands strict proof thereof.

25.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 25, therefore, the allegations are denied and Defendant demands strict proof thereof.

26.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 26, therefore, the allegations are denied and Defendant demands strict proof thereof.

27.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 27, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

28. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 28, therefore, the allegations are denied and Defendant demands strict proof thereof.

29. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 29, therefore, the allegations are denied and Defendant demands strict proof thereof.

30. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 30, therefore, the allegations are denied and Defendant demands strict proof thereof.

31. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 31, therefore, the allegations are denied and Defendant demands strict proof thereof.

32. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 32, therefore, the allegations are denied and Defendant demands strict proof thereof.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint and the Amended Complaint fails to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The allegations in the Complaint and the Amended Complaint against Defendant Troy Rhoades are untrue.

- 8 -

### THIRD AFFIRMATIVE DEFENSE

The damages asserted on behalf of the Plaintiffs are the result of an intervening and/or superseding cause.

### FOURTH AFFIRMATIVE DEFENSE

The claims against Defendant Troy Rhoades are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, release, accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

Imposing damages for mental anguish or emotional distress is unconstitutional under the United States Constitution and the Constitution of the State of Alabama. Current Alabama procedures relative to damages for mental anguish and emotional distress provide no objective, logical or reasonable standards or criteria to govern the award or the amount of such damages; therefore, this Defendant is denied due process and equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I Sections 1, 6, 10, 11, 13, and 22 of the Alabama Constitution, separately and severally.

### SEVENTH AFFIRMATIVE DEFENSE

There are no procedural safeguards for the imposition of damages for emotional distress and mental anguish. Therefore, because such damages are left to the standardless discretion of the jury, any such award would be improper and unconstitutional.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable insurance laws and regulations.

## NINTH AFFIRMATIVE DEFENSE

This Defendant denies he is guilty of conduct for which punitive damages could or should be awarded and denies Plaintiffs have produced clear and convincing evidence to support or sustain an award of punitive damages against this Defendant.

## TENTH AFFIRMATIVE DEFENSE

Your Defendant contests damages alleged in all Counts and paragraphs of the Complaint and the Amended Complaint and demands strict proof thereof. Specifically with regard to the claim for punitive damages, your Defendant pleads the following punitive damage defenses:

1. Plaintiffs' claim of punitive damages violates the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 6 of the Constitution of Alabama, on the following grounds:

(a) It is violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United Sates Constitution to impose punitive damages, which are penal in nature, against a civil Defendant upon the Plaintiffs' satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b) The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(c) The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant, which thereby violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

- 10 -

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards, or provide vague or insufficient standards, for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(e) The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(f) The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(g) The procedures pursuant to which punitive damages are awarded fail to require that an award of punitive damages be proportion, or bear a reasonable relationship, to the actual harm incurred;

(h) The procedures pursuant to which punitive damages are awarded fail to provide mitigating factors for the jury's consideration in awarding punitive damages.

2. Plaintiffs' claim of punitive damages violates the due process clause of Article I, Section 6 of the Constitution of Alabama on the following grounds:

(a) It is a violation of the due process clause to impose punitive damages, which are penal in nature, upon a civil Defendant upon the Plaintiffs' satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

- 11 -

(b) The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against the Defendant;

(c) The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages; and

(e) The award of the punitive damages in this case constitutes a deprivation of property without due process of law.

3. Plaintiffs' attempt to impose punitive or extra contractual damages on this Defendant, on the basis of vicarious liability for the conduct by others, violates the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

4. The award of punitive damages to the Plaintiffs in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

5. The award of punitive damages against the Defendant in this action would violate the prohibition against laws that impair the obligations of contracts in violation of Article I, Section 22 of the Constitution of Alabama.

6. The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the amount established by the legislature under **Alabama Code**, Section 27-1-17 (1975), in violation of the Due Process Clause of the Fifth and

Fourteenth Amendments of the United States Constitution and Article I, Section 6, of the Alabama Constitution.

## ELEVENTH AFFIRMATIVE DEFENSE

Awarding punitive damages in this case against this Defendant would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

## TWELFTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would have a chilling effect upon the Defendant's right to open access to the courts of this state, in violation of the United States Constitution and Alabama Constitution, separately and severally.

## THIRTEENTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would violate the Contracts Clause of Article I, Section 10 of the United States Constitution, as an award of punitive damages would impair the contractual obligations arising out of the transaction between the Plaintiff and this Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

Based upon Alabama procedures relative to punitive damages, which provide no objective, logical, reasonable standards or criteria which govern an award, and the amount of the award, of punitive damages, this Defendant are denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article I, Sections 1, 6 and 22 of the Alabama Constitution, separately and severally.

### FIFTEENTH AFFIRMATIVE DEFENSE

The demand for punitive damages in this case is subject to those limitations established by the Alabama Legislature set forth in Sections 6-11-21 of the Alabama Code. The Alabama Supreme Court's action in abolishing the legislatively created cap on punitive damages was unconstitutional. Under the Constitutions of the United States and the State of Alabama, the Alabama Supreme Court cannot abolish the cap created by the legislature as to punitive damages.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' own actions or inactions caused or contributed to their damages.

### SEVENTEENTH AFFIRMATIVE DEFENSE

This Defendant breached no duty owed to the Plaintiff.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the merger doctrine and the parole evidence rule.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### TWENTY FIRST AFFIRMATIVE DEFENSE

The insurance transactions at issue in this case were arms-length transactions.

### TWENTY SECOND AFFIRMATIVE DEFENSE

Defendant Troy Rhoades has not breached the contract at issue in this case.

- 14 -

## TWENTY THIRD AFFIRMATIVE DEFENSE

An insurance adjuster, not being a party to the insurance contract cannot be held liable for bad faith. Thus, any claims against Troy Rhoades are due to be dismissed.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Defendant Troy Rhoades owed no duty to the Plaintiffs.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

The Complaint and Amended Complaint contain a misjoinder of parties and is due to be dismissed.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Defendant Troy Rhoades pleads the general issue and states he is not guilty of the matters charged.

## TWENTY SEVENTH AFFIRMATIVE DEFENSE

Defendant, Troy Rhoades pleads any other matter constituting an avoidance or affirmative defense not specifically set forth herein and hereby reserves the right to amend this Answer to include any such avoidance or affirmative defense.

Respectfully submitted this the 18th day of December, 2006.

> _s/Karen D. Farley_
> JAMES S. LLOYD(LLO004)
> KAREN D. FARLEY(FAR035)
> Attorneys for Defendants, GAB Robins
> North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:     205-967-8822
Facsimile:     205-967-2380
Email:          jlloyd@lgwpc.com
                kfarley@lgwpc.com

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 18th day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:     334-566-0116
Facsimile:      334-566-4073
Email:          mbaker@troycable.net
                ncervera@troycable.net


I hereby certify that a copy of the above and foregoing has been served on the following parties by placing a copy of the same in the United States Mail, properly addressed and postage prepaid on this the 18th day of December, 2006:

HILB, ROGAL & HOBBS WHOLESALE
INSURANCE SERVICES, INC.
Corporation Service Co.
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

KIRKLIN & COMPANY, LLC
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

RSUI GROUP, INC.
C/O Corporation Trust Co.
1209 Orange Street
Wilmington, Delaware 19801


                              s/Karen D. Farley
                              Of Counsel


- 16 -



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KAREN FARLEY
     kfarley@lgwpc com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:      12/18/2006 11:56:12 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
     CORPORATION SERVICE CO
     2711 CENTERVILLE RD/400
     WILMINGTON, DE 19808

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:      12/18/2006 11:56:12 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KIRKLIN & COMPANY, LLC      (PRO SE)
     2711 CENTERVILLE RD
     STE. 400
     WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:       12/18/2006 11:56:12 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  RSUI GROUP, INC          (PRO SE)
     % CORPORATION TRUST CO
     1209 ORANGE ST
     WILMINGTON, DE 19801

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:        12/18/2006 11:56:12 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BAKER MATTHEW MICHAEL
    mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:     12/18/2006 11:56:12 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  CERVERA N J
     ncervera@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:      12/18/2006 11:56:12 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  FARLEY KAREN DIANNE
     kfarley@lgwpc com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:      12/18/2006 11:56:12 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following answer was FILED on 12/18/2006 11:56:12 AM

Notice Date:       12/18/2006 11:56:12 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



ELECTRONICALLY FILED
12/19/2006 12:16 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, d/b/a HISTORICAL RENTALS, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: CV-06-246 ) |
| GAB ROBINS NORTH AMERICA, INC., TROY RHOADES, HILB, ROGAL & HOBBS WHOLESALE INSURANCE SERVICES, INC., KIRKLIN & CO., LLC, A/K/A HRH/KIRKLIN & CO., LLC and RSUI GROUP, INC. | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

### NOTICE OF SERVICE OF DISCOVERY

TO:    Clerk of Court, Pike County Circuit Court

Please take notice that Defendants, GAB Robins North America, Inc. and Troy Rhoades have served upon counsel of record, the following:

Notice of Taking Deposition of Donnie Hughes
Notice of Taking Deposition of Metra Hughes

Dated: December 19, 2006

s/Karen D. Farley
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendants, GAB Robins
North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:    jlloyd@lgwpc.com
          kfarley@lgwpc.com

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties by electronic transmission using the AlaFile electronic court filing system and/or by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the _____ day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081

HILB, ROGAL & HOBBS WHOLESALE
INSURANCE SERVICES, INC.
Corporation Service Co.
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

KIRKLIN & COMPANY, LLC
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

RSUI GROUP, INC.
C/O Corporation Trust Co.
1209 Orange Street
Wilmington, Delaware 19801

s/Karen D. Farley
Of Counsel



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KAREN FARLEY
     kfarley@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:    12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
CORPORATION SERVICE CO
2711 CENTERVILLE RD/400
WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:     12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:   KIRKLIN & COMPANY, LLC      (PRO SE)
      2711 CENTERVILLE RD
      STE. 400
      WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:      12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: RSUI GROUP, INC        (PRO SE)
% CORPORATION TRUST CO
1209 ORANGE ST
WILMINGTON, DE 19801

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:        12/19/2006 12:16:20 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BAKER MATTHEW MICHAEL
    mbaker@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
#### 55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:     12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  CERVERA N J
     ncervera@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:     12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  FARLEY KAREN DIANNE
     kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:     12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: LLOYD JAMES S
jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 12/19/2006 12:16:20 PM

Notice Date:    12/19/2006 12:16:20 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



ELECTRONICALLY FILED
1/4/2007 2:58 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE AND METRA HUGHES, d/b/a     *
HISTORICAL RENTALS, INC ,           *
                                  *
      Plaintiffs,                 *
                                  *      NO. CV-2006-246-RWB
vs                                *
                                  *
GAB ROBINS NORTH AMERICA, INC.,     *
et al ,                           *
                                  *
      Defendants.              *

## ANSWER OF RSUI INDEMNITY COMPANY TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Defendant RSUI Indemnity Company (hereinafter "RSUI"), and in response to Plaintiff's First Amended Complaint and each cause of action contained therein states as follows:

### FIRST DEFENSE

Responding to the First Amended Complaint paragraph by paragraph, and reserving all defenses, Defendant states as follows:

### STATEMENT OF THE PARTIES

1      Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 1 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same

2      Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 2 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

3       Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 3 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

4       Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 4 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

5       Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 5 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

6       Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 6 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

7       RSUI admits that it is a Delaware corporation and doing business in Alabama. Defendant denies the remaining allegations contained in paragraph 7 of Plaintiff's First Amended Complaint

## COUNT 1

8       Defendant reasserts and incorporates its responses to paragraphs 1 - 7 as set forth above

9       Defendant admits that an insurance policy effective April 1, 2004, existed which provided insurance to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others. Defendant denies the remaining allegations contained in paragraph 9 of Plaintiff's First Amended Complaint.

2

10     Defendant admits that an insurance policy exists which sets forth the terms and obligations of Defendant to pay for damage done to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others   Defendant denies the remaining allegations contained paragraph 10 of Plaintiff's First Amended Complaint

11     Defendants admits that GAB was the adjusting company for Plaintiff's claims under said policy.  Defendant denies the remaining allegations contained paragraph 11 of Plaintiff's First Amended Complaint

12     Defendant admits that a named storm made landfall on September 16, 2004 Defendant is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 12 of Plaintiff's First Amended Complaint; therefore, Defendant denies same.

13     Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 13 of Plaintiff's First Amended Complaint; therefore, Defendant denies same

14     Denied

15     Denied

Defendant denies the allegations contained in the last unnumbered paragraph contained in Count One of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner.

## COUNT 2

16 - 19  The allegations contained in paragraphs 16 - 19, including the last unnumbered paragraph of Count Two, are not directed to this Defendant; thus, no response is required  To the

3

extent a response is required, Defendant denies same, and denies that Plaintiff is entitled to recover from it in any manner

COUNT 3

20. Defendant reasserts and incorporates its responses to paragraphs 1 - 19 as set forth above

21. Defendant admits that Plaintiffs made a claim with agents of RSUI. Defendant denies the remaining allegations contained in paragraph 21 of Plaintiff's First Amended Complaint

22. Denied

Defendant denies the allegations contained in the last unnumbered paragraph contained in Count Three of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner

COUNT 4

23. Defendant reasserts and incorporates its responses to paragraphs 1 - 22 as set forth above

24. Defendant admits that Plaintiff reported damage to their property to an agent of Defendant RSUI. Defendant denies the remaining allegations contained in paragraph 24 of Plaintiff's First Amended Complaint

25. The allegations contained in paragraph 25 of Plaintiff's First Amended Complaint are not directed to this Defendant; thus, no response is required. To the extent a response is required, Defendant admits that Defendant GAB acted as an adjuster. Defendant denies the remaining allegations contained in paragraph 25 of Plaintiff's First Amended Complaint.

4

26    The allegations contained in paragraph 26 of Plaintiff's First Amended Complaint are not directed to this Defendant; thus, no response is required   To the extent a response is required, Defendant denies same

27.    Denied.

<h2 style="text-align:center"><strong>COUNT 5</strong></h2>

28.    Defendant reasserts and incorporates its responses to paragraphs 1 - 27 as set forth above

29    Defendant admits that Plaintiff's reported damage to their property to Defendant GAB   Defendant denies the remaining allegations contained in paragraph 29 of Plaintiff's First Amended Complaint.

30.    Defendant admits that an insurance policy exists which sets forth the terms and obligations of Defendant to pay for damage done to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others   Defendant denies the remaining allegations contained paragraph 30 of Plaintiff's First Amended Complaint.

31.    Defendant admits Plaintiff's claims arising out of a date of loss of September 23, 2004, did not meet Plaintiff's deductible under the policy; therefore, no payment has been made.

32    Denied.

Defendant denies the allegations contained in the last unnumbered paragraph of Count Five of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner

<h3 style="text-align:center"><strong>FIRST DEFENSE</strong></h3>

RSUI committed no act that proximately caused or contributed to any damages sustained by Plaintiff

5

## SECOND DEFENSE

The injuries and damages complained of herein resulted from the acts or omissions of persons or entities other than RSUI  Alternatively, said acts or omissions or persons or entities other than RSUI constitute an independent, superseding cause to the injuries and damages complained of herein; hence, Plaintiff ought not to recover.

## THIRD DEFENSE

RSUI has not breached any duty owed to Plaintiff by virtue of any applicable Alabama statute

## FOURTH DEFENSE

RSUI has not breached any duty owed to Plaintiff by virtue of any applicable state or federal rules, regulations, or standards

## FIFTH DEFENSE

Each and every claim stated in Plaintiff's First Amended Complaint is barred in whole or in part by the applicable statute of limitations and/or the doctrine of latches.

## SIXTH DEFENSE

RSUI is entitled to a set-off and credit for any and all sums paid to or on behalf of Plaintiff by any other party or collateral source as a result of or related to this lawsuit.

## SEVENTH DEFENSE

RSUI pleads accord and satisfaction.

## EIGHTH DEFENSE

RSUI pleads all applicable portions of policy of insurance issued by RSUI to Fraternal Property Management Association, policy number NHD332474 for the policy period April 1,

6

2004, through April 1, 2005  Said policy is attached hereto as Defendant RSUI's Exhibit "A" to

its Answer herein

### NINTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

B.    Appraisal

If we and you disagree on the value of the property, the amount of Net Income and
operating expense, or the amount of physical loss, either may make written demand for
an appraisal of the loss  In this event, each party will select a competent and impartial
appraiser  The two appraisers will select an umpire.  If they cannot agree, either may
request that selection be made by a judge of a court having jurisdiction  The appraisers
will state separately the value of the property, the amount of Net Income and operating
expense, and the amount of physical loss  If they fail to agree, they will submit their
differences to the umpire  A decision agreed to by any two will be binding.  Each party
will:

1    pay its chosen appraiser; and
2    bear the other expenses of the appraisal and umpire equally

### TENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

C.    Duties in the Event of Loss or Damage

1    You must see that the following are done in the event of loss or damage to
Covered Property:

a    Notify the police if a law may have been broken.

b    Give us prompt notice of the loss or damage  Include a description of the
property involved

7

c     As soon as possible, give us a description of how, when, and where the loss or damage occurred

d     Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered Property from such loss, for consideration in a settlement of the claim  However, we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a Covered Cause of Loss.  This will not increase the Limit of Insurance Also, if feasible, set damage to property aside and in the best possible order, for examination.

e.     At our request, give us complete inventories of the damaged and undamaged property  Include quantities, costs, values and amount of loss claim.

f     As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.  Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records

g.     Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request  We will supply you with the necessary forms

h     Cooperate with us in the investigation or settlement of the claim

**ELEVENTH DEFENSE**

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97) which states that:

Loss Conditions:

F.     Other Insurance:

1     You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Covered Part.  If you do, we will pay our share of the covered loss or damage.   Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis

8

2     If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not  But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

## TWELFTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

J    Vacancy

2.    Vacancy provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

a    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1)    vandalism;
(2)    sprinkler leakage, unless you have protected the system against freezing;
(3)    building glass breakage;
(4)    water damage;
(5)    theft; or
(6)    attempted theft.

## THIRTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

K    Valuation:

2    If replacement cost is indicated in the Declarations as the method valuation we will determine the value of Covered Property in the event of loss or damage as follows:

9

a.  At replacement cost (without deduction for deprecation) as of the time of loss or damage except as provided in b through j below:

j   The cost of repair or replacement does not include any increase costs attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

## FOURTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C   Exclusions under amount:

  1  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss

   a   Ordinance or law

      The enforcement of any ordinance or law:

      (1)  regulating construction; use or repair of any property; or
      (2)  requiring the tearing down of any property including the costs of removing its' debris

   This exclusion, ordinance or law, applies whether the loss results from:

      (1)  an ordinance or law that is enforced even if the property has not been damaged; or
      (2)  the increased cost incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolishing of property or removal of its debris, following a direct physical loss or damage to that property.

## FIFTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C   Exclusions:

2    We will not pay for loss or damage caused by or resulting from any of the following:

d.    (1)    Wear and tear;
        (2)    rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality and property that causes it to damage or destroy itself;

## SIXTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C.    Exclusions:

3    We will not pay for the loss or damage caused by or the resulting from any of the following 3a through 3c. But if an excluded Cause of Loss that is listed in 3a. through 3c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

c    Faulty, inadequate or defective:

(2)    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

of part or all of any property own on off the described premises.

## SEVENTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

H.    Deductible:

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance The Deductible clause does not apply to Business Income

## EIGHTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form AES 119B (10/96), which states that:

Deductible Amounts:

$10,000 Tenant vandalism.

## NINETEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads

this specific portion of the policy contained in Form AES 119B (10/96), which states that:

Valuation:

Building: Replacement Cost – Agreed Amount; Contents:   Replacement Cost, 90%
Coinsurance

## TWENTIETH DEFENSE

Insurance companies are the only defendant subjected to punitive damages under

Alabama Law for breach of the implied duty of good faith which exists in every contract – thus

creating a distinction that is under-inclusive and not rationally tailored to accomplish a legitimate

state interest; wherefore, the imposition of punitive damages would violate the equal protection

clause of the Fifth and Fourteenth Amendments of the United States Constitution and deprive

RSUI of the right to equal protection under the law as provided in Article I, Section 1, 6 and 22

of the Alabama Constitution of 1901.

## TWENTY-FIRST DEFENSE

The imposition of punitive damages against an insurance company for asserting non-

frivolous legal defenses to an insurance claim violates the, "right of access to the Courts," and

the, "right to seek assistance of counsel," as guaranteed by the First and Fourteenth Amendments

to the United States Constitution and Article I, Sections 1, 6, and 22 of the Alabama Constitution of 1901

## TWENTY-SECOND DEFENSE

Plaintiffs have asserted tort claims that allow for the imposition of punitive damages in certain cases  The imposition of punitive damages in this case would violate the due process clause of Amendments V and XIV to the United States Constitution and Article I, Section 6 of the Alabama Constitution of 1901 because the imposition of punitive damages would violate this defendant's right to substitutive due process.

## TWENTY-THIRD DEFENSE

The imposition of punitive damages under Alabama law would violate the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution, and Articles 1, 6 and 22 of the Alabama Constitution, in each of the following ways:

(a)  Alabama law permits the imposition of unlimited punitive damages that are vastly disproportionate to any actual or compensatory injury, thereby violating the 14th Amendment of the U S  Constitution

(b)  Disproportionate punitive damages constitute an arbitrary and capricious taking of property that is unjustified by any rational governmental interest, thereby violating the 5th and 14th Amendments of the U.S  Constitution

(c)  The award of any punitive damages without specific standards to guide the jury's discretion in determining the <u>amount</u> of damages is contrary to due process under the 14th Amendment of the U.S. Constitution.

(d)  Alabama does not provide a reasonable limit on the amount of any punitive damages award, thus violating the 14th Amendment of the U S Constitution

(e)  The substantive standards of liability under which punitive damages are sought in this case are ambiguous, subjective, and not reasonably ascertainable, and are thus "void for vagueness" under the 14th Amendment of the U.S  Constitution

13

(f)    Alabama fails to provide a clear, objective and consistent appellate standard for post-verdict review of punitive damages thus violating the 5th and 14th Amendments of the United States Constitution.

(g)    Alabama law permits civil punishment upon a standard of proof less than that required for the imposition of criminal sanctions

(h)    Alabama law permits joint and several punishment of defendants who are guilty of different acts and degrees of culpability

(i)    Alabama law permits multiple awards of punitive damages for the same alleged act or omission

## TWENTY-FOURTH DEFENSE

Alabama's punitive damages law violates the Fifth Amendment guarantee against self-incrimination under the U.S. Constitution because said claim is penal in nature, while defendant is required to disclose documents and/or other evidence against its interest under the rules of discovery and evidence.

## TWENTY-FIFTH DEFENSE

The award of any damages under the allegations of this complaint would violate the prohibition against laws that impair the obligations of contracts in violation of the Contract Clause, Article I Sec 10 cl 1, of the United States Constitution and Article I, Section 22, of the Constitution of Alabama, in that the claims are in derogation express terms contained in the insurance policy made basis of this action and contractually agreed upon by defendant and the named insured

## TWENTY-SIXTH DEFENSE

Pursuant to ALA. CODE § 6-11-21, there is a cap on the amount of punitive damages recoverable in this action.

14

## TWENTY-SEVENTH DEFENSE

Pursuant to ALA CODE § 6-11-21, RSUI is not liable for any portion of any award of punitive damages wherein there have been no express findings that RSUI engaged in conduct as defined in ALA CODE § 6-11-20  RSUI is not jointly and severally liable to Plaintiffs for any award of punitive damages based upon the conduct of any other defendant

## TWENTY-EIGHTH DEFENSE

The imposition of punitive damages against RSUI in an amount exceeding any actual and potential harm by an excessive and/or unconstitutional ratio violates RSUI's due process rights as guaranteed by the United States Constitution.

## TWENTY-NINTH DEFENSE

The imposition of punitive damages under Alabama's current system fails to provide fair notice to RSUI that the alleged wrongful conduct could subject RSUI to punishment and also fails to provide fair notice of the severity of the punishment that the State could impose through an award of punitive damages. This lack of fair notice violates RSUI's due process rights, both procedural and substantive, as guaranteed by the United States Constitution.

## THIRTIETH DEFENSE

The imposition of punitive damages against RSUI in this case, if any, violates RSUI's due process rights as guaranteed by the United States Constitution because the award of punitive damages is excessive in light of the following criteria: (1) the degree of reprehensibility of the RSUI's alleged wrongful conduct; (2) the disparity between the harm or potential harm and the punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in other cases.

15

### THIRTY-FIRST DEFENSE

The procedure for determining punitive damages specified under Alabama law violates RSUI's right to due process, and otherwise violates the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, because the procedure for determining punitive damages under Alabama law does not provide meaningful guidance to a jury in the determination of an appropriate punitive damages award and does not constrain a jury or otherwise reduce the risk of an arbitrary or grossly excessive punitive damages verdict

### THIRTY-SECOND DEFENSE

Any award of punitive damages in this case would violate the Eighth Amendment to the U S Constitution as an excessive fine. Also, any award of punitive damages in this case would violate Article I, § 15 of the Alabama Constitution as an excessive fine.

### THIRTY-THIRD DEFENSE

The imposition of punitive damages violates the Fourth, Fifth and Fourteenth Amendments to the U S. Constitution, as well as Article I, §§ 6 and 15 of the Constitution of Alabama by failing to provide clear, distinct, and adequate guidelines as to each of the following: (a) the general standards applicable to such an award; (b) the appropriate and specific standards and/or burdens of proof for such an award; (c) the amount of a punitive award; (d) the appropriate procedures for a punitive award; (e) the appellate standard of review of an award of punitive damages; (f) trifurcation of the proceedings with respect to whether compensatory liability and damages should be imposed, whether punitive damages should be imposed, and what amount of punitive damages should be imposed in order to prevent the inappropriate admission of evidence regarding punitive damages.

16

### THIRTY-FOURTH DEFENSE

RSUI contends that the limits on punitive damages imposed by ALA. CODE § 6-11-21 should apply as a matter of rule and established public policy without alteration or amendment by the Court and that § 6-11-21 is constitutional   RSUI further contends that the principle of deference to the legislature's will should prevail with respect to the limits imposed on punitive damages awards and that any holding that does not so defer violates the separation of powers clauses of the Constitution of the United States and the Constitution of the State of Alabama

### THIRTY-FIFTH DEFENSE

Plaintiffs have failed to state a claim for which relief can be granted.

### THIRTY-SIXTH DEFENSE

All allegations contained in Plaintiffs' First Amended Complaint that are not specifically admitted are denied.

### THIRTY-SEVENTH DEFENSE

Plaintiff is not entitled to recovery to the extent that any damages were caused by Plaintiff's failure to mitigate damages.

### THIRTY-EIGHTH DEFENSE

RSUI reserves the right to amend its answer and assert such additional defenses as may be available upon the development of facts in the discovery process or otherwise in the course of this litigation and under applicable substantive law.

HELEN JOHNSON ALFORD (ALF002)
JUAN C. ORTEGA (ORT001)
Attorneys for Defendant, RSUI Group

17

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

N J Cervera, Esq
Matthew Baker, Esq
CERVERA, RALPH & REEVES, LLC
914 South Brundidge Street
Troy, AL 36081

James S. Lloyd, Esq
Karen D Farley, Esq
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, AL 35223

Done this 4TH day of JANUARY , 2007

COUNSEL

18

COMMON POLICY DECLARATIC 3

*RSUI*

THIS POLICY IS ISSUED BY THE COMPANY INDICATED BY "X" BEFORE THE COMPANY NAME BELOW

☐ Landmark American Insurance Company
(An Oklahoma Stock Co )

☒ RSUI Indemnity Company
(A New Hampshire Stock Co.)

BRANCH ADDRESS:  945 E. Paces Ferry Rd., #1800, Atlanta, GA 30326

POLICY NO.  NHD332474                    RENEWAL OF:  R2HD327878

NAMED INSURED AND MAILING ADDRESS:            PRODUCER:

Fraternal Property Management Association
(Name Incomplete - See FPMA Named Insured End )
425 N. Martingale Road
Suite 1100
Schaumburg, IL  60173

POLICY PERIOD: From    04/01/2004   To    04/01/2005    12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PARTS | PREMIUM | | COMM |
|---|---|---|---|
| ☒ Commercial Property        RSG40001 (1203) | Excluding TRIA | $        6,253,162. | |
| ☐ Commercial General Liability | | $ | DO NOT WRITE IN TED AREA |
| ☐ Crime and Fidelity | | $ | |
| ☐ Commercial Inland Marine | | $ | |
| ☐ Boiler and Machinery | | $ | |
| ☐ Commercial Automobile | | $ | |
| ☐ Farm | | $ | |
| ☐ | | $ | |
| ☐ | | $ | |
| ☐ Premium is payable in installments: See endorsement. | TOTAL POLICY PREMIUM | $        6,355,744. | |
| | Premium Excluding TRIA | $        6,253,162 | |
| | TRIA Premium | $          102,582. | |

FORMS APPLICABLE TO ALL COVERAGE PARTS: (Show numbers)
See attached Forms and Endorsements Schedule

BUSINESS DESCRIPTION: Fraternities
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS,
COVERAGE FORMS(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT
OF INSURANCE.

Countersigned _____9/9/04_____    By: _____
                    Date              Ir          Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright ISO Properties  Inc. 2001

RSG 40003 0704

A member of Alleghany Insurance Holdings LLC

EXHIBIT
A

R  I INDEMNITY COMPANY

_This Endorsement Changes The Policy.  Please Read It Carefully_

| | |
|---|---|
| Additional Premium Excluding TRIA: | $10,304. |
| Additional TRIA Premium: | $    169 |
| Total Additional Premium Due This Endorsement: | $10,473. |

It is hereby agreed that the premium shown above is due for the 4th Quarter.

All other terms, conditions and warranties remaining unchanged

This endorsement effective  01/01/2005
forms part of Policy Number  NHD332474
issued    to      Fraternal    Property    Management    Association

Authorized Representative

*James A. Dixon*

Endorsement No : 4
Date Processed  : 04/21/2005

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully*

| | |
|---|---|
| Additional Premium Excluding TRIA: | $75,895. |
| Additional TRIA Premium: | $ 1,245 |
| Total Additional Premium Due This Endorsement: | $77,140. |

It is hereby agreed that the premium shown above is due for the 3rd Quarter

All other terms, conditions and warranties remaining unchanged

This endorsement effective  11/01/2004
forms part of Policy Number  NHD332474
Issued  to    Fraternal  Property  Management
Association
Authorized Representative

*James A. Dipro*

Endorsement No : 3
Date Processed  : 02/15/2005

R⌐ JI INDEMNITY COMPANY

## *This Endorsement Changes The Policy.  Please Read It Carefully*

| | |
|---|---|
| Additional Premium Excluding TRIA: | $78,309. |
| Additional TRIA Premium: | $ 1,285. |
| Total Additional Premium Due This Endorsement: | $79,594 |

It is hereby agreed that the premium shown above is due for the 2nd Quarter.

All other terms, conditions and warranties remaining unchanged.

This endorsement effective 08/01/2004
forms part of Policy Number NHD332474
Issued to    Fraternal   Property   Management
Association
Authorized Representative

*James A. Dixon*

Endorsement No.: 2
Date Processed  : 10/18/2004

RSUI INDEMNITY COMPANY

## *This Endorsement Changes The Policy.  Please Read It Carefully*

| | |
|---|---|
| Return Premium Excluding TRIA: | $28,809. |
| Return TRIA Premium: | $   473. |
| Total Return Premium Due This Endorsement: | $29,282. |

It is hereby agreed the above premium is returned for the 1st Quarter

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  04/01/2004
forms part of Policy Number  NHD332474
issued to      Fraternal  Property  Management
Association

Endorsement No : 1
Date Processed   : 09/14/2004

Authorized Representative

*James A. Dixon*



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

**IL 70 01 (Ed. 05 92)**

Policy No. NHD332474
Renewal of R2HD327878

## BUSINESSPRO POLICY COMMON DECLARATIONS

| NAMED INSURED AND ADDRESS: | POLICY PERIOD: |
|---|---|
| Fraternal Property Management Association<br>c/o 425 N. Martingale Road<br>Ste. 1100<br>Schaumburg, IL 60173 | 12:01 A.M. Standard Time at the address of the Named Insured shown at left.<br>From:  4/1/04 To: 4/1/05 |

| IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. | AGENT'S NAME AND ADDRESS:<br><br>Swett and Crawford of Illinois, Inc.<br>1 North Franklin<br>Chicago, IL 60606 |
|---|---|

Insurance is afforded by the company indicated below:
(Each a capital stock corporation)

( X )  RSUI Indemnity Company.

| | Premium |
|---|---|
| This policy consists of the following Coverage parts for which a premium is indicated. This premium may be subject to adjustment. | |
| Commercial Property | $on file w/Company |
| Commercial General Liability | NOT INCLUDED |
| Commercial Crime | NOT INCLUDED |
| Commercial Inland Marine | NOT INCLUDED |
| Commercial Boiler and Machinery | NOT INCLUDED |
| Commercial Auto | NOT INCLUDED |
| Commercial Umbrella | NOT INCLUDED |
| TOTAL | $  annually subject to annual rerating |

Premium shown is payable:  At inception;

FORMS AND ENDORSEMENTS applicable to all Coverage Parts and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule SB 88 01 (11/85).

Countersigned _____     By _____
Date                                                 Authorized Representative

BUSINESSPRO (Reg. U.S. Pat. Off.)
IL 70 01 (Ed. 05/92) PRO                         (Page 1 of 1)



RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1890
Atlanta, GA  30326

**NAMED INSURED WORDING**
**RSUI INDEMNITY COMPANY**
**POLICY # NHD332474**

**FIRST NAMED INSURED:**

FRATERNAL PROPERTY MANAGEMENT ASSOCIATION
C/o 425 N. MARTINGALE ROAD
SUITE 1100
SCHAUMBURG, IL 60173

**BROAD NAMED INSURED:**

ALL FRATERNAL PROPERTY MANAGEMENT ASSOCIATION PARTICIPATING ENTITIES PER THE
RECORDS ON FILE WITH HOBBS GROUP/KIRKLIN & COMPANY, LLC.

FPMA NAMED INSURED ENDORSEMENT

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

POLICY NUMBER: NHD332474

COMMERCIAL PROPERTY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS ADJUSTMENT ENDORSEMENT – COMMERCIAL PROPERTY COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)
BUSINESS INCOME COVERAGE FORM (WITHOUT EXTRA EXPENSE)
EXTRA EXPENSE COVERAGE FORM
TOBACCO SALES WAREHOUSES COVERAGE FORM
STANDARD PROPERTY POLICY

A. This endorsement is intended to facilitate payment of insurance proceeds in the event of loss or damage to Covered Property from a loss that is covered by:

1. This Commercial Property coverage; and

2. Boiler and Machinery insurance; and

there is a disagreement between the insuring companies as to the amount of the loss to be paid by each company.

B. The provisions of item C. of this endorsement apply only if all of the following requirements are met:

1. The Boiler and Machinery insurance carried by the named insured, insuring the Covered Property, contains a provision with substantially the same requirements, procedures and conditions as contained in this endorsement.

2. The damage to the Covered Property was caused by a loss for which both we and the Boiler and Machinery insuring company(s) admit to some liability for payment under the respective policies.

3. The total amount of the loss is agreed to by you, us and the Boiler and Machinery insuring company(s).

4. We and the Boiler and Machinery insuring company(s) disagree as to the amount of loss that each of us should pay that is attributable to:

a. A cause of loss covered under this Commercial Property coverage; and

b. An "accident" covered under the Boiler and Machinery Insurance.

C. If the requirements listed in B. above are satisfied, we and the Boiler and Machinery insuring company(s) will make payments to the extent, and in the manner, described in the following:

1. We will pay, after your written request, the entire amount of loss that we have agreed as being covered by this Commercial Property coverage and one-half (1/2) the amount of loss that is in disagreement.

2. The Boiler and Machinery insuring company(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered by the Boiler and Machinery insurance and one-half (1/2) the amount of loss that is in disagreement.

3. The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Adjustment Endorsement(s) of the Boiler and Machinery insuring company(s).

4. The amount to be paid under this endorsement shall not exceed the amount we would have paid had no Boiler and Machinery insurance been in effect at the time of loss.

5. Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

6. ADDITIONAL CONDITIONS

a. We and the Boiler and Machinery insuring company(s) agree to submit our differences to arbitration within 90 days after loss payment made under the terms of this endorsement.

b. You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the Boiler and Machinery insuring company(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

Copyright, ISO Commercial Risk Services, Inc., 1990

COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

(RSUI)

1. POLICY NO.  NHD332474                                          EFFECTIVE DATE  04/01/04

2. NAMED INSURED    Fraternity Property Management Association            RENEWAL OF  R2HD327878

3. DESCRIPTION OF PREMISES                           ☐ "X" if supplemental declarations attached

| Prem. No. | Bldg. No. | Location, Construction and Occupancy |
|---|---|---|
| ** | ** | **Per Schedule on file with Company |

COVERAGES PROVIDED - Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| ** | ** | Building, Contents and Rents | $ 5,000,000. per occurrence and annual aggregates as respects Flood & Earthquake | Special | 90% | Included |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

OPTIONAL COVERAGES - Applicable only when entries are made in the schedule below.

| Prem. No. | Bldg. No. | Agreed Value Expiration Date | Coverage | Amount | Replacement Cost (X) Building | Personal Property | Including "Stock" |
|---|---|---|---|---|---|---|---|
| ** | ** | | | | X | X | |

| Prem. No. | Bldg. No. | Inflation Guard (Percentage) Building | Personal Property | * Monthly Limit of Indemnity (Fraction) | * Maximum Period of Indemnity (X) | * Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

* APPLIES TO BUSINESS INCOME ONLY

4. MORTGAGE HOLDERS

| Prem No. | Bldg No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| | | |

5. DEDUCTIBLE
See attached Manuscript Form

TOTAL PREMIUM FOR THIS → $ Included
COVERAGE PART

6. FORMS / ENDORSEMENTS APPLICABLE

See attached
Manuscript Form

THESE DECLARATIONS, WHEN COMBINED WITH THE COMMON POLICY DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Includes copyrighted material of ISO Commercial Risk Services  Inc., with its permission
Copyright, ISO Commercial Risk Services  Inc. 1984

RSG 40001 1203

FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

RSUI Dec Sheet
EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS
RSG94060 (03/04)
RSG96006 (09/03)
RSG96014 (05/04)
IL7001 (05/92)
FPMA Named Insured Endorsement
IL0017 (11/98)
CP1260 (10/91)
RSG40001 1203
SELECT BUSINESS POLICY PLUS COVERAGES FOR FRATERNITIES (10/96)
SB8605 (11/97)
SB8602 (04/99)
SB8605 (11/97)
CM7658 (12/98)
CM0020 (06/95)
CM7669 (01/89)
CP0040 (06/95)
SB8696 (11/97)
HURRICANE DEDUCTIBLE FORM
CM0001 (0900)
CM7668 (07/90)
CM7661 (11/99)
CM0066 (06/95)
CM00067 (09/00)
IL0903 (04/98)
ILLINOIS CHANGES – MINE SUBSIDENCE
IL0903 (04/98)
INDIANA CHANGES – MINE SUBSIDENCE
IL0903 (04/98)
KENTUCKY CHANGES – MINE SUBSIDENCE
IL0903 (04/98)
WEST VIRGINIA CHANGES – MINE SUBSIDENCE
RSG96013 (10/03)

SB8801 (11/85)                              PAGE 1 OF 1

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

A.  The following Exclusion is added:

EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria

We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But if "fungus", wet or dry rot or bacteria results in a "covered cause of loss", we will pay for the loss or damage caused by that "covered cause of loss"

This exclusion does not apply:

1.  When "fungus", wet or dry rot or bacteria results from fire or lightning; or

2.  To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

B.  The following Additional Coverage is added:

ADDITIONAL COVERAGE - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria

1.  This limited coverage applies only when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence, and only if any loss resulting from the following is reported to us within 60 days of the occurrence.

    a. · A "covered cause of loss" other than fire or lightning; or

    b.  Flood, if the Flood Coverage Endorsement applies to the affected premises.

2.  Under conditions described in item B.1. above, we will pay for loss or damage by "fungus", wet or dry rot or bacteria.  As used in this Limited Coverage, the term loss or damage means:

    a.  Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    b.  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    c.  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present

3.  The coverage provided under this Limited Coverage is limited to $15,000. per location subject to a policy annual aggregate limit of $250,000  Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences which take place in a 12-month period (starting with the beginning of the present annual policy period).  With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000. per location subject to a policy annual aggregate limit of $250,000. even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4.  The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property.  If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property

If there is covered loss or damage to Covered Property, not caused by fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss   Any such increase in the loss will be subject to the terms of this Limited Coverage.

C.  The following Definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SCHEDULED LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

It is understood and agreed that the following special terms and conditions apply to this policy:

1.  In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":

    a.  The actual adjusted amount of the loss, less applicable deductibles;

    b.  100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles. If no value is shown for a scheduled item then there is no coverage for that item; or

    c.  The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

2.  Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.

3.  The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing a proof of loss the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

RSG 94060 0304

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION – ELECTRONIC PROPERTY AND VIRUS

This endorsement modifies insurance provided under the following:

## ALL COVERAGE PARTS

A.  It is agreed the following definitions apply:

"Electronic Data" means information, facts or "Computer Programs" stored, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy discs, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

"Computer Programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data

"Virus" means a harmful code or similar instructions introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt normal operations

B.  The following exclusion applies:

**Damage to Electronic Data**

Damage to "Electronic Data", including any cost to replace or restore such "Electronic Data" that is caused by a "Virus" is not covered.

Damage to "Electronic Data" caused by the willful or malicious alteration, manipulation or destruction of such "Electronic Data" by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace your computer systems or any part of those systems, is not covered.

However, this exclusion does not apply to damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of ice, snow or water damage.

C.  The following is added to the Business Income (and Extra Expense) Coverage Form, if it applies:

**Additional Limitation- Interruption of Computer Operations**

Business Income loss incurred when a "suspension" of "operations" is caused by destruction or corruption of "Electronic Data" or any loss or damage to "Electronic Data", caused by a "Virus" is not covered.

Extra Expense loss incurred when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "Electronic Data" or any loss or damage to "Electronic Data", caused by a "Virus" is not covered.

However, this limitation will not apply to destruction, corruption, loss or damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of ice, snow or sleet, or water damage

RSG 96006 0903

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

However, if both A and B below apply, we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:

A.  The pathogenic or poisonous biological or chemical materials are normally kept at or brought onto your premises, with your consent, for use in your business operations at your premises; and

B.  The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any persons, organizations, or property of any nature.

RSG 96014 0504



RSUI Group, Inc.            SB 86 96 (Ed. 11 97)
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA  30326

## FRATERNITY SELECT BUSINESS POLICY PLUS

NAMED INSURED: Fraternal Property        POLICY PERIOD:    4/1/2004    to    4/1/2005
                Management Association

TOTAL PROPERTY PREMIUM:  $*as previously billed Annually subject to annual rating

DEDUCTIBLE AMOUNTS:
$100,000 Flood -- Zone A or V only                $25,000 Flood -- all other
$25,000 Earthquake (Other than CA see endorsement)    $10,000 --Vacant Locations
$10,000 Named Storm (see special endorsement)     $10,000 -- Freeze Claims
$10,000 Tenant Vandalism
$2,500 All Other
All above deductibles apply per location, for each occurrence

NOT AT A DESCRIBED PREMISES:
Insurance is provided only for those coverages for which a Limit of Insurance has been inserted:

|  | Newly Acquired or constructed Locations | At any other location | In transit, in or  on any one conveyance unit |
|---|---|---|---|
| Building | $250,000 | NOT COVERED | NOT COVERED |
| Business Personal Property | INCLUDED ABOVE | $10,000 | $10,000 |
| Business Income | INCLUDED ABOVE | NOT COVERD | NOT COVERED |
| Extra Expense | INCLUDED ABOVE | INCLUDED ABOVE | NOT COVERED |

DESCRIBED PREMISES:
At the locations specified below, insurance is provided for those coverages for which a Limit of Insurance has been inserted:

Location:                Building:            Address:
As per Statement of Values on file.

BUILDING, BUSINESS PERSONAL PROPERTY and BUSINESS INCOME INCLUDING EXTRA     .
EXPENSE:     .
VALUATION:  Building:Replacement Cost – Agreed Amount; Contents: Replacement Cost ,
90% Coinsurance  .
Minimum Valuation Requirement for Participation in Property Program: Valuation at 100% of
Marshall Swift on File with Hobbs group/Kirklin & Co., LLC.

AES 119B (10/96)            Page 1 of 3

MORTGAGEHOLDER: As per statement of values on file with Ho's Group/Kirklin & Co., LLC at 12231 Emmet Street, Suite 5, Omaha, NE 68164 and RSUI Indemnity Company, 945 East Paces Ferry Road, Suite 1890, Atlanta, GA 30326

CERTIFICATES OF INSURANCE/EVIDENCE OF PROPERTY INSURANCE: Any Certificate of Insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Certificate of Insurance/Evidence of Property Insurance, except where any Additional Insured (s) or Loss Payee(s) are named pursuant to the Special Provisions of said Certificate of Insurance/Evidence of Property Insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

The Company hereby authorizes Hobbs Group/Kirklin & Co., LLC to issue Certificates of Insurance/Evidence of Property Insurance including any mortgagee, Loss Payee and Additional Insured clauses.

SUPPLEMENTARY COVERAGES
The coverages below are policy sublimits. If you purchase additional limits for any of these coverages at a specific location, the Limits of Insurance shown at that location will reflect your total limits, including the Limits of Insurance shown below.

A. The Limits of Insurance shown below are provided for the Coverages listed and apply separately at each of you premises. If there is no separate deductible indicated, the Property Deductible will apply.

$5,000 Arson Reward
$25,000 Fire Department Services Charge
$25,000 Fire Protection Device Recharge
ORDINANCE OR LAW
    Full Building Limit as per Statement of Values on file for Coverage A – Coverage for Loss to
        the Undamaged Portion of the Building
    $250,000 for Coverage B – Demolition Cost Coverage & Coverage C – Increased Cost of
        Construction Coverage
$5,000 Outdoor Property with a $500 maximum per item
$10,000 Pollutant Clean Up and Removal

B. When Business Income Coverage is included in the Declarations, the following coverages are provided up to the Business Income Limit of Insurance. These are extensions of coverage, not additional Limits of Insurance:

Utility Services (including Overhead Power Transmission Lines)

OPTIONAL COVERAGE

A. Guaranteed Replacement Cost – Building Coverage Only

To qualify for Guaranteed Replacement Cost, your building must have an insured value of at least $90 per Square Foot against all usable square footage (both finished and unfinished spaces included) or have replacement cost appraisal by licensed appraiser on file with Hobbs group/Kirklin & Co., LLC justifying lower value. If replacement cost appraisal is on file, minimum valuation of 100% of Marshall Swift on file with Hobbs group/Kirklin & Co., LLC does not apply.

AES 119B (10/96)                Page 2 of 3

If location qualifies for Guaranteed Replacement Cost, insurance carrier will pay replacement cost of building, subject to Valuation provision in the policy, regardless of scheduled limit, however, all policy sublimits remain unchanged. In the absence of Guaranteed Replacement Cost valuation the maximum recovery is 100% of scheduled building values at the time of the loss.

FORMS AND ENDORSEMENTS applicable to this Coverage Part and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule, SB 88 01 (11/85).

AES 119B (10/96)          Page 3 of 3



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

<u>THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.</u>

**SELECT BUSINESS POLICY
SPECIAL COVERAGES FOR FRATERNITIES**

This endorsement modifies insurance provided under the following:

**SELECT BUSINESS POLICY
BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

I.  The following is added to SECTION A. COVERAGE
    Section A.1.c is amended to add:

    Personal Property of Fraternity house residents is excluded.

II. The following is added to SECTION A. COVERAGE
    Section A.1.b. (1) is amended to:

    Personal property owned by you and used in your business including, but not limited to, Fine Arts, Accounts Receivable, Valuable Papers, Commercial Articles and Electronic Data Processing Equipment;

III. The following is amended to SECTION C. EXCLUSIONS
    Section C.1. is amended to add:

    h. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

IV. The following is amended to SECTION D. LIMITATIONS
    Section D.4 is deleted and replaced with the following:

    4.  We will not pay more than $25,000 for loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        a.  the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        b.  the loss or damage is caused by or resulting from thawing of snow, sleet or ice on the building structure.

IV. The following is added to SECTION E. ADDITIONAL COVERAGES:

7.  **Arson Reward**

    We will pay, up to the limit listed in the Declarations for this Additional Coverage, a reward to any individual(s) who provided information leading to the arrest of the person(s) who committed an arson, which damaged your Covered Property.

Page 1 of 4

The policy deductible does not apply to this Additional Coverage. This Additional Coverage does not apply in those states that do not consider arson rewards a matter of insurance, and thereby disallow them as part of insurance policies.

V.    The following is amended of SECTION F. COVERAGE EXTENSIONS
Section F. Coverage Extensions, Paragraph 2 is deleted and replaced with;

    **2. Outdoor Property**

    You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants, piers, wharves, docks or retaining walls (not attached to buildings), including debris removal expense.

    The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

VI.    The following is added to SECTION J. DEFINITIONS

    3.    "Location" includes any single or multiple structures at the same address or different addresses as long as they are all owned by the same entity or individual.

This endorsement also modifies insurance provided under the following:

SELECT BUSINESS POLICY CONDITIONS

I.    The following is amended to **Section J. Vacancy**
Section J.1.b. is deleted and replaced with the following:
"It is understood and agreed that any insured building under renovation shall mean that the insured has contractually secured the services of a qualified contractor or contractors to perform work consisting of remodeling (including but not limited to carpentry, masonry, painting, plumbing, wiring, heating and cooling), improvements, redecorating, or other work performed on the building structure; such renovation shall not include additions to the structure such as room additions or additional stories. Said under renovation shall mean the time frame between the contract's specified job start and job completion dates during which the contractor(s) is (are) in process of performing the work specified by contract; during said time frame the building shall not be considered vacant."

II.    The following is added to **Section J. Vacancy**

    c.    Buildings which are idle over school breaks or holidays are not considered to be vacant. However, if a premise is vacated at the start of a school break and is not reoccupied at the end of the school break, the 60 consecutive day provision in Condition II below begins on the first day of the start of the break.

    d.    The Vacancy Provision does not apply to buildings that meet the definition of a vacant building in J.1.a. if that building has been charged the vacancy rate thus eliminating the vacancy provision.

    e.    A deductible of $10,000 applies per location, for each occurrence, to any covered cause of loss, to all vacant buildings.

III.    The following amends **Section J. Vacancy**

Section J 2. is deleted and replaced with the following;

If the building where loss or damage occurs has been vacant for more than 30 consecutive days before that loss or damage occurs:

a.  We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

    (1)  vandalism;

    (2)  sprinkler leakage, unless you have protected the system against freezing;

    (3)  building glass breakage;

    (4)  water damage

    (5)  theft; or

    (6)  attempted theft

b.  With respect to Covered Causes of Loss other than those listed in 2.(a)(1) through 2. (a)(6) above, we will reduce the amount we would otherwise pay for loss or damage by 15%.

If the building where loss or damage occurs has been vacant for more than 30 consecutive days before that loss or damage occurs or if the location has been properly reported as vacant resulting in the charging of the appropriate vacancy rate, **a deductible of $10,000** will apply to any loss or damage by any cause except the following;

a.      as provided in form CM7662 attached to this policy

b.      as provided in form CM7661 attached to this policy

c.      as provided by the Hurricane Deductible form attached to this policy

III.    Under **Section K. Valuation, 2.g** is deleted in its entirely.

IV.    The following is added to **Section K. Valuation**

4.  If Guaranteed Replacement Cost  option is chosen by an insured location as the method of valuation For building coverage we will determine the value of the Covered Property in the event of loss or damage as follows:

    a.      At Guaranteed Replacement Cost (without deduction for depreciation) as of the time of loss or damage except as provided in **b.** through **d.** below:

**Page 3 of 4**

b.  We will not pay a Guaranteed Replacement Cost ba    for any loss or damage:
  (1)  until the damage is actually repaired or replaced, and
  (2)  unless the repairs or replacement are made:
    (a)  as soon as reasonably possible after the loss or damage; or
    (b)  if claim was initially made on an actual cash basis, as soon as reasonably possible after you notify us, within 180 days after the loss or damage, or your intent to make a claim on a Guaranteed Replacement Cost basis.
c.  We will not pay more for loss or damage on a Guaranteed Replacement Cost basis than the Least of (1), or (2) subject to d. below:
  (1)  The cost to replace, on the same premises, the damaged building with a building of:
    (a)  comparable material and quality and size; and
    (b)  used for the same purpose; or
  (2)  The amount you actually spend that is necessary to repair or replace the damaged property.
d.  The cost of repair or replacement does not include any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

This endorsement also modifies insurance provided under the following:

SELECT BUSINESS POLICY
BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

I.  The following amends **Section D. ADDITIONAL COVERAGES**
Section D.2.b.(2). Is deleted and replaced with:

  (2) 90 consecutive days after the date determined in b (1).

This endorsement also modifies insurance provided under the following:

ACCOUNTS RECEIVABLE COVERAGE FORM

I.  The following amends Section A. COVERAGE

  Section A.2.a. is deleted entirely.

This endorsement also modifies insurance provided under the following:

VALUABLE PAPERS AND RECORDS COVERAGE FORM

I.  The following amends Section A. COVERAGE

  Section A.2.c. is deleted entirely.

This endorsement also modifies insurance provided under the following:

The following amends Select Business Policy Conditions (SB86-01 Edition 11-97) page 7 of 7 -- under Loss Conditions k.2.h. (2): amending "within 12 months" to "within 180 Days."

It is understood that **Backup of Sewers or Drains** is a Covered Cause of Loss and the $2,500 All other deductible applies.

Page 4 of 4



SB 86 01
(Ed. 11 97)

## SELECT BUSINESS POLICY CONDITIONS

This Coverage Part is subject to the following conditions

### GENERAL CONDITIONS

### A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud by you at any time relating to this insurance It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact at concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4 a claim under this Coverage Part.

### B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. there has been full compliance with all of the terms of this Coverage Part; and

2. the action is brought within 2 years after the date on which the direct physical loss or damage occurred

### D. Liberalization

If we adopt any revision that would broaden the coverage under this Coverage Part with-

out additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### E. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### F. Policy Period, Coverage Territory

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. during the policy period shown in the Declarations; and

   b. within the Coverage Territory

2. The Coverage Territory is:

   a the United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

### G. Mortgageholders

1. The term "mortgageholder" includes trustee.

2. We will pay for covered loss of or damage to building or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

3. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure

SB 86 05 (Ed. 11/97) XS

1

SB 86 01
(Ed. 11 97)

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

    a  pays any premium due under this Coverage Part if you have failed to do so;

    b. submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    c. has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

5. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    a. the mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    b. the mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired. At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6. If we cancel this policy, we will give written notice to the mortgageholder at least:

    a  10 days before the effective date of cancellation if we cancel for your nonpayment or premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

7  If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**LOSS CONDITIONS**

**A. Abandonment**

There can be no abandonment of any property to us

**B. Appraisal**

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of physical loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and the amount of physical loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1  pay its chosen appraiser; and

2  bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**C. Duties In The Event Of Loss Or Damage**

1. You must see that the following are done in the event of loss or damage to Covered Property:

    a  Notify the police if a law may have been broken.

    b  Give us prompt notice of the loss or damage. Include a description of the property involved.

    c  As soon as possible, give us a description of how, when, and where the loss or damage occurred

SB 86 05 (Ed. 11/97) XS                2

SB 86 01
(Ed. 11 97)

pay more than the actual amount of the loss or damage

**E. Loss Payment**

1  In the event of direct physical loss or damage covered by this Coverage Part, at our option and subject to any applicable Deductible provision, or Loss Condition, we will either:

    a. pay the value of lost or damaged property, as specified in K. Valuation below;

    b. pay the cost of repairing or replacing the lost or damaged property, subject to 2 below;

    c. take all or any part of the property at an agreed or appraised value; or

    d. repair, rebuild or replace the property with other property of like kind and quality subject to 2. below.

2  The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property

3. The amount of Business Income loss will be determined based on:

    a  the Net Income of the business before the direct physical loss or damage occurred;

    b. the likely Net Income of the business if no physical loss or damage had occurred but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

    c. the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

    d. other relevant sources of information, including:

        (1) your financial records and ac-

---

    d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered Property from such loss, for consideration in the settlement of the claim. However we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a covered Cause of Loss. This will not increase the Limit of Insurance. Also, if feasible, set damaged property aside and in the best possible order, for examination.

    e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    g  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    h. Cooperate with us in the investigation or settlement of the claim.

2. We may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**D. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not

SB 86 05 (Ed. 11/97) XS

3

SB 86 01
(Ed. 11 97)

counting procedures;

    (2) bills, invoices and other vouchers; and

    (3) deeds, liens, or contracts

4. The amount of Extra Expense will be determined based on:

  a. All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred We will deduct from the total of such expenses:

    (1) the salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and

    (2) any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

  b. Necessary expenses that reduce the Business Income loss that otherwise would have been incurred

5. We will give notice of our intentions within 30 days after we receive the sworn statement of loss

6. We will not pay you more than your insurable interest in the Covered Property

7. We may adjust losses with the owners of lost or damaged property if other than you If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their insurable interest in the Covered Property

8. We may elect to defend you against suits arising from claims of owners of property We will do this at our expense.

9. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with

all of the terms of this Coverage Part and;

  a  we have reached agreement with you on the amount of loss; or

  b  an appraisal award has been made.

**F. Other Insurance**

1  You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part  If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

**G. Recovered Property**

1  If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property  We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

2. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value  If so, you may, at your own expense:

  a. stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

  b. remove the the brands or labels, if doing so will not physically damage the merchandise  You must relabel the merchandise or its containers to comply with the law

SB 86 05 (Ed. 11/97) XS

4

SB 86 01
(Ed. 11 97)

**H. Resumption Of Operations**

1. We will reduce the amount of your:

   a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

   b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

2. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay losses based on the length of time it would have taken to resume "operations" as quickly as possible.

**I. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at the time of loss, that party is one of the following:

   a. someone insured by this insurance;

   b. a business firm:

      (1) owned or controlled by you; or

      (2) that owns or controls you; or

   c. your tenant.

This will not restrict your insurance

**J. Vacancy**

1. Description of Terms

   a. As used in the Vacancy Condition, the term building and the term vacant have the following meaning:

      (1) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means that unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations

      (2) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its square footage:

         (a) is not rented; or

         (b) is not used to conduct customary operations

   b. Buildings under construction or renovation are not considered vacant.

2. Vacancy Provisions

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

   a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      (1) vandalism;

      (2) sprinkler leakage, unless you have protected the system against freezing;

      (3) building glass breakage;

      (4) water damage;

      (5) theft; or

SB 86 01
(Ed. 11 97)

(6) attempted theft

b. With respect to Covered Causes of Loss other than those listed in 2 (a)(1) through 2.(a)(6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

K. Valuation

1 . If actual cash value is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damaged as follows:

a. At actual cash value as of the time of loss or damage except as provided in b through h. below.

b. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

c. Finished "stock" you have manufactured at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

(1) Actual cash value of the loss or damage property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs for replacement.

f Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(1) blank materials for reproducing the records; and

(2) labor to transcribe or copy the records when there is a duplicate

g. Exhibitions and displays at your cost.

h. Patterns, molds, models, and dies at replacement cost if actually replaced, otherwise at actual cash value.

2. If replacement cost is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

a. At replacement cost (without deduction for depreciation) as of the time of loss or damage except as provided in b. through j. below:

b "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

c. Finished "stock" you have manufactured, at the selling price less discounts and expenses you otherwise would have had.

d Glass at the cost of replacement with safety glazing material if required by law.

e Tenant's Improvements and Betterments at:

(1) Replacement cost of the loss or

SB 86 01
(Ed. 11 97)

damaged property if you make
repairs promptly

(2) A proportion of your original
cost if you do not make repairs
promptly  We will determine the
proportionate value as follows:

(a) multiply the original cost by
the number of days from the
loss or damage to the ex-
piration of the lease; and

(b) divide the amount deter-
mined in (a) above by the
number of days from the in-
stallation of improvements
to the expiration of the
lease;

(c) if your lease contains a re-
newal option, the expiration
of the renewal option period
will replace the expiration of
the lease in this procedure.

(3) Nothing if others pay for repairs
or replacement.

f. Valuable Papers and Records, including
those which exist on electronic or mag
netic media (other than prepackaged
software programs), at the cost of:

(1) blank materials for reproducing
the records; and

(2) labor to transcribe or copy the
records when there is a duplicate.

g. Works of art, antiques or rare articles,
including etchings, pictures, statuary,
marbles, bronzes, porcelains and bric-
a-brac at actual cash value

h  We will not pay on a replacement cost
basis for any loss or damage:

(1) until the lost or damaged property
is actually repaired or replaced;
and

(2) unless the repairs or replacement
are made:

(a) as soon as reasonably pos-
sible after the loss or dam-
age; or

(b) if claim was initially made on
an actual cash basis, as soon
as reasonably possible after
you notify us, within 12
months after the loss or
damage, of your intent to
make claim on a replacement
cost basis

i. We will not pay more for loss or
damage on a replacement cost basis
than the least of (1), (2) or (3) subject
to k. below:

(1) the Limit of Insurance applicable
to the lost or damaged property;

(2) the cost to replace, on the same
premises, the lost or damaged
property with other property:

(a) of comparable material and
quality; and

(b) used for the same purpose;
or

(3) the amount you actually spend
that is necessary to repair or re-
place the lost or damaged prop-
erty.

j. The cost of repair or replacement
does not include any increased cost
attributable to enforcement of any or-
dinance or law regulating the con-
struction, use or repair of any prop-
erty.

L. Errors In Description

We will pay for loss covered by this policy
if such loss is otherwise not payable solely
because of any unintentional error in describ-
ing a location insured under this policy

You agree to give us prompt notice of any such
error when discovered.

SB 86 05 (Ed. 11/97) XS

7



SB 86 02
(Ed. 04 99)

**SELECT BUSINESS POLICY**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations The words "we," "us" and "our" refer to the Company providing this insurance

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION J - DEFINITIONS.

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1, and limited in A.2, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a  Building, meaning the building or structure described in the Declarations, including:

   (1) completed additions;

   (2) fixtures, including outdoor fixtures and signs;

   (3) permanently installed:

      (a) machinery;

      (b) equipment; and

      (c) foundations of machinery, tanks and their component parts, including all connections thereto which are below the undersurface of the lower basement floor, or

where there is no basement, below the surface of the ground

   (4) personal property owned by you that is used to maintain or service the building or structure or its premises, including but not limited to:

      (a) fire extinguishing equipment;

      (b) outdoor furniture;

      (c) floor coverings; and

      (d) appliances used for refrigerating, ventilating, cooking, dish washing or laundering;

   (5) if not covered by other insurance, additions under construction, alterations and repairs to the building or structure;

b. Your Business Personal Property as shown in the Declarations, including:

   (1) personal property owned by you and used in your business;

   (2) labor, materials or services furnished or arranged by you on personal property of others;

SB 86 02 (Ed. 04/99) XS                    1

(3) your use interest as tenant in Improvements and Betterments made a part of the building or structure you occupy but do not own;

(4) leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others; and

(5) signs, including signs attached to buildings, provided there is no coverage for the sign under the Building Covered Property.

c Personal Property of Others that is in your care, custody or control as shown on the declarations

However, our payment for loss of, or damage to Personal Property of Others will only be for the account of the owner of the property

2. Property Not Covered

Covered Property does not include:

a. accounts, bills, currency, deeds, evidences of debt, money, notes or securities;

b. animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. automobiles held for sale;

d bridges;

e. contraband, or property in the course of illegal transportation or trade;

f. foundations of buildings, structures, or boilers if their foundations are below:

(1) the lowest basement floor; or

(2) the surface of the ground, if there is no basement;

g land (including land on which the property is located), water (including groundwater), growing crops or lawns;

h. personal property while waterborne (other than while on regular ferries or railroad car floats);

i underground pipes, flues or drains except as provided under A. 1 a (3)(c);

j. vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) are licensed for use on public roads; or

(2) are operated principally away from the described premises

This paragraph does not apply to:

(1) vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(2) vehicles or self-propelled machines, other than autos, you hold for sale; or

(3) rowboats or canoes out of water at the described premises;

k. the following property while outside of buildings:

(1) grain, hay, straw or other crops;

(2) trees, shrubs or plants, piers, wharves, docks or retaining walls, all except as provided in the Coverage Extensions.

l the cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media.

B. COVERED CAUSES OF LOSS

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1 Excluded in Section C. Exclusions; or

2. Limited in Section D. Limitations;

that follow

SB 86 02 (Ed. 04/99) XS                                    2

## C. EXCLUSIONS

1  We will not pay for loss or damage caus-
ed directly or indirectly by any of the fol-
lowing  Such loss or damage is excluded
regardless of any other cause or event
that contributes concurrently or in any se-
quence to the loss

  a. Ordinance or Law

    The enforcement of any ordinance or
    law:

      (1) regulating construction; use or
      repair of any property; or

      (2) requiring the tearing down of any
      property including the cost of
      removing its' debris.

This exclusion, Ordinance or Law, ap-
plies whether the loss results from:

  (1) an ordinance or law that is en-
  forced even if the property has
  not been damaged; or

  (2) the increased costs incurred to
  comply with an ordinance or law
  in the course of construction, re-
  pair, renovation, remodeling or
  demolition of property or re-
  moval of its debris, following a
  direct physical loss or damage to
  that property.

  b. Earth Movement

    (1) Any earth movement (other than
    sinkhole collapse), such as an
    earthquake, landslide, mine subsi-
    dence or earth sinking, rising or
    shifting. But if earth movement
    results in fire, theft, or explosion,
    we will pay for the loss or dam-
    age caused by that fire or explo-
    sion.

    (2) Volcanic eruption, explosion or
    effusion. But, if volcanic eruption,
    explosion or effusion results in
    fire, building glass breakage or
    volcanic action, we will pay for
    that resulting loss or damage.

Volcanic action means direct loss
or damage resulting from the
eruption of a volcano when the
loss or damage is caused by:

  (a) airborne volcanic blast or
  airborne shockwaves;

  (b) ash, dust or particulate mat-
  ter; or

  (c) lava flow

All volcanic eruptions that occur within
any 168 hour period will constitute a
single occurrence.

Volcanic action does not include the
cost to remove ash, dust or particulate
matter that does not cause direct
physical loss or damage to the de-
scribed property.

This exclusion does not apply to Cov-
ered Personal Property in due course
of transit

  c. Governmental Action

    Seizure or destruction of property by
    order of governmental authority. But
    we will pay for loss or damage caused
    by or resulting from acts of destruc-
    tion ordered by governmental authority
    and taken at the time of a fire to pre-
    vent its spread, if the fire would be
    covered under this Coverage Part.

  d. Utility Services

    The failure of power or other utility
    service supplied to the described
    premises however caused, if the fail-
    ure occurs away from the described
    premises.

    But if the failure of power or other
    utility services results in a Covered
    Cause of Loss, we will pay for the
    resulting loss or damage caused by
    that Covered Cause of Loss.

  e. Nuclear Hazard

    Nuclear reaction or radiation, or radio-
    active contamination, however caused

SB 86 02 (Ed. 04/99) XS                    3

But if nuclear reaction or radiation or radioactive contamination results in fire we will pay for that loss or damage caused by the fire.

f. War and Military Action

(1) War, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

(2) Mudslide or mudflow
But if Water, as described in g (1) and g (2) above results in fire, explosion, theft or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, theft or sprinkler leakage.

This exclusion does not apply to Covered Personal Property in due course of transit.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) smog;

(4) settling, cracking, shrinking or expansion;

(5) nesting or infestation or discharge or release of waste products or secretions by insect, birds, rodents or other animals.

(6) mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) the following causes of loss to personal property;

(a) dampness or dryness of atmosphere;

(b) cold or heat;

(c) marring or scratching.

But if an excluded cause of loss that is listed in 2.d (1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass

f. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1) you do your best to maintain heat in the building or structure; or

   (2) you drain the equipment and shut off the supply if the heat is not maintained

g. Dishonest or criminal act by you, any of your partners, employees (including leased employees) directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   (1) acting alone or in collusion with others; or

   (2) whether or not occurring during the hours of employment.

   This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered

h. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense

i. Rain, snow, ice or sleet to personal property in the open.

j. Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss

k. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release

or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

3. We will not pay for loss or damage caused by or resulting from any of the following 3a. through 3c. But if an excluded Cause of Loss that is listed in 3a. through 3c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss

   a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body

   c. Faulty, inadequate or defective:

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) materials used in repair, construction, renovation or remodeling; or

      (4) maintenance;

   of part or all of any property on or off the described premises

D. LIMITATIONS

1. We will pay for direct physical loss or damage to Covered Personal Property which is in due course of transit at your risk if the Covered Personal Property is:

   a. in the custody of a carrier or bailee for hire; or

   b. on vehicles you own or operate; but only up to the Transit Limit of Insurance shown in the Declarations and subject to the Transit deductible shown in the Declarations.

SB 86 02 (Ed. 04/99) XS                      5

2  We will not pay for loss or damage to any of the following types of property if the loss or damage occurs at an unnamed location or while in transit:

a. Musical Instruments

b. Contractors' Equipment, including Cranes

This limitation does not apply to musical instruments or contractors equipment you manufacture, process or hold for sale.

3. We will not pay for loss or damage to:

a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c. Property that is missing, where the only evidence of the loss or damage is the shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

d. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions

4. We will not pay more than $10,000 for loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

a. the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

b. the loss or damage is caused by or results from thawing of snow, sleet or ice on the building structure.

5. We will only pay for loss of or damage to animals if the loss or damage is caused by any of the "specified causes of loss" or building glass breakage, and then only if they are killed or their destruction is made necessary.

6  The special limit shown for each category, a. through c , is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence  The special limits are:

a. $2,500 for furs, fur garments and garments trimmed with fur

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item

c  $250 for stamps, tickets (including lottery tickets held for sale) and letters of credit

7. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder, or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. results in discharge of any substance from any automatic fire protection system; or

b. is directly caused by freezing

E. ADDITIONAL COVERAGES

1. Collapse

The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in 1.a through 1.e. below.

a. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by one or more of the following:

(1) the "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Form;

(2) hidden decay;

(3) hidden insect or vermin damage;

(4) weight of people or personal property;

(5) weight of rain that collects on a roof;

(6) use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 1.a(1) through 1.a.(6), we will pay for the loss or damage even if the use of defective material or methods, in construction, remodeling or renovation, contributed to the collapse

b. If the direct physical loss or damage does not involve collapse of a building we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

(1) the personal property which collapses is inside a building; and

(2) the collapse was caused by a cause of loss listed in 1.a (1) through 1.a.(6) above

c. With respect to the following property:

(1) outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

(2) awnings, gutters and downspouts;

(3) yard fixtures;

(4) outdoor swimming pools;

(5) fences;

(6) piers, wharves, and docks;

(7) beach or diving platforms or appurtenances;

(8) retaining walls; and

(9) walks, roadways and other paved surfaces;

if the collapse is caused by a Cause of Loss listed in 1.a (1) through 1.a.(6), we will pay for loss or damage to that property only if:

(1) such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

(2) the property is Covered Property under this Coverage Form.

d. Collapse does not include settling, cracking, shrinkage, bulging or expansion.

e. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Form.

No Deductible applies to this Additional Coverage.

2. Debris Removal

a We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of

SB 86 02 (Ed. 04/99) XS                          7

Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(1) the date of direct physical loss or damage; or

(2) the end of the policy period.

b. The most we will pay under this Additional Coverage is 25% of:

(1) the amount we pay for the direct physical loss of or damage to Covered Property; plus

(2) the deductible in this Coverage Form applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

c. This Additional Coverage does not apply to the cost to:

(1) extract "pollutants" from land or water; or

(2) remove, restore or replace polluted land or water.

### 3. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the limit specified in the Declarations for this Additional Coverage for your liability for fire department service charges:

a. assumed by contract or agreement prior to loss; or

b. required by local ordinance.

No Deductible applies to this Additional Coverage

### 4. Fire Protection Device Recharge

We will pay, up to the limit listed in the Declarations for this Additional Coverage, to recharge or refill your fire protective devices that are permanently installed in buildings at the described premises.

This Additional Coverage only applies when such devices have been discharged while being used to combat a covered fire.

### 5. Loss Data Preparation

We will pay, up to the limit listed in the Declarations for this Additional Coverage, for reasonable costs you incur in preparing loss data required by policy conditions after a loss covered by this Coverage Part. This includes the cost of taking inventory, making appraisals and preparing other data to determine the extent of your loss. This does not include public adjustors fees.

### 6. Pollutant Clean Up and Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

a. the date of direct physical loss or damage; or

b. the end of the policy period.

The most we will pay for each location under this Additional Coverage is stated in the Declarations for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this Policy

No Deductible applies to this Additional Coverage

## F. COVERAGE EXTENSIONS

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

### 1. Newly Acquired or Constructed Property

a You may extend the insurance that applies to Building to apply to:

(1) your new buildings while being built on the described premises;

(2) buildings you acquire at locations, other than the described premises, intended for:

(a) similar use as the building described in the Declaration; or

(b) use as a warehouse.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations

b. You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

c. Insurance under this Extension for each newly acquired or constructed property will end when any of the following occurs:

(1) this Coverage Part expires;

(2) 90 days expire after you acquire or begin to construct the property; or

(3) you report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property

d. If the coverage provided by this extension has expired due to item (c) above, the Limit of Insurance shown in the Declarations for "At Any Other Location" will apply.

### 2. Outdoor Property

You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants, piers, wharves, docks or retaining walls (not attached to buildings), including debris removal expense, caused by or resulting from any of the following causes of loss:

a. fire;

b. lightning;

c. explosion;

d. riot or Civil Commotion; or

e. aircraft.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

### 3. Personal Effects

You may extend the insurance that applies to Your Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees.

The most we will pay for loss or damage under this Extension is stated in the Declarations for this Extension per each described premises. Our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

No Deductible applies to this Coverage Extension.

4. Water Damage, Other Liquids, Powder or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

## G. LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations. The limits applicable to the Coverage Extensions and all of the Additional Coverages are all in addition to the Limits of Insurance except for Collapse and Debris Removal. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. collapse;

2. debris removal; but if:

   a. the sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   b the debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

we will pay up to the limit shown for Debris Removal on the Declarations for each location in any one occurrence under the Debris Removal Additional Coverage.

## H. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance. The Deductible clause does not apply to Business Income.

## I. OPTIONAL COVERAGES

1. Inflation Guard

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) the Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times;

      (2) the percentage of annual increase shown in the Declarations expressed as a decimal (example 8% is .08), times;

      3) the number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365

   Example:

   If:   The applicable Limit
         of Insurance is              $100,000
         and the annual percentage
         increase is                        8%
         The number of days
         since the beginning
         of the policy year
         (or last policy
         change) is                       146
         The amount of increase is;
         $100,000 X .08
         X 146 ÷365 =                $3,200

2. Ordinance or Law

   a. Each of the Coverages - Coverage A, Coverage B and Coverage C - applies only if that Coverage(s) is chosen by entry in the Declarations and then only with respect to the Building property identified for that Coverage(s) in the Declarations

b. We will not pay under this Optional Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"

c. Coverage A - Coverage for Loss to the Undamaged Portion of the Building

If there is a direct physical loss or damage from a Covered Cause of Loss to a covered Building property, we will pay under Coverage A for the loss in value of the undamaged portion of the building which is a consequence of enforcement of any ordinance or law that:

(1) requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

(2) regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(3) is in force at the time of the Covered Cause of Loss

d. Coverage B - Demolition Cost Coverage

If there is a direct physical loss or damage from a Covered Cause of Loss to covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law

If attached, the COINSURANCE Additional Condition Endorsement does not apply to Demolition Cost Coverage

e. Coverage C – Increased Cost of Construction Coverage

(1) If there is a direct physical loss or damage from a Covered Cause of Loss to the covered Building property, we will pay for the increased cost to:

(a) repair or reconstruct damaged portions of that Building property; and/or

(b) reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required

When the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law

However:

(a) This coverage applies only if the restored or remodeled property is intended for similar occupancy to the occupancy prior to the loss or damage unless such occupancy is not permitted by zoning or land use ordinance or law.

(b) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

If attached, the COINSURANCE Additional Condition Endorsement, does not apply to Increased Cost of Construction Coverage.

f. Loss Payment

(1) Coverage A

(a) If the replacement cost valuation applies and the property is repaired or replaced on the same or another premises we will not pay more than the lesser of:

(i) the amount you actually spend to repair, rebuild or reconstruct the building, but not more than the amount it would cost to restore the building on the same

SB 86 02 (Ed. 04/99) XS                    11

premises and to the same height, floor area, style and comparable quality of the original property insured; or

    (ii) the Limit of Insurance shown in the Declarations as applicable to the covered building property.

(b) If the replacement cost valuation applies and the property is not repaired or replace, or if the replacement cost valuation does not apply we will not pay more than the lesser of:

    (i) the actual cash value of the building at the time of loss; or

    (ii) the Limit of Insurance shown in the Declarations as applicable to the covered building property.

(2) Coverage B

We will not pay more than the lesser of the following

(a) the amount you actually spend to demolish and clear the site of the described premise; or

(b) the applicable Limit of Insurance shown for Coverage B in the Declarations

(3) Coverage C

(a) We will not pay under Coverage C:

    (i) until the property is actually repaired or replaced at the same or another premises; and

    (ii) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend the period in writing during the two years

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premise, the most we will pay under Coverage C is the lesser of;

    (i) the increased cost of construction at the same premises; or

    (ii) the applicable Limit of Insurance shown for Coverage C in the Declarations

(c) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of;

    (i) the increased cost of construction at the new premises; or

    (ii) the applicable Limit of Insurance shown for Coverage C in the Declarations.

g. Under this Optional Coverage we will not pay for loss due to any ordinance or law that:

    (1) you were required to comply with before the loss, even if the building was undamaged; and

    (2) you failed to comply with.

3. Utility Services

a We will pay for direct physical loss or damage to Covered Property described in the Declarations by the interruption of any of the following

SB B6 02 (Ed. 04/99) XS            12

services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises:

(1) Water Supply Services, meaning the following types of property supplying water to the described premises:

    (a) pumping stations; and

    (b) water mains.

(2) Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    (a) communication transmission lines, including optic fiber transmission lines;

    (b) coaxial cables; and

    (c) microwave radio relays except satellites.

(3) Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    (a) utility generating plants;

    (b) switching stations;

    (c) substations;

    (d) transformers; and

    (e) transmission lines.

b. The Utility Services Limit of Insurance as shown on the Declarations is part of, not in addition to, the Limit of Insurance stated in the Declarations, as applicable to the Covered Property.

## J. DEFINITIONS

1. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. "Stock" means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

3. "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        (1) the cost of filling sinkholes; or

        (2) sinking or collapse of land into man-made underground cavities.

    b. Falling objects does not include loss or damage to:

        (1) personal property in the open; or

        (2) the interior of a building or structure, or property inside a building or structure unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.



SB 86 05
(Ed. 11 97)

### SELECT BUSINESS POLICY
### BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights and duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H - DEFINITIONS

#### A. COVERAGE

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property, including personal property in the open (or in a vehicle) within 1000 feet, of the premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss

If you are a tenant, your premises is the portion of the building which you rent, lease or occupy, including all routes within the building to gain access to the described premises and your personal property in the open (or in a vehicle) within 1000 feet your premises.

1. Business Income

   Business Income means the:

   a Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

   b continuing normal operating expenses incurred, including payroll

#### B. COVERED CAUSES OF LOSS

Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

1. excluded in Section C. Exclusions, of the Select Business Policy Building and Personal Property Coverage Form;

2. limited in Section D. Limitations of the Select Business Policy Building and Personal Property Coverage Form; or

3. excluded in Section C. Special Exclusions, below.

#### C. SPECIAL EXCLUSIONS

We will not pay for:

1. Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of the covered building.

   But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

2. Any loss caused by or resulting from:
   a. damage or destruction of finished "stock"; or

   b. the time required to reproduce finished "stock".

This exclusion does not apply to Extra Expense.

SB 86 05
(Ed. 11 97)

3 Any increase of loss caused by or result-ing from:

a. delay in rebuilding, repairing or replac-ing the property or resuming "oper-ations", due to interference at the lo-cation of the rebuilding, repair or re-placement by strikers or other per-sons; or

b suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations" we will cover such loss that affects your Business Income during the "period of restoration".

4. Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

5. Any other consequential loss

6. Any loss caused by or resulting from damage or destruction of property in transit

D. ADDITIONAL COVERAGES

1. Civil Authority

We will pay for the actual loss of Busi-ness Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the de-scribed premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss The coverage will apply for a period of up to three consecutive weeks from the date of that action.

2. Extended Business Income

We will pay for the actual loss of Business Income you incur during the period that:

a. begins on the date property (except finished "stock") is actually repaired, rebuilt or replaced and "operations are resumed; and

b. ends on the earlier of:

(1) the date you could restore you "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(2) 60 consecutive days after the date determined in b (1) above. However, Extended Business Income does not apply to loss of Business Income incurred as a result of un-favorable business conditions caused by the impact of the Covered Cause of Loss in the area where the de-scribed premise are located

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

3. Extra Expense

Extra Expense means necessary expenses you incur during the "period of restora-tion" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss

a. We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations:"

(1) at the described premises; or

(2) at the replacement premises or at temporary locations, including:

(a) relocation expenses; and

(b) costs to equip and operate the replacement or tempo-rary locations.

b. We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations "

c. We will pay any Extra Expense to:

(1) repair or replace any property; or

SB 86 05
(Ed. 11 97)

(2) research, replace or restore the
lost information or damaged valu-
able papers and records;
to the extent it reduces the amount of
loss that otherwise would have been
payable under this Coverage Form.

E. COVERAGE EXTENSION

1. Newly Acquired Locations

a  You may extend your Business Income
Coverage to apply to property at any
location you acquire other than fairs or
exhibits.

b  The most we will pay, at each location,
for loss under this Extension is the
limit shown in the Declarations for this
Coverage Extension

c  Insurance under this Extension for
each newly acquired location will end
when any of the following first oc-
curs:

(1) this policy expires;

(2) 90 days expire after you acquire
or begin to construct the prop-
erty; or

(3) you report values to us.

We will charge you additional premium for
values reported from the date you acquire
the property

2. Property At Any Other Location

a. You may extend your Business Income
Coverage to apply to property at any
location other than described premises
or newly acquired locations.

b. The most we pay, at each location, for
loss under this extension is the limit
shown on the Declarations for this
Coverage Extension.

F. LIMITS OF INSURANCE

The most we will pay for loss in any one
occurrence is the applicable Limit of I
nsurance shown in the Declarations.

The limits applicable to the Coverage Exten-
sions are in addition to the Limit of Insurance.

Payments under the following Additional Cov-
erages will not increase the applicable Limit of
Insurance:

1. Extra Expense;

2. Civil Authority; or

3. Extended Business Income

G. OPTIONAL COVERAGES

1. Dependent Property Business Income

a. When indicated in the Declarations, we
will pay for the actual loss of business
income you sustain due to necessary
suspension of your "operations" during
the "period of restoration". The sus-
pension must be caused by direct
physical loss of or damage to "depen-
dent property" caused by or resulting
from any Covered Cause of Loss.

b. We will pay no more than the Limit of
Insurance for Business Income or the
limit in the Declarations for this Op-
tional coverage, whichever is less.

c. The following is added to Select Busi-
ness Policy Conditions, Loss Condition
G. Resumption of Operations:

2. We will reduce the amount of
your Business Income loss, other
than Extra Expense, to the extent
you can resume "operations", in
whole or in part, by using any
other available:

a. source of materials; or

b. outlet for your products.

d. The following is added to the DEFINI-
TIONS section:

1. "Dependent Property" means
property operated by others
whom you depend on to:

SB 86 05 (Ed. 11/97) XS                    3

SB 86 05
(Ed. 11 97)

a. deliver materials or services to you, or to others for your account. Services does not mean water, communication or power supply services;

b. accept your products or services;

c. manufacture products for delivery to your customers under contract of sale; or

d. attract customers to your business

2. "Period of Restoration" with respect to "dependent property" is the period of time that:

a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

a. regulates the construction, use or repair, or requires the tearing down of any property; or

b. requires any insured or others to test for monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration"

2. Ordinance or Law - Increased Period of Restoration

a. When indicated in the Declarations that this coverage applies, if a Covered Cause of Loss occurs to property at the premises described in the Declaration, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of "operations" caused by or resulting from the enforcement of any ordinance or law that:

(1) regulates the construction or repair of any property;

(2) requires that tearing down of parts of any property not damaged by a Covered cause of Loss; and

(3) is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires any insured or other to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants".

b. The PERIOD OF RESTORATION definition is replaced by the following:

3. "Period of Restoration" means the period of time that:

a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

SB 86 05 (Ed. 11/97) XS                    4

SB 86 05
(Ed. 11 97)

"Period of Restoration" includes
any increased period required to
repair or reconstruct the prop-
erty to comply with the minimum
standards of any ordinance or
law, in force at the time of loss,
that regulates the construction or
repair or requires the tearing
down of any property.

The expiration date of this policy
will not cut short the "period of
restoration".

3. **Unfinished Stock in Transit**

When indicated in the Declarations page,
we will pay for the loss of business in-
come you sustain due to direct physical
loss or damage by a Covered Cause of
Loss to unfinished "stock" while in transit.

The most we will pay is the Limit of Insur-
ance for Unfinished Stock in Transit
shown on the Declarations.

4. **Utility Services**

a. When indicated in the Declarations that
this Coverage applies, we will pay for
loss of Business Income or Extra Ex-
pense, caused by the interruption of
service to the described premises. The
interruption must result from direct
physical loss or damage by a Covered
Cause of Loss to the property de-
scribed below, if the property is lo-
cated outside of a covered building
described in the Declarations:

(1) Water Supply Services, meaning
the following types of property
supplying water to the described
premises:

(a) pumping stations; and

(b) water mains.

(2) Communication Supply Services,
meaning property supplying com-
munication services, including
telephone, radio, microwave or
television services to the de-
scribed premises, such as:

(a) communication transmission lines,
including optic fiber transmission lines;

(b) coaxial cables; and

(c) microwave radio relays except
satellites.

(3) Power Supply Services, meaning the
following types of property supplying
electricity, steam or gas to the described
premises:

(a) utility generating plants;

(b) switching stations;

(c) substations;

(d) transformers; and

(e) transmission lines.

b. The Utility Services Limit of Insurance
as shown in the Declarations is part of,
not in addition to, the Limit of Insur-
ance stated in the Declarations, as ap-
plicable to the Business Income

H. **DEFINITIONS**

1. "Operations" means your business activi-
ties occurring at the described premises.

2. "Period of Restoration" means the pe-
riod of time that:

a. begins with the date of direct physical
loss or damage caused by or resulting
from any Covered Cause of Loss at
the described premises; and

b. ends on earlier of:

(1) the date when the property at the
described premises should be re-
paired, rebuilt or replaced with reason-
able speed and similar quality; or

(2) the date when business is resumed at
a new permanent location.

"Period of restoration" does not include
any increased period required due to the
enforcement of any ordinance or law that;

SB 86 05 (Ed. 11/97) XS                    5

SB 86 05
(Ed. 11 97)

a. regulates the construction, use or repair, or requires the tearing down of any property; or

b. requires any insured or others to test for monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period or restoration".

3. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

4. "Stock" means merchandise held in storage or for sale, raw material and in process or finished goods, including supplies used in their packing or shipping.



**BUSINESS ELECTRONIC SYSTEMS
AND TELECOMMUNICATIONS FORMS**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F DEFINITIONS.

**A. COVERAGE**

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property**, as used in this Coverage Form, means:

   a. Electronic Equipment - meaning your Electronic Data Processing, Information Technology Hardware, and Telecommunications Equipment, including their component parts;

   b. Data, Programs and Media

      (1) Data is information which has been converted to a form usable in Data Processing Equipment. Data includes Computer Programs and Instructions;

      (2) Media is the material on which Data is recorded; for example, magnetic disks and tapes.

   c. Property of Others - similar property of others in your care, custody or control, and for which you are legally responsible.

2. **Property Not Covered**

   Covered Property does not include:

   a Property you loan, rent or lease to others while it is away from your premises;

   b Data or Media which cannot be replaced with other of the same kind or quality, unless it is specifically described and scheduled with a separate Limit of Insurance in the Declarations.

   c Satellites, microwave towers and dishes, earth stations, telephone switching stations or similar property.

   d Accounts, bills, currency, securities, evidence of debt, valuable papers, abstracts, records, deeds, manuscripts or other documents, unless converted to Data, and then only in that form.

   e. Your stock in trade.

   f. Contraband, or property in the course of illegal transportation or trade

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions.

CM 76 58 (ed. 12/98) XS                     1

**4. Additional Coverages**

  **a. Extra Expense**

   (1) We will pay the actual and necessary Extra Expense you sustain from a Covered Cause of Loss, due to direct physical loss of or damage to:

      (a) Covered Property at your premises or in transit, within the Coverage Territory;

      (b) the building in which the Covered Property is located, provided the building is damaged to an extent which prevents access to the Covered Property;

      (c) the air conditioning, voltage regulator, line conditioner or uninterruptable power supply systems that specifically service your data processing operation;

      (d) the electrical or telecommunication system that specifically services your data processing operation, provided the damage to the system occurs inside, or within 100 feet of, the building housing your data processing operation.

      (e) a building adjacent to a scheduled location, when access to the scheduled location is prohibited by civil authority. Coverage is limited to no more than two (2) weeks.

   (2) Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property:

      (a) To avoid or minimize the suspension of business and to continue "operations":

         (i) at the described premises; or

         (ii) at replacement premises or at temporary locations, including:

            Relocation expenses; and

            Costs to equip and operate the replacement or temporary locations

      (b) To minimize the suspension of business if you cannot continue "operations"; or

      (c)  (i) to repair or replace any property; or

          (ii) to research, replace or restore the lost information on damaged valuable papers and records;

          but only to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

   (3) The most we will pay for "loss" in any one occurrence under this Additional Coverage is the applicable Extra Expense Limit of Insurance shown in the Declarations.

  **(b) Newly Acquired Electronic Equipment**

   We will pay for "loss" to Newly Acquired Electronic Equipment at each location scheduled in the Declarations, provided the value of the equipment is reported to us within 60 days from the time you acquired it. If it is not reported within that time, or if the policy period ends within that time, coverage will cease. We will compute the additional premium due from the date you acquire the equipment.

CM 76 58 (ed. 12/98) XS                    2

The most we will pay for "loss" in any one occurrence under this Additional Coverage is 25% of the highest Limit of Insurance for any one location shown in the Declarations, for coverage A 1 a Electronic Equipment, up to a maximum of $250,000.

c. Newly Acquired Locations

We will pay for "loss" to Covered Property at any new location which you acquire, provided the new location is reported to us within 60 days from the time you acquired it. If it is not reported within that time, or if the policy period ends within that time, coverage will cease. We will compute any change in your premium from the date you occupy the new location.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is the In Transit/Any Other Location Limit shown in the Declarations.

d. Temporary Locations

We will pay for "loss" to Covered Property while at temporary locations but only for the first 60 days that the property is located there, and not beyond the end of the policy period.

The most we will pay in any one occurrence under this Additional Coverage is the In Transit/Any Other Location Limit shown in the Declarations.

e. Debris Removal

We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss.

The most we will pay for "loss" at each location under this Additional Coverage is 25% of the sum of the applicable location limits for Electronic Equipment and Data, Programs, Media Coverages up to a maximum of $100,000.

This Additional Coverage doesn't apply to the cost to:

(1) extract "pollutants" from land or water; or

(2) remove, restore or replace polluted land or water.

f. Pollutant Clean Up and Removal

We will pay your necessary expense to extract "pollutants" from land or water at the premises described in the Declarations, if the release, discharge or dispersal of the "pollutants" results from a Covered Cause of Loss to Covered Property that occurs during the policy period. Your expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1) the date of the direct physical loss or damage; or

(2) the end of the policy period. The most we will pay for each location under this Additional Coverage is 10% of the sum of the applicable location limits for Electronic Equipment and Data, Programs, Media Coverages, up to a maximum of $10,000, for the sum of all such expenses for each separate 12 month policy period.

No deductible applies to this Additional Coverage

g. Cost of Preparing a Statement of Loss

We will pay the cost of preparing a statement of loss or any other exhibits required in connection with any claim under this Coverage Form

The most we will pay for the cost of preparing a statement of loss or other exhibits under this Additional Coverage is $1,000.

This Additional Coverage does not include public adjuster's fees.

CM 76 58 (ed. 12/98) XS                    3

**h. Duplicate Data**

We will pay for your "loss" of duplicate data stored at locations not scheduled on the Declarations. The most we will pay for "loss" under this Additional Coverage in any one occurrence is 25% of the highest Data, Programs, Media location limit up to a maximum of $100,000.

**i. Protective Equipment**

We will pay your necessary expenses to:

(1) Repair or replace (in excess of any amount covered by other insurance);

(2) Recharge:

Your fire protection equipment that is used exclusively to protect the Covered Property.

We will pay if the damage or discharge is the result of a response to a fire, a false alarm, or another Covered Cause of Loss. But, we won't pay for discharge which occurs during installation, repair or recharge. Nor will we pay for gradual leakage from the system.

The most we will pay under this Additional Coverage in any one occurrence is $25,000.

These Additional Coverages have separate Limits of Insurance.

**B. EXCLUSIONS**

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

    **a. Governmental Action**

    Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

**c. War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**d. Earth Movement**

(1) Any earth movement such as earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

(2) Volcanic eruption, explosion or effusion. But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

CM 76 58 (ed. 12/98) XS                    4

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

(a) airborne volcanic blast or airborne shock waves;

(b) ash, dust or particulate matter; or

(c) lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

e Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) foundations, walls, floors or paved surfaces;

(b) basements, whether paved or not; or

(c) doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Dishonest acts by you, your partners, officers or trustees, or your or their agents, or others to whom Covered Property is entrusted;

This exclusion will not apply to acts of destruction by an employee of yours; nor will it apply to bailees for hire (for example, truckers or warehousemen) But we will not pay for theft by your employees.

b Delay, loss of market or loss of income;

c. The enforcement of any law which regulates the construction, repair or demolition of buildings or other structures;

d Any change in, or interruption of:

(1) power supply; or

(2) telecommunications service if the change originates more than 100 feet away from the premises containing the Covered Property (equipment) But, if a loss or damage by fire, explosion or theft results, we will pay for that resulting "loss "

e. Programming errors or incorrect machine instructions. This does not include loss or damage by computer virus or other malicious software.

In addition to the above, we will not pay for any Extra Expense you incur due to:

f. Interference by strikers or other persons with repairs to damaged property, or with resumption of normal business "operations";

g Mechanical or machinery breakdown of any property not named in the Extra Expense Additional Coverage;

CM 76 58 (ed. 12/98) XS                5

h  The suspension, lapse or cancel-
lation of any lease, license or
contract beyond the "period of
restoration";

i  Any other consequential "loss "

3  We will not pay for a "loss" caused by
or resulting from any of the following.
But if "loss" by a Covered Cause of
Loss results, we will pay for that re-
sulting "loss "

a.  Weather conditions. But this ex-
clusion only applies if weather
conditions contribute in any way with a
cause or event excluded in Paragraph 1
above to produce the "loss."

b.  Faulty, inadequate or defective
workmanship, repair, material
used in repair, upgrading or re-
modeling of Covered Property.

c  Wear and tear, gradual deteriora-
tion or obsolescence.

## C. LIMITS OF INSURANCE

Except for the Additional Coverages
b,e,f,g,h and i, the most we will pay for
"loss" in any one occurrence is the ap-
plicable Limit of Insurance shown in the
Declarations  The Limits of Insurance for
Additional Coverages b,e,f,g,h and i, are
stated in those Additional Coverages.

## D. DEDUCTIBLE

We will pay only the amount of the ad-
justed "loss" in excess of the applicable
Deductible shown in the Declarations, up
to the applicable Limit of Insurance.

1.  The Breakdown Deductible applies to
losses resulting from:

a.  Mechanical breakdown, (for ex-
ample, head crash) of the Cov-
ered Property;

b.  Short circuit, blow-out or other
electric or magnetic disturbance,
other than lightning, within elec-
trical equipment, apparatus or de-
vices;

c  Any repairing, servicing or pro-
cessing operation;

d  Damage to Data or Media when
Electronic Equipment breaks
down or malfunctions while Data
or Media is being run through the
system.

2  The All Other "Loss" Deductible applies
to all other losses under this Coverage
Form.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition
to the Commercial Inland Marine Condi-
tions and the Common Policy Conditions:

1.  Coverage Territory

We cover Covered Property in transit
to, or from, and at:

a  Locations shown in the Declara-
tions;

b.  Newly acquired locations and
temporary locations as provided
in the Additional Coverages for
Newly Acquired Locations and
Temporary Locations;
all while in:

c  The United States of America;

d  Canada;

but we do not cover property in
transit by watercraft to or from
Alaska or Hawaii.

2.  Valuation

The Valuation General Condition is re-
placed by the following:

a  Electronic Equipment
We will adjust a "loss" to Elec-
tronic Equipment on the basis of
"replacement cost." The most we
will pay is the lesser of:

(1) the amount necessary to re-
pair the equipment; or

CM 76 58 (ed. 12/98) XS                            6

(2) the amount necessary to re-
place the equipment with:

   (a) equipment of the same
     kind and quality; or

   (b) if Equipment cannot be
     replaced by Equipment
     of the same kind and
     quality, new Equipment
     capable of performing
     the same functions.

(3) The applicable Limit of In-
surance

**b. Data**

Data (including Programs) will be
valued at the actual cost of re-
placing the Data. If it is not re-
placed or reproduced, we will
pay the cost of the blank Media.

**c. Media**

The value of the Media will be the
cost to replace the Media with
material of the same kind or qual-
ity.

**3. Our Options**

If we notify you in writing within thirty
(30) days after we receive your
signed, sworn statement of loss, we
may take all or part of the damaged
Covered Property at a value that we
will agree upon with you. If we
choose, we may also repair the
damaged Covered Property, or replace
it with similar property.

**F. DEFINITIONS**

1. **"Loss"** means accidental loss or dam-
age.

2. **"Operations"** means your business
activities occurring at the described
premises.

3. **"Period of Restoration"** means the
period of time that:

  a. begins with the date of direct
    physical loss or damage caused
    by or resulting from any Covered
    Cause of Loss at the described
    premises; and

  b. ends on the date when the prop-
    erty at the described premises
    should be repaired, rebuilt or re-
    placed with reasonable speed and
    similar quality.

"Period of Restoration" does not in-
clude any increased period required
due to the enforcement of any law
that regulates the construction, use or
repair, or requires the tearing down,
of any property.

The expiration date of this policy will
not cut short the "period of restora-
tion."

4. **"Pollutants"** means any solid, liquid
gaseous or thermal irritant or con-
taminant including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and
waste. Waste includes material to be
recycled, reconditioned or reclaimed.

5. **"Replacement Cost"** means the cost
to repair or replace the covered
property damaged or lost without de-
duction for depreciation. But, if you
choose not to repair or replace the
item, we will pay only the actual cash
value of the item, or its repair, with
proper deduction for depreciation.



CM 00 20
(Ed. 06 95)

## COMMERCIAL ARTICLES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F - DEFINITIONS.

### A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss

1. Covered Property, as used in this Coverage Form, means:

   a. cameras, projection machines, films and related equipment and accessories;

   b. musical instruments and related equipment and accessories; and

   c. similar property of others that is in your care, custody or control

2. Property Not Covered

   Covered Property does not include contraband or property in the course of illegal transportation or trade.

3. Covered Causes Of Loss
   Covered Causes of Loss means Risks of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions.

4. Additional Coverage - Collapse
   We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

a. fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of people or personal property;

e. weight of rain that collects on a roof;

f. use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form

### B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   a. Governmental Action

      Seizure or destruction of property by order of governmental authority. But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form

CM 00 20 (Ed. 06/95) XS                    1

CM 00 20
(Ed. 06 95)

b. Nuclear Hazard

(1) any weapon employing atomic fission or fusion; or

(2) nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

c. War And Military Action

(1) war, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Delay, loss of use, loss of market or any other consequential loss

b. Dishonest or criminal act committed by:

(1) you, any of your partners, employees, directors, trustees, or authorized representatives;

(2) anyone else with an interest in the property, or their employees or authorized representatives; or

(3) anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such:

(1) persons are acting alone or in collusion with other persons; or

(2) acts occur during the hours of employment

This exclusion does not apply to:

(1) Covered Property that is entrusted to others who are carriers for hire; or

(2) acts of destruction by your employees. But theft by employees is not covered.

c Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

d. Unauthorized instructions to transfer property to any person or to any place

3. We will not pay for a "loss" caused by or resulting from any of the following But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss "

a Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the "loss."

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c Faulty, inadequate or defective:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) materials used in repair, construction, renovation or remodeling; or

CM 00 20 (Ed. 06/95) XS                    2

CM 00 20
(Ed. 06 95)

(4) maintenance;

of part or all of any property wher-
ever located

d. Collapse except as provided in the
Additional Coverage-Collapse section
of this Coverage Form.

e. Wear and tear, any quality in the prop-
erty that causes it to damage or de-
stroy itself, gradual deterioraton; in-
sects, vermin or rodents.

C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one
occurrence is the applicable Limit of Insurance
shown in the Declarations

D. DEDUCTIBLE

We will not pay for "loss" in any one occur-
rence until the amount of the adjusted "loss"
before applying the applicable Limits of Insur-
ance exceeds the Deductible shown in the
Declarations. We will then pay the amount of
the adjusted "loss" in excess of the Deduct-
ible, up to the applicable Limit of Insurance

E. ADDITIONAL CONDITIONS

The following conditions apply in addition to
the Commercial Inland Marine Conditions and
the Common Policy Conditions:

1. Coverage Territory

We cover property wherever located.

2. Coinsurance

All items that are covered but not individ-
ually listed and described must be insured
for their total value as to the time of
"loss" or you will incur a penalty

The penalty is that we will pay only the
proportion of any "loss" to these items
that the Limit of Insurance shown in the
Declarations for them bears to their total
value as of the time of "loss."

3. Additional Acquired Property

If during the policy period you acquire
additional property of a type already cov-
ered by this form, we will cover such
property for up to 30 days, but not be-
yond the end of the policy period. The
most we will pay in a "loss" is the lesser
of:

a 25% of the total Limit of Insurance
shown in the Declarations for that type
of property; or

b. $10,000

You will report such property within 30
days from the date acquired and will pay
any additional premium due. If you do not
report such property, coverage will cease
automatically 30 days after the date the
property is acquired or at the end of the
policy period, whichever occurs first.

F. DEFINITIONS

"Loss" means accidental loss or damage

CM 00 20 (Ed. 06/95) XS                    3



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL FINE ARTS COVERAGE FORM

Various provisions in this policy restrict coverage  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations The words "we," "us" and "our" refer to the Company providing this insurance

Other words and phrases that appear in quotation marks have special meaning  Refer to Section F - DEFINITIONS.

A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. Covered Property, as used in this Coverage Form, means:

a. your fine arts; and

b. fine arts of others that are in your care, custody or control; described in the Declarations.

2 Property Not Covered

Covered Property does not include:

a. property while on exhibition at fair grounds or on the premises of any national or international exposition; or

b  contraband, or property in the course of illegal transportation or trade.

3  Covered Causes Of Loss

Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions

4. Coverage Extension

Newly Acquired Property

a  We will cover other objects of art that you acquire during the policy period, but not beyond:

(1) 60 days; or

(2) the end of the policy period, whichever occurs first.

b. The most we will pay in a "loss" under this Coverage Extension is the lesser of:

CM 76 69 (Ed. 01/89) XS                          I

    (1) 25% of the scheduled property total Limit of Insurance shown in the Declarations; or

    (2) $25,000

c. You will report such property within 60 days from the date acquired and pay any additional premium that is due. If you do not report that property to us, coverage will end automatically at the earlier of:

    (1) 60 days after the date you acquire the property; or

    (2) the end of the policy period

The Additional Condition paragraph E 2 b , Coinsurance, does not apply to this Coverage Extension.

B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

    a. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form

    b. Nuclear Hazard

        (1) Any weapon employing atomic fission or fusion; or

        (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

    c. War and Military Action

        (1) War, including undeclared or civil war;

        (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

        (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

    d. Earth Movement

        (1) Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

CM 76 69 (Ed. 01/89) XS            2

(2) Volcanic Eruption, explosion or effusion  But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

(a) airborne volcanic blast or airborne shock waves;

(b) ash, dust or particulate matter; or

(c) lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

e. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) foundations, walls, floors or paved surfaces;

(b) basements, whether paved or not; or

(c) doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Delay, loss of use, loss of market or any other consequential loss

b. Dishonest acts by:

(1) you, your employees or authorized representatives; or

(2) anyone else with an interest in the property, or their employees or authorized representatives; or

(3) anyone entrusted with the property (except a carrier for hire).

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or whether or not such acts occur during the hours of employment.

CM 76 69 (Ed. 01/89) XS                          3

c. Any repairing, restoration or retouching of the Covered Property.

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

  a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss."

  b. Wear and tear, any quality in the property that causes it to damage or destroy itself, pollution damage, gradual deterioration; insects, vermin or rodents.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

1. Valuation

General Condition E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

  a. The agreed value of each item of property that is individually listed and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item. In the event of total loss we will pay the applicable Limit of Insurance (less deductible) for that item

  b The value of all other Covered Property, including newly acquired property, will be the least of the following amounts:

    (1) the acquisition cost of that property;

    (2) the market value of that property;

    (3) the amount for which you are liable, if the property of another;

    (4) the cost of reasonably restoring that property to its condition immediately before "loss"; or

    (5) the cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

2. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

  a. Coverage Territory

    We cover property wherever located within:

CM 76 69 (Ed. 01/89) XS                    4

(1) the United States of America;

(2) Canada

**b. Coinsurance**

All items that are covered but not individually listed and described must be insured for their total value as of the time of "loss" or you will incur a penalty.
The penalty is that we will pay only the proportion of any "loss" to these items that the Limit of Insurance shown in the Declarations for them bears to their total value as of the time of "loss."

**c. Packing and Unpacking**

You agree that Covered Property will be packed and unpacked by competent packers.

**d. Pair or Sets**

Loss Condition G Pair, Sets or Parts in the Commercial Inland Marine Conditions is replaced by the following:

(1) In case of total "loss" of any items that are part of a pair or set that is individually listed and described in the Declarations, we will pay the full Limit of Insurance shown in the Declarations for that pair or set. You will surrender to us the remaining items of the pair or set

(2) In case of "loss" to any part of a pair or set that is not individually listed and described in the Declarations, we may;

(a) repair or replace any part to restore the pair or set to its value before the "loss"; or

(b) pay the difference between the value of the pair or set before and after the "loss"

**e. Salvage**

Upon payment of a total "loss" to scheduled property, we are entitled to any salvage recovery.

**F. DEFINITIONS**

"Loss" means accidental loss or damage.

COMMERCIAL PROPERTY
CP 00 40 06 95

# LEGAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F. – DEFINITION

## A. COVERAGE

We will pay those sums that you become legally obligated to pay as damages because of direct physical loss or damage, including loss of use, to Covered Property caused by accident and arising out of any Covered Cause of Loss. We will have the right and duty to defend any "suit" seeking those damages. However, we have no duty to defend you against a "suit" seeking damages for direct physical loss or damage to which this insurance does not apply. We may investigate and settle any claim or "suit" at our discretion. But:

(1) The amount we will pay for damages is limited as described in Section C. Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the Limit of Insurance in the payment of judgments or settlements.

1. **Covered Property**

Covered Property, as used in this Coverage Form, means tangible property of others in your care, custody or control that is described in the Declarations or on the Legal Liability Coverage Schedule.

2. **Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

3. **Additional Coverage**

Supplementary Payments. We will pay, with respect to any claim or any "suit" against you we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by you at our request, including actual loss of earnings up to $100 a day because of time off from work.

d. All costs taxed against you in the "suit".

e. Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

4. **Coverage Extensions**

a. **Additional Insureds.** If the Named Insured shown in the Declarations is a partnership or corporation, throughout this Coverage Form, the words "you" and "your" include partners, executive officers, trustees, directors and stockholders of such partnership or corporation, but only with respect to their duties as such.

b. **Newly Acquired Organizations.** Throughout this Coverage Form, the words "you" and "your" also include any organization (other than a partnership or joint venture) you newly acquire or form and over which you maintain ownership or majority interest if there is no other similar insurance available to that organization.

This Coverage Extension ends:

(1) 90 days after you acquire or form the organization; or

(2) At the end of the policy period shown in the Declarations;

whichever is earlier.

This Extension does not apply to direct physical loss or damage that occurred before you acquired or formed the organization.

c. **Newly Acquired Property**

(1) You may extend the insurance that applies to Covered Property, as used in this Coverage Form, to apply to your liability for tangible property of others that comes under your care, custody or control after the beginning of the current policy period. This Extension is subject to the following:

  (a) All terms and Conditions of this Coverage Form.

  (b) Buildings must be intended for:

    (i) Similar use as the building described in the Declarations or on the Legal Liability Coverage Schedule; or

    (ii) Use as a warehouse.

    The most we will pay as the result of any one accident for loss or damage to the total of all buildings covered under this Extension is $250,000 at each building.

  (c) Personal property must be at a location:

    (i) That you own; or

    (ii) That is or comes under your care, custody or control;

    other than at fairs or exhibitions.

    The most we will pay as the result of any one accident for loss or damage to the total of all personal property covered under this Extension is $100,000 at each building.

(2) Insurance under this Extension for each item of property of others will end when any of the following first occurs:

  (a) This policy expires;

  (b) 30 days expire after the property has come under your care, custody or control; or

  (c) You report values to us.

  We will charge you additional premium for values reported from the date the property comes under your care, custody or control.

  This Extension does not apply to direct physical loss or damage that occurred before the property came under your care, custody or control.

**B. EXCLUSIONS AND LIMITATIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

The most we will pay in damages as the result of any one accident is the applicable Limit of Insurance shown on the Legal Liability Coverage Schedule, or in the Declarations

Payments under the Additional Coverage and the Newly Acquired Property Coverage Extension are in addition to the Limits of Insurance

The existence of one or more:

1. Additional Insureds, or

2. Newly Acquired Organizations,

does not increase the Limit of Insurance.

**D. LOSS CONDITIONS**

The following conditions apply in addition to the Commercial Property Conditions:

1. **Duties In The Event Of Accident, Claim Or Suit**

  a. You must see to it that we are notified promptly of any accident that may result in a claim. Notice should include:

    (1) How, when and where the accident took place; and

    (2) The names and addresses of any witnesses

    Notice of an accident is not notice of a claim.

  b. If a claim is made or "suit" is brought against you, you must see to it that we receive prompt written notice of the claim or "suit".

  c. You must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to you because of damage to which this insurance may also apply.

Copyright, ISO Commercial Risk Services, Inc., 1994

CP 00 40 06 95    □

d. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

2. **Legal Action Against Us**

No person or organization has a right under this Coverage Form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from you; or

b. To sue us on this Coverage Form unless all of its terms have been fully complied with

A person or organization may sue us to recover on an agreed settlement or on a final judgment against you obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

3. **Other Insurance**

You may have other insurance covering the same loss as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss. Our share is the proportion that the Limit of Insurance under this Coverage Form covering such loss bears to the Limits of Insurance of all insurance covering the loss.

4. **Transfer Of Rights Of Recovery Against Others To Us**

If you have rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. You must do nothing after loss to impair them. At our request, you will bring "suit" or transfer those rights to us and help us enforce them

E. **ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions.

1. **Amendment Of Commercial Property Conditions**

None of the Commercial Property Conditions apply to this Coverage Form, except:

a. Condition A., Concealment, Misrepresentation or Fraud;

b. Condition C., Insurance Under Two or More Coverages; and

c. Condition E., Liberalization.

2. **Bankruptcy**

Bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Coverage Form.

3. **Policy Period, Coverage Territory**

Under this Coverage Form:

a. We will pay for loss or damage caused by an accident that occurs:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory

b. The coverage territory is:

(1) The United States of America;

(2) Puerto Rico; and

(3) Canada.

4. **Separation Of Insureds**

The insurance under this Coverage Form applies separately to you and each additional insured, except with respect to the Limits of Insurance.

F. **DEFINITION**

"Suit" includes an arbitration proceeding to which you must submit or submit with our consent.

 Copyright, ISO Commercial Risk Services, Inc., 1994



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
ADDITIONAL COVERED PROPERTY

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
SELECT BUSINESS POLICY – BUILDING AND PERSONAL PROPERTY FORM

The following is withdrawn from PROPERTY NOT COVERED if an (" X ") is shown in parentheses in the Schedule below:

SCHEDULE*

| | Prem. No. | Bldg. No. | Description of Property |
|---|---|---|---|
| ( ) | | | The cost of excavations, grading, backfilling or filling |
| ( X ) | ALL | ALL | Foundations of buildings, structures, machinery or boilers if their foundations are below: <br> (1) The lowest basement floor; or <br> (2) The surface of the ground, if there is no basement. |
| ( ) | | | Underground pipes, flues, or drains |
| ( X ) | ALL | ALL | Pilings, piers, wharves or docks |
| ( ) | | | Fences outside of buildings |
| ( ) | | | Retaining walls that are not part of the building |
| ( ) | | | Bridges, roadways, walks, patios or other paved surfaces |
| ( ) | | | Vehicles or self-propelled machines (including aircraft or watercraft) that: <br><br> (1) Are licensed for use on public roads; <br> (2) Are operated principally away from the described premises; or <br><br> This paragraph does not apply to: <br><br> (a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse; <br> (b) Vehicles or self-propelled machines, other than autos, you hold for sale; or <br> (c) Rowboats or canoes out of water at the described premises; |
| ( ) | | | Animals |
| ( ) | | | Underground pipes, including underground tanks and connections. But underground flues and drains are not covered. |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

CP 14 10 (08/88)                    Page 1 of 1

CM 78 68 (Ed. 07 99)



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

## BUILDERS RISK PLUS
### TIME ELEMENT COVERAGE SUPPLEMENTAL DECLARATIONS

| NAMED INSURED: | Fraternal Property Management Association | POLICY PERIOD:<br>04/01/2004  to      04/01/2005 |
|---|---|---|

Insurance under Time Element Coverage applies to only those Coverages shown by ( X ) below.

**COVERAGES**

(X) 1. "Soft Costs"

    (X) a.  Interest on money borrowed to finance construction (including costs which directly result from renegotiation of construction loan(s)),
    (X) b. Advertising and promotional expenses.
    (X) c. Realty taxes and other assessments; license and percent fees.
    (X) d. Architectural or Engineering Supervisory or consulting fees.
    (X) e. Costs resulting from the renegotiation of your lease(s).
    ( ) f.

(X) 2. "Rental Value"

**LIMIT OF INSURANCE:**

The most we will pay for your amount of loss under this endorsement is:

1. $100,000    for "Soft Costs"
2. $ 50,000    for "Rental Value"

**DEDUCTIBLE:**    (X) $2,500        ( )   days

Locations Covered:

( ) All jobsites described in the Builders Risk Plus Declarations

OR

SB 86 96 (11/97)        Page 1 of 6

(X) The following jobsite only:  A    location while under constructi    or reconstruction that is listed on the statement of values on file with Hobbs group/Kirklin & Company, LLC at 12231 Emmet Street, Suite 5, Omaha, NE 68164 .

Words and phrases that appear in quotation marks have special meaning. Refer to Section F., DEFINITIONS, of this endorsement and of your Builders Risk Plus Coverage Form.

The following terms and conditions apply, in addition to all terms and conditions (except the Coinsurance, and Deductible provisions) of your Builders Risk Plus Coverage Form.

## COVERAGE

1.  "Soft Costs"

    When indicated by an " X " in the applicable parentheses of your Time Element Coverage Supplemental Declarations, we will pay your "soft costs" during the "period of delay in completion." Such "soft costs" must result from "loss" from a Covered Cause of Loss which delays the completion of the "project" beyond the "planned completion date."

    Our payment for your "soft costs" is subject to the terms and conditions of this  endorsement. Also, the amount we pay for items b., d., or f. (shown in the Supplemental Declarations) won't be more than your actual expense for each of these items prior to the "loss."

2.  "Rental Value"

    When indicated by an " X " in the applicable parentheses of your Time Element Coverage Supplemental Declarations, we will pay the amount by which your "rental value" is actually reduced during the "period of delay in completion." Such reduction in "rental value" must result from "loss" from Covered Cause of Loss which delays the completion of the "project" beyond the "planned completion date."

    But if your Builders Risk Plus policy was endorsed to permit occupancy and the building or structure was occupied for its intended purpose at the time of "loss," we will pay the amount by which your "rental value" is actually reduced during the "post-loss period of construction."

3.  Additional Coverages

    a.  Expense to Reduce the "Loss Amount"

        We will pay the necessary expense you incur during the "post-loss period of construction" if you would not have incurred such expense had there not been "loss" from any of the Covered Causes of Loss which delayed the completion of the "project" beyond the "planned completion date." But we will not pay more for your expense than the amount by which such expense reduces the "loss amount" we would have otherwise paid under this endorsement.

b. Civil Authority

We will pay the "loss amount" incurred by you during the first two consecutive weeks after the "planned completion date" when a civil authority prohibits access to your "jobsite." The denied access must result from "loss" by a Covered Cause of Loss to property at a location other than the jobsite described in your Time Element Coverage Supplemental Declarations.

## A. EXCLUSIONS

We will not pay for the "loss amount" that is directly or indirectly due to an increase in the "post-loss period of construction" caused by any of the following. Such "loss amount" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the following:

1. Interference by strikers or other persons affecting the:

   a. construction or repair of the Covered Property; or

   b. operation or use of the "project" if your Builders Risk Plus policy is endorsed to permit occupancy, and the building or structure was occupied for its intended purpose at the time of "loss."

2. Irregularities in production, shipment or transportation of any property to be used in the construction or repair of the Covered Property.

3. Suspension, lapse or cancellation of any lease, permit, license, contract or order.

4. Breach of contract, late or noncompliance with orders or penalties of any nature.

5. Weather conditions.

6. Deficiencies in the original construction designs, specifications or materials.

7. Enforcement of any law that:

   a. regulates the construction, use or repair, or requires the tearing down of any property;

   b. requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants."

8. Lack of funds or lack of work force.

## B. LIMITS OF INSURANCE

The most we will pay for the "loss amount" incurred by you is the Limit of Insurance shown in the Time Element Coverage Supplemental Declarations.

Any payment made under this endorsement is in addition to the applicable Limits of Insurance shown elsewhere in this policy.

SB 86 96 (11/97)                    Page 3 of 6

## C. DEDUCTIBLE

We will pay the amount of the adjusted "loss" in excess of the Deductible amounts shown in the Declarations, up to the applicable Limit of Insurance.

This deductible does not apply to insurance afforded under Section A 4., Additional Coverages.

## D. ADDITIONAL CONDITIONS

1. Your Duties in the Event of "Loss"

   You must do the following in the event of "loss" to Covered Property:

   a. Make every effort to meet the "planned completion date." This includes, but is not limited to:

      (1) resumption of, as soon as possible, all or any part of the construction or repair;
      (2) use of any machinery, equipment, supplies or materials that could reduce the "period of delay in completion"; and

      (3) resumption of, as soon as possible, the operation or use of any part of the "project," if your Builders Risk Plus policy states that permission to occupy is granted, and the building or structure was occupied for its intended purpose at the time of "loss."

   If you do not make every effort to meet the "planned completion date," or you do not resume the operation or use of any part of the "project" as soon as possible, we will only pay the "loss amount" that we would have otherwise paid if you had complied with the above conditions.

   b. Notify us of any payment you receive from others due to a delay in the completion of construction beyond the "planned completion date."

2. Determining the "Loss Amount"

   The "loss amount" will be determined based on:

   a. your actual and anticipated costs for the project had "loss" from any of the Covered Causes of Loss not occurred;

   b. Either:

      (1) your likely "rental value" during the "period of delay in completion" had "loss" from any of the Covered Causes of Loss not occurred; or

      (2) your likely "rental value" during the "post-loss period of construction" had "loss" from any of the Covered Causes of Loss not occurred, if your Builders Risk Plus policy states that permission to occupy is granted, and the building was occupied for its intended purpose at the time of "loss."

SB 86 96 (11/97)                    Page 4 of 6

c. your actual "rental valu.    before "loss" from any of the Cove    d Causes of Loss occurred, if your Builders' Risk Plus policy states that permission to occupy is granted, and the building was occupied for its intended purpose at the time of "loss";

d. other relevant sources of information that you must provide including, but not limited to:

    (1) your financial records and accounting procedures;

    (2) bills, invoices and other vouchers; and

    (3) deeds, liens and contracts.

e. any amounts by which the "loss amount" is reduced due to your failure to perform Your Duties in the Event of Loss outlined in this policy.

3. Liquidated Damages

If the construction contract for the "project" contains a clause that requires payments to you because of a delay in the completion of the "project" beyond the "planned  completion date," we will subtract the amount due from others, whether you have collected it or not, from the "amount of loss" we would have otherwise paid.

E. DEFINITIONS

"Loss Amount" means the sum of your actual "soft costs" or "rental value," as covered by this endorsement.

"Period of delay in completion" means the period of time that:

a. begins with the "planned completion date"; and

b. ends on the date when the "project" should be completed using reasonable speed and similar materials and workmanship.

"Planned completion date" means the date the "project" would be put into operation or use in the normal course of construction if "loss" from any of the Covered Causes of Loss had not occurred.

"Post-loss period of construction" means the period of time that:

a. begins with the date of the "loss" by any Covered Cause of Loss; and

b. ends on the date the "project" should be completed using reasonable speed and similar materials and workmanship.

"Project" means the total construction of all Covered Property at the jobsite or described in the Time Element Supplemental Declarations.

SB 86 96 (11/97)          Page 5 of 6

**"Rental value"** means the s    of:

a. the total rental income from the tenant occupancy of the completed "project," as furnished and equipped by you;

b. the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

c. the fair rental value of any portion of the completed "project" which would have been occupied by you.

But Rental Value does not include normal operating expenses which are discontinued as a result of a "loss."

**"Soft costs"** means your actual and necessary costs in excess of your actual and anticipated amount for the "project" consisting only of the following for which an " X " appears in the applicable parentheses of your Time Element Coverage Supplemental Declarations:

a. interest on money borrowed to finance construction of the Covered Property (including costs which directly result from renegotiation of construction loan(s) e.g. Loan commitment fees, including prepaid interest and points);

b. advertising and promotional expenses;

c. realty taxes and other assessments, license and permit fees;

d. architectural or engineering supervisory or consulting fees;

e. costs resulting from renegotiating your lease(s) including:

(1) legal, accounting and administration fees;

(2) commissions.

f. other as specified in the Time Element Coverage Supplemental Declarations.

Other Terms Remain The Same



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

HURRICANE DEDUCTIBLE FORM

This endorsement modifies insurance provided under the Select Business Policy coverage part.

The deductible for loss or damage in any occurrence as respects "hurricane" are:

### SCHEDULE

| Loc. No(s). | Bldg. No(s). | Deductible |
|---|---|---|
| All property in first tier counties from Texas to Virginia | | $10,000 |

The following is added to the deductible section as respects loss or damage caused by "Hurricane"

A. "Hurricane" is defined as:

   1. To be a windstorm that :

      a) Has sustained wind speed in excess of 74 miles per hour;

      or

      b) Has been declared by the National Weather Service to be a hurricane, typhoon or tropical cyclone.

   AND

   2. To include the time period:

      a) 72 hours prior to becoming a hurricane, typhoon or tropical cyclone

      and

      b) for the entire duration of the hurricane, typhoon or tropical cyclone

      and

      c) the 72 hours immediately following the downgrading of a hurricane, typhoon or tropical cyclone as declared by the National Weather Service.

Information required to complete this schedule on this endorsement will be shown in the declarations.

(10/01/2000)                    Page 1 of 1

COMMERCIAL INLAND MARINE
CM 00 01 09 00

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.
2. Give us prompt notice of the loss or damage. Include a description of the property involved.
3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.
8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.
10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.
2. We will not pay you more than your financial interest in the Covered Property.
3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.
4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

    Copyright, Insurance Services Office, Inc., 1999       □

5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

6. We will not be liable for any part of a loss that has been paid or made good by others.

## F. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## G. Pair, Sets Or Parts

1. Pair Or Set

   In case of loss or damage to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

   b. Pay the difference between the value of the pair or set before and after the loss or damage.

2. Parts

   In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

## J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance; or

   b. A business firm:

     (1) Owned or controlled by you; or

     (2) That owns or controls you.

This will not restrict your insurance.

## GENERAL CONDITIONS

## A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

    Copyright, Insurance Services Office, Inc., 1999    CM 00 01 09 00    □

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period**

We cover loss or damage commencing:

1. During the policy period shown in the Declarations; and

2. Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

Copyright, Insurance Services Office, Inc., 1999



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

FLOOD COVERAGE ENDORSEMENT

Your policy is amended as follows:

A. COVERAGE

1. Covered Causes Of Loss include:

a. Flood

Flood means a general and temporary condition of partial or complete inundation of normally dry land area from inland or tidal waters.

b. Surface Water & Mudslide

(1) Surface water means the unusual and rapid accumulation of water above the ground surface.

(2) Mudslide includes mudflow caused by surface water and is similar to a river of liquid and flowing mud on the surface of normally dry land area.

c. Tsunami

Tsunami means a large wave caused by earthquake or volcanic eruption.

d. Release of water impounded by a dam.

2. Limit of Insurance

(is shown only if it is different from the limit(s) for other Covered Causes of Loss). The most we will pay for water damage from a Covered Cause in any one "loss" is the lesser of the limit shown below or the limit in the Declarations.

Sublimits Premises Location

$5,000,000
$
$
$10,000 On business personal property at any other location not specifically identified above.
$5,000,000 In any one policy year.

CM 76 62 (Ed. 07 90)        page 1 of 3

3. Deductible: See Declarations Page for appropriate deductible based upon applicable flood zone.

Deductible: As respects your claim for "loss" to Covered Property caused by perils listed in paragraph 1. above, we will pay the amount of the adjusted "loss" in excess of the applicable deductible, or National Flood Insurance Program policy with limit equal to or greater than applicable policy deductible, up to the applicable Limit of insurance. This deductible applies per occurrence/per location.

B. EXCLUSIONS

1. We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Governmental Action

   Seizure or destruction of property by order of governmental authority.

   b. Nuclear Hazard

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   c. War and Military Action

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (2) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

2. Under this extension of coverage, we will not pay for "loss" caused by or resulting from:

   a. Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks on or into Covered Property (This does not include backup of sewers or drains which is a covered cause of loss under this policy).

   c. Landslide

   d. The failure of power or other utility service supplied to a covered location, however caused, if the failure occurs away from the covered location.

Special Exclusions: If your policy covers time element loss (such as loss of income, rental value, or extra expense). We will not pay for:

a. Any loss caused by or resulting from:

   (1) damage or destruction of "finished stock"; or

   (2) the time required to reproduce "finished stock."

CM 76 62 (Ed. 07 90)       page 2 of 3

This exclusion does not apply to extra expense coverage.

b: Any increase of loss caused by or resulting from:

    (1) delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

    (2) suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your business income during the "period of restoration."

c. Any extra expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

d. Any other consequential loss.

Other Terms Remain The Same

CM 76 62 (Ed. 07 90)     page 3 of 3



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

CM 76 61 (Ed. 11 99)

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.
EARTHQUAKE COVERAGE ENDORSEMENT

Your policy is amended as follows:

A. COVERAGE

   1. Covered Causes Of Loss include:

      a. Earthquake.

      b. Volcanic Eruption, meaning the eruption, explosion, or effusion of a volcano.

      c. Landslide

      All Earthquake shocks, Volcanic Eruptions or Landslides that occur within any 168 hour period will constitute a single Earthquake, Volcanic Eruption or Landslide. The expiration of this policy will not reduce the 168 hour period.

   2. Limit of Insurance

      (is shown only if it is different from the limit(s) for other Covered Causes of Loss). The most we will pay for loss caused by an Earthquake or Volcanic Eruption is the lesser of the limit shown below or the limit in the Declarations.

Sublimits    Premises Location

   $5,000,000.
   $
   $100,000 On property at any other location not specifically identified above.
   $5,000,000 In any one policy year.

   3. Deductible

      $25,000 (If different from deductible or shown on the Declarations page) for all property in all states except California.

      Percentage Deductible. 5% of the value of the Covered Property at the location(s) where the loss or damage occurs, but not less than $25,000 for all property in the state of California.

CM 76 61 (Ed. 11 99)        page 1 of 3

Deductible: As respects your claim for "loss" to Covered Property caused by Earthquake, Volcanic Eruption or Land __ie, we will pay the amount of the a__sted "loss" in excess of the applicable deductible up to the applicable Limit of Insurance.   The applicable deductible applies per occurrence/per location.

B.  EXCLUSIONS

1.  We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

  a.  Governmental Action

  Seizure or destruction of property by order of governmental authority.

  b.  Nuclear Hazard

  Nuclear reaction or radiation, or radioactive contamination, however caused.

  c.  War and Military Action

    (1)  war, including undeclared or civil war;

    (2)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3)  insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

2.  Under this extension of coverage, we will not pay for "loss" caused by or resulting from:

  a.  Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

  b.  Fire, explosion (other than volcanic explosion), tidal wave, tsunami, flood, surface water, water which backs up through sewers or drains, water below the surface of the ground (including that which flows, leaks or seeps on or into Covered Property), mudslide or mudflow, release of water impounded by a dam, even if attributable to an Earthquake, Volcanic Eruption or Landslide.

  c.  Any Earthquake, Volcanic Eruption or Landslide that begins before the inception of this insurance.

  d.  Earth movement other than Earthquake, such as landslide or earth sinking, rising or shifting. But if loss or damage by another Covered Cause of Loss results, we will pay for that resulting loss.

  e.  The cost to remove volcanic ash, dust or particulate matter that does not cause direct physical loss to Covered Property.

CM 76 61 (Ed. 11 99)          page 2 of 3

f.   Utility Service Failure

The failure of power or other utility service supplied to a covered location, however caused, if the failure occurs away from the covered locations.

3.  Special Exclusions: If your policy covers time element loss (such as loss of income, rental value, or extra expense).

We will not pay for:

(a)  Any loss caused by or resulting from:

   (1)  damage or destruction of "finished stock"; or

   (2)  the time required to reproduce "finished stock."

This exclusion does not apply to extra expense coverage.

(b)  Any increase of loss caused by or resulting from:

   (1)  delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (2)  suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your business income during the "period of restoration."

(c)  Any extra expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

(d)  Any other consequential loss.

Other Terms Remain The Same

CM 76 61 (Ed. 11 99)          page 3 of 3

COMMERCIAL INLAND MARINE
CM 00 66 06 95

# ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section E -- DEFINITIONS.

## A. COVERAGE

1. We will pay:

   a. All amounts due from your customers that you are unable to collect;

   b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   c. Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

   d. Other reasonable expenses that you incur to re-establish your records of accounts receivable;

   that result from Covered Causes of Loss to your records of accounts receivable

2. PROPERTY NOT COVERED

   Coverage does not apply to:

   a. Records of accounts receivable in storage away from the "premises" shown in the Declarations; or

   b. Contraband, or property in the course of illegal transportation or trade.

3. COVERED CAUSES OF LOSS

   Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to your records of accounts receivable except those causes of "loss" listed in the Exclusions.

4. ADDITIONAL COVERAGE – COLLAPSE

   We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

   a. Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation

   This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form

5. COVERAGE EXTENSION

   Removal

   If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of "loss", we will pay for "loss" while they are:

   a. At a safe place away from your "premises"; or

   b. Being taken to and returned from that place.

   This Coverage Extension is included within the Limit of Insurance applicable to the "premises" from which the records of accounts receivable are removed.

## B. EXCLUSIONS

1. We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. GOVERNMENTAL ACTION

      Seizure or destruction of property by order of governmental authority.

But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. NUCLEAR HAZARD**

    (1) Any weapon employing atomic fission or fusion; or

    (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

**c. WAR AND MILITARY ACTION**

    (1) War, including undeclared or civil war;

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for a "loss" caused by or resulting from any of the following:

**a.** Delay, loss of use, loss of market or any other consequential loss.

**b.** Dishonest or criminal act committed by:

    (1) You, any of your partners, employees, directors, trustees, or authorized representatives;

    (2) Anyone else with an interest in the property, or their employees or authorized representatives; or

    (3) Anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**c.** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding

**d.** Bookkeeping, accounting or billing errors or omissions.

**e.** Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

    (1) Programming errors or faulty machine instructions;

    (2) Faulty installation or maintenance of data processing equipment or component parts;

    (3) An occurrence that took place more than 100 feet from your "premises"; or

    (4) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**f.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**g.** Unauthorized instructions to transfer property to any person or to any place

**3.** We will not pay for "loss" that requires any audit of records or any inventory computation to prove its factual existence

**4.** We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**a.** Weather conditions But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss"

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, siting;

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    Copyright, Insurance Services Office, Inc , 1994    CM 00 66 06 95

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property wherever located.

d. Collapse except as provided in the Additional Coverage – Collapse section of this Coverage Form.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. ADDITIONAL CONDITIONS

### 1. DETERMINATION OF RECEIVABLES

General Condition E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

a. If you cannot accurately establish the amount of accounts receivable outstanding as of the time of "loss", the following method will be used:

(1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the "loss" occurs; and

(2) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the "loss" occurred or for any demonstrated variance from the average for that month

b. The following will be deducted from the total amount of accounts receivable, however that amount is established:

(1) The amount of the accounts for which there is no "loss";

(2) The amount of the accounts that you are able to re-establish or collect;

(3) An amount to allow for probable bad debts that you are normally unable to collect; and

(4) All unearned interest and service charges.

## 2. RECOVERIES

The following is added to Commercial Inland Marine Loss Condition I. Recoveries:

You will pay us the amount of all recoveries you receive for a "loss" paid by us. But any recoveries in excess of the amount we have paid belong to you

3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

### a. COVERAGE TERRITORY

We cover records of accounts receivable:

(1) Within your "premises"; and

(2) Away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

(a) The United States of America;

(b) Puerto Rico; and

(c) Canada.

### b. COINSURANCE

All accounts receivable, except those in transit, must be insured for at least 80% of their total value as of the time of "loss" or you will incur a penalty.

The penalty is that we will pay only the proportion of any "loss" that the Limit of Insurance shown in the Declarations for Coverage Applicable at All Locations bears to 80% of the total value of all accounts receivable at all locations as of the time of "loss". This penalty will not apply to records of accounts receivable in transit, interest charges, excess collection expenses or expenses to re-establish your records of accounts receivable.

### c. PROTECTION OF RECORDS

Whenever you are not open for business, and except while you are actually using the records, you must keep all records of accounts receivable in receptacles that are described in the Declarations.

## E. DEFINITIONS

1. "Loss" means accidental loss or damage.

2. "Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

COMMERCIAL INLAND MARINE
CM 00 67 09 00

# VALUABLE PAPERS AND RECORDS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F — Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss.

1. Covered Property, as used in this Coverage Form, means "valuable papers and records" that are your property or property of others in your care, custody or control.

2. **Property Not Covered**

   Covered Property does not include:

   a. Property not specifically declared and described in the Declarations if such property cannot be replaced with other property of like kind and quality;

   b. Property held as samples or for delivery after sale;

   c. Property in storage away from the "premises" shown in the Declarations; or

   d. Contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes Of Loss**

   Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE to Covered Property except those causes of loss listed in the Exclusions.

4. **Additional Coverage — Collapse**

   We will pay for direct loss or damage caused by or resulting from risks of direct physical loss or damage involving collapse of all or part of a building or structure caused by one or more of the following:

   a. Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; all only as insured against in this Coverage Form;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

5. **Coverage Extensions**

   a. Removal

      If you give us written notice within 10 days of removal of your "valuable papers and records" because of imminent danger of loss or damage, we will pay for loss or damage while it is:

      (1) At a safe place away from your "premises"; or

      (2) Being taken to and returned from that place.

      This Coverage Extension is included within the Limits of Insurance applicable to the "premises" from which the Covered Property is removed.

b. **Away From Your Premises**

We will pay up to $5,000 for loss or damage to Covered Property while it is away from your "premises".

But if a higher Limit of Insurance is specified in the Declarations, the higher limit will apply.

The limit for this Coverage Extension is additional Insurance

B. **Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Governmental Action**

   Seizure or destruction of property by order of governmental authority

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   b. **Nuclear Hazard**

   (1) Any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination from any other cause But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

   c. **War And Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

Exclusions B.1.a. through B.1.c. apply whether or not the loss event results in widespread damage or affects a substantial area

2. We will not pay for loss or damage caused by or resulting from any of the following:

   a. Delay, loss of use, loss of market or any other consequential loss

   b. Dishonest or criminal act committed by:

   (1) You, any of your partners, employees, directors, trustees, or authorized representatives;

   (2) A manager or a member if you are a limited liability company;

   (3) Anyone else with an interest in the property, or their employees or authorized representatives; or

   (4) Anyone else to whom the property is entrusted for any purpose

   This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

   This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

   c. Errors or omissions in processing or copying

   But we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

   d. Electrical or magnetic injury, disturbance or erasure of electronic recordings.

   But we will pay for direct loss or damage caused by lightning.

   e. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

   f. Unauthorized instructions to transfer property to any person or to any place

   g. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

Copyright, Insurance Services Office, Inc., 1999        CM 00 67 09 00        □

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

   a. Weather Conditions But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance;

      of part or all of any property wherever located.

   d. Collapse except as provided in the Additional Coverage -- Collapse Section of this Coverage Form.

   e. Wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration; insects, vermin or rodents

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. Deductible

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

## E. Additional Conditions

1. Valuation -- Specifically Declared Items

   The following is added to General Condition F. Valuation in the Commercial Inland Marine Conditions:

   The value of each item of property that is specifically declared and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item.

2. Recoveries

   The following is added to Loss Condition H. Recovered Property in the Commercial Inland Marine Conditions:

   If either you or we recover any property after loss settlement, that party must give the other prompt notice At your option, the property will be returned to you. If so, your loss or damage will be readjusted based on the amount you received for the property recovered, with allowance for recovery expenses incurred

3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

   a. Coverage Territory

      We cover property:

      (1) Within your "premises"; and

      (2) Away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

         (a) The United States of America (including its territories and possessions);

         (b) Puerto Rico; and

         (c) Canada.

   b. Protection Of Records

      Whenever you are not open for business, and except while you are actually using the property, you must keep all "valuable papers and records" in receptacles that are described in the Declarations.

## F. Definitions

1. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

   But "valuable papers and records" does not mean "money" or "securities", converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

2. "Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

3. "Money" means:

   a. Currency, coins and bank notes whether or not in current use; and

   b. Travelers checks, register checks and money orders held for sale to the public.

4. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets, revenue and other stamps whether or not in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

but does not include "money".

Copyright, Insurance Services Office, Inc , 1999
CM 00 67 09 00      □



RSUI Group, Inc
945 East Paces Ferry Rd
Suite 1890
Atlanta, GA 30326

IL 09 03

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### MINE SUBSIDENCE SCHEDULE

This endorsement provides supplementary information to be used with one or more of the following as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND
HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES
COVERAGE FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement providing such coverage:

### SCHEDULE

| Coverage Part Or Coverage Form | Prem. No.     Bldg. No. | Limit of Insurance | Additional Premium |
|---|---|---|---|
| SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM | All covered structures in the Illinois counties of; | As per schedule on file. | Included |

| | |
|---|---|
| Bond | Marion |
| Bureau | Marshall |
| Christian | Menard |
| Clinton | Mercer |
| Douglas | Montgomery |
| Franklin | Peoria |
| Fulton | Perry |
| Gallatin | Putnam |
| Grundy | Randolph |
| Jackson | Rock Island |
| Jefferson | St. Clair |
| Knox | Saline |
| LaSalle | Sangamon |
| Logan | Tazewell |
| McDonough | Vermilion |
| Macoupin | Washington |
| Madison | Williamson |

Total

IL 09 03 (04/98)              Page 1 of 1

INTERLINE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

A. **Coverage**

Section A. is replaced by the following:

A. **Mine Subsidence Coverage**

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

1. **Covered Property**

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers;

d. Underground pipes, flues and drains.

2. **Property Not Covered**

Covered Property does not include:

a. Land; or

b. Personal Property.

3. **Covered Cause Of Loss**

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure. It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

4. **Additional Coverage**

**DEBRIS REMOVAL**

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence

B. **Exclusions**

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

**EARTH MOVEMENT**

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting.

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part.

C. **Limits Of Insurance**

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations. However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### MINE SUBSIDENCE SCHEDULE

This endorsement provides supplementary information to be used with one or more of the following as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND
HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES
COVERAGE FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement providing such coverage:

### SCHEDULE

| Coverage Part Or Coverage Form | Prem. No.    Bldg. No. | Limit of Insurance | Additional Premium Included |
|---|---|---|---|
| **SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM** | All covered structures in the Indiana counties of; | As per schedule on file. | |
| | Clay           Owen | | |
| | Crawford    Parke | | |
| | Daviess      Perry | | |
| | Dubois       Pike | | |
| | Fountain     Posey | | |
| | Gibson       Putnam | | |
| | Greene       Spencer | | |
| | Knox          Sullivan | | |
| | Lawrence   Vanderburgh | | |
| | Martin        Vermillion | | |
| | Monroe      Vigo | | |
| | Montgomery Warren | | |
| | Orange      Warrick | | |

Total

IL 09 03 (04/98)                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

**A. Coverage**

Section A. is replaced by the following:

**A. Mine Subsidence Coverage**

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

**1. Covered Property**

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers;

d. Underground pipes, flues and drains.

**2. Property Not Covered**

Covered Property does not include:

a. Land; or

b. Personal Property.

**3. Covered Cause Of Loss**

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure. It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

**4. Additional Coverage**

**DEBRIS REMOVAL**

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence.

**B. Exclusions**

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

**EARTH MOVEMENT**

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting.

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part

**C. Limits Of Insurance**

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations. However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

Copyright, Insurance Services Office, Inc., 1998

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies.

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

     Copyright, Insurance Services Office, Inc., 1998



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

IL 09 03 (Ed. 0

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**MINE SUBSIDENCE SCHEDULE**

This endorsement provides supplementary information to be used with one or more of the following
as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND
HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES
COVERAGE FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement
providing such coverage:

**SCHEDULE**

| Coverage Part Or Coverage Form | Prem. No. | Bldg. No. | Limit of Insurance | Additional Premium |
|---|---|---|---|---|
| SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM | All covered structures in the Kentucky counties of; | | As per schedule on file. | Included |

| | |
|---|---|
| Bell | Johnson |
| Boyd | Knott |
| Breathitt | Knox |
| Butler | Lawrence |
| Carter | Lee |
| Christian | Leslie |
| Clay | Martin |
| Daviess | McCreary |
| Edmonson | McLean |
| Elliott | Morgan |
| Floyd | Muhlenberg |
| Greenup | Ohio |
| Hancock | Perry |
| Harlan | Union |
| Henderson | Webster |
| Hopkins | Whitley |
| Jackson | Wolfe |

Total

IL 09 03 (04/98)                 Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# KENTUCKY CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

A. Coverage

Section A. is replaced by the following:

A. Mine Subsidence Coverage

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

1. Covered Property

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers; and

d. Underground pipes, flues and drains.

2. Property Not Covered

Covered Property does not include:

a. Land; or

b. Personal Property.

3. Covered Cause Of Loss

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure.  It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

4. Additional Coverage

DEBRIS REMOVAL

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence.

B. Exclusions

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

EARTH MOVEMENT

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting.

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part.

C. Limits Of Insurance

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations. However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

Copyright, Insurance Services Office, Inc., 1998

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies.

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998



RSUI, Inc.
945 East Paces Ferry Rd
Suite 1890
Atlanta, GA  30326

IL 09 03 (E

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
MINE SUBSIDENCE SCHEDULE

This endorsement provides supplementary information to be used with one or more of the following as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES COVERAGE FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement providing such coverage:

### SCHEDULE

| Coverage Part Or Coverage Form | Prem. No.    Bldg. No. | Limit of Insurance | Additional Premium |
|---|---|---|---|
| SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM | All covered structures in the West Virginia counties of; | As per schedule on file. | Included |

| | |
|---|---|
| Barbour | Mercer |
| Boone | Mineral |
| Braxton | Mingo |
| Brooke | Monongalia |
| Clay | Nicholas |
| Doddridge | Ohio |
| Fayette | Pocahontas |
| Gilmer | Preston |
| Grant | Putnam |
| Greenbrier | Raleigh |
| Hancock | Randolph |
| Harrison | Summers |
| Kanawha | Taylor |
| Lewis | Tucker |
| Lincoln | Tyler |
| Logan | Upshur |
| Marion | Wayne |
| Marshall | Webster |
| Mason | Wetzel |
| McDowell | Wyoming |

Total

IL 09 03 (04/98)                          Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

A. **Coverage**

Section A. is replaced by the following:

A. **Mine Subsidence Coverage**

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

1. **Covered Property**

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers; or

d. Underground pipes, flues and drains.

2. **Property Not Covered**

Covered Property does not include:

a. Land; or

b. Personal Property.

3. **Covered Cause Of Loss**

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure. It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

4. **Additional Coverage**

DEBRIS REMOVAL

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence

B. **Exclusions**

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

EARTH MOVEMENT

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part.

C. **Limits Of Insurance**

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998

*This Endorsement Changes The Policy. Please Read It Carefully.*

## ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

This policy does not apply to any loss, demand, claim or suit arising out of or related in any way to asbestos or asbestos-containing materials.

The company shall have no duty of any kind with respects to any such loss, demand, claim or suit.

RSG 96013 1003



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  JUAN ORTEGA
     jco@alfordclausen.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:      1/4/2007 2:58:06 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  HILB, ROGAL & HOBBS WHOLESAL (PRO SE)
     CORPORATION SERVICE CO
     2711 CENTERVILLE RD/400
     WILMINGTON, DE 19808

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:     1/4/2007 2:58:06 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: KIRKLIN & COMPANY, LLC    (PRO SE)
2711 CENTERVILLE RD
STE. 400
WILMINGTON, DE 19808

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:        1/4/2007 2:58:06 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BAKER MATTHEW MICHAEL
     mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:     1/4/2007 2:58:06 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  CERVERA N J
    ncervera@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:     1/4/2007 2:58:06 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: FARLEY KAREN DIANNE
kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:     1/4/2007 2:58:06 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:     1/4/2007 2:58:06 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  ORTEGA JUAN C
     jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/4/2007 2:58:06 PM

Notice Date:    1/4/2007 2:58:06 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



ELECTRONICALLY FILED
1/5/2007 2:20 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE & METRA HUGHES, d/b/a )
HISTORICAL RENTALS, INC., )
                                       )
      Plaintiffs, )
                                         )    CIVIL ACTION NUMBER:
v.                             )    CV 06-246-RWB
                                       )
GAB ROBINS NORTH AMERICA, )
INC. and TROY RHOADES; HILB, )
ROGAL & HOBBS WHOLESALE )
INSURANCE SERVICES, INC.; )
KIRKLIN & CO., LLC, a/k/a )
HRH/KIRKLIN & CO., LLC and )
RSUI GROUP, INC. )
                                       )
      Defendants. )

## HRH/KIRKLIN AND COMPANY, L.L.C.
## ANSWER TO PLAINTIFFS' COMPLAINT AND AMENDED COMPLAINT

COME NOW HRH/Kirklin and Company, L.L.C., ("HRH"), and responds to Plaintiffs' Complaint and Amended Complaint as follows:

## STATEMENT OF THE PARTIES

1.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

2.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

3.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

4.     Denied.

5.     For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

6.     Denied.

7.     For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 1

8.     No response required.

9.     For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

10.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

11.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

12.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

13.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

14.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

15. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and therefore it is denied.

## COUNT 2

16. No response required.

17. Denied.

18. Denied.

19. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 3

20. No response required.

21. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

22. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 4

23. No response required.

24. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

25. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

26.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

27.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 5

28.    No response required.

29.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

30.    Denied.

31.    Denied.

32.    Denied.

## AFFIRMATIVE DEFENSES

1.    This Defendant avers Plaintiffs' complaint fails to state claims for which relief can be granted and demands strict proof thereof.

2.    This Defendant avers Plaintiffs' claims are barred by the applicable statutes of limitations.

3.    This Defendant avers Plaintiffs' claims are barred by contributory negligence and/or assumption of the risk.

4.    This Defendant avers superseding and/or intervening causes, including, but not limited to, a failure of Plaintiffs to perform under the terms of its

contract.

5.     There is no causal connection or relationship between any alleged negligence, fraud and breach of contract on the part of HRH and the Plaintiffs' alleged damages.

6.     This Defendant pleads that it is not guilty of the matters and things alleged in Plaintiffs' complaint and demands strict proof thereof.

7.     This Defendant pleads failure to mitigate damages.

8.     This Defendant pleads waiver.

9.     This Defendant pleads claims are barred by the loss of privity as between HRH and Donnie and Metra Hughes, d/b/a Historical Rentals, Inc.

10.     This Defendant pleads accord and satisfaction.

11.     This Defendant reserves its rights to amend its answer until all discovery has been completed.

_____ /s/ Tom Burgess _____
Tom Burgess (BUR011)
Attorney for HRH/Kirklin & Co., L.L.C.

**OF COUNSEL:**
Burgess & Hale, L.L.C.
505 North 20th Street, Suite 300
Birmingham, Alabama 35203
Telephone (205) 715-4466; Fax; (205) 715-4454

## CERTIFICATE OF SERVICE

I hereby certify that on **January 5, 2007** I have served a copy of the above and foregoing on counsel for all parties by:

_____    Facsimile transmission;

_____    Hand delivery;

_____    Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to:

___✓___    Using the CM/ECF system which will send notification of such to the following:

N. J. Cervera, Esq.
Matthew Baker, Esq.
Cervera, Ralph & Reeves, LLC
914 South Brundidge Street
Troy, Alabama 36081
(334) 566-0116

Juan C. Ortego, Esq.
Alford, Clausen & McDonald
Suite 5000 St. Louis Center
Mobile, Alabama 36608
(251) 432-1600/Fax: (251) 432-1700

James S. Lloyd, Esq.
Karen D. Farley, Esq.
Taylor, Gray & Whitehead, P.C.
2501 Twentieth Place North, Ste. 300
Birmingham, Alabama 35203
(205) 967-8822/ Fax: 967-2389

_____/s/ Tom Burgess_____
OF COUNSEL



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  TOM BURGESS
     tburgess@burgesshale.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:     1/5/2007 2:21:00 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BAKER MATTHEW MICHAEL
     mbaker@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:      1/5/2007 2:21:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BURGESS TOM
     tburgess@burgesshale.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:     1/5/2007 2:21:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: CERVERA N J
ncervera@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:     1/5/2007 2:21:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: FARLEY KAREN DIANNE
kfarley@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:        1/5/2007 2:21:00 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:    1/5/2007 2:21:00 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  ORTEGA JUAN C
      jco@alfordclausen.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following answer was FILED on 1/5/2007 2:21:00 PM

Notice Date:      1/5/2007 2:21:00 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt gov



ELECTRONICALLY FILED
1/10/2007 4:30 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE AND METRA HUGHES, d/b/a     *
HISTORICAL RENTALS, INC.,     *
    *
      Plaintiffs,     *
    *       NO  CV-2006-246-RWB
vs     *
    *
GAB ROBINS NORTH AMERICA, INC.,     *
et al.,     *
    *
      Defendants.     *

### NOTICE OF SERVICE OF DISCOVERY

COME NOW the Defendant, RSUI Indemnity Company and gives notice to this

Honorable Court of service of the following discovery upon counsel for Plaintiff:

1      Defendant's Interrogatories to Plaintiff; and

2      Defendant's Request for Production to Plaintiff

HELEN JOHNSON-ALFORD (ALF002)
JUAN C  ORTEGA (ORT001)
Attorneys for Defendant, RSUI Group

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St  Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)

<u>CERTIFICATE OF SERVICE</u>

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

N J Cervera, Esq
Matthew Baker, Esq.
CERVERA, RALPH & REEVES, LLC
914 South Brundidge Street
Troy, AL 36081

James S. Lloyd, Esq
Karen D. Farley, Esq
LLOYD, GRAY & WHITEHEAD, P.C
2501 Twentieth Place North, Suite 300
Birmingham, AL 35223

Tom Burgess, Esq
BURGESS & HALE, L L C
505 North 20th Street, Suite 300
Birmingham, AL 35203

Done this 10th day of January, 2007.

COUNSEL

2



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  JUAN ORTEGA
jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:      1/10/2007 4:30:42 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BAKER MATTHEW MICHAEL
     mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:      1/10/2007 4:30:42 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BURGESS TOM
     tburgess@burgesshale.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:     1/10/2007 4:30:42 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  CERVERA N J
     ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:     1/10/2007 4:30:42 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  FARLEY KAREN DIANNE
     kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:     1/10/2007 4:30:42 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:     1/10/2007 4:30:42 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: ORTEGA JUAN C
jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 1/10/2007 4:30:42 PM

Notice Date:      1/10/2007 4:30:42 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov

| **STATE OF ALABAMA**<br>Unified Judicial System | Revised 2/14/05 | **Case No.** |
|---|---|---|
| 55-PIKE | ☐ District Court ☑ Circuit Court | CV200600024600 |

| **DONNIE HUGHES, ETALS  VS  GAB ROBINS**<br>**NORTH AMERICA, INC, ETAL** | **CIVIL MOTION COVER SHEET**<br>*Name of Filing Party:*  D005 - RSUI GROUP, INC |
|---|---|

| *Name, Address, and Telephone No. of Attorney or Party If Not Represented*<br><br>JUAN ORTEGA<br>ONE ST. LOUIS CENTRE, SUITE 5000<br>MOBLE, AL 36602<br><br>*Attorney Bar No. :*  ORT001 | ☐ Oral Arguments Requested |
|---|---|

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| | ☐ Disburse Funds |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Extension of Time |
| | ☐ In Limine |
| ☐ Other _____ | ☐ Joinder |
| pursuant to Rule _____ ($50.00) | ☐ More Definite Statement |
| | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| ☐ Local Court Costs $ _____ | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☑ Other    Notice of Constitutional Challenge |
| | pursuant to Rule N/A    (Subject to Filing Fee) |

| Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship ☐ | Date:<br>1/12/2007 1:34:17 PM | Signature of Attorney or Party:<br>/s/ JUAN ORTEGA |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee



ELECTRONICALLY FILED
1/12/2007 1:36 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE AND METRA HUGHES, d/b/a     *
HISTORICAL RENTALS, INC ,           *
                                  *

      Plaintiffs,                 *
                                  *       NO. CV-2006-246-RWB

vs                               *

GAB ROBINS NORTH AMERICA, INC ,   *
et al ,                             *
                                  *

      Defendants               *

## NOTICE OF CONSTITUTIONAL CHALLENGE

COMES NOW RSUI Indemnity Company ("RSUI"), a named defendant in the above-styled action, by and through counsel, and in compliance with Alabama Code § 6-6-227 (1975), hereby gives notice to the Attorney General for the State of Alabama of its constitutional challenges to the award of punitive damages under Alabama substantive law and procedures, including the tort reform provisions governing the award and review of punitive damages in civil actions in this state  As grounds therefore, Defendant RSUI sets forth the following:

1    RSUI has filed an answer to Plaintiff's First Amended Complaint in this cause challenging the award of punitive damages under the laws and statutes of this State  Attached hereto and incorporated herein as if set out in full is a copy of RSUI's Answer. Exhibit "1"

2    RSUI states that Alabama's tort reform statutes governing punitive damages, including Alabama Code § 6-11-20, *et seq*  (1975), do not remedy the constitutional deficiencies asserted in its answer to Plaintiff's First Amended Complaint, and this notice should be construed as a constitutional challenge to

those statutory provisions on all the grounds stated in RSUI's Answer to

Plaintiff's First Amended Complaint. *See* Exhibit "1"

Respectfully submitted,

HELEN JOHNSON ALFORD (ALF002)
JUAN C. ORTEGA (ORT001)
Attorneys for Defendant, RSUI Group

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

N.J Cervera, Esq
Matthew Baker, Esq.
CERVERA, RALPH & REEVES, LL.C
914 South Brundidge Street
Troy, AL 36081

James S. Lloyd, Esq
Karen D Farley, Esq.
LLOYD, GRAY & WHITEHEAD, P.C
2501 Twentieth Place North, Suite 300
Birmingham, AL 35223

Honorable Troy R. King
Attorney General
Alabama State House
11 South Union Street, 3rd Floor
Montgomery, AL 36130

Tom Burgess, Esq
BURGESS & HALE, L L C
505 North 20th Street, Suite 300
Birmingham, AL. 35203

Done this 11TH day of January, 2007

COUNSEL

2

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE AND METRA HUGHES, d/b/a     *
HISTORICAL RENTALS, INC ,          *
                                  *
     Plaintiffs,                  *         NO CV-2006-246-RWB
                                    *
vs                                   *
                                    *
GAB ROBINS NORTH AMERICA, INC.,    *
et al ,                                *
                                    *
     Defendants                *
                                    *

## ANSWER OF RSUI INDEMNITY COMPANY TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Defendant RSUI Indemnity Company (hereinafter "RSUI"), and in response to Plaintiff's First Amended Complaint and each cause of action contained therein states as follows:

### FIRST DEFENSE

Responding to the First Amended Complaint paragraph by paragraph, and reserving all defenses, Defendant states as follows:

### STATEMENT OF THE PARTIES

1      Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 1 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same

2      Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 2 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same



3    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 3 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

4    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 4 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

5    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 5 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same

6    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 6 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same

7    RSUI admits that it is a Delaware corporation and doing business in Alabama Defendant denies the remaining allegations contained in paragraph 7 of Plaintiff's First Amended Complaint

## COUNT 1

8    Defendant reasserts and incorporates its responses to paragraphs 1 - 7 as set forth above

9    Defendant admits that an insurance policy effective April 1, 2004, existed which provided insurance to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others  Defendant denies the remaining allegations contained in paragraph 9 of Plaintiff's First Amended Complaint

2

10    Defendant admits that an insurance policy exists which sets forth the terms and obligations of Defendant to pay for damage done to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others. Defendant denies the remaining allegations contained paragraph 10 of Plaintiff's First Amended Complaint.

11    Defendants admits that GAB was the adjusting company for Plaintiff's claims under said policy. Defendant denies the remaining allegations contained paragraph 11 of Plaintiff's First Amended Complaint.

12    Defendant admits that a named storm made landfall on September 16, 2004. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 12 of Plaintiff's First Amended Complaint; therefore, Defendant denies same.

13    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 13 of Plaintiff's First Amended Complaint; therefore, Defendant denies same.

14    Denied

15    Denied

Defendant denies the allegations contained in the last unnumbered paragraph contained in Count One of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner.

## COUNT 2

16 - 19  The allegations contained in paragraphs 16 - 19, including the last unnumbered paragraph of Count Two, are not directed to this Defendant; thus, no response is required. To the

3

extent a response is required, Defendant denies same, and denies that Plaintiff is entitled to recover from it in any manner

## COUNT 3

20    Defendant reasserts and incorporates its responses to paragraphs 1 - 19 as set forth above

21    Defendant admits that Plaintiffs made a claim with agents of RSUI. Defendant denies the remaining allegations contained in paragraph 21 of Plaintiff's First Amended Complaint

22    Denied

Defendant denies the allegations contained in the last unnumbered paragraph contained in Count Three of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner

## COUNT 4

23    Defendant reasserts and incorporates its responses to paragraphs 1 - 22 as set forth above

24    Defendant admits that Plaintiff reported damage to their property to an agent of Defendant RSUI   Defendant denies the remaining allegations contained in paragraph 24 of Plaintiff's First Amended Complaint

25    The allegations contained in paragraph 25 of Plaintiff's First Amended Complaint are not directed to this Defendant; thus, no response is required  To the extent a response is required, Defendant admits that Defendant GAB acted as an adjuster  Defendant denies the remaining allegations contained in paragraph 25 of Plaintiff's First Amended Complaint

4

26    The allegations contained in paragraph 26 of Plaintiff's First Amended Complaint are not directed to this Defendant; thus, no response is required   To the extent a response is required, Defendant denies same

27    Denied

## COUNT 5

28    Defendant reasserts and incorporates its responses to paragraphs 1 - 27 as set forth above

29    Defendant admits that Plaintiff's reported damage to their property to Defendant GAB  Defendant denies the remaining allegations contained in paragraph 29 of Plaintiff's First Amended Complaint

30    Defendant admits that an insurance policy exists which sets forth the terms and obligations of Defendant to pay for damage done to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others  Defendant denies the remaining allegations contained paragraph 30 of Plaintiff's First Amended Complaint

31    Defendant admits Plaintiff's claims arising out of a date of loss of September 23, 2004, did not meet Plaintiff's deductible under the policy; therefore, no payment has been made

32    Denied

Defendant denies the allegations contained in the last unnumbered paragraph of Count Five of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner

## FIRST DEFENSE

RSUI committed no act that proximately caused or contributed to any damages sustained by Plaintiff

## SECOND DEFENSE

The injuries and damages complained of herein resulted from the acts or omissions of persons or entities other than RSUI  Alternatively, said acts or omissions or persons or entities other than RSUI constitute an independent, superseding cause to the injuries and damages complained of herein; hence, Plaintiff ought not to recover

## THIRD DEFENSE

RSUI has not breached any duty owed to Plaintiff by virtue of any applicable Alabama statute

## FOURTH DEFENSE

RSUI has not breached any duty owed to Plaintiff by virtue of any applicable state or federal rules, regulations, or standards

## FIFTH DEFENSE

Each and every claim stated in Plaintiff's First Amended Complaint is barred in whole or in part by the applicable statute of limitations and/or the doctrine of latches

## SIXTH DEFENSE

RSUI is entitled to a set-off and credit for any and all sums paid to or on behalf of Plaintiff by any other party or collateral source as a result of or related to this lawsuit

## SEVENTH DEFENSE

RSUI pleads accord and satisfaction

## EIGHTH DEFENSE

RSUI pleads all applicable portions of policy of insurance issued by RSUI to Fraternal Property Management Association, policy number NHD332474 for the policy period April 1,

6

2004, through April 1, 2005   Said policy is attached hereto as Defendant RSUI's Exhibit "A" to

its Answer herein

## NINTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

B    Appraisal

If we and you disagree on the value of the property, the amount of Net Income and
operating expense, or the amount of physical loss, either may make written demand for
an appraisal of the loss   In this event, each party will select a competent and impartial
appraiser   The two appraisers will select an umpire   If they cannot agree, either may
request that selection be made by a judge of a court having jurisdiction   The appraisers
will state separately the value of the property, the amount of Net Income and operating
expense, and the amount of physical loss   If they fail to agree, they will submit their
differences to the umpire   A decision agreed to by any two will be binding   Each party
will:

1      pay its chosen appraiser; and
2      bear the other expenses of the appraisal and umpire equally

## TENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

C    Duties in the Event of Loss or Damage

1      You must see that the following are done in the event of loss or damage to
Covered Property:

a      Notify the police if a law may have been broken

b      Give us prompt notice of the loss or damage   Include a description of the
property involved

7

c    As soon as possible, give us a description of how, when, and where the loss or damage occurred

d    Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered Property from such loss, for consideration in a settlement of the claim  However, we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a Covered Cause of Loss  This will not increase the Limit of Insurance  Also, if feasible, set damage to property aside and in the best possible order, for examination

e    At our request, give us complete inventories of the damaged and undamaged property  Include quantities, costs, values and amount of loss claim.

f    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records  Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records

g    Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request  We will supply you with the necessary forms

h    Cooperate with us in the investigation or settlement of the claim

## ELEVENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97) which states that:

Loss Conditions:

F    Other Insurance:

1    You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Covered Part  If you do, we will pay our share of the covered loss or damage  Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis

2    If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not  But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage

## TWELFTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

I    Vacancy

    2    Vacancy provisions

    If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

        a    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

            (1)    vandalism;
            (2)    sprinkler leakage, unless you have protected the system against freezing;
            (3)    building glass breakage;
            (4)    water damage;
            (5)    theft; or
            (6)    attempted theft.

## THIRTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

K    Valuation:

    2    If replacement cost is indicated in the Declarations as the method valuation we will determine the value of Covered Property in the event of loss or damage as follows:

9

a    At replacement cost (without deduction for deprecation) as of the time of loss or damage except as provided in b through j below:

j    The cost of repair or replacement does not include any increase costs attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

### FOURTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C    Exclusions under amount:

1    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss

a    Ordinance or law

The enforcement of any ordinance or law:

(1)    regulating construction; use or repair of any property; or
(2)    requiring the tearing down of any property including the costs of removing its' debris

This exclusion, ordinance or law, applies whether the loss results from:

(1)    an ordinance or law that is enforced even if the property has not been damaged; or
(2)    the increased cost incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolishing of property or removal of its debris, following a direct physical loss or damage to that property

### FIFTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C    Exclusions:

10

2    We will not pay for loss or damage caused by or resulting from any of the following:

d    (1)    Wear and tear;
     (2)    rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality and property that causes it to damage or destroy itself;

### SIXTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C    Exclusions:

3    We will not pay for the loss or damage caused by or the resulting from any of the following 3a through 3c  But if an excluded Cause of Loss that is listed in 3a through 3c  results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

c    Faulty, inadequate or defective:

(2)    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

of part or all of any property own on off the described premises.

### SEVENTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

H    Deductible:

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations  We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance  The Deductible clause does not apply to Business Income

### EIGHTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form AES 119B (10/96), which states that:

Deductible Amounts:

$10,000 Tenant vandalism

### NINETEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form AES 119B (10/96), which states that:

Valuation:

Building: Replacement Cost – Agreed Amount; Contents:   Replacement Cost, 90% Coinsurance

### TWENTIETH DEFENSE

Insurance companies are the only defendant subjected to punitive damages under Alabama Law for breach of the implied duty of good faith which exists in every contract – thus creating a distinction that is under-inclusive and not rationally tailored to accomplish a legitimate state interest; wherefore, the imposition of punitive damages would violate the equal protection clause of the Fifth and Fourteenth Amendments of the United States Constitution and deprive RSUI of the right to equal protection under the law as provided in Article I, Section 1, 6 and 22 of the Alabama Constitution of 1901

### TWENTY-FIRST DEFENSE

The imposition of punitive damages against an insurance company for asserting non-frivolous legal defenses to an insurance claim violates the, "right of access to the Courts," and the, "right to seek assistance of counsel," as guaranteed by the First and Fourteenth Amendments

12

to the United States Constitution and Article I, Sections 1, 6, and 22 of the Alabama Constitution of 1901

## TWENTY-SECOND DEFENSE

Plaintiffs have asserted tort claims that allow for the imposition of punitive damages in certain cases. The imposition of punitive damages in this case would violate the due process clause of Amendments V and XIV to the United States Constitution and Article I, Section 6 of the Alabama Constitution of 1901 because the imposition of punitive damages would violate this defendant's right to substitutive due process.

## TWENTY-THIRD DEFENSE

The imposition of punitive damages under Alabama law would violate the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution, and Articles 1, 6 and 22 of the Alabama Constitution, in each of the following ways:

(a) Alabama law permits the imposition of unlimited punitive damages that are vastly disproportionate to any actual or compensatory injury, thereby violating the 14th Amendment of the U S Constitution

(b) Disproportionate punitive damages constitute an arbitrary and capricious taking of property that is unjustified by any rational governmental interest, thereby violating the 5th and 14th Amendments of the U.S Constitution

(c) The award of any punitive damages without specific standards to guide the jury's discretion in determining the amount of damages is contrary to due process under the 14th Amendment of the U S Constitution

(d) Alabama does not provide a reasonable limit on the amount of any punitive damages award, thus violating the 14th Amendment of the U S Constitution

(e) The substantive standards of liability under which punitive damages are sought in this case are ambiguous, subjective, and not reasonably ascertainable, and are thus "void for vagueness" under the 14th Amendment of the U S Constitution

13

(f)    Alabama fails to provide a clear, objective and consistent appellate standard for post-verdict review of punitive damages thus violating the 5th and 14th Amendments of the United States Constitution

(g)    Alabama law permits civil punishment upon a standard of proof less than that required for the imposition of criminal sanctions

(h)    Alabama law permits joint and several punishment of defendants who are guilty of different acts and degrees of culpability

(i)    Alabama law permits multiple awards of punitive damages for the same alleged act or omission

## TWENTY-FOURTH DEFENSE

Alabama's punitive damages law violates the Fifth Amendment guarantee against self-incrimination under the U.S. Constitution because said claim is penal in nature, while defendant is required to disclose documents and/or other evidence against its interest under the rules of discovery and evidence

## TWENTY-FIFTH DEFENSE

The award of any damages under the allegations of this complaint would violate the prohibition against laws that impair the obligations of contracts in violation of the Contract Clause, Article I Sec. 10 cl. 1, of the United States Constitution and Article 1, Section 22, of the Constitution of Alabama, in that the claims are in derogation express terms contained in the insurance policy made basis of this action and contractually agreed upon by defendant and the named insured

## TWENTY-SIXTH DEFENSE

Pursuant to ALA. CODE § 6-11-21, there is a cap on the amount of punitive damages recoverable in this action

14

## TWENTY-SEVENTH DEFENSE

Pursuant to ALA CODE § 6-11-21, RSUI is not liable for any portion of any award of punitive damages wherein there have been no express findings that RSUI engaged in conduct as defined in ALA CODE § 6-11-20  RSUI is not jointly and severally liable to Plaintiffs for any award of punitive damages based upon the conduct of any other defendant

## TWENTY-EIGHTH DEFENSE

The imposition of punitive damages against RSUI in an amount exceeding any actual and potential harm by an excessive and/or unconstitutional ratio violates RSUI's due process rights as guaranteed by the United States Constitution.

## TWENTY-NINTH DEFENSE

The imposition of punitive damages under Alabama's current system fails to provide fair notice to RSUI that the alleged wrongful conduct could subject RSUI to punishment and also fails to provide fair notice of the severity of the punishment that the State could impose through an award of punitive damages  This lack of fair notice violates RSUI's due process rights, both procedural and substantive, as guaranteed by the United States Constitution

## THIRTIETH DEFENSE

The imposition of punitive damages against RSUI in this case, if any, violates RSUI's due process rights as guaranteed by the United States Constitution because the award of punitive damages is excessive in light of the following criteria: (1) the degree of reprehensibility of the RSUI's alleged wrongful conduct; (2) the disparity between the harm or potential harm and the punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in other cases

15

### THIRTY-FIRST DEFENSE

The procedure for determining punitive damages specified under Alabama law violates RSUI's right to due process, and otherwise violates the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, because the procedure for determining punitive damages under Alabama law does not provide meaningful guidance to a jury in the determination of an appropriate punitive damages award and does not constrain a jury or otherwise reduce the risk of an arbitrary or grossly excessive punitive damages verdict

### THIRTY-SECOND DEFENSE

Any award of punitive damages in this case would violate the Eighth Amendment to the U S Constitution as an excessive fine  Also, any award of punitive damages in this case would violate Article I, § 15 of the Alabama Constitution as an excessive fine

### THIRTY-THIRD DEFENSE

The imposition of punitive damages violates the Fourth, Fifth and Fourteenth Amendments to the U S Constitution, as well as Article I, §§ 6 and 15 of the Constitution of Alabama by failing to provide clear, distinct, and adequate guidelines as to each of the following: (a) the general standards applicable to such an award; (b) the appropriate and specific standards and/or burdens of proof for such an award; (c) the amount of a punitive award; (d) the appropriate procedures for a punitive award; (e) the appellate standard of review of an award of punitive damages; (f) trifurcation of the proceedings with respect to whether compensatory liability and damages should be imposed, whether punitive damages should be imposed, and what amount of punitive damages should be imposed in order to prevent the inappropriate admission of evidence regarding punitive damages

16

### THIRTY-FOURTH DEFENSE

RSUI contends that the limits on punitive damages imposed by ALA CODE § 6-11-21 should apply as a matter of rule and established public policy without alteration or amendment by the Court and that § 6-11-21 is constitutional  RSUI further contends that the principle of deference to the legislature's will should prevail with respect to the limits imposed on punitive damages awards and that any holding that does not so defer violates the separation of powers clauses of the Constitution of the United States and the Constitution of the State of Alabama

### THIRTY-FIFTH DEFENSE

Plaintiffs have failed to state a claim for which relief can be granted

### THIRTY-SIXTH DEFENSE

All allegations contained in Plaintiffs' First Amended Complaint that are not specifically admitted are denied

### THIRTY-SEVENTH DEFENSE

Plaintiff is not entitled to recovery to the extent that any damages were caused by Plaintiff's failure to mitigate damages

### THIRTY-EIGHTH DEFENSE

RSUI reserves the right to amend its answer and assert such additional defenses as may be available upon the development of facts in the discovery process or otherwise in the course of this litigation and under applicable substantive law

HELEN JOHNSON ALFORD (ALF002)
JUAN C. ORTEGA (ORT001)
Attorneys for Defendant, RSUI Group

17

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

N J Cervera, Esq
Matthew Baker, Esq.
CERVERA, RALPH & REEVES, LLC
914 South Brundidge Street
Troy, AL 36081

James S Lloyd, Esq
Karen D Farley, Esq
LLOYD, GRAY & WHITEHEAD, P C
2501 Twentieth Place North, Suite 300
Birmingham, AL 35223

Done this 4TH day of JANUARY , 2007

COUNSEL

18



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  JUAN ORTEGA
jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 1/12/2007 1:36:33 PM

D005 RSUI GROUP, INC
NOTICE OF CONSTITUTIONAL CHALLENGE

[Attorney: ORTEGA JUAN C]

Notice Date:     1/12/2007 1:36:33 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  BAKER MATTHEW MICHAEL
mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 1/12/2007 1:36:33 PM

D005 RSUI GROUP, INC
NOTICE OF CONSTITUTIONAL CHALLENGE
[Attorney: ORTEGA JUAN C]

Notice Date:     1/12/2007 1:36:33 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  BURGESS TOM
     tburgess@burgesshale.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following matter was FILED on 1/12/2007 1:36:33 PM

**D005 RSUI GROUP, INC**
**NOTICE OF CONSTITUTIONAL CHALLENGE**
[Attorney: ORTEGA JUAN C]

Notice Date:      1/12/2007 1:36:33 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:  CERVERA N J
     ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

**IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA**

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following matter was FILED on 1/12/2007 1:36:33 PM

**D005 RSUI GROUP, INC**
**NOTICE OF CONSTITUTIONAL CHALLENGE**
[Attorney: ORTEGA JUAN C]

Notice Date:     1/12/2007 1:36:33 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00
Judge: ROBERT W BARR

To:  FARLEY KAREN DIANNE
     kfarley@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 1/12/2007 1:36:33 PM

D005 RSUI GROUP, INC
NOTICE OF CONSTITUTIONAL CHALLENGE
[Attorney: ORTEGA JUAN C]

Notice Date:      1/12/2007 1:36:33 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

Judge: ROBERT W BARR

To:   LLOYD JAMES S
      jlloyd@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 1/12/2007 1:36:33 PM

D005 RSUI GROUP, INC
NOTICE OF CONSTITUTIONAL CHALLENGE
[Attorney: ORTEGA JUAN C]

Notice Date:       1/12/2007 1:36:33 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda peacock@alacourt gov



**AlaFile E-Notice**

55-CV-2006-000246.00
Judge: ROBERT W BARR

To: ORTEGA JUAN C
jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following matter was FILED on 1/12/2007 1:36:33 PM

D005 RSUI GROUP, INC
NOTICE OF CONSTITUTIONAL CHALLENGE
[Attorney: ORTEGA JUAN C]

Notice Date:      1/12/2007 1:36:33 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES and METRA    )
HUGHES, d/b/a HISTORICAL     )
RENTALS, INC.,                )
                              )
    Plaintiffs,          )
                              )     CASE NO. CV-2006-246-RWB
v.                    )
                              )
GAB ROBINS NORTH AMERICA,   )
INC., et al.,              )
                              )
    Defendants.        )

### ACCEPTANCE AND WAIVER

TROY KING, Attorney General of the State of Alabama, acknowledges service of the Notice of Constitutional Challenge in the above-styled cause pursuant to §6-6-227 *Code of Alabama*, 1975 (Attached). The Attorney General, having filed this Acceptance and Waiver in this action, hereby waives any further service upon him of any pleadings, discovery and other matters filed in this cause and presently waives the right to be heard.

Respectfully submitted,

TROY KING, KIN047
ATTORNEY GENERAL

ROSA H. DAVIS, DAV043
ASSISTANT ATTORNEY GENERAL

JAN 2007
FILED
Brenda Meadows Peacock
Court Clerk
Pike Co. Ala

## CERTIFICATE OF SERVICE

I hereby certify that I have this 19th day of January, 2007, served a copy of the foregoing

by first-class United States Mail, postage prepaid and addressed upon the following:

Helen Johnson Alford, Esquire
Juan C. Ortega, Esquire
Alford, Clausen & McDonald, L.L.C.
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602

N.J. Cervera, Esquire
Matthew Baker, Esquire
Cervera, Ralph & Reeves, L.L.C.
914 South Brundidge Street
Troy, Alabama 36081

James S. Lloyd, Esquire
Karen D. Farley, Esquire
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223

Tom Burgess, Esquire
Burgess & Hale, L.L.C.
505 North 20th Street, Suite 300
Birmingham, Alabama 35203

ROSA H. DAVIS, DAV043
ASSISTANT ATTORNEY GENERAL

**ADDRESS OF COUNSEL:**
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130-0152
334-242-7300
334-353-8235 (Fax)



§6-6-227. Persons to be made parties; rights of persons not parties.

All persons shall be made parties, who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party and shall be entitled to be heard; and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard. (Act 1935, No 355, p. 777; Code 1940, T.7, § 166 )





ELECTRONICALLY FILED
2/13/2007 2:18 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.:  CV-06-246** |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC., TROY RHOADES, HILB, | ) | |
| ROGAL & HOBBS WHOLESALE | ) | |
| INSURANCE SERVICES, INC., | ) | |
| KIRKLIN & CO., LLC, A/K/A | ) | |
| HRH/KIRKLIN & CO., LLC and RSUI | ) | |
| GROUP, INC. | ) | |
| | ) | |
| **Defendants.** | ) | |

### NOTICE OF SERVICE OF DISCOVERY

TO:    Clerk of Court, Pike County Circuit Court

Please take notice that Defendants, GAB Robins North America, Inc. and Troy Rhoades have served upon counsel of record, the following:

(X)    Defendant GAB Robins North America, Inc.'s Interrogatories to the Plaintiff, Donnie Hughes

(X)    Defendant GAB Robins North America, Inc.'s Interrogatories to the Plaintiff, Metra Hughes

(X)    Defendant GAB Robins North America, Inc.'s Request for Production of Documents to Plaintiff, Donnie Hughes

Dated:  February 13, 2007

*s/Karen D. Farley*
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendants, GAB Robins
North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:    jlloyd@lgwpc.com
kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties by electronic transmission using the AlaFile Court filing system and by placing a copy of same in the United States Mail, properly addressed and correct postage affixed, this the 13th day of February, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Email:  mbaker@troycable.net
        ncervera@troycable.net
Telephone:    334-566-0116
Facsimile:    334-566-4073
*(Counsel for DONNIE AND METRA HUGHES d/b/a HISTORICAL RENTALS, INC.)*

J. Thomas Burgess, Jr., Esq.
Burgess & Hale, LLC
Financial Center
505 20th St N Ste 300
Birmingham, Alabama 35203-4629
Email:  tburgess@burgesshale.com
Telephone:    (205) 715-4466
Facsimile:    (205) 715-4454
*(Counsel for HILB, ROGAL & HOBBS WHOLESALE INSURANCE SERVICES, INC. and KIRKLIN & COMPANY, LLC)*

Juan C. Ortega, Esq.
Alford, Clausen & McDonald, LLC
1 Saint Louis St Ste 5000
Mobile, Alabama 36602-3929
Email:  jco@alfordclausen.com
Telephone:    (251) 432-1600
Facsimile:    (251) 432-1700
*(Counsel for RSUI GROUP, INC.)*

/s/Karen D. Farley
Of Counsel

**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KAREN FARLEY
     kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:     2/13/2007 2:18:54 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BAKER MATTHEW MICHAEL
    mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:      2/13/2007 2:18:54 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BURGESS TOM
     tburgess@burgesshale.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:     2/13/2007 2:18:54 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: CERVERA N J
    ncervera@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS   VS   GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:     2/13/2007 2:18:54 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: FARLEY KAREN DIANNE
     kfarley@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:     2/13/2007 2:18:54 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: LLOYD JAMES S
jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:     2/13/2007 2:18:54 PM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  ORTEGA JUAN C
      jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following discovery was FILED on 2/13/2007 2:18:54 PM

Notice Date:      2/13/2007 2:18:54 PM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



ELECTRONICALLY FILED
2/19/2007 8:47 AM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES,<br>d/b/a HISTORICAL RENTALS, INC., | )<br>)<br>) |
|     Plaintiffs, | )<br>) |
| v. | )<br>)   Civil Action No.: CV-06-246<br>) |
| GAB ROBINS NORTH AMERICA,<br>INC., TROY RHOADES, HILB,<br>ROGAL & HOBBS WHOLESALE<br>INSURANCE SERVICES, INC.,<br>KIRKLIN & CO., LLC, A/K/A<br>HRH/KIRKLIN & CO., LLC and RSUI<br>GROUP, INC. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|     Defendants. | )<br>) |

### NOTICE OF SERVICE OF DISCOVERY

TO:    Clerk of Court, Pike County Circuit Court

Please take notice that Defendants, GAB Robins North America, Inc. and Troy Rhoades have served upon counsel of record, the following:

(X)    Defendant GAB Robins North America, Inc.'s Request for Production of Documents to Plaintiff, Metra Hughes

Dated: February 19, 2007

s/Karen D. Farley
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendants, GAB Robins
North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:    jlloyd@lgwpc.com
           kfarley@lgwpc.com

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties by electronic transmission using the AlaFile Court filing system and by placing a copy of same in the United States Mail, properly addressed and correct postage affixed, this the 19th day of February, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Email:  mbaker@troycable.net
        ncervera@troycable.net
Telephone:    334-566-0116
Facsimile:    334-566-4073
*(Counsel for DONNIE AND METRA HUGHES d/b/a HISTORICAL RENTALS, INC.)*

J. Thomas Burgess, Jr., Esq.
Burgess & Hale, LLC
Financial Center
505 20th St N Ste 300
Birmingham, Alabama 35203-4629
Email: tburgess@burgesshale.com
Telephone:    (205) 715-4466
Facsimile:    (205) 715-4454
*(Counsel for HILB, ROGAL & HOBBS WHOLESALE INSURANCE SERVICES, INC. and KIRKLIN & COMPANY, LLC)*

Juan C. Ortega, Esq.
Alford, Clausen & McDonald, LLC
1 Saint Louis St Ste 5000
Mobile, Alabama 36602-3929
Email: jco@alfordclausen.com
Telephone:    (251) 432-1600
Facsimile:    (251) 432-1700
*(Counsel for RSUI GROUP, INC.)*

/s/Karen D. Farley
Of Counsel



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  KAREN FARLEY
     kfarley@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:     2/19/2007 8:47:43 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: BAKER MATTHEW MICHAEL
mbaker@troycable.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:     2/19/2007 8:47:43 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  BURGESS TOM
      tburgess@burgesshale com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:     2/19/2007 8:47:43 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  CERVERA N J
     ncervera@troycable.net

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

**DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL**
**55-CV-2006-000246.00**

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:     2/19/2007 8:47:43 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To: FARLEY KAREN DIANNE
    kfarley@lgwpc.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:    2/19/2007 8:47:43 AM

BRENDA PEACOCK
CIRCUIT COURT CLERK
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:  LLOYD JAMES S
     jlloyd@lgwpc.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
55-CV-2006-000246.00

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:      2/19/2007 8:47:43 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov



**AlaFile E-Notice**

55-CV-2006-000246.00

To:   ORTEGA JUAN C
        jco@alfordclausen.com

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

### DONNIE HUGHES, ETALS  VS  GAB ROBINS NORTH AMERICA, INC, ETAL
### 55-CV-2006-000246.00

The following discovery was FILED on 2/19/2007 8:47:43 AM

Notice Date:       2/19/2007 8:47:43 AM

**BRENDA PEACOCK**
**CIRCUIT COURT CLERK**
PIKE COUNTY, ALABAMA
120 WEST CHURCH STREET
TROY, AL 36340

334-566-4622
brenda.peacock@alacourt.gov

# EXHIBIT

# B



### Department of State

I certify the attached is a true and correct copy of the Articles of Incorporation of HISTORICAL RENTALS INC, a corporation organized under the laws of the State of Florida, filed on August 25, 1997, as shown by the records of this office

The document number of this corporation is P97000073391

Given under my hand and the
Great Seal of the State of Florida
at Tallahassee, the Capitol, this the
Twenty-second day of October, 1997

*Sandra B. Mortham*

Sandra B. Mortham
Secretary of State

CR2E022 (2-95)

FILED
97 AUG 25 AM 11 36
STATE
FLORIDA

CERTIFICATE OF INCORPORATION

-of-

HISTORICAL RENTALS, INC.

WE, THE UNDERSIGNED, hereby associate ourselves together for the purpose of becoming a corporation under the laws of the State of Florida, by and under the provisions of the Statutes of the said State of Florida.

ARTICLE I

The name of this corporation shall be:

HISTORICAL RENTALS, INC.

ARTICLE II

The corporation may engage in any activity or business permitted under the laws of the United States and of the State of Florida.

ARTICLE III

The maximum number of shares of capital stock that this corporation is authorized to have outstanding at any one time is FIVE HUNDRED (500) shares of common stock, having a par value of ONE ($1.00) DOLLAR PER SHARE

ARTICLE IV

The amount of capital with which this corporation will begin business shall be the sum of not less than FIVE HUNDRED ($500.00) DOLLARS.

ARTICLE V

This corporation shall exist perpetually unless sooner dissolved according to law.

ARTICLE VI

The initial street address of the principal office of the corporation shall be:

1817 Bacom Point Road

Pahokee, Florida 33476

-1-

Jan 25 07 12:29p                                                                p.4

ARTICLE VII

The number of Directors of this corporation shall be at least one (1) and no more than five (5).

ARTICLE VIII

The names and street addresses of the members of the first Board of Directors of this Corporation are as follows:

Metra R. Hughes

1897 Bacom Point Road

Pahokee, Florida 33476

Teddy L. Hughes

1897 Bacom Point Road

Pahokee, Florida 33476

ARTICLE IX

The names and street addresses of the persons signing these Articles of Incorporation as subscriber is as follows:

Metra R. Hughes

1897 Bacom Point Road

Pahokee, Florida 33476

Teddy L. Hughes

1897 Bacom Point Road

Pahokee, Florida 33476

ARTICLE X

The corporate existence of this corporation shall begin on the date the Articles of Incorporation are filed of record.

IN WITNESS WHEREOF, the undersigned, Metra R. Hughes AND Teddy L. Hughes both being natural persons, competent to contract, have hereunto set their hands and seals this 6th day of August 19 97

X _____ (SEAL)

X _____ (SEAL)

STATE OF FLORIDA )
                 )SS
COUNTY OF Palm Beach )

BEFORE ME the undersigned Notary Public of the State of Florida personally appeared Metra R. Hughes and Teddy L. Hughes to me well known and known to me to be the individuals described in and who executed the foregoing Articles of Incorporation, and they acknowledged before me that they executed the same freely and voluntarily for the purpose therein expressed.

WITNESS my hand and official seal this 6th day of August 19 97

RICHARD I. HUFFINGTON
[illegible notary stamp]

_____
Notary Public, State of Florida
My commission expires:

-2-



CERTIFICATE DESIGNATING PLACE OF BUSINESS OR DOMICILE FOR THE SERVICE OF PROCESS WITHIN FLORIDA, NAMING AGENT UPON WHOM PROCESS MAY BE SERVED

IN COMPLIANCE WITH SECTION 607.325 FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED:

FIRST THAT _____
                        MECHANICAL RENTALS, INC.
                        (Name of Corporation)

WITH ITS PLACE OF BUSINESS AT   1097 Bacom Point Road    Pahokee   Florida   33476
                                (Business Address, City and State)

HAS NAMED   Richard L. McKerrow
            (Name of Registered Agent)

LOCATED AT   2911 Fast Main Street      P.O. Box 617
             (Street Address and Number Of Building,
             Post Office Box Addresses ARE NOT Acceptable)

CITY OF   Pahokee
          (City)

_____ — STATE OF FLORIDA AS ITS AGENT TO ACCEPT SERVICE OF PROCESS WITHIN FLORIDA.

SIGNATURE X _____ (Helen B. Hyden)
                 (Corporate Officer)

TITLE   President

DATE   08-06-97

HAVING BEEN NAMED TO ACCEPT SERVICE OF PROCESS FOR THE ABOVE STATED CORPORATION AT THE PLACE DESIGNATED IN THIS CERTIFICATE, I HEREBY AGREE TO ACT IN THIS CAPACITY, AND I FURTHER AGREE TO COMPLY WITH THE PROVISIONS OF ALL STATUTES RELATIVE TO THE PROPER AND COMPLETE PERFORMANCE OF MY DUTIES, AND I ACCEPT THE DUTIES AND OBLIGATIONS OF SECTION 607.325 FLORIDA STATUTES.

SIGNATURE X _____
                 (Registered Agent)
                 Richard L. McKerrow

DATE   08-06-97

BUREAU OF CORPORATE RECORDS, P.O. BOX 6127, TALLAHASSEE, FL 32314

* There is a filing fee of $2.00 for this certificate)

A

P97000073391

DATE____August 6, 1997

SECRETARY OF STATE
CORPORATION DIVISION
STATE OF FLORIDA
TALLAHASSEE, FLORIDA 32304

RE:  Historical Rentals Inc.
           (Name of Corporation)

GENTLEMEN:

ENCLOSED HEREWITH ARE THE ARTICLES OF INCORPORATION TOGETHER

WITH A COPY OF SAID ARTICLES FOR   Historical Rentals, Inc.
                                        (Name of Corporation)

AND OUR CHECK IN THE AMOUNT OF 70.00 AS FOLLOWS:

Return To:              FILING FEE           $15.00
                        CHARTER TAX
Richard L. Heffernan, P.A.   REGISTERED AGENT
Certified Public Accountant  CERTIFIED COPY
P.O. Box 817
2011 E. Main Street          TOTAL         $122.50
Pahokee, FL 33476

                        RESPECTFULLY SUBMITTED,

561-924-7554                  (Individual's Name)

                        Historical Rentals, Inc.
                             (Name of Corporation)

AUG 1 8 1997







ELECTRONICALLY FILED
11/2/2006 1:10 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| **Plaintiffs**; | ) | |
| | ) | |
| v. | ) | Civil Action No.:  CV-06-246 |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC. and TROY RHODES, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT GAB ROBINS NORTH AMERICA, INC.'S MOTION TO DISMISS

COMES NOW the Defendant, GAB Robins, North America, Inc., (Hereinafter referred to as "GAB Robins") pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u> and moves this Court for entry of an Order dismissing the claims against Defendant GAB Robins in the Plaintiffs' complaint on the grounds that the Plaintiffs have failed to state a claim upon which relief may be granted.  In support thereof, Defendant GAB Robins shows unto the Court as follows:

1. On or about September 22, 2006, the Plaintiffs Donnie and Metra Hughes d/b/a Historical Rentals, Inc. filed suit in the Circuit Court of Pike County, Alabama against GAB Robins North America, Inc. and Troy Rhodes.

2. The Complaint sets forth various causes of action, including the following:

   a. Breach of Contract;

   b. Fraudulent Misrepresentation;

   c. Fraudulent Suppression; and

   d. Bad Faith.

3.  Specifically, in the Complaint, the Plaintiffs, Donnie and Metra Hughes, allege that on or about April 1, 2004 the Plaintiffs entered into an insurance contact with Defendant, GAB Robins, by and through its alleged agent, Defendant Troy Rhodes. The Complaint alleges further that said agreement contained terms, by which Defendant GAB Robins, allegedly agreed to insure Plaintiffs' property, which Plaintiffs intended for rental or lease for a term of one year. The Complaint alleges further that by the terms of said agreement, Defendant GAB Robins allegedly agreed to pay for damage done to Plaintiffs' property that is to be used for rental or lease purposes.

4.  Plaintiffs allege further that said property was damaged on September 16, 2004 by Hurricane Ivan and suffered additional damage on September 23, 2004. Plaintiffs allege further that they promptly notified Defendant GAB Robins of the damage to said property.

5.  Plaintiffs also allege that on or about January 6, 2005 Defendant GAB Robins notified Plaintiff that Defendant GAB Robins had no intention of paying for the cost of repair, thereby allegedly breaching said agreement. Plaintiffs allege damages consisting of the cost of repairs for said property and loss of income from said property.

6.  Defendant GAB Robins is not an insurance company nor does it provide insurance benefits to any individual or entity. (Exhibit A - Affidavit of Thomas Santangelo, Esquire). GAB Robins does not underwrite and issue insurance policies. (Exhibit A). Furthermore, GAB Robins provides services

for loss adjusting, appraisals and the third party administration of claims, but is not an insurer. (Exhibit A).

7.    Pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>, Plaintiffs claims for breach of contract, fraudulent misrepresentation, fraudulent suppression and bad faith against Defendant GAB Robins are due to be dismissed for failure to state a claim upon which relief can be granted. As GAB Robins does not underwrite insurance policies, it could not have entered into an insurance contract with the Plaintiffs. Therefore, the Plaintiffs cannot maintain any cause of action for breach of an insurance contract, bad faith failure to pay on an insurance claim or fraud in the making of an insurance contract against GAB Robins.

WHEREFORE, PREMISES CONSIDERED, Defendant GAB Robins North America, Inc. respectfully requests that this Honorable Court enter an Order dismissing all claims brought by the Plaintiffs against Defendant GAB Robins North America, Inc. pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>.

Respectfully submitted this the 1st day of November, 2006.

<u>s/Karen D. Farley</u>
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendant, GAB Robins
North America, Inc.

<u>OF COUNSEL</u>:
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North,
Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822

Facsimile:     205-967-2380
Email:          jlloyd@lgwpc.com
                 kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System, by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 1st day of November, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:     334-566-0116
Facsimile:     334-566-4073
Email:          mbaker@troycable.net
                 ncervera@troycable.net

_s/Karen D. Farley_____
Of Counsel



ELECTRONICALLY FILED
11/2/2006 1:10 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

# EXHIBIT A

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, ) | |
| d/b/a HISTORICAL RENTALS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: CV06-246 |
| ) | |
| GAB ROBINS NORTH AMERICA, ) | |
| INC. and TROY RHODES, ) | |
| ) | |
| Defendants. ) | |

---

## AFFIDAVIT OF THOMAS SANTANGELO, ESQUIRE

---

STATE OF NEW JERSEY)

COUNTY OF MORRIS)

Before me, the undersigned authority, a Notary Public in and for said County and in said State, personally appeared Thomas Santangelo, Deputy General Counsel for GAB Robins North America, Inc. and after first being duly sworn, testified as follows:

1. My name is Thomas Santangelo and I am over the age of nineteen (19) years. I am Deputy General Counsel for GAB Robins North America, Inc. and was so at all times relevant to the above-styled lawsuit.

2. GAB Robins North America, Inc.'s headquarters is located in Parsippany, New Jersey. GAB Robins North America, Inc. is not an insurance company or an insurer. It does not underwrite and issue insurance policies. GAB Robins North America, Inc. provides services for loss adjusting, appraisals and third party administration of claims, but is not an insurer.

3. I have personal knowledge of the foregoing.

Further Affiant saith not.

_Thomas Santangelo_
Thomas Santangelo, Esquire

STATE OF _NEW JERSEY_ )
COUNTY OF _MORRIS_ )

      Sworn to and subscribed before me on this _1st_ day of _November_,
2006.

(Seal)

_Jocelyn E Gilmore_
Notary Public
My commission expires:   JOCELYN E. GILMORE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Sept. 16, 2008

<u>IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA</u>

| | |
|---|---|
| DONNIE AND METRA HUGHES,<br>d/b/a HISTORICAL RENTALS, INC.,<br><br>    **Plaintiffs,**<br><br>v.<br><br>GAB ROBINS NORTH AMERICA,<br>INC. and TROY RHOADES,<br>HILB, ROGAL & HOBBS<br>WHOLSALE INSURANCE SERVICES,<br>INC., KIRKLIN & CO., LLC, a/k/a<br>HRH/KIRKLIN & CO., LLC and<br>RSUI GROUP, INC.<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)   **CASE NO: CV-2006-246-RWB**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **TRIAL BY JURY DEMANDED**<br>)<br>) |

<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

**COMES NOW**, the Plaintiffs in the above-styled matter, pursuant to Rule 15 (a) of the

Alabama Rules of Civil Procedure, and do hereby amend their original complaint against GAB

Robins North America, Inc., and Troy Rhoades to add Hilb, Rogal and Hobbs Wholesale

Insurance Services, Inc. and Kirklin & Co., LLC a/k/a/ HRH/Kirklin & Co., LLC and RSUI

Group, Inc. as parties to the action and also so that the complaint shall read as follows:

<u>STATEMENT OF THE PARTIES</u>

1.    Historical Rentals, Inc., "Plaintiff", is an Alabama corporation incorporated and

       doing business in Pike County, Alabama.

2.    GAB Robins North America, Inc., "Defendant GAB", is a corporation

       incorporated in Delaware, with an Alabama place of business in Montgomery and

also doing business in Pike County, Alabama through their agent, Troy Rhoades, an Alabama resident.

3.  Troy Rhoades, "Defendant Rhodes", is an Alabama resident doing business in Pike County, Alabama.

4.  Hilb, Rogal and Hobbs Wholesale Insurance Services, Inc. is a corporation incorporated in Delaware doing business in Pike County, Alabama through GAB Robins North America, Inc., Troy Rhodes, and Kirklin and Co., LLC.

5.  Kirklin and Co., LLC. is a corporation incorporated in Delaware doing business in Pike County, Alabama through GAB Robins North America, Inc. and Troy Rhoades.

6.  Hilb, Rogal and Hobbs Wholesale Insurance Services, Inc. and Kirklin and Co., LLC are also known as and do business as HRH/Kirklin & Co., LLC, hereinafter referred to as "Defendant HRH/Kirklin."

7.  RSUI Group, Inc. is a corporation incorporated in Delaware doing business in Pike County, Alabama through GAB Robins North America, Inc., Troy Rhoades, Hilb, Rogal and Hobbs Wholesale Insurance Services, Inc. and Kirklin and Co., LLC.

## COUNT 1

8.  Plaintiffs adopt and reallege paragraphs 1 through 7 above as if fully set forth herein.

9.  On or about the 1st day of April 2004, Plaintiff entered into a written agreement with Defendant HRH/Kirklin and Defendant RSUI through by the terms of which

Defendant HRH/Kirklin on the authorized behalf of Defendant RSUI agreed to insure Plaintiff's property that is rented or leased to others and intended for rental or lease to others for a term of one year.

10. In said agreement, Defendant RSUI agreed to pay for damage done to Plaintiff's property that is rented or leased to others and intended for rental or lease to others.

11. Further, in said agreement, Defendant GAB was named as the adjusting company for said policy with Defendant Rhoades as the named adjuster.

12. The Plaintiff's property was damaged on September 16, 2004 by Hurricane Ivan and incurred severe additional damage on September 23, 2004.

13. Shortly thereafter, Plaintiff promptly notified Defendant HRH/Kirklin and Defendant GAB of the damage to the property.

14. On or about the 6th day of January 2005, Defendant GAB on behalf of Defendant RSUI notified Plaintiff that they had no intention of paying for the cost of repair, thereby breaching said agreement by failing to cover the losses incurred by Plaintiff because of the damaged property.

15. As a proximate consequence to the Defendants' said breach, Plaintiff has not been able to repair the property and therefore unable to rent or lease the piece of property to any tenants. The cost of repair has been estimated at over $400,000.00. Plaintiff is able to rent the piece of property at a rate of $500.00 per day.

**WHEREFORE**, Plaintiff demands judgment against the Defendants in the sum of the estimated cost of repair plus the loss of income from not being able to rent or lease the property, interest and costs.

## COUNT 2

16. Plaintiff adopts and realleges paragraphs 1 through 15 above as if fully set forth herein.

17. In the course of negotiating an agreement to insure Plaintiff, Defendant HRH/Kirklin represented to Plaintiff that Defendant would pay for the cost of

-3-

repairing damages done to Plaintiff's property that is rented or leased to others and intended for rental or lease to others.

18. The representations Defendant HRH/Kirklin made were false, and Defendants knew they were false when made. Neither Defendant HRH/Kirklin nor Defendant RSUI ever paid for the repair of the damaged property. Defendants made such representations with the intention that Plaintiff should rely upon them.

19. Plaintiff believed the representations and relied on them in the purchase of the insurance agreement. As a result, Plaintiff did not receive monies owed in order to repair the damaged property and lost and continues to lose money for not being able to rent or lease the damaged property.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount a jury deems appropriate.

## COUNT 3

20. Plaintiff adopts and realleges paragraphs 1 through 19 above as if fully set forth herein.

21. Plaintiff made a claim with Defendants GAB, RSUI and/or HRH/Kirklin on said policy agreement, but Defendant GAB on or about January 5, 2005, on behalf of Defendant RSUI intentionally refused to pay Plaintiff's claim and denied the same without proper justification.

22. Defendant GAB's refusal to pay said claim was not based on any reasonably legitimate, arguable or debatable reason for denying the Plaintiff's claim, or, in the alternative, Defendant GAB intentionally failed to determine whether there was a lawful basis for its refusal to pay said claim.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount a jury deems appropriate.

-4-

## COUNT 4

23.    Plaintiff adopts and realleges paragraphs 1 through 22 above as if fully set forth herein.

24.    Shortly after the 23rd day of September, 2004 the Plaintiffs reported the damage to their property to Defendants GAB, RSUI and/or HRH/Kirklin in accordance with the insurance agreement.

25.    Under the terms of the insurance agreement, Defendants GAB by and through Defendant Rhoades was to act as the adjuster of the property, thus a fiduciary duty existed between Defendants GAB and its agent Defendant Rhoades to the Plaintiffs.

26.    Defendant GAB, through Defendant Rhoades did not ever properly adjust these claims, thereby breaching said fiduciary duty.

27.    As a result of Defendant GAB's and Defendant Rhoades' said breach, Defendants HRH/Kirklin and RSUI did not eveer pay these claims thus causing plaintiff to lose money by not being able to rent or lease the property.

## COUNT 5

28.    Plaintiff adopts and realleges paragraphs 1 through 27 above as if fully set forth

29.    Shortly after the 23rd day of September, 2004 the Plaintiffs reported the damage to their property to Defendants GAB, RSUI and/or HRH/Kirklin in accordance with the insurance agreement.

30.    Under the terms of the insurance agreement, Defendants HRH/Kirklin and/or RSUI agreed to pay for covered loss or damage within a reasonable time of receiving the sworn proof of loss from plaintiff.

31.    Defendants HRH/Kirklin and RSUI did not ever pay these claims.

32.    Defendants HRH/Kirklin and RSUI did not ever pay these claims in the time period that the Defendants and plaintiffs agreed upon thus causing the plaintiffs to

lose money by not being able to rent or lease the property.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount a jury deems appropriate.

N.J. Cervera (CER001)
Matthew Baker (BAK017)
Attorneys for the Plaintiff

OF COUNSEL:
**CERVERA, RALPH & REEVES, LLC**
914 South Brundidge Street
Troy, Alabama 36081
(334) 566-0116

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of the cause.

Of Counsel for Plaintiff

-6-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on this the 6th day of November, 2006 upon:

James S. Lloyd, Esq.
Karen D. Farley, Esq.
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place North
Suite 300
Birmingham, Alabama 35223


_____
OF COUNSEL

-7-



ELECTRONICALLY FILED
12/5/2006 2:30 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

### IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, ) <br> d/b/a HISTORICAL RENTALS, INC., ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> GAB ROBINS NORTH AMERICA, ) <br> INC. and TROY RHODES, ) <br> ) <br> **Defendants.** ) | **Civil Action No.: CV-06-246** |

---

### DEFENDANT GAB ROBINS NORTH AMERICA, INC.'S
### SECOND MOTION TO DISMISS

---

COMES NOW the Defendant, GAB Robins, North America, Inc., (hereinafter referred to as "GAB Robins") pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u> and moves this Court for entry of an Order dismissing the claims against Defendant GAB Robins in the Plaintiffs' First Amended Complaint on the grounds that the Plaintiffs have failed to state a claim upon which relief may be granted. In support thereof, Defendant GAB Robins shows unto the Court as follows:

1.    On or about November 6, 2006, the Plaintiffs Donnie and Metra Hughes d/b/a Historical Rentals, Inc. filed their First Amended Complaint in the above-styled matter in the Circuit Court of Pike County, Alabama against GAB Robins North America, Inc. and Troy Rhodes. Plaintiff's added as party Defendants, Hilbe, Rogal & Hobbs Wholesale Insurance Services, Inc.; Kirklin & Co., LLC a/k/a HRH/Kirklin & Co., LLC and RSUI Group, Inc.

2.    The Plaintiffs' First Amended Complaint sets forth various causes of action, including the following:

a.  Breach of Contract;

b.  Fraudulent Misrepresentation;

c.  Fraudulent Suppression;

d.  Bad Faith;

e.  Breach of Fiduciary Duty; and

f.  Negligence in the adjustment of an insurance claim.

3.  Specifically, in the Plaintiffs' First Amended Complaint, the Plaintiffs, Donnie and Metra Hughes, allege that on or about April 1, 2004 the Plaintiffs entered into an insurance contract with Defendant, HRH/Kirklin& Co., LLC and RSUI Group, Inc. and that in said agreement, Defendant GAB Robins, by and through its alleged agent, Defendant Troy Rhodes was named as the adjusting company. The Plaintiffs' First Amended Complaint alleges further that said agreement contained terms, by which Defendants, allegedly agreed to insure Plaintiffs' property, which Plaintiffs intended for rental or lease for a term of one year. The Plaintiffs' First Amended Complaint alleges further that by the terms of said agreement, Defendant GAB Robins was allegedly contacted to evaluate damage done to Plaintiffs' property that is to be used for rental or lease purposes.

4.  Plaintiffs allege further that said property was damaged on September 16, 2004 by Hurricane Ivan and suffered additional damage on September 23, 2004. Plaintiffs allege further that they promptly notified Defendant GAB Robins of the damage to said property.

5.    Plaintiffs also allege that on or about January 6, 2005 Defendant GAB Robins
notified Plaintiffs that Defendant GAB Robins, on behalf of Defendant RSUI,
had no intention of paying for the cost of repair, thereby allegedly breaching
said agreement. Plaintiffs allege damages consisting of the cost of repairs for
said property and loss of income from said property.

6.    Plaintiffs allege further that Defendant GAB Robins and Defendant Troy
Rhodes breached a fiduciary duty owed to the Plaintiffs in the adjustment of
the Plaintiffs property damage claim.

7.    Defendant GAB Robins is not an insurance company nor does it provide
insurance benefits to any individual or entity. (Exhibit A - Affidavit of
Thomas Santangelo, Esquire). GAB Robins does not underwrite and issue
insurance policies. (Exhibit A). Furthermore, GAB Robins provides services
for loss adjusting, appraisals and the third party administration of claims, but
is not an insurer. (Exhibit A).

8.    Pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure,</u> Plaintiffs
claims for breach of contract, fraudulent misrepresentation, fraudulent
suppression, breach of fiduciary duty and bad faith against Defendant GAB
Robins are due to be dismissed for failure to state a claim upon which relief
can be granted. As GAB Robins does not underwrite insurance policies, it
could not have entered into an insurance contract with the Plaintiffs.
Therefore, the Plaintiffs cannot maintain any cause of action for breach of an
insurance contract, bad faith failure to pay on an insurance claim, breach of
fiduciary duty or fraud in the making of an insurance contract against GAB

Robins. Any duty owed by GAB Robins in the adjustment of the claim was owed to Defendants RSUI Group, Inc. and Defendant HRH/Kirklin& Co., LLC.

WHEREFORE, PREMISES CONSIDERED, Defendant GAB Robins North America, Inc. respectfully requests that this Honorable Court enter an Order dismissing all claims brought by the Plaintiffs First Amended Complaint against Defendant GAB Robins North America, Inc. pursuant to Rule 12(b)(6) of the <u>Alabama Rules of Civil Procedure</u>.

Respectfully submitted this the 5th day of November, 2006.

<u>s/Karen D. Farley</u>
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendant, GAB Robins
North America, Inc.

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North,
Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:        jlloyd@lgwpc.com
              kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System, by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 5th day of November, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:    334-566-0116
Facsimile:    334-566-4073
Email:        **mbaker@troycable.net**
              **ncervera@troycable.net**

                         *s/Karen D. Farley*
                         Of Counsel



ELECTRONICALLY FILED
12/5/2006 3:04 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES,<br>d/b/a HISTORICAL RENTALS, INC., )<br><br>Plaintiffs,<br><br>v.<br><br>GAB ROBINS NORTH AMERICA,<br>INC. and TROY RHOADES,<br>HILB, ROGAL & HOBBS<br>WHOLSALE INSURANCE SERVICES,<br>INC., KIRKLIN & CO., LLC, a/k/a<br>HRH/KIRKLIN & CO., LLC and<br>RSUI GROUP, INC.<br><br>Defendants. | CASE NO: CV-2006-246-RWB<br><br><br><br>TRIAL BY JURY DEMANDED |

### PLAINTIFFS' RESPONSE TO DEFENDANT
### GAB ROBINS NORTH AMERICA, INC'S MOTION TO DISMISS

**COME NOW**, the Plaintiffs in the above-styled matter, and in response to Defendant GAB Robins North America, Inc.'s Motion to Dismiss, hereinafter referred to as Defendant GAB, does hereby state the following:

1.  That on or about January 5, 2005 and January 25, 2005, Defendant GAB explicitly rejected insurance claims made by the Plaintiffs regarding damage to their property as evidenced by the two letters attached as Exhibits A and B.

2.  Additionally, on or about February 8, 2005, Defendant GAB attempted to resolve a claim with a payment made by check, a copy of which is attached hereto as Exhibit C.

3.  Said payment was made by Defendant GAB by one of Defendant GAB's

-1-

company checks.

4.    Exhibits A, B and C would show that Defendant GAB was the entity that was responsible for handling, investigating, rejecting and/or paying claims made by the Plaintiffs regarding the property in Pike County.

5.    The letters further evidence the fact that Defendant GAB was the entity which was indeed contacted, that they conducted an investigation and that they subsequently rejected the Plaintiff's claims.

6.    Both letters (Exhibits A and B) are written on Defendant GAB's letterhead and signed by one Bruce Clapp, who identifies himself as a branch manager who is employed by Defendant GAB and is writing on behalf of RSUI Indemnity Company, a named defendant in the amended complaint.

7.    In the letterhead of Exhibits A and B, Bruce Clapp's email address is listed as clappb@gabrobins.com, another indication of his employment with Defendant GAB and Defendant GAB's involvement.

8.    All evidence points to Defendant GAB as the primary entity who handled Plaintiff's claims from start to finish and their involvement in Plaintiff's claims cannot be disputed.

9.    As evidenced by Plaintiff's Exhibits A, B, and C, Defendant GAB was involved in Plaintiff's allegations of fraudulent misrepresentation, fraudulent suppression, breach of contract, and bad faith refusal to pay claims.

10.   Additionally, Plaintiff has since amended the original complaint to include other entities involved in the fraudulent misrepresentation, fraudulent

-2-

suppression, breach of contract, and bad faith refusal to pay Plaintiff's claims and said amended complaint more specifically allege Defendant GAB's involvement and wrongdoings.

**WHEREFORE**, it is respectfully requested that this Court deny Defendant GAB's motion to dismiss and require them to answer the complaint in a timely manner.

Respectfully submitted, this the 5th day of December, 2006.

s/ Matthew Baker
N. J. Cervera (CER001)
Matthew Baker (BAK017)
Attorneys for the Plaintiffs

OF COUNSEL:
**CERVERA, RALPH & REEVES, LLC**
914 South Brundidge Street
P.O. Box 325
Troy, Alabama 36081
(334) 566-0116 phone
(334) 566-4073 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been electronically delivered and put in the United States mail on this the 5th day of December, 2006 upon:

James S. Lloyd, Esq.
Karen D. Farley, Esq.
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place North
Suite 300
Birmingham, Alabama 35223

s/ Matthew Baker
OF COUNSEL

(A)



GAB Robins North America, Inc.

T: 317-815-3400
F: 317-815-3410
E mail: clappb@gabrobins.com

January 6, 2005

## Reservation of Rights
### Certified Mail Return Receipt Request & US Regular Mail

Gamma Gamma Chapter of PKPhi
C/O Historical Rentals, Inc.
P.O. Box 215
Pahhokee, FL 33476

Attn: Donny Hughes

| | |
|---|---|
| Our Insured: | Gamma Gamma Chapter of PKPhi |
| Claim Number: | 55820-37670 |
| Policy Number: | NHD332474 |
| Date of Loss: | 9/16/04 |

We have received notice of a claim being made under the above referenced policy of insurance. Specifically, claim made for hurricane damage as a result of Hurricane Ivan. Indications were made that interior damage may have also occurred as a result.

Gamma Gamma Chapter of PKPhi was issued a policy of insurance policy number NHD332474, by RSUI Indemnity Company for the policy period of 4/1/2004 to 4/1/2005. You are now seeking benefits under the above referenced policy of insurance.

First, we respectfully wish to call your attention to sections of this policy as they relate to your duties after a loss occurs, and other insurance clauses:

Form SB 86 01 (11/97) States on page 2-3 under Loss Conditions:

"C. Duties In the Event of Loss or Damage

    (1) You must see that the following are done in the event of loss or damage to Covered Property:

        a. Notify the police if a law may have been broken

        b. Give us prompt notice of the loss or damage. Include a description of the property involved

        c. As soon as possible, give us a description of how, when, and where the loss or damage occurred.

        d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered property from such loss, for consideration in the settlement of the claim. However, we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a covered Cause of Loss. This will not increase the Limit of Insurance.

Form CR0167 (Rev. 1/98)

55820-37670                                                                     Page 2

  e.  Also, if feasible, set damaged property aside and in the best possible order, for
      examination.
  f.  At our request, give us complete inventories of the damaged and undamaged property.
      Include quantities, costs, values and amount of loss claimed.
  g.  As often as may be reasonably required, permit us to inspect the property proving the
      loss or damage and examine your books and records.  Also permit us to take samples of
      damaged and undamaged property for inspection, testing and analysis, and permit us to
      make copies from your books and records.
  h.  Send us a signed, sworn proof of loss containing the information we request to
      investigate the claim.  You must do this within 60 days after our request.   We will
      supply you with the necessary forms.
  i.  Cooperate with us in the investigation or settlement of the claim."

Form SB 86 01 (11/97) States on page 4 under Loss Conditions:
" F.  Other Insurance
    (1)  You may have other insurance subject to the same plan, terms, conditions
         And provisions as the insurance under this Coverage Part.  If you do, we will
         pay our share of the covered loss or damage.  Our share is the proportion that the
         applicable Limit of Insurance under this Coverage Part bears to the Limits of
         Insurance of all insurance covering on the same basis.
    (2)  If there is other insurance covering the same loss or damage, other than that described in 1.
         above, we will pay only for the amount of covered loss or damage in excess of the amount due
         from that other insurance, whether you can collect on it or not.  But we will not pay more than
         the applicable Limit of Insurance or more than the actual amount of loss or damage."

Secondly, we respectfully wish to call your attention to other areas of concern relative to our handling of this
matter:
    Form SB 86 01 (11/97) States on page 5 under Loss Conditions:
    " J.  Vacancy...
       (3)  Vacancy Provisions
            If the building where loss or damage occurs has been vacant for more than 60 consecutive days
            before that loss or damage occurs:
               a.  We will not pay for any loss or damage caused by any of the following even if they are
                   Covered Causes of Loss:
                   ...(4) water damage;"

    Form SB 86 02 (04/99) States on page 4 under Exclusions:
    "2.  We will not pay for loss or damage caused by or resulting from any of the following:
       ...d.
          (1)  Wear and tear;
          (2)  Rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any
               quality in property that causes it to damage or destroy itself;"

The issues mentioned above refer to both general duties after a loss and concerns expressed specifically for this
claim as they relate to potential vacancy of the property prior to this loss and as they relate to the general
conditions of the property prior to the loss limiting our ability to pay for loss due to wear and tear as well as
general deterioration of the property.

Form 139 (Rev 8/97)

53820-37670                                                          Page 3

The fact of this claim are too vague to determine at this time whether or not the claims being asserted will be covered by the provisions of the policy. Your interests and the Company's interests may be better served and protected by an investigation of the facts concerning the questions of coverage and your potential liability. Therefore, RSUI Indemnity Company will proceed to investigate this matter under a full and complete reservation of all our rights and defenses. This reservation of rights extends to all facts, known and unknown, as they may pertain to this claim.

Any action taken by us in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses we have under the subject policy of insurance. The Company further reserves the right to deny coverage and withdraw from any further participation in this matter altogether, should facts be developed that determine the above captioned policy does not cover this loss

By naming the specific grounds for the possibility of no coverage or benefits, we do not waive any of our rights or any of the other provisions of the policy of insurance and specifically reserve all of our rights and remedies under this policy and under the statutes and common law.

Sincerely,

RSUI Indemnity Company by
Bruce G. Clapp, AIC
Indiana ICS Branch Manager
GAB Robins N.A., Inc.


cc:    Mr. Dan Durbin, RSUI Indemnity Company
       Mr. Mark Schwartz, RSUI Indemnity Company
       Mr. Richard Jungman, Hobbs group / Kirklin & Co., LLC

Form 139 (Rev. 8/97)





GAB Robins North America, Inc.

450 E. 96th Street, Suite 320
Indianapolis, IN 46240
T: 317-815-3400
F: 317-815-3410
E mail: clappb@gabrobins.com

January 25, 2005

Gamma Gamma Chapter of PKPhi
C/O Historical Rentals, Inc.
P.O. Box 215
Pahhokee, FL 33476

Attn: Donny Hughes

Our Insured:      Gamma Gamma Chapter of PKPhi
Claim Number:     55820-37669
Policy Number:    NHD332474
Date of Loss:     9/23/04

This acknowledges our investigation of the above captioned claim. Specifically, claim made for vandalism from members of the local fraternity. Gamma Gamma Chapter of PKPhi was issued a policy of insurance policy number NHD332474, by RSUI Indemnity Company for the policy period of 4/1/2004 to 4/1/2005. You are now seeking benefits under the above referenced policy of insurance. Consequently, we have completed our investigation into this matter.

Our field adjuster prepared an estimate of what *may* be construed as *vandalism* by person(s) unknown. You have alleged that the fraternity members, as tenants of this house are responsible for this damage. I should point out to you, the specific definition for vandalism as it relates to your claim.

Adjustment of Property Losses. Thomas/Reed, 1977, on page 116 discusses the peril of vandalism and describes that as "..willful destruction of works of art & beauty..." as well as "willful and malicious injury to or destruction of the property of others with malicious intent." Based upon this accepted definition, accidental damage nor wear and tear, whether normal or excessive, would be considered vandalism and recoverable under this policy. Our adjuster prepared an estimate for what may be construed as possible vandalism but it is, at replacement cost, well under the $ 10,000 deductible for this peril.

You have expressed concerns as well with electrical wiring done by the tenant. Your policy form SB8602 (Ed. 04/99) provides on page 5, under Section C. Exclusions:

  "3. We will not pay for loss or damage caused by or resulting from any of the following:
    ...c Faulty, inadequate or defective:
      (2).design, specifications, workmanship, repair, construction, renovation,

Form CR0167 (Rev. 1/98)

remodeling, grading, compaction: ... of part or all of any property on or off the described premises."

It is the therefore the position of RSUI Indemnity Company that there will be no payment forthcoming on this claim to Gamma Gamma Chapter of PKPhi C/O Historical Rentals, Inc under the above mentioned policy of insurance.    Therefore, we must respectfully contend that _Gamma Gamma Chapter of PKPhi C/O Historical Rentals, Inc is not entitled to benefits under the above referenced policy of insurance.

Our decision has been based on all facts presently available to us. If you have additional knowledge or facts relevant to this matter, please notify us in writing immediately so that we can evaluate the additional information and/or new allegations for potential coverage under the above policy. Please note that any action taken by us in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses we have under the subject policy of insurance

Any action taken by us in the investigation, defense, or settlement of this claim shall not constitute or be construed as a waiver or an estoppel of any rights or defenses we have under the subject policy of insurance. The Company further reserves the right to deny coverage and withdraw from any further participation in this matter altogether, should facts be developed that determine the above captioned policy does not cover this loss

By naming the specific grounds for the possibility of no coverage or benefits, we do not waive any of our rights or any of the other provisions of the policy of insurance and specifically reserve all of our rights and remedies under this policy and under the statutes and common law.

Sincerely,


RSUI Indemnity Company  by
Bruce G. Clapp, AIC · ...
Indiana ICS Branch Manager
GAB Robins N.A., Inc.
cc:    Mr. Dan Durbin, RSUI Indemnity Company
        Mr. Mark Schwartz, RSUI Indemnity Company
        Mr. Richard Jungman, Hobbs group / Kirklin & Co., LLC

Form 139 (Rev. 8/97)

(C)

## CLAIM INFORMATION

CLAIMANT NAME: GAMMA GAMMA CHAPTER OF PK
OCCURRENCE DATE: 09/16/04
GAB FILE NUMBER: 55820-37670
INSURANCE COMPANY:
POLICY NUMBER:
INSURED NAME: GETTYSBURG NATIONAL INDEMNITY (SAC)
CLAIM NUMBER: N/A

PHONE: 317-815-2400
FAX: 317-815-3410

DATE: 02/08/05

CONTACT GAB IF YOU HAVE ANY QUESTIONS CONCERNING THIS CHECK

## PAYMENT INFORMATION

PAYMENT FOR:

INVOICE NUMBER:
CHECK NUMBER: 5135588
CHECK AMOUNT: $3,105.61

---

THE FACE OF THIS DOCUMENT HAS A MULTICOLOR BACKGROUND · HOLD TO LIGHT TO VIEW

GAB Robins North America, Inc.
INDIANAPOLIS IN / ICS
450 EAST 96TH STREET
INDIANAPOLIS, IN 46240-3759

GAB Robins North America, Inc.
ON BEHALF OF  GETTYSBURG NATIONAL INDEMNITY (SAC)

PAY TO THE    Three thousand one hundred five and 61/100 Dollars
ORDER OF     GAMMA GAMMA CHAPTER OF PKPHI &

HISTORICAL RENTALS INC.

CITIBANK DELAWARE
ONE PENNS WAY, NEW CASTLE, DE 19720

CHECK NO.: 5135588
CHECK DATE: 02/08/05
$3,105.61
GAB FILE: 55820-37670

VOID AFTER 90 DAYS

ELECTRONICALLY FILED
12/7/2006 1:26 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, d/b/a HISTORICAL RENTALS, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )    Civil Action No.:  CV-06-246 |
| GAB ROBINS NORTH AMERICA, INC. and TROY RHODES, | ) ) ) |
| Defendants. | ) ) |

## DEFENDANT TROY RHODES' MOTION TO DISMISS

COMES NOW the Defendant, Troy Rhodes, pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure and moves this Court for entry of an Order dismissing the claims against Defendant Troy Rhodes in the Plaintiffs' complaint on the grounds that the Plaintiffs have failed to state a claim upon which relief may be granted.  In support thereof, Defendant Troy Rhodes shows unto the Court as follows:

1.  On or about September 22, 2006, the Plaintiffs Donnie and Metra Hughes d/b/a Historical Rentals, Inc. filed suit in the Circuit Court of Pike County, Alabama against GAB Robins North America, Inc. (hereinafter referred to as "GAB Robins") and Troy Rhodes.  Plaintiffs allege in their Complaint that at all times material thereto, Troy Rhodes was an agent or employee of Defendant GAB Robins North America, Inc.  Defendant Troy Rhodes was served by certified mail on November 8, 2006.

2.  The Complaint sets forth various causes of action, including the following:

   a.  Breach of Contract;

b. Fraudulent Misrepresentation;

c. Fraudulent Suppression; and

d. Bad Faith.

3. Specifically, in the Complaint, the Plaintiffs, Donnie and Metra Hughes, allege that on or about April 1, 2004 the Plaintiffs entered into an insurance contract with Defendant, GAB Robins, by and through its alleged agent or employee, Defendant Troy Rhodes. The Complaint alleges further that said agreement contained terms, by which Defendant GAB Robins, allegedly agreed to insure Plaintiffs' property, which Plaintiffs intended for rental or lease for a term of one year. The Complaint alleges further that by the terms of said agreement, Defendant GAB Robins, by and through its agent or employee Troy Rhodes, allegedly agreed to pay for damage done to Plaintiffs' property that is to be used for rental or lease purposes.

4. Plaintiffs allege further that said property was damaged on September 16, 2004 by Hurricane Ivan and suffered additional damage on September 23, 2004. Plaintiffs allege further that they promptly notified Defendant GAB Robins, through its alleged agent Troy Rhodes of the damage to said property.

5. Plaintiffs also allege that on or about January 6, 2005 Defendant GAB Robins notified Plaintiff that Defendant GAB Robins had no intention of paying for the cost of repair, thereby allegedly breaching said agreement. Plaintiffs allege damages consisting of the cost of repairs for said property and loss of income from said property.

6.   Defendant GAB Robins is not an insurance company nor does it provide insurance benefits to any individual or entity.  (Exhibit A - Affidavit of Thomas Santangelo, Esquire).  Additionally, Defendant Troy Rhodes, to the extent that he is alleged to be an agent or employee of GAB Robins, North America, Inc. does not provide insurance benefits to any individual or entity. GAB Robins does not underwrite and issue insurance policies.  (Exhibit A). Further, to the extent that Defendant Troy Rhodes is alleged to be an agent or employee of GAB Robins North America, Inc., he does not underwrite or issue insurance benefits on behalf of GAB Robins North America, Inc.

7.   Pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure, Plaintiffs claims for breach of contract, fraudulent misrepresentation, fraudulent suppression and bad faith against Defendant Troy Rhodes, to the extent that he is alleged to be an agent or employee of Defendant GAB Robins North America, Inc. are due to be dismissed for failure to state a claim upon which relief can be granted.  As Defendant Troy Rhodes, to the extent that he is alleged to be an agent or employee of Defendant GAB Robins North America, Inc., does not, in such a capacity underwrite insurance policies, Defendant Troy Rhodes could not have entered into an insurance contract with the Plaintiffs.  Therefore, the Plaintiffs cannot maintain any cause of action for breach of an insurance contract, bad faith failure to pay on an insurance claim or fraud in the making of an insurance contract against Troy Rhodes, to the extent that he is alleged to be an agent or employee of Defendant GAB Robins North America, Inc.

WHEREFORE, PREMISES CONSIDERED, Defendant Troy Rhodes respectfully requests that this Honorable Court enter an Order dismissing all claims brought by the Plaintiffs against Defendant Troy Rhodes pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure.

Respectfully submitted this the 7th day of December, 2006.

s/Karen D. Farley
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendant, GAB Robins
North America, Inc. and Troy Rhodes

OF COUNSEL:
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North,
Suite 300
Birmingham, Alabama 35223
Telephone:   205-967-8822
Facsimile:   205-967-2380
Email:       jlloyd@lgwpc.com
             kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 7th day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:    334-566-0116
Facsimile:    334-566-4073
Email:       mbaker@troycable.net
            ncervera@troycable.net

                            *s/Karen D. Farley*
                            Of Counsel



ELECTRONICALLY FILED
12/7/2006 1:26 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

# EXHIBIT A

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE AND METRA HUGHES,          )
d/b/a HISTORICAL RENTALS, INC.,   )
                                   )
         Plaintiffs,               )
                                   )
v.                                 )          Civil Action No.:  CV06-246
                                   )
GAB ROBINS NORTH AMERICA,          )
INC. and TROY RHODES,              )
                                   )
         Defendants.               )

## AFFIDAVIT OF THOMAS SANTANGELO, ESQUIRE

STATE OF NEW JERSEY)

COUNTY OF MORRIS)

Before me, the undersigned authority, a Notary Public in and for said County and in said State, personally appeared Thomas Santangelo, Deputy General Counsel for GAB Robins North America, Inc. and after first being duly sworn, testified as follows:

1.   My name is Thomas Santangelo and I am over the age of nineteen (19) years. I am Deputy General Counsel for GAB Robins North America, Inc. and was so at all times relevant to the above-styled lawsuit.

2.   GAB Robins North America, Inc.'s headquarters is located in Parsippany, New Jersey. GAB Robins North America, Inc. is not an insurance company or an insurer. It does not underwrite and issue insurance policies. GAB Robins North America, Inc. provides services for loss adjusting, appraisals and third party administration of claims, but is not an insurer.

3.   I have personal knowledge of the foregoing.

Further Affiant saith not.

_Thomas Santangelo_

Thomas Santangelo, Esquire

STATE OF _NEW JERSEY_ )

COUNTY OF _MORRIS_ )

Sworn to and subscribed before me on this _1st_ day of _November_, 2006.

_Jocelyn E. Gilmore_

Notary Public

My commission expires:

**JOCELYN E. GILMORE**
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Sept. 18, 20_08_

(Seal)



ELECTRONICALLY FILED
12/18/2006 11:54 AM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | | |
|---|---|---|
| DONNIE AND METRA HUGHES, | ) | |
| d/b/a HISTORICAL RENTALS, INC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No.:  CV-06-246 |
| | ) | |
| GAB ROBINS NORTH AMERICA, | ) | |
| INC., TROY RHOADES, HILB, | ) | |
| ROGAL & HOBBS WHOLESALE | ) | |
| INSURANCE SERVICES, INC., | ) | |
| KIRKLIN & CO., LLC, A/K/A | ) | |
| HRH/KIRKLIN & CO., LLC and  RSUI | ) | |
| GROUP, INC. | ) | |
| | ) | |
| **Defendants.** | ) | |

## ANSWER OF DEFENDANT GAB ROBINS NORTH AMERICA, INC.

COMES NOW the Defendant, GAB Robins, North America, Inc., (hereinafter referred to as "GAB Robins") and for Answer to the Complaint and each count and paragraph thereof and Plaintiffs' First Amended Complaint and each count and paragraph thereof, sets down and assigns the following separate and several defenses, without waiving any substantive or procedural deficiencies in the Plaintiffs' Complaint or Amended Complaint:

### STATEMENT OF THE PARTIES

1.    Upon information and belief, GAB Robins admits the allegations of this paragraph.

2.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 2, therefore, the allegations are denied and Defendant demands strict proof thereof.

3.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

## COUNT ONE

4.    The allegations of paragraph 4 are denied and Defendant demands strict proof thereof.

5.    Defendant GAB Robins denies the allegations of paragraph 5 of the Plaintiffs' Complaint and demands strict proof thereof.

6.    Defendant GAB Robins denies the allegations of paragraph 6 of the Plaintiffs' Complaint and demands strict proof thereof.

7.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

8.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 8, therefore, the allegations are denied and Defendant demands strict proof thereof.

9.    Defendant GAB Robins denies the material allegations of paragraph 9 and demands strict proof thereof.

10.    Defendant GAB Robins denies that as a proximate consequence of a breach of contract that the plaintiffs have not been able to repair property and therefore unable to rent or lease the aforedescribed property and demands strict proof thereof. Defendant GAB Robins is without sufficient information to admit or deny the balance of the allegations set forth in paragraph 10 and, therefore, denies the same and demands strict proof thereof.

- 2 -

## COUNT TWO

11.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

12.    Defendant GAB Robins denies the material allegations of paragraph 12 and demands strict proof thereof.

13.    Defendant GAB Robins denies the material allegations of paragraph 13 and demands strict proof thereof.

14.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 14 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

15.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

16.    Defendant GAB Robins denies the material allegations of paragraph 16 and demands strict proof thereof.

17.    Defendant GAB Robins denies the material allegations of paragraph 17 and demands strict proof thereof.

## COUNT FOUR

18.    Upon information and belief, GAB Robins denies the allegations of this paragraph and demands strict proof thereof.

19.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 19 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.     Defendant GAB Robins denies the material allegations of paragraph 20 and demands strict proof thereof.

21.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 21 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.     Defendant GAB Robins denies the material allegations of paragraph 22 and demands strict proof thereof.

23.     Defendant GAB Robins denies the allegations of Plaintiffs' Complaint, contests damages and demands strict proof thereof of all claims.

### PLAINTIFFS' FIRST AMENDED COMPLAINT

1.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 1 of the Plaintiffs' First Amended Complaint and, therefore the allegations are denied and Defendant demands strict proof thereof.

2.     The allegations of paragraph 2 are admitted.

3.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 3, therefore, the allegations are denied and Defendant demands strict proof thereof.

4.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 4, therefore, the allegations are denied and Defendant demands strict proof thereof.

5.     Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 5, therefore, the allegations are denied and Defendant demands strict proof thereof.

- 4 -

6.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 6, therefore, the allegations are denied and Defendant demands strict proof thereof.

7.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

<u>**COUNT ONE**</u>

8.    The allegations of paragraph 8 are denied and Defendant demands strict proof thereof.

9.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 9, therefore, the allegations are denied and Defendant demands strict proof thereof.

10.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 10, therefore, the allegations are denied and Defendant demands strict proof thereof.

11.    Upon information and belief, GAB Robins admits the allegations of this paragraph.

12.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 12, therefore, the allegations are denied and Defendant demands strict proof thereof.

13.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 13, therefore, the allegations are denied and Defendant demands strict proof thereof.

14.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 14, therefore, the allegations are denied and Defendant demands strict proof thereof.

15.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 15, therefore, the allegations are denied and Defendant demands strict proof thereof.

16.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 16, therefore, the allegations are denied and Defendant demands strict proof thereof.

17.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 17, therefore, the allegations are denied and Defendant demands strict proof thereof.

18.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 18, therefore, the allegations are denied and Defendant demands strict proof thereof.

19.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 19, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.   Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 20, therefore, the allegations are denied and Defendant demands strict proof thereof.

21.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 21, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.  Defendant GAB Robins denies the material allegations of paragraph 22 and demands strict proof thereof.

## COUNT TWO

23.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 23, therefore, the allegations are denied and Defendant demands strict proof thereof.

24.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 24, therefore, the allegations are denied and Defendant demands strict proof thereof.

25.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 25, therefore, the allegations are denied and Defendant demands strict proof thereof.

26.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 26, therefore, the allegations are denied and Defendant demands strict proof thereof.

27.  Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 27, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

28.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 28, therefore, the allegations are denied and Defendant demands strict proof thereof.

29.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 29, therefore, the allegations are denied and Defendant demands strict proof thereof.

30.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 30, therefore, the allegations are denied and Defendant demands strict proof thereof.

31.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 31, therefore, the allegations are denied and Defendant demands strict proof thereof.

32.    Defendant GAB Robins does not have sufficient information to admit or deny the allegations of paragraph 32, therefore, the allegations are denied and Defendant demands strict proof thereof.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint and the Amended Complaint fails to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The allegations in the Complaint and the Amended Complaint against Defendant GAB Robins are untrue.

- 8 -

### THIRD AFFIRMATIVE DEFENSE

The damages asserted on behalf of the Plaintiffs are the result of an intervening and/or superseding cause.

### FOURTH AFFIRMATIVE DEFENSE

The claims against Defendant GAB Robins are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, release, accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

Imposing damages for mental anguish or emotional distress is unconstitutional under the United States Constitution and the Constitution of the State of Alabama. Current Alabama procedures relative to damages for mental anguish and emotional distress provide no objective, logical or reasonable standards or criteria to govern the award or the amount of such damages; therefore, this Defendant is denied due process and equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I Sections 1, 6, 10, 11, 13, and 22 of the Alabama Constitution, separately and severally.

### SEVENTH AFFIRMATIVE DEFENSE

There are no procedural safeguards for the imposition of damages for emotional distress and mental anguish. Therefore, because such damages are left to the standardless discretion of the jury, any such award would be improper and unconstitutional.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable insurance laws and regulations.

- 9 -

## NINTH AFFIRMATIVE DEFENSE

This Defendant denies they are guilty of conduct for which punitive damages could or should be awarded and denies Plaintiffs have produced clear and convincing evidence to support or sustain an award of punitive damages against this Defendant.

## TENTH AFFIRMATIVE DEFENSE

Your Defendant contests damages alleged in all Counts and paragraphs of the Complaint and the Amended Complaint and demands strict proof thereof. Specifically with regard to the claim for punitive damages, your Defendant pleads the following punitive damage defenses:

1. Plaintiffs' claim of punitive damages violates the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 6 of the Constitution of Alabama, on the following grounds:

(a) It is violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United Sates Constitution to impose punitive damages, which are penal in nature, against a civil Defendant upon the Plaintiffs' satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b) The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(c) The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant, which thereby violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

- 10 -

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards, or provide vague or insufficient standards, for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(e) The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(f) The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(g) The procedures pursuant to which punitive damages are awarded fail to require that an award of punitive damages be proportion, or bear a reasonable relationship, to the actual harm incurred;

(h) The procedures pursuant to which punitive damages are awarded fail to provide mitigating factors for the jury's consideration in awarding punitive damages.

2.  Plaintiffs' claim of punitive damages violates the due process clause of Article I, Section 6 of the Constitution of Alabama on the following grounds:

(a) It is a violation of the due process clause to impose punitive damages, which are penal in nature, upon a civil Defendant upon the Plaintiffs' satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

- 11 -

(b) The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against the Defendant;

(c) The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages; and

(e) The award of the punitive damages in this case constitutes a deprivation of property without due process of law.

3. Plaintiffs' attempt to impose punitive or extra contractual damages on this Defendant, on the basis of vicarious liability for the conduct by others, violates the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

4. The award of punitive damages to the Plaintiffs in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

5. The award of punitive damages against the Defendant in this action would violate the prohibition against laws that impair the obligations of contracts in violation of Article I, Section 22 of the Constitution of Alabama.

6. The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the amount established by the legislature under **Alabama Code**, Section 27-1-17 (1975), in violation of the Due Process Clause of the Fifth and

Fourteenth Amendments of the United States Constitution and Article I, Section 6, of the Alabama Constitution.

## ELEVENTH AFFIRMATIVE DEFENSE

Awarding punitive damages in this case against this Defendant would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

## TWELFTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would have a chilling effect upon the Defendant's right to open access to the courts of this state, in violation of the United States Constitution and Alabama Constitution, separately and severally.

## THIRTEENTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would violate the Contracts Clause of Article I, Section 10 of the United States Constitution, as an award of punitive damages would impair the contractual obligations arising out of the transaction between the Plaintiff and this Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

Based upon Alabama procedures relative to punitive damages, which provide no objective, logical, reasonable standards or criteria which govern an award, and the amount of the award, of punitive damages, this Defendant are denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article I, Sections 1, 6 and 22 of the Alabama Constitution, separately and severally.

## FIFTEENTH AFFIRMATIVE DEFENSE

The demand for punitive damages in this case is subject to those limitations established by the Alabama Legislature set forth in Sections 6-11-21 of the Alabama Code. The Alabama Supreme Court's action in abolishing the legislatively created cap on punitive damages was unconstitutional. Under the Constitutions of the United States and the State of Alabama, the Alabama Supreme Court cannot abolish the cap created by the legislature as to punitive damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' own actions or inactions caused or contributed to their damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

This Defendant breached no duty owed to the Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the merger doctrine and the parole evidence rule.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## TWENTY FIRST AFFIRMATIVE DEFENSE

The insurance transactions at issue in this case were arms-length transactions.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Defendant GAB Robins has not breached the contract at issue in this case.

## TWENTY THIRD AFFIRMATIVE DEFENSE

An insurance adjuster, not being a party to the insurance contract cannot be held liable for bad faith. Thus, any claims against GAB Robins are due to be dismissed.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Defendant GAB Robins owed no duty to the Plaintiffs.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

The Complaint and Amended Complaint contain a misjoinder of parties and is due to be dismissed.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Defendant GAB Robins pleads the general issue and states they are not guilty of the matters charged.

## TWENTY SEVENTH AFFIRMATIVE DEFENSE

Defendant, GAB Robins pleads any other matter constituting an avoidance or affirmative defense not specifically set forth herein and hereby reserves the right to amend this Answer to include any such avoidance or affirmative defense.

Respectfully submitted this the 18th day of December, 2006.

s/Karen D. Farley
JAMES S. LLOYD(LLO004)
KAREN D. FARLEY(FAR035)
Attorneys for Defendants, GAB Robins
North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:       jlloyd@lgwpc.com
             kfarley@lgwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 18th day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:     334-566-0116
Facsimile:     334-566-4073
Email:          mbaker@troycable.net
                  ncervera@troycable.net

I hereby certify that a copy of the above and foregoing has been served on the following parties by placing a copy of the same in the United States Mail, properly addressed and postage prepaid on this the 18th day of December, 2006:

HILB, ROGAL & HOBBS WHOLESALE
INSURANCE SERVICES, INC.
Corporation Service Co.
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

KIRKLIN & COMPANY, LLC
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

RSUI GROUP, INC.
C/O Corporation Trust Co.
1209 Orange Street
Wilmington, Deleware 19801

                                        s/Karen D. Farley
                                        Of Counsel

- 16 -

ELECTRONICALLY FILED
12/18/2006 11:56 AM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| DONNIE AND METRA HUGHES, ) | |
| d/b/a HISTORICAL RENTALS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.:  CV-06-246 |
| ) | |
| GAB ROBINS NORTH AMERICA, ) | |
| INC., TROY RHOADES, HILB, ) | |
| ROGAL & HOBBS WHOLESALE ) | |
| INSURANCE SERVICES, INC., ) | |
| KIRKLIN & CO., LLC, A/K/A ) | |
| HRH/KIRKLIN & CO., LLC and  RSUI ) | |
| GROUP, INC. ) | |
| ) | |
| Defendants. ) | |

## ANSWER OF DEFENDANT TROY RHOADES

COMES NOW the Defendant, Troy Rhoades (incorrectly identified as "Troy Rhodes") and for answer to the Complaint and each count and paragraph thereof and Plaintiffs' First Amended Complaint and each count and paragraph thereof, sets down and assigns the following separate and several defenses, without waiving any substantive or procedural deficiencies in the Plaintiffs' Complaint or Amended Complaint:

### STATEMENT OF THE PARTIES

1.    Upon information and belief, Troy Rhoades admits the allegations of this paragraph.

2.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 2, therefore, the allegations are denied and Defendant demands strict proof thereof.

- 1 -

3.   Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

## COUNT ONE

4.   The allegations of paragraph 4 are denied and Defendant demands strict proof thereof.

5.   Defendant Troy Rhoades denies the allegations of paragraph 5 of the Plaintiffs' Complaint and demands strict proof thereof.

6.   Defendant Troy Rhoades denies the allegations of paragraph 6 of the Plaintiffs' Complaint and demands strict proof thereof.

7.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

8.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 8, therefore, the allegations are denied and Defendant demands strict proof thereof.

9.   Defendant Troy Rhoades denies the material allegations of paragraph 9 and demands strict proof thereof.

10.  Defendant Troy Rhoades denies that as a proximate consequence of a breach of contract that the plaintiffs have not been able to repair property and therefore unable to rent or lease the aforedescribed property and demands strict proof thereof. Defendant Troy Rhoades is without sufficient information to admit or deny the balance of the allegations set forth in paragraph 10 and, therefore, denies the same and demands strict proof thereof.

- 2 -

**COUNT TWO**

11.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

12.    Defendant Troy Rhoades denies the material allegations of paragraph 12 and demands strict proof thereof.

13.    Defendant Troy Rhoades denies the material allegations of paragraph 13 and demands strict proof thereof.

14.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 14 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

**COUNT THREE**

15.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

16.    Defendant Troy Rhoades denies the material allegations of paragraph 16 and demands strict proof thereof.

17.    Defendant Troy Rhoades denies the material allegations of paragraph 17 and demands strict proof thereof.

**COUNT FOUR**

18.    Upon information and belief, Troy Rhoades denies the allegations of this paragraph and demands strict proof thereof.

19.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 19 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.    Defendant Troy Rhoades denies the material allegations of paragraph 20 and demands strict proof thereof.

21.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 21 and, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.    Defendant Troy Rhoades denies the material allegations of paragraph 22 and demands strict proof thereof.

23.    Defendant Troy Rhoades denies the allegations of Plaintiffs' Complaint, contests damages and demands strict proof thereof of all claims.

## PLAINTIFFS' FIRST AMENDED COMPLAINT

1.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 1 of the Plaintiffs' First Amended Complaint and, therefore the allegations are denied and Defendant demands strict proof thereof.

2.    The allegations of paragraph 2 are admitted.

3.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 3, therefore, the allegations are denied and Defendant demands strict proof thereof.

4.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 4, therefore, the allegations are denied and Defendant demands strict proof thereof.

5.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 5, therefore, the allegations are denied and Defendant demands strict proof thereof.

6.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 6, therefore, the allegations are denied and Defendant demands strict proof thereof.

7.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 7, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT ONE

8.   The allegations of paragraph 8 are denied and Defendant demands strict proof thereof.

9.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 9, therefore, the allegations are denied and Defendant demands strict proof thereof.

10.  Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 10, therefore, the allegations are denied and Defendant demands strict proof thereof.

11.  Upon information and belief, Troy Rhoades admits the allegations of this paragraph.

12.  Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 12, therefore, the allegations are denied and Defendant demands strict proof thereof.

13.  Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 13, therefore, the allegations are denied and Defendant demands strict proof thereof.

14.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 14, therefore, the allegations are denied and Defendant demands strict proof thereof.

15.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 15, therefore, the allegations are denied and Defendant demands strict proof thereof.

16.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 16, therefore, the allegations are denied and Defendant demands strict proof thereof.

17.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 17, therefore, the allegations are denied and Defendant demands strict proof thereof.

18.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 18, therefore, the allegations are denied and Defendant demands strict proof thereof.

19.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 19, therefore, the allegations are denied and Defendant demands strict proof thereof.

20.    Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 20, therefore, the allegations are denied and Defendant demands strict proof thereof.

21.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 21, therefore, the allegations are denied and Defendant demands strict proof thereof.

22.   Defendant Troy Rhoades denies the material allegations of paragraph 22 and demands strict proof thereof.

## COUNT TWO

23.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 23, therefore, the allegations are denied and Defendant demands strict proof thereof.

24.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 24, therefore, the allegations are denied and Defendant demands strict proof thereof.

25.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 25, therefore, the allegations are denied and Defendant demands strict proof thereof.

26.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 26, therefore, the allegations are denied and Defendant demands strict proof thereof.

27.   Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 27, therefore, the allegations are denied and Defendant demands strict proof thereof.

## COUNT THREE

28. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 28, therefore, the allegations are denied and Defendant demands strict proof thereof.

29. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 29, therefore, the allegations are denied and Defendant demands strict proof thereof.

30. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 30, therefore, the allegations are denied and Defendant demands strict proof thereof.

31. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 31, therefore, the allegations are denied and Defendant demands strict proof thereof.

32. Defendant Troy Rhoades does not have sufficient information to admit or deny the allegations of paragraph 32, therefore, the allegations are denied and Defendant demands strict proof thereof.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint and the Amended Complaint fails to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The allegations in the Complaint and the Amended Complaint against Defendant Troy Rhoades are untrue.

- 8 -

### THIRD AFFIRMATIVE DEFENSE

The damages asserted on behalf of the Plaintiffs are the result of an intervening and/or superseding cause.

### FOURTH AFFIRMATIVE DEFENSE

The claims against Defendant Troy Rhoades are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, release, accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

Imposing damages for mental anguish or emotional distress is unconstitutional under the United States Constitution and the Constitution of the State of Alabama. Current Alabama procedures relative to damages for mental anguish and emotional distress provide no objective, logical or reasonable standards or criteria to govern the award or the amount of such damages; therefore, this Defendant is denied due process and equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I Sections 1, 6, 10, 11, 13, and 22 of the Alabama Constitution, separately and severally.

### SEVENTH AFFIRMATIVE DEFENSE

There are no procedural safeguards for the imposition of damages for emotional distress and mental anguish. Therefore, because such damages are left to the standardless discretion of the jury, any such award would be improper and unconstitutional.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable insurance laws and regulations.

- 9 -

## NINTH AFFIRMATIVE DEFENSE

This Defendant denies he is guilty of conduct for which punitive damages could or should be awarded and denies Plaintiffs have produced clear and convincing evidence to support or sustain an award of punitive damages against this Defendant.

## TENTH AFFIRMATIVE DEFENSE

Your Defendant contests damages alleged in all Counts and paragraphs of the Complaint and the Amended Complaint and demands strict proof thereof. Specifically with regard to the claim for punitive damages, your Defendant pleads the following punitive damage defenses:

1. Plaintiffs' claim of punitive damages violates the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 6 of the Constitution of Alabama, on the following grounds:

(a) It is violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United Sates Constitution to impose punitive damages, which are penal in nature, against a civil Defendant upon the Plaintiffs' satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b) The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

(c) The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant, which thereby violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution;

- 10 -

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards, or provide vague or insufficient standards, for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(e) The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(f) The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(g) The procedures pursuant to which punitive damages are awarded fail to require that an award of punitive damages be proportion, or bear a reasonable relationship, to the actual harm incurred;

(h) The procedures pursuant to which punitive damages are awarded fail to provide mitigating factors for the jury's consideration in awarding punitive damages.

2. Plaintiffs' claim of punitive damages violates the due process clause of Article I, Section 6 of the Constitution of Alabama on the following grounds:

(a) It is a violation of the due process clause to impose punitive damages, which are penal in nature, upon a civil Defendant upon the Plaintiffs' satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b) The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against the Defendant;

(c) The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(d) The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages; and

(e) The award of the punitive damages in this case constitutes a deprivation of property without due process of law.

3. Plaintiffs' attempt to impose punitive or extra contractual damages on this Defendant, on the basis of vicarious liability for the conduct by others, violates the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

4. The award of punitive damages to the Plaintiffs in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Alabama Constitution.

5. The award of punitive damages against the Defendant in this action would violate the prohibition against laws that impair the obligations of contracts in violation of Article I, Section 22 of the Constitution of Alabama.

6. The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the amount established by the legislature under **Alabama Code**, Section 27-1-17 (1975), in violation of the Due Process Clause of the Fifth and

Fourteenth Amendments of the United States Constitution and Article I, Section 6, of the Alabama Constitution.

## ELEVENTH AFFIRMATIVE DEFENSE

Awarding punitive damages in this case against this Defendant would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

## TWELFTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would have a chilling effect upon the Defendant's right to open access to the courts of this state, in violation of the United States Constitution and Alabama Constitution, separately and severally.

## THIRTEENTH AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would violate the Contracts Clause of Article I, Section 10 of the United States Constitution, as an award of punitive damages would impair the contractual obligations arising out of the transaction between the Plaintiff and this Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

Based upon Alabama procedures relative to punitive damages, which provide no objective, logical, reasonable standards or criteria which govern an award, and the amount of the award, of punitive damages, this Defendant are denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article I, Sections 1, 6 and 22 of the Alabama Constitution, separately and severally.

## FIFTEENTH AFFIRMATIVE DEFENSE

The demand for punitive damages in this case is subject to those limitations established by the Alabama Legislature set forth in Sections 6-11-21 of the Alabama Code. The Alabama Supreme Court's action in abolishing the legislatively created cap on punitive damages was unconstitutional. Under the Constitutions of the United States and the State of Alabama, the Alabama Supreme Court cannot abolish the cap created by the legislature as to punitive damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' own actions or inactions caused or contributed to their damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

This Defendant breached no duty owed to the Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the merger doctrine and the parole evidence rule.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## TWENTY FIRST AFFIRMATIVE DEFENSE

The insurance transactions at issue in this case were arms-length transactions.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Defendant Troy Rhoades has not breached the contract at issue in this case.

### TWENTY THIRD AFFIRMATIVE DEFENSE

An insurance adjuster, not being a party to the insurance contract cannot be held liable for bad faith. Thus, any claims against Troy Rhoades are due to be dismissed.

### TWENTY FOURTH AFFIRMATIVE DEFENSE

Defendant Troy Rhoades owed no duty to the Plaintiffs.

### TWENTY FIFTH AFFIRMATIVE DEFENSE

The Complaint and Amended Complaint contain a misjoinder of parties and is due to be dismissed.

### TWENTY SIXTH AFFIRMATIVE DEFENSE

Defendant Troy Rhoades pleads the general issue and states he is not guilty of the matters charged.

### TWENTY SEVENTH AFFIRMATIVE DEFENSE

Defendant, Troy Rhoades pleads any other matter constituting an avoidance or affirmative defense not specifically set forth herein and hereby reserves the right to amend this Answer to include any such avoidance or affirmative defense.

Respectfully submitted this the 18th day of December, 2006.

> s/Karen D. Farley
> JAMES S. LLOYD(LLO004)
> KAREN D. FARLEY(FAR035)
> Attorneys for Defendants, GAB Robins
> North America, Inc. and Troy Rhoades

OF COUNSEL:

LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223
Telephone:    205-967-8822
Facsimile:    205-967-2380
Email:        jlloyd@lgwpc.com
              kfarley@lgwpc.com

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties electronically using the Alabama Electronic Filing System by facsimile and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 18th day of December, 2006, to:

Matthew M. Baker, Esq.
N. J. Cervera, Esq.
Cervera Ralph & Reeves, LLC
914 S. Brundidge Street
P.O. Box 325
Troy, Alabama 36081
Telephone:     334-566-0116
Facsimile:     334-566-4073
Email:          mbaker@troycable.net
                ncervera@troycable.net

I hereby certify that a copy of the above and foregoing has been served on the following parties by placing a copy of the same in the United States Mail, properly addressed and postage prepaid on this the 18th day of December, 2006:

HILB, ROGAL & HOBBS WHOLESALE
INSURANCE SERVICES, INC.
Corporation Service Co.
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

KIRKLIN & COMPANY, LLC
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

RSUI GROUP, INC.
C/O Corporation Trust Co.
1209 Orange Street
Wilmington, Delaware 19801

                          s/Karen D. Farley
                          Of Counsel



ELECTRONICALLY FILED
1/4/2007 2:58 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE AND METRA HUGHES, d/b/a    *
HISTORICAL RENTALS, INC ,    *
                    *
     Plaintiffs,               *
                    *      NO  CV-2006-246-RWB
vs                          *
                    *
GAB ROBINS NORTH AMERICA, INC.,    *
et al ,                        *
                    *
     Defendants            *

## ANSWER OF RSUI INDEMNITY COMPANY TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Defendant RSUI Indemnity Company (hereinafter "RSUI"), and in response to Plaintiff's First Amended Complaint and each cause of action contained therein states as follows:

### FIRST DEFENSE

Responding to the First Amended Complaint paragraph by paragraph, and reserving all defenses, Defendant states as follows:

### STATEMENT OF THE PARTIES

1     Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 1 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same

2     Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 2 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

3    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 3 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

4    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 4 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

5    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 5 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

6    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 6 of Plaintiff's First Amended Complaint, thus to the extent a response is required, Defendant denies same.

7    RSUI admits that it is a Delaware corporation and doing business in Alabama. Defendant denies the remaining allegations contained in paragraph 7 of Plaintiff's First Amended Complaint

## COUNT 1

8    Defendant reasserts and incorporates its responses to paragraphs 1 - 7 as set forth above

9    Defendant admits that an insurance policy effective April 1, 2004, existed which provided insurance to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others.  Defendant denies the remaining allegations contained in paragraph 9 of Plaintiff's First Amended Complaint.

2

10    Defendant admits that an insurance policy exists which sets forth the terms and obligations of Defendant to pay for damage done to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others   Defendant denies the remaining allegations contained paragraph 10 of Plaintiff's First Amended Complaint

11    Defendants admits that GAB was the adjusting company for Plaintiff's claims under said policy.   Defendant denies the remaining allegations contained paragraph 11 of Plaintiff's First Amended Complaint

12    Defendant admits that a named storm made landfall on September 16, 2004 Defendant is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 12 of Plaintiff's First Amended Complaint; therefore, Defendant denies same.

13    Defendant is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 13 of Plaintiff's First Amended Complaint; therefore, Defendant denies same.

14    Denied

15    Denied

Defendant denies the allegations contained in the last unnumbered paragraph contained in Count One of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner.

## COUNT 2

16 - 19   The allegations contained in paragraphs 16 - 19, including the last unnumbered paragraph of Count Two, are not directed to this Defendant; thus, no response is required   To the

3

extent a response is required, Defendant denies same, and denies that Plaintiff is entitled to recover from it in any manner

## COUNT 3

20.    Defendant reasserts and incorporates its responses to paragraphs 1 - 19 as set forth above

21    Defendant admits that Plaintiffs made a claim with agents of RSUI. Defendant denies the remaining allegations contained in paragraph 21 of Plaintiff's First Amended Complaint

22.    Denied

Defendant denies the allegations contained in the last unnumbered paragraph contained in Count Three of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner

## COUNT 4

23    Defendant reasserts and incorporates its responses to paragraphs 1 - 22 as set forth above

24.    Defendant admits that Plaintiff reported damage to their property to an agent of Defendant RSUI. Defendant denies the remaining allegations contained in paragraph 24 of Plaintiff's First Amended Complaint

25    The allegations contained in paragraph 25 of Plaintiff's First Amended Complaint are not directed to this Defendant; thus, no response is required. To the extent a response is required, Defendant admits that Defendant GAB acted as an adjuster. Defendant denies the remaining allegations contained in paragraph 25 of Plaintiff's First Amended Complaint.

4

26    The allegations contained in paragraph 26 of Plaintiff's First Amended Complaint are not directed to this Defendant; thus, no response is required  To the extent a response is required, Defendant denies same

27.    Denied.

## COUNT 5

28.    Defendant reasserts and incorporates its responses to paragraphs 1 - 27 as set forth above

29    Defendant admits that Plaintiff's reported damage to their property to Defendant GAB  Defendant denies the remaining allegations contained in paragraph 29 of Plaintiff's First Amended Complaint.

30.    Defendant admits that an insurance policy exists which sets forth the terms and obligations of Defendant to pay for damage done to Plaintiff's real property situated in Troy, Alabama that is rented or leased to others  Defendant denies the remaining allegations contained paragraph 30 of Plaintiff's First Amended Complaint.

31.    Defendant admits Plaintiff's claims arising out of a date of loss of September 23, 2004, did not meet Plaintiff's deductible under the policy; therefore, no payment has been made.

32    Denied.

Defendant denies the allegations contained in the last unnumbered paragraph of Count Five of Plaintiff's First Amended Complaint, and denies that Plaintiff is entitled to recover from it in any manner

## FIRST DEFENSE

RSUI committed no act that proximately caused or contributed to any damages sustained by Plaintiff

5

## SECOND DEFENSE

The injuries and damages complained of herein resulted from the acts or omissions of persons or entities other than RSUI  Alternatively, said acts or omissions or persons or entities other than RSUI constitute an independent, superseding cause to the injuries and damages complained of herein; hence, Plaintiff ought not to recover.

## THIRD DEFENSE

RSUI has not breached any duty owed to Plaintiff by virtue of any applicable Alabama statute

## FOURTH DEFENSE

RSUI has not breached any duty owed to Plaintiff by virtue of any applicable state or federal rules, regulations, or standards

## FIFTH DEFENSE

Each and every claim stated in Plaintiff's First Amended Complaint is barred in whole or in part by the applicable statute of limitations and/or the doctrine of latches.

## SIXTH DEFENSE

RSUI is entitled to a set-off and credit for any and all sums paid to or on behalf of Plaintiff by any other party or collateral source as a result of or related to this lawsuit.

## SEVENTH DEFENSE

RSUI pleads accord and satisfaction.

## EIGHTH DEFENSE

RSUI pleads all applicable portions of policy of insurance issued by RSUI to Fraternal Property Management Association, policy number NHD332474 for the policy period April 1,

6

2004, through April 1, 2005  Said policy is attached hereto as Defendant RSUI's Exhibit "A" to

its Answer herein

### NINTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

B.    Appraisal

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of physical loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and the amount of physical loss.  If they fail to agree, they will submit their differences to the umpire  A decision agreed to by any two will be binding.  Each party will:

1    pay its chosen appraiser; and
2    bear the other expenses of the appraisal and umpire equally

### TENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

C.    Duties in the Event of Loss or Damage

1    You must see that the following are done in the event of loss or damage to Covered Property:

a    Notify the police if a law may have been broken.

b    Give us prompt notice of the loss or damage.  Include a description of the property involved

c       As soon as possible, give us a description of how, when, and where the loss or damage occurred

d       Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered Property from such loss, for consideration in a settlement of the claim  However, we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a Covered Cause of Loss. This will not increase the Limit of Insurance Also, if feasible, set damage to property aside and in the best possible order, for examination.

e.      At our request, give us complete inventories of the damaged and undamaged property  Include quantities, costs, values and amount of loss claim.

f       As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.  Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records

g.      Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request  We will supply you with the necessary forms

h       Cooperate with us in the investigation or settlement of the claim.

## ELEVENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 01 (11/97) which states that:

Loss Conditions:

F.      Other Insurance:

1       You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Covered Part.  If you do, we will pay our share of the covered loss or damage.  Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis

8

2     If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

## TWELFTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

Loss Conditions:

J    Vacancy

2.    Vacancy provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

a    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1)    vandalism;
(2)    sprinkler leakage, unless you have protected the system against freezing;
(3)    building glass breakage;
(4)    water damage;
(5)    theft; or
(6)    attempted theft.

## THIRTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 01 (11/97), which states that:

K    Valuation:

2    If replacement cost is indicated in the Declarations as the method valuation we will determine the value of Covered Property in the event of loss or damage as follows:

9

a.  At replacement cost (without deduction for deprecation) as of the time of loss or damage except as provided in b through j below:

j   The cost of repair or replacement does not include any increase costs attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property

## FOURTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C   Exclusions under amount:

    1   We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss

        a   Ordinance or law

        The enforcement of any ordinance or law:

        (1)   regulating construction; use or repair of any property; or
        (2)   requiring the tearing down of any property including the costs of removing its' debris

This exclusion, ordinance or law, applies whether the loss results from:

        (1)   an ordinance or law that is enforced even if the property has not been damaged; or
        (2)   the increased cost incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolishing of property or removal of its debris, following a direct physical loss or damage to that property.

## FIFTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C   Exclusions:

10

2    We will not pay for loss or damage caused by or resulting from any of the following:

    d.    (1)    Wear and tear;

            (2)    rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality and property that causes it to damage or destroy itself;

### SIXTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

C.    Exclusions:

    3    We will not pay for the loss or damage caused by or the resulting from any of the following 3a through 3c  But if an excluded Cause of Loss that is listed in 3a through 3c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

        c    Faulty, inadequate or defective:

            . . .

        (2)    design,  specifications,  workmanship,  repair,  construction, renovation, remodeling, grading, compaction;

of part or all of any property own on off the described premises.

### SEVENTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI

pleads this specific portion of the policy contained in Form SB 86 02 (04/99), which states that:

H.    Deductible:

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations  We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance The Deductible clause does not apply to Business Income

11

## EIGHTEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form AES 119B (10/96), which states that:

Deductible Amounts:

    $10,000 Tenant vandalism.

## NINETEENTH DEFENSE

Without waiving the applicability of any other portion of the policy of insurance, RSUI pleads this specific portion of the policy contained in Form AES 119B (10/96), which states that:

Valuation:

    Building: Replacement Cost – Agreed Amount; Contents: Replacement Cost, 90% Coinsurance

## TWENTIETH DEFENSE

Insurance companies are the only defendant subjected to punitive damages under Alabama Law for breach of the implied duty of good faith which exists in every contract – thus creating a distinction that is under-inclusive and not rationally tailored to accomplish a legitimate state interest; wherefore, the imposition of punitive damages would violate the equal protection clause of the Fifth and Fourteenth Amendments of the United States Constitution and deprive RSUI of the right to equal protection under the law as provided in Article I, Section 1, 6 and 22 of the Alabama Constitution of 1901.

## TWENTY-FIRST DEFENSE

The imposition of punitive damages against an insurance company for asserting non-frivolous legal defenses to an insurance claim violates the, "right of access to the Courts," and the, "right to seek assistance of counsel," as guaranteed by the First and Fourteenth Amendments

12

to the United States Constitution and Article I, Sections 1, 6, and 22 of the Alabama Constitution

of 1901

### TWENTY-SECOND DEFENSE

Plaintiffs have asserted tort claims that allow for the imposition of punitive damages in

certain cases  The imposition of punitive damages in this case would violate the due process

clause of Amendments V and XIV to the United States Constitution and Article I, Section 6 of

the Alabama Constitution of 1901 because the imposition of punitive damages would violate this

defendant's right to substitutive due process.

### TWENTY-THIRD DEFENSE

The imposition of punitive damages under Alabama law would violate the Fourth, Fifth,

Sixth, Eighth and Fourteenth Amendments of the United States Constitution, and Articles 1, 6

and 22 of the Alabama Constitution, in each of the following ways:

(a)    Alabama law permits the imposition of unlimited punitive damages that are vastly disproportionate to any actual or compensatory injury, thereby violating the 14th Amendment of the U S  Constitution

(b)    Disproportionate punitive damages constitute an arbitrary and capricious taking of property that is unjustified by any rational governmental interest, thereby violating the 5th and 14th Amendments of the U.S  Constitution

(c)    The award of any punitive damages without specific standards to guide the jury's discretion in determining the <u>amount</u> of damages is contrary to due process under the 14th Amendment of the U.S  Constitution.

(d)    Alabama does not provide a reasonable limit on the amount of any punitive damages award, thus violating the 14th Amendment of the U S  Constitution

(e)    The substantive standards of liability under which punitive damages are sought in this case are ambiguous, subjective, and not reasonably ascertainable, and are thus "void for vagueness" under the 14th Amendment of the U.S  Constitution

13

(f)     Alabama fails to provide a clear, objective and consistent appellate standard for post-verdict review of punitive damages thus violating the 5th and 14th Amendments of the United States Constitution.

(g)     Alabama law permits civil punishment upon a standard of proof less than that required for the imposition of criminal sanctions

(h)     Alabama law permits joint and several punishment of defendants who are guilty of different acts and degrees of culpability

(i)     Alabama law permits multiple awards of punitive damages for the same alleged act or omission

## TWENTY-FOURTH DEFENSE

Alabama's punitive damages law violates the Fifth Amendment guarantee against self-incrimination under the U.S Constitution because said claim is penal in nature, while defendant is required to disclose documents and/or other evidence against its interest under the rules of discovery and evidence.

## TWENTY-FIFTH DEFENSE

The award of any damages under the allegations of this complaint would violate the prohibition against laws that impair the obligations of contracts in violation of the Contract Clause, Article I Sec 10 cl 1, of the United States Constitution and Article 1, Section 22, of the Constitution of Alabama, in that the claims are in derogation express terms contained in the insurance policy made basis of this action and contractually agreed upon by defendant and the named insured

## TWENTY-SIXTH DEFENSE

Pursuant to ALA. CODE § 6-11-21, there is a cap on the amount of punitive damages recoverable in this action.

14

### TWENTY-SEVENTH DEFENSE

Pursuant to ALA CODE § 6-11-21, RSUI is not liable for any portion of any award of punitive damages wherein there have been no express findings that RSUI engaged in conduct as defined in ALA CODE § 6-11-20  RSUI is not jointly and severally liable to Plaintiffs for any award of punitive damages based upon the conduct of any other defendant

### TWENTY-EIGHTH DEFENSE

The imposition of punitive damages against RSUI in an amount exceeding any actual and potential harm by an excessive and/or unconstitutional ratio violates RSUI's due process rights as guaranteed by the United States Constitution.

### TWENTY-NINTH DEFENSE

The imposition of punitive damages under Alabama's current system fails to provide fair notice to RSUI that the alleged wrongful conduct could subject RSUI to punishment and also fails to provide fair notice of the severity of the punishment that the State could impose through an award of punitive damages.  This lack of fair notice violates RSUI's due process rights, both procedural and substantive, as guaranteed by the United States Constitution.

### THIRTIETH DEFENSE

The imposition of punitive damages against RSUI in this case, if any, violates RSUI's due process rights as guaranteed by the United States Constitution because the award of punitive damages is excessive in light of the following criteria: (1) the degree of reprehensibility of the RSUI's alleged wrongful conduct; (2) the disparity between the harm or potential harm and the punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in other cases.

15

## THIRTY-FIRST DEFENSE

The procedure for determining punitive damages specified under Alabama law violates RSUI's right to due process, and otherwise violates the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, because the procedure for determining punitive damages under Alabama law does not provide meaningful guidance to a jury in the determination of an appropriate punitive damages award and does not constrain a jury or otherwise reduce the risk of an arbitrary or grossly excessive punitive damages verdict

## THIRTY-SECOND DEFENSE

Any award of punitive damages in this case would violate the Eighth Amendment to the U S Constitution as an excessive fine. Also, any award of punitive damages in this case would violate Article I, § 15 of the Alabama Constitution as an excessive fine.

## THIRTY-THIRD DEFENSE

The imposition of punitive damages violates the Fourth, Fifth and Fourteenth Amendments to the U S. Constitution, as well as Article I, §§ 6 and 15 of the Constitution of Alabama by failing to provide clear, distinct, and adequate guidelines as to each of the following: (a) the general standards applicable to such an award; (b) the appropriate and specific standards and/or burdens of proof for such an award; (c) the amount of a punitive award; (d) the appropriate procedures for a punitive award; (e) the appellate standard of review of an award of punitive damages; (f) trifurcation of the proceedings with respect to whether compensatory liability and damages should be imposed, whether punitive damages should be imposed, and what amount of punitive damages should be imposed in order to prevent the inappropriate admission of evidence regarding punitive damages.

16

### THIRTY-FOURTH DEFENSE

RSUI contends that the limits on punitive damages imposed by ALA. CODE § 6-11-21 should apply as a matter of rule and established public policy without alteration or amendment by the Court and that § 6-11-21 is constitutional. RSUI further contends that the principle of deference to the legislature's will should prevail with respect to the limits imposed on punitive damages awards and that any holding that does not so defer violates the separation of powers clauses of the Constitution of the United States and the Constitution of the State of Alabama.

### THIRTY-FIFTH DEFENSE

Plaintiffs have failed to state a claim for which relief can be granted.

### THIRTY-SIXTH DEFENSE

All allegations contained in Plaintiffs' First Amended Complaint that are not specifically admitted are denied.

### THIRTY-SEVENTH DEFENSE

Plaintiff is not entitled to recovery to the extent that any damages were caused by Plaintiff's failure to mitigate damages.

### THIRTY-EIGHTH DEFENSE

RSUI reserves the right to amend its answer and assert such additional defenses as may be available upon the development of facts in the discovery process or otherwise in the course of this litigation and under applicable substantive law.

HELEN JOHNSON ALFORD (ALF002)
JUAN C. ORTEGA (ORT001)
Attorneys for Defendant, RSUI Group

17

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

N J  Cervera, Esq
Matthew Baker, Esq
CERVERA, RALPH & REEVES, LLC
914 South Brundidge Street
Troy, AL  36081

James S. Lloyd, Esq
Karen D  Farley, Esq
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, AL  35223

Done this 4TH day of JANUARY , 2007

COUNSEL

COMMON POLICY DECLARATIC 3

RSUI

THIS POLICY IS ISSUED BY THE COMPANY INDICATED BY "X" BEFORE THE COMPANY NAME BELOW

☐ Landmark American Insurance Company
   (An Oklahoma Stock Co )

☒ RSUI Indemnity Company
   (A New Hampshire Stock Co.)

BRANCH ADDRESS:   945 E. Paces Ferry Rd., #1800, Atlanta, GA 30326

POLICY NO.   NHD332474

RENEWAL OF:   R2HD327878

NAMED INSURED AND MAILING ADDRESS:

PRODUCER:

Fraternal Property Management Association
(Name Incomplete - See FPMA Named Insured End )
425 N. Martingale Road
Suite 1100
Schaumburg, IL  60173

POLICY PERIOD: From   04/01/2004   To   04/01/2005   12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PARTS | | PREMIUM | | COMM |
|---|---|---|---|---|
| ☒ Commercial Property      RSG40001 (1203) | Excluding TRIA | $ | 6,253,162. | |
| ☐ Commercial General Liability | | $ | | |
| ☐ Crime and Fidelity | | $ | | |
| ☐ Commercial Inland Marine | | $ | | |
| ☐ Boiler and Machinery | | $ | | |
| ☐ Commercial Automobile | | $ | | |
| ☐ Farm | | $ | | |
| ☐ | | $ | | |
| ☐ | | $ | | |
| ☐ Premium is payable in installments: See endorsement. | TOTAL POLICY PREMIUM | $ | 6,355,744. | |
| | Premium Excluding TRIA | $ | 6,253,162 | |
| | TRIA Premium | $ | 102,582. | |

FORMS APPLICABLE TO ALL COVERAGE PARTS: (Show numbers)
See attached Forms and Endorsements Schedule

BUSINESS DESCRIPTION: Fraternities
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORMS(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Countersigned   9/9/04        By:   _James A. Orr_   Authorized Representative
                 Date          lr

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright ISO Properties  Inc.. 2001

EXHIBIT
A

RSG 40003 0704

A member of Alleghany Insurance Holdings LLC

R⁄  I INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully*

| | |
|---|---|
| Additional Premium Excluding TRIA: | $10,304. |
| Additional TRIA Premium: | $  169 |
| Total Additional Premium Due This Endorsement: | $10,473. |

It is hereby agreed that the premium shown above is due for the 4th Quarter.

All other terms, conditions and warranties remaining unchanged

This endorsement effective  01/01/2005
forms part of Policy Number  NHD332474
issued   to      Fraternal   Property   Management
Association

Endorsement No : 4
Date Processed  : 04/21/2005

Authorized Representative

*James A. Dixon*

RSUI INDEMNITY COMPANY

_This Endorsement Changes The Policy.  Please Read It Carefully_

| | |
|---|---|
| Additional Premium Excluding TRIA: | $75,895. |
| Additional TRIA Premium: | $ 1 245 |
| Total Additional Premium Due This Endorsement: | $77,140. |

It is hereby agreed that the premium shown above is due for the 3rd Quarter

All other terms, conditions and warranties remaining unchanged

This endorsement effective  11/01/2004
forms part of Policy Number  NHD332474
Issued    to      Fraternal    Property    Management
Association
Authorized Representative

Endorsement No : 3
Date Processed  : 02/15/2005

_James A. Dipo_

RGJI INDEMNITY COMPANY

_This Endorsement Changes The Policy.  Please Read It Carefully_

Additional Premium Excluding TRIA:            $78,309.

Additional TRIA Premium:                      $ 1,285.

Total Additional Premium Due This Endorsement:  $79,594

It is hereby agreed that the premium shown above is due for the 2nd Quarter.

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  08/01/2004
forms part of Policy Number  NHD332474
Issued  to      Fraternal  Property  Management          Endorsement No.: 2
Association                                              Date Processed  : 10/18/2004
Authorized Representative

_James A. Dixon_

RSUI INDEMNITY COMPANY

_This Endorsement Changes The Policy.  Please Read It Carefully_

| | |
|---|---|
| Return Premium Excluding TRIA: | $28,809. |
| Return TRIA Premium: | $ 473. |
| Total Return Premium Due This Endorsement: | $29,282. |

It is hereby agreed the above premium is returned for the 1st Quarter

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  04/01/2004
forms part of Policy Number  NHD332474
issued    to      Fraternal    Property    Management
Association
Authorized Representative

Endorsement No : 1
Date Processed  : 09/14/2004



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA  30326

IL 70 01 (Ed. 05 92)

Policy No.  NHD332474
Renewal of  R2HD327878

## BUSINESSPRO POLICY COMMON DECLARATIONS

| NAMED INSURED AND ADDRESS:<br>Fraternal Property Management Association<br>c/o 425 N. Martingale Road<br>Ste. 1100<br>Schaumburg, IL 60173 | POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From:  4/1/04 To: 4/1/05 |
|---|---|
| IN RETURN FOR PAYMENT OF THE PREMIUM,<br>AND SUBJECT TO ALL TERMS OF THIS<br>POLICY, WE AGREE WITH YOU TO PROVIDE<br>THE INSURANCE AS STATED IN THIS<br>POLICY. | AGENT'S NAME AND ADDRESS:<br><br>Swett and Crawford of Illinois, Inc.<br>1 North Franklin<br>Chicago, IL 60606 |

Insurance is afforded by the company indicated below:
(Each a capital stock corporation)

( X )  RSUI Indemnity Company.

This policy consists of the following Coverage
parts for which a premium is indicated. This
premium may be subject to adjustment.

| | Premium |
|---|---|
| | $on file w/Company |
| Commercial Property | NOT INCLUDED |
| Commercial General Liability | NOT INCLUDED |
| Commercial Crime | NOT INCLUDED |
| Commercial Inland Marine | NOT INCLUDED |
| Commercial Boiler and Machinery | NOT INCLUDED |
| Commercial Auto | NOT INCLUDED |
| Commercial Umbrella | |
| | TOTAL    $  annually subject to annual<br>rerating |

Premium shown is payable:  At inception;

FORMS AND ENDORSEMENTS applicable to all Coverage Parts and made part of this
Policy at time of issue are listed on the attached Forms and Endorsements
Schedule SB 88 01 (11/85).

Countersigned _____          By _____
                    Date                              Authorized Representative

IL 70 01 (Ed. 05/92) PRO

BUSINESSPRO (Reg. U.S. Pat. Off.)
(Page 1 of 1)



RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1890
Atlanta, GA 30326

### NAMED INSURED WORDING
### RSUI INDEMNITY COMPANY
### POLICY # NHD332474

**FIRST NAMED INSURED:**

FRATERNAL PROPERTY MANAGEMENT ASSOCIATION
C/o 425 N. MARTINGALE ROAD
SUITE 1100
SCHAUMBURG, IL 60173

**BROAD NAMED INSURED:**

ALL FRATERNAL PROPERTY MANAGEMENT ASSOCIATION PARTICIPATING ENTITIES PER THE
RECORDS ON FILE WITH HOBBS GROUP/KIRKLIN & COMPANY, LLC.

FPMA NAMED INSURED ENDORSEMENT

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

POLICY NUMBER: NHD332474                                          COMMERCIAL PROPERTY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS ADJUSTMENT ENDORSEMENT – COMMERCIAL PROPERTY COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)
BUSINESS INCOME COVERAGE FORM (WITHOUT EXTRA EXPENSE)
EXTRA EXPENSE COVERAGE FORM
TOBACCO SALES WAREHOUSES COVERAGE FORM
STANDARD PROPERTY POLICY

A. This endorsement is intended to facilitate payment of insurance proceeds in the event of loss or damage to Covered Property from a loss that is covered by:

1. This Commercial Property coverage; and

2. Boiler and Machinery insurance; and

there is a disagreement between the insuring companies as to the amount of the loss to be paid by each company.

B. The provisions of item C. of this endorsement apply only if all of the following requirements are met:

1. The Boiler and Machinery insurance carried by the named insured, insuring the Covered Property, contains a provision with substantially the same requirements, procedures and conditions as contained in this endorsement.

2. The damage to the Covered Property was caused by a loss for which both we and the Boiler and Machinery insuring company(s) admit to some liability for payment under the respective policies.

3. The total amount of the loss is agreed to by you, us and the Boiler and Machinery insuring company(s).

4. We and the Boiler and Machinery insuring company(s) disagree as to the amount of loss that each of us should pay that is attributable to:

a. A cause of loss covered under this Commercial Property coverage; and

b. An "accident" covered under the Boiler and Machinery insurance.

C. If the requirements listed in B. above are satisfied, we and the Boiler and Machinery insuring company(s) will make payments to the extent, and in the manner, described in the following:

1. We will pay, after your written request, the entire amount of loss that we have agreed as being covered by this Commercial Property coverage and one-half (1/2) the amount of loss that is in disagreement.

2. The Boiler and Machinery insuring company(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered by the Boiler and Machinery insurance and one-half (1/2) the amount of loss that is in disagreement.

3. The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Adjustment Endorsement(s) of the Boiler and Machinery insuring company(s).

4. The amount to be paid under this endorsement shall not exceed the amount we would have paid had no Boiler and Machinery insurance been in effect at the time of loss.

5. Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

6. ADDITIONAL CONDITIONS

a. We and the Boiler and Machinery insuring company(s) agree to submit our differences to arbitration within 90 days after loss payment made under the terms of this endorsement.

b. You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the Boiler and Machinery insuring company(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

CP 12 60 10 91          Copyright, ISO Commercial Risk Services, Inc., 1990          Page 1 of 1          □

COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS



1. POLICY NO.  NHD332474 _____     EFFECTIVE DATE  04/01/04 _____

2. NAMED INSURED    Fraternity Property Management Association _____     RENEWAL OF  R2HD327878 _____

3. DESCRIPTION OF PREMISES                                    ☐ "X" if supplemental declarations attached

| Prem. No. | Bldg. No. | Location, Construction and Occupancy |
|---|---|---|
| ** | ** | **Per Schedule on file with Company |

COVERAGES PROVIDED - Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| ** | ** | Building, Contents and Rents | $ 5,000,000. per occurrence and annual aggregates as respects Flood & Earthquake | Special | 90% | Included |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

OPTIONAL COVERAGES - Applicable only when entries are made in the schedule below.

| Prem. No. | Bldg. No. | Agreed Value Expiration Date | Coverage | Amount | Replacement Cost (X) Building | Personal Property | Including "Stock" |
|---|---|---|---|---|---|---|---|
| ** | ** | | | | X | X | |

| Prem. No. | Bldg. No. | Inflation Guard (Percentage) Building | Personal Property | * Monthly Limit of Indemnity (Fraction) | * Maximum Period of Indemnity (X) | * Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

* APPLIES TO BUSINESS INCOME ONLY

4. MORTGAGE HOLDERS

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| | | |

| 5. DEDUCTIBLE | TOTAL PREMIUM |
|---|---|
| See attached Manuscript Form | FOR THIS  ⇒  $  Included COVERAGE PART |

6. FORMS / ENDORSEMENTS APPLICABLE

See attached
Manuscript Form

THESE DECLARATIONS, WHEN COMBINED WITH THE COMMON POLICY DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Includes copyrighted material of ISO Commercial Risk Services  Inc., with its permission
Copyright, ISO Commercial Risk Services  Inc. 1984

RSG 40001 1203

FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

RSUI Dec Sheet
EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS
RSG94060 (03/04)
RSG96006 (09/03)
RSG96014 (05/04)
IL7001 (05/92)
FPMA Named Insured Endorsement
IL0017 (11/98)
CP1260 (10/91)
RSG40001 1203
SELECT BUSINESS POLICY PLUS COVERAGES FOR FRATERNITIES (10/96)
SB8605 (11/97)
SB8602 (04/99)
SB8605 (11/97)
CM7658 (12/98)
CM0020 (06/95)
CM7669 (01/89)
CP0040 (06/95)
SB8696 (11/97)
HURRICANE DEDUCTIBLE FORM
CM0001 (0900)
CM7668 (07/90)
CM7661 (11/99)
CM0066 (06/95)
CM00067 (09/00)
IL0903 (04/98)
ILLINOIS CHANGES – MINE SUBSIDENCE
IL0903 (04/98)
INDIANA CHANGES – MINE SUBSIDENCE
IL0903 (04/98)
KENTUCKY CHANGES – MINE SUBSIDENCE
IL0903 (04/98)
WEST VIRGINIA CHANGES – MINE SUBSIDENCE
RSG96013 (10/03)

SB8801 (11/85)

PAGE 1 OF 1

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

A. The following Exclusion is added:

EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria

We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But if "fungus", wet or dry rot or bacteria results in a "covered cause of loss", we will pay for the loss or damage caused by that "covered cause of loss"

This exclusion does not apply:

1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or

2. To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

B. The following Additional Coverage is added:

ADDITIONAL COVERAGE - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria

1. This limited coverage applies only when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence, and only if any loss resulting from the following is reported to us within 60 days of the occurrence.

   a. A "covered cause of loss" other than fire or lightning; or

   b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

2. Under conditions described in item B.1. above, we will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present

3. The coverage provided under this Limited Coverage is limited to $15,000. per location subject to a policy annual aggregate limit of $250,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000. per location subject to a policy annual aggregate limit of $250,000. even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property

If there is covered loss or damage to Covered Property, not caused by fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**C.** The following Definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

*This Endorsement Changes The Policy. Please Read It Carefully.*

## SCHEDULED LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

It is understood and agreed that the following special terms and conditions apply to this policy:

1. In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":

    a. The actual adjusted amount of the loss, less applicable deductibles;

    b. 100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles. If no value is shown for a scheduled item then there is no coverage for that item; or

    c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

2. Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.

3. The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing a proof of loss the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

RSG 94060 0304

*This Endorsement Changes The Policy. Please Read It Carefully.*

## EXCLUSION – ELECTRONIC PROPERTY AND VIRUS

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

A. It is agreed the following definitions apply:

"Electronic Data" means information, facts or "Computer Programs" stored, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy discs, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

"Computer Programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

"Virus" means a harmful code or similar instructions introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt normal operations.

B. The following exclusion applies:

**Damage to Electronic Data**

Damage to "Electronic Data", including any cost to replace or restore such "Electronic Data" that is caused by a "Virus" is not covered.

Damage to "Electronic Data" caused by the willful or malicious alteration, manipulation or destruction of such "Electronic Data" by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace your computer systems or any part of those systems, is not covered.

However, this exclusion does not apply to damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of ice, snow or water damage.

C. The following is added to the Business Income (and Extra Expense) Coverage Form, if it applies:

**Additional Limitation- Interruption of Computer Operations**

Business Income loss incurred when a "suspension" of "operations" is caused by destruction or corruption of "Electronic Data" or any loss or damage to "Electronic Data", caused by a "Virus" is not covered.

Extra Expense loss incurred when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "Electronic Data" or any loss or damage to "Electronic Data", caused by a "Virus" is not covered.

However, this limitation will not apply to destruction, corruption, loss or damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of ice, snow or sleet, or water damage.

RSG 96006 0903

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION OF PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

However, if both A and B. below apply, we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:

A.  The pathogenic or poisonous biological or chemical materials are normally kept at or brought onto your premises, with your consent, for use in your business operations at your premises; and

B.  The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any persons, organizations, or property of any nature.

RSG 96014 0504



RSUI Group, Inc.          SB 86 96 (Ed. 11 97)
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

### FRATERNITY SELECT BUSINESS POLICY PLUS

NAMED INSURED: Fraternal Property       POLICY PERIOD:   4/1/2004    to   4/1/2005
Management Association

TOTAL PROPERTY PREMIUM:  $*as previously billed Annually subject to annual rating

DEDUCTIBLE AMOUNTS:
$100,000 Flood -- Zone A or V only                    $25,000 Flood -- all other
$25,000 Earthquake (Other than CA see endorsement)    $10,000 --Vacant Locations
$10,000 Named Storm (see special endorsement)         $10,000 -- Freeze Claims
$10,000 Tenant Vandalism
$2,500 All Other
All above deductibles apply per location, for each occurrence

NOT AT A DESCRIBED PREMISES:
Insurance is provided only for those coverages for which a Limit of Insurance has been inserted:

|  | Newly Acquired or constructed Locations | At any other location | In transit, in or  on any one conveyance unit |
|---|---|---|---|
| Building | $250,000 | NOT COVERED | NOT COVERED |
| Business Personal Property | INCLUDED ABOVE | $10,000 | $10,000 |
| Business Income | INCLUDED ABOVE | NOT COVERD | NOT COVERED |
| Extra Expense | INCLUDED ABOVE | INCLUDED ABOVE | NOT COVERED |

DESCRIBED PREMISES:
At the locations specified below, insurance is provided for those coverages for which a Limit of Insurance has been inserted:

Location:              Building:              Address:
As per Statement of Values on file.

BUILDING, BUSINESS PERSONAL PROPERTY and BUSINESS INCOME INCLUDING EXTRA     .
EXPENSE:    .
VALUATION:  Building:Replacement Cost – Agreed Amount; Contents: Replacement Cost ,
90% Coinsurance  .
Minimum Valuation Requirement for Participation in Property Program: Valuation at 100% of
Marshall Swift on File with Hobbs group/Kirklin & Co., LLC.

AES 119B (10/96)            Page 1 of 3

MORTGAGEHOLDER: As per statement of values on file with Hobbs Group/Kirklin & Co., LLC at 12231 Emmet Street, Suite 5, Omaha, NE 68164 and RSUI Indemnity Company, 945 East Paces Ferry Road, Suite 1890, Atlanta, GA 30326

CERTIFICATES OF INSURANCE/EVIDENCE OF PROPERTY INSURANCE: Any Certificate of Insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Certificate of Insurance/Evidence of Property Insurance, except where any Additional Insured (s) or Loss Payee(s) are named pursuant to the Special Provisions of said Certificate of Insurance/Evidence of Property Insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

The Company hereby authorizes Hobbs Group/Kirklin & Co., LLC to issue Certificates of Insurance/Evidence of Property Insurance including any mortgagee, Loss Payee and Additional Insured clauses.

SUPPLEMENTARY COVERAGES
The coverages below are policy sublimits. If you purchase additional limits for any of these coverages at a specific location, the Limits of Insurance shown at that location will reflect your total limits, including the Limits of Insurance shown below.

A.  The Limits of Insurance shown below are provided for the Coverages listed and apply separately at each of you premises. If there is no separate deductible indicated, the Property Deductible will apply.

$5,000 Arson Reward
$25,000 Fire Department Services Charge
$25,000 Fire Protection Device Recharge
ORDINANCE OR LAW
 Full Building Limit as per Statement of Values on file for Coverage A – Coverage for Loss to the Undamaged Portion of the Building
 $250,000 for Coverage B – Demolition Cost Coverage & Coverage C – Increased Cost of Construction Coverage
$5,000 Outdoor Property with a $500 maximum per item
$10,000 Pollutant Clean Up and Removal

B.  When Business Income Coverage is included in the Declarations, the following coverages are provided up to the Business Income Limit of Insurance. These are extensions of coverage, not additional Limits of Insurance:

Utility Services (including Overhead Power Transmission Lines)

OPTIONAL COVERAGE

A.  Guaranteed Replacement Cost – Building Coverage Only

To qualify for Guaranteed Replacement Cost, your building must have an insured value of at least $90 per Square Foot against all usable square footage (both finished and unfinished spaces included) or have replacement cost appraisal by licensed appraiser on file with Hobbs group/Kirklin & Co., LLC justifying lower value. If replacement cost appraisal is on file, minimum valuation of 100% of Marshall Swift on file with Hobbs group/Kirklin & Co., LLC does not apply.

AES 119B (10/96)   Page 2 of 3

If location qualifies for Guaranteed Replacement Cost, insurance carrier will pay replacement cost of building, subject to Valuation provision in the policy, regardless of scheduled limit, however, all policy sublimits remain unchanged. In the absence of Guaranteed Replacement Cost valuation the maximum recovery is 100% of scheduled building values at the time of the loss.

FORMS AND ENDORSEMENTS applicable to this Coverage Part and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule, SB 88 01 (11/85).

AES 119B (10/96)                    Page 3 of 3



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

<u>THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.</u>

**SELECT BUSINESS POLICY
SPECIAL COVERAGES FOR FRATERNITIES**

This endorsement modifies insurance provided under the following:

**SELECT BUSINESS POLICY
BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

I.     The following is added to SECTION A. COVERAGE
       Section A.1.c is amended to add:

       Personal Property of Fraternity house residents is excluded.

II.    The following is added to SECTION A. COVERAGE
       Section A.1.b. (1) is amended to:

       Personal property owned by you and used in your business including, but not limited to, Fine Arts, Accounts
       Receivable, Valuable Papers, Commercial Articles and Electronic Data Processing Equipment;

III.   The following is amended to SECTION C. EXCLUSIONS
       Section C.1. is amended to add:

       h. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

IV.    The following is amended to SECTION D. LIMITATIONS
       Section D.4 is deleted and replaced with the following:

       4.  We will not pay more than $25,000 for loss or damage to the interior of any building or structure caused
           by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

           a.  the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through
               which the rain, snow, sleet, ice, sand or dust enters; or

           b.  the loss or damage is caused by or resulting from thawing of snow, sleet or ice on the building
               structure.

IV.    The following is added to SECTION E. ADDITIONAL COVERAGES:

**7.  Arson Reward**

       We will pay, up to the limit listed in the Declarations for this Additional Coverage, a
       reward to any individual(s) who provided information leading to the arrest of the
       person(s) who committed an arson, which damaged your Covered Property.

Page 1 of 4

The policy deductible does not apply to this Additional Coverage. This Additional Coverage does not apply in those states that do not consider arson rewards a matter of insurance, and thereby disallow them as part of insurance policies.

V.   The following is amended of SECTION F. COVERAGE EXTENSIONS
     Section F. Coverage Extensions, Paragraph 2 is deleted and replaced with;

     **2.   Outdoor Property**

     You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants, piers, wharves, docks or retaining walls (not attached to buildings), including debris removal expense.

     The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

VI.  The following is added to SECTION J. DEFINITIONS

     3.   "Location" includes any single or multiple structures at the same address or different addresses as long as they are all owned by the same entity or individual.

This endorsement also modifies insurance provided under the following:

SELECT BUSINESS POLICY CONDITIONS

I.   The following is amended to **Section J. Vacancy**
     Section J.1.b. is deleted and replaced with the following:
     "It is understood and agreed that any insured building under renovation shall mean that the insured has contractually secured the services of a qualified contractor or contractors to perform work consisting of remodeling (including but not limited to carpentry, masonry, painting, plumbing, wiring, heating and cooling), improvements, redecorating, or other work performed on the building structure; such renovation shall not include additions to the structure such as room additions or additional stories. Said under renovation shall mean the time frame between the contract's specified job start and job completion dates during which the contractor(s) is (are) in process of performing the work specified by contract; during said time frame the building shall not be considered vacant."

II.  The following is added to **Section J. Vacancy**

     c.   Buildings which are idle over school breaks or holidays are not considered to be vacant. However, if a premise is vacated at the start of a school break and is not reoccupied at the end of the school break, the 60 consecutive day provision in Condition II below begins on the first day of the start of the break.

     d.   The Vacancy Provision does not apply to buildings that meet the definition of a vacant building in J.1.a. if that building has been charged the vacancy rate thus eliminating the vacancy provision.

     e.   A deductible of $10,000 applies per location, for each occurrence, to any covered cause of loss, to all vacant buildings.

III.  The following amends **Section J. Vacancy**

Section J 2. is deleted and replaced with the following;

If the building where loss or damage occurs has been vacant for more than 30 consecutive days before that loss or damage occurs:

a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

  (1)  vandalism;

  (2)  sprinkler leakage, unless you have protected the system against freezing;

  (3)  building glass breakage;

  (4)  water damage

  (5)  theft; or

  (6)  attempted theft

b. With respect to Covered Causes of Loss other than those listed in 2.(a)(1) through 2. (a)(6) above, we will reduce the amount we would otherwise pay for loss or damage by 15%.

If the building where loss or damage occurs has been vacant for more than 30 consecutive days before that loss or damage occurs or if the location has been properly reported as vacant resulting in the charging of the appropriate vacancy rate, **a deductible of $10,000** will apply to any loss or damage by any cause except the following;

a.     as provided in form CM7662 attached to this policy

b.     as provided in form CM7661 attached to this policy

c.     as provided by the Hurricane Deductible form attached to this policy

III.  Under **Section K. Valuation, 2.g** is deleted in its entirely.

IV.  The following is added to **Section K. Valuation**

4. If Guaranteed Replacement Cost  option is chosen by an insured location as the method of valuation For building coverage we will determine the value of the Covered Property in the event of loss or damage as follows:

  a.     At Guaranteed Replacement Cost (without deduction for depreciation) as of the time of loss or damage except as provided in **b.** through **d.** below:

**Page 3 of 4**

b.  We will not pay  า a Guaranteed Replacement Cost ba  for any loss or damage:
(1)  until the damage is actually repaired or replaced,
and
(2)  unless the repairs or replacement are made:
(a)  as soon as reasonably possible after the loss or damage; or
(b)  if claim was initially made on an actual cash basis, as soon as reasonably
possible after you notify us, within 180 days after the loss or damage, or your
intent to make a claim on a Guaranteed Replacement Cost basis.
c.  We will not pay more for loss or damage on a Guaranteed Replacement Cost basis than the
Least of (1), or (2) subject to d. below:
(1)  The cost to replace, on the same premises, the damaged building with a building of:
(a)  comparable material and quality and size; and
(b)  used for the same purpose;
or
(2)  The amount you actually spend that is necessary to repair or replace the damaged
property.
d.  The cost of repair or replacement does not include any increased cost attributable to
enforcement of any ordinance or law regulating the construction, use or repair of any property.

This endorsement also modifies insurance provided under the following:

SELECT BUSINESS POLICY
BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

I.    The following amends **Section D. ADDITIONAL COVERAGES**
Section D.2.b.(2). Is deleted and replaced with;

(2) 90 consecutive days after the date determined in b (1).

This endorsement also modifies insurance provided under the following:

ACCOUNTS RECEIVABLE COVERAGE FORM

I.    The following amends Section A. COVERAGE

Section A.2.a. is deleted entirely.

This endorsement also modifies insurance provided under the following:

VALUABLE PAPERS AND RECORDS COVERAGE FORM

I.    The following amends Section A. COVERAGE

Section A.2.c. is deleted entirely.

This endorsement also modifies insurance provided under the following:

The following amends Select Business Policy Conditions (SB86-01 Edition 11-97) page 7 of 7 -- under Loss
Conditions k.2.h. (2): amending "within 12 months" to "within 180 Days."

It is understood that **Backup of Sewers or Drains** is a Covered Cause of Loss and the $2,500 All other deductible
applies.

Page 4 of 4



SB 86 01
(Ed. 11 97)

## SELECT BUSINESS POLICY CONDITIONS

This Coverage Part is subject to the following conditions

### GENERAL CONDITIONS

#### A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud by you at any time relating to this insurance. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact at concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

#### B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

#### C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. there has been full compliance with all of the terms of this Coverage Part; and

2. the action is brought within 2 years after the date on which the direct physical loss or damage occurred

#### D. Liberalization

If we adopt any revision that would broaden the coverage under this Coverage Part with-

out additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

#### E. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

#### F. Policy Period, Coverage Territory

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. during the policy period shown in the Declarations; and

   b. within the Coverage Territory

2. The Coverage Territory is:

   a. the United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

#### G. Mortgageholders

1. The term "mortgageholder" includes trustee.

2. We will pay for covered loss of or damage to building or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

3. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure

SB 86 05 (Ed. 11/97) XS                    1

SB 86 01
(Ed. 11 97)

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   a. pays any premium due under this Coverage Part if you have failed to do so;

   b. submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   c. has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

5. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   a. the mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   b. the mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired. At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6. If we cancel this policy, we will give written notice to the mortgageholder at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment or premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

7. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

LOSS CONDITIONS

A. Abandonment

   There can be no abandonment of any property to us

B. Appraisal

   If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of physical loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and the amount of physical loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   1. pay its chosen appraiser; and

   2. bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

C. Duties In The Event Of Loss Or Damage

   1. You must see that the following are done in the event of loss or damage to Covered Property:

      a. Notify the police if a law may have been broken.

      b. Give us prompt notice of the loss or damage. Include a description of the property involved.

      c. As soon as possible, give us a description of how, when, and where the loss or damage occurred

SB 86 01
(Ed. 11 97)

pay more than the actual amount of the loss or
damage

E. Loss Payment

1  In the event of direct physical loss or
   damage covered by this Coverage Part, at
   our option and subject to any applicable
   Deductible provision, or Loss Condition,
   we will either:

   a. pay the value of lost or damaged
      property, as specified in K. Valuation
      below;

   b. pay the cost of repairing or replacing
      the lost or damaged property, subject
      to 2. below;

   c. take all or any part of the property at
      an agreed or appraised value; or

   d. repair, rebuild or replace the property
      with other property of like kind and
      quality subject to 2. below.

2  The cost to repair, rebuild or replace does
   not include the increased cost attributable
   to enforcement of any ordinance or law
   regulating the construction, use or repair
   of any property

3. The amount of Business Income loss will
   be determined based on:

   a  the Net Income of the business before
      the direct physical loss or damage oc-
      curred;

   b. the likely Net Income of the business if
      no physical loss or damage had oc--
      curred but not including any Net In-
      come that would likely have been
      earned as a result of an increase in the
      volume of business due to favorable
      business conditions caused by the im-
      pact of the Covered Cause of Loss on
      customers or on other businesses;

   c. the operating expenses, including pay-
      roll expenses, necessary to resume
      "operations" with the same quality of
      service that existed just before the
      direct physical loss or damage; and

   d. other relevant sources of information,
      including:
         (1) your financial records and ac-

d. Take all reasonable steps to protect
   the Covered Property from further
   damage by a Covered Cause of Loss,
   and keep a record of your expenses
   necessary to protect the Covered
   Property from such loss, for consid-
   eration in the settlement of the claim.
   However we will not pay for any sub-
   sequent loss or damage resulting from
   a Cause of Loss that is not a covered
   Cause of Loss. This will not increase
   the Limit of Insurance. Also, if feasible,
   set damaged property aside and in the
   best possible order, for examination.

e. At our request, give us complete in-
   ventories of the damaged and un-
   damaged property. Include quantities,
   costs, values and amount of loss
   claimed.

f. As often as may be reasonably re-
   quired, permit us to inspect the prop-
   erty proving the loss or damage and
   examine your books and records. Also
   permit us to take samples of damaged
   and undamaged property for inspec-
   tion, testing and analysis, and permit us
   to make copies from your books and
   records.

g  Send us a signed, sworn proof of loss
   containing the information we request
   to investigate the claim. You must do
   this within 60 days after our request.
   We will supply you with the necessary
   forms.

h. Cooperate with us in the investigation
   or settlement of the claim.

2. We may examine any insured under oath
   while not in the presence of any other
   insured and at such times as may be rea-
   sonably required, about any matter relating
   to this insurance or claim, including an in-
   sured's books and records. In the event of
   an examination, an insured's answers must
   be signed.

D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages
apply to the same loss or damage, we will not

SB 86 05 (Ed. 11/97) XS                    3

SB 86 01
(Ed. 11 97)

counting procedures;

    (2) bills, invoices and other vouchers; and

    (3) deeds, liens, or contracts

4. The amount of Extra Expense will be determined based on:

a. All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred We will deduct from the total of such expenses:

    (1) the salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and

    (2) any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

b. Necessary expenses that reduce the Business Income loss that otherwise would have been incurred

5. We will give notice of our intentions within 30 days after we receive the sworn statement of loss

6. We will not pay you more than your insurable interest in the Covered Property

7. We may adjust losses with the owners of lost or damaged property if other than you  If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their insurable interest in the Covered Property

8. We may elect to defend you against suits arising from claims of owners of property  We will do this at our expense.

9. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with

all of the terms of this Coverage Part and;

a  we have reached agreement with you on the amount of loss; or

b  an appraisal award has been made.

F. Other Insurance

1  You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part  If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

G. Recovered Property

1  If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property  We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

2. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value  If so, you may, at your own expense:

a. stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

b. remove the the brands or labels, if doing so will not physically damage the merchandise  You must relabel the merchandise or its containers to comply with the law

SB 86 05 (Ed. 11/97) XS

4

SB 86 01
(Ed. 11 97)

**H. Resumption Of Operations**

1. We will reduce the amount of your:

   a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

   b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

2. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay losses based on the length of time it would have taken to resume "operations" as quickly as possible.

**I. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at the time of loss, that party is one of the following:

   a. someone insured by this insurance;

   b. a business firm:

      (1) owned or controlled by you; or

      (2) that owns or controls you; or

   c. your tenant.

This will not restrict your insurance

**J. Vacancy**

1. Description of Terms

   a. As used in the Vacancy Condition, the term building and the term vacant have the following meaning:

      (1) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means that unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations

      (2) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its square footage:

         (a) is not rented; or

         (b) is not used to conduct customary operations

   b. Buildings under construction or renovation are not considered vacant.

2. Vacancy Provisions

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

   a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      (1) vandalism;

      (2) sprinkler leakage, unless you have protected the system against freezing;

      (3) building glass breakage;

      (4) water damage;

      (5) theft; or

SB 86 01
(Ed. 11 97)

(6) attempted theft

b. With respect to Covered Causes of Loss other than those listed in 2 (a)(1) through 2.(a)(6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

K. Valuation

1 . If actual cash value is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damaged as follows:

a. At actual cash value as of the time of loss or damage except as provided in b through h. below.

b. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

c. Finished "stock" you have manufactured at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

(1) Actual cash value of the loss or damage property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs for replacement.

f  Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(1) blank materials for reproducing the records; and

(2) labor to transcribe or copy the records when there is a duplicate

g. Exhibitions and displays at your cost.

h. Patterns, molds, models, and dies at replacement cost if actually replaced, otherwise at actual cash value.

2. If replacement cost is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

a. At replacement cost (without deduction for depreciation) as of the time of loss or damage except as provided in b. through j. below:

b  "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

c. Finished "stock" you have manufactured, at the selling price less discounts and expenses you otherwise would have had.

d  Glass at the cost of replacement with safety glazing material if required by law.

e  Tenant's Improvements and Betterments at:

(1) Replacement cost of the loss or

SB 86 01
(Ed. 11 97)

damaged property if you make repairs promptly

(2) A proportion of your original cost if you do not make repairs promptly We will determine the proportionate value as follows:

(a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease;

(c) if your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

f. Valuable Papers and Records, including those which exist on electronic or mag netic media (other than prepackaged software programs), at the cost of:

(1) blank materials for reproducing the records; and

(2) labor to transcribe or copy the records when there is a duplicate.

g. Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac at actual cash value

h We will not pay on a replacement cost basis for any loss or damage:

(1) until the lost or damaged property is actually repaired or replaced; and

(2) unless the repairs or replacement are made:

(a) as soon as reasonably possible after the loss or damage; or

(b) if claim was initially made on an actual cash basis, as soon as reasonably possible after you notify us, within 12 months after the loss or damage, of your intent to make claim on a replacement cost basis

i. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3) subject to k. below:

(1) the Limit of Insurance applicable to the lost or damaged property;

(2) the cost to replace, on the same premises, the lost or damaged property with other property:

(a) of comparable material and quality; and

(b) used for the same purpose; or

(3) the amount you actually spend that is necessary to repair or replace the lost or damaged property.

j. The cost of repair or replacement does not include any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

L. Errors in Description

We will pay for loss covered by this policy if such loss is otherwise not payable solely because of any unintentional error in describing a location insured under this policy

You agree to give us prompt notice of any such error when discovered.

SB 86 05 (Ed. 11/97) XS

7



SB 86 02
(Ed. 04 99)

**SELECT BUSINESS POLICY**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations The words "we," "us" and "our" refer to the Company providing this insurance

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION J - DEFINITIONS.

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1, and limited in A.2, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a  Building, meaning the building or structure described in the Declarations, including:

(1) completed additions;

(2) fixtures, including outdoor fixtures and signs;

(3) permanently installed:

(a) machinery;

(b) equipment; and

(c) foundations of machinery, tanks and their component parts, including all connections thereto which are below the undersurface of the lower basement floor, or

where there is no basement, below the surface of the ground

(4) personal property owned by you that is used to maintain or service the building or structure or its premises, including but not limited to:

(a) fire extinguishing equipment;

(b) outdoor furniture;

(c) floor coverings; and

(d) appliances used for refrigerating, ventilating, cooking, dish washing or laundering;

(5) if not covered by other insurance, additions under construction, alterations and repairs to the building or structure;

b. Your Business Personal Property as shown in the Declarations, including:

(1) personal property owned by you and used in your business;

(2) labor, materials or services furnished or arranged by you on personal property of others;

SB 86 02 (Ed. 04/99) XS                    1

(3) your use interest as tenant in Improvements and Betterments made a part of the building or structure you occupy but do not own;

(4) leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others; and

(5) signs, including signs attached to buildings, provided there is no coverage for the sign under the Building Covered Property.

c Personal Property of Others that is in your care, custody or control as shown on the declarations

However, our payment for loss of, or damage to Personal Property of Others will only be for the account of the owner of the property

2. Property Not Covered

Covered Property does not include:

a. accounts, bills, currency, deeds, evidences of debt, money, notes or securities;

b. animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. automobiles held for sale;

d bridges;

e. contraband, or property in the course of illegal transportation or trade;

f. foundations of buildings, structures, or boilers if their foundations are below:

(1) the lowest basement floor; or

(2) the surface of the ground, if there is no basement;

g land (including land on which the property is located), water (including groundwater), growing crops or lawns;

h. personal property while waterborne (other than while on regular ferries or railroad car floats);

i underground pipes, flues or drains except as provided under A. 1 a (3)(c);

j. vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) are licensed for use on public roads; or

(2) are operated principally away from the described premises

This paragraph does not apply to:

(1) vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(2) vehicles or self-propelled machines, other than autos, you hold for sale;

(3) rowboats or canoes out of water at the described premises;

k. the following property while outside of buildings:

(1) grain, hay, straw or other crops;

(2) trees, shrubs or plants, piers, wharves, docks or retaining walls, all except as provided in the Coverage Extensions.

l the cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media.

B. COVERED CAUSES OF LOSS

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1 Excluded in Section C. Exclusions; or

2. Limited in Section D. Limitations;

that follow

SB 86 02 (Ed. 04/99) XS                    2

## C. EXCLUSIONS

1 We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance or Law

The enforcement of any ordinance or law:

(1) regulating construction; use or repair of any property; or

(2) requiring the tearing down of any property including the cost of removing its' debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

(1) an ordinance or law that is enforced even if the property has not been damaged; or

(2) the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a direct physical loss or damage to that property.

### b. Earth Movement

(1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire, theft, or explosion, we will pay for the loss or damage caused by that fire or explosion.

(2) Volcanic eruption, explosion or effusion. But, if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for that resulting loss or damage.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) airborne volcanic blast or airborne shockwaves;

(b) ash, dust or particulate matter; or

(c) lava flow

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion does not apply to Covered Personal Property in due course of transit

### c. Governmental Action

Seizure or destruction of property by order of governmental authority. But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

### d. Utility Services

The failure of power or other utility service supplied to the described premises however caused, if the failure occurs away from the described premises.

But if the failure of power or other utility services results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

### e. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused

SB 86 02 (Ed. 04/99) XS                    3

But if nuclear reaction or radiation or radioactive contamination results in fire we will pay for that loss or damage caused by the fire.

f. War and Military Action

(1) War, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

(2) Mudslide or mudflow
But if Water, as described in g (1) and g (2) above results in fire, explosion, theft or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, theft or sprinkler leakage.

This exclusion does not apply to Covered Personal Property in due course of transit.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) smog;

(4) settling, cracking, shrinking or expansion;

(5) nesting or infestation or discharge or release of waste products or secretions by insect, birds, rodents or other animals.

(6) mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) the following causes of loss to personal property;

(a) dampness or dryness of atmosphere;

(b) cold or heat;

(c) marring or scratching.

But if an excluded cause of loss that is listed in 2.d (1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass

SB 86 02 (Ed. 04/99) XS                                                4

f. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  (1) you do your best to maintain heat in the building or structure; or

  (2) you drain the equipment and shut off the supply if the heat is not maintained

g. Dishonest or criminal act by you, any of your partners, employees (including leased employees) directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

  (1) acting alone or in collusion with others; or

  (2) whether or not occurring during the hours of employment.

  This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered

h. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense

i. Rain, snow, ice or sleet to personal property in the open.

j. Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss

k. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release

or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

3. We will not pay for loss or damage caused by or resulting from any of the following 3a. through 3c. But if an excluded Cause of Loss that is listed in 3a. through 3c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss

  a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage

  b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body

  c. Faulty, inadequate or defective:

    (1) planning, zoning, development, surveying, siting;

    (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3) materials used in repair, construction, renovation or remodeling; or

    (4) maintenance;

  of part or all of any property on or off the described premises

D. LIMITATIONS

1. We will pay for direct physical loss or damage to Covered Personal Property which is in due course of transit at your risk if the Covered Personal Property is:

  a. in the custody of a carrier or bailee for hire; or

  b. on vehicles you own or operate; but only up to the Transit Limit of Insurance shown in the Declarations and subject to the Transit deductible shown in the Declarations.

SB 86 02 (Ed. 04/99) XS                          5

2  We will not pay for loss or damage to any of the following types of property if the loss or damage occurs at an unnamed location or while in transit:

  a. Musical Instruments

  b. Contractors' Equipment, including Cranes

  This limitation does not apply to musical instruments or contractors equipment you manufacture, process or hold for sale.

3. We will not pay for loss or damage to:

  a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion

  c. Property that is missing, where the only evidence of the loss or damage is the shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

  d. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions

4. We will not pay more than $10,000 for loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

  a  the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

  b. the loss or damage is caused by or results from thawing of snow, sleet or ice on the building structure.

5. We will only pay for loss of or damage to animals if the loss or damage is caused by any of the "specified causes of loss" or building glass breakage, and then only if they are killed or their destruction is made necessary.

6  The special limit shown for each category, a. through c , is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence  The special limits are:

  a. $2,500 for furs, fur garments and garments trimmed with fur

  b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item

  c  $250 for stamps, tickets (including lottery tickets held for sale) and letters of credit

7. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder, or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

  a. results in discharge of any substance from any automatic fire protection system; or

  b. is directly caused by freezing

SB 86 02 (Ed. 04/99) XS                     6

E. ADDITIONAL COVERAGES

1. Collapse

The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in 1.a through 1.e. below.

a. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by one or more of the following:

(1) the "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Form;

(2) hidden decay;

(3) hidden insect or vermin damage;

(4) weight of people or personal property;

(5) weight of rain that collects on a roof;

(6) use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 1.a(1) through 1.a.(6), we will pay for the loss or damage even if the use of defective material or methods, in construction, remodeling or renovation, contributed to the collapse

b. If the direct physical loss or damage does not involve collapse of a building we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

(1) the personal property which collapses is inside a building; and

(2) the collapse was caused by a cause of loss listed in 1.a (1) through 1.a.(6) above

c. With respect to the following property:

(1) outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

(2) awnings, gutters and downspouts;

(3) yard fixtures;

(4) outdoor swimming pools;

(5) fences;

(6) piers, wharves, and docks;

(7) beach or diving platforms or appurtenances;

(8) retaining walls; and

(9) walks, roadways and other paved surfaces;

if the collapse is caused by a Cause of Loss listed in 1 a (1) through 1 a.(6), we will pay for loss or damage to that property only if:

(1) such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

(2) the property is Covered Property under this Coverage Form.

d. Collapse does not include settling, cracking, shrinkage, bulging or expansion.

e. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Form.

No Deductible applies to this Additional Coverage.

2. Debris Removal

a We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of

SB 86 02 (Ed. 04/99) XS                                    7

Loss that occurs during the policy pe-
riod. The expenses will be paid only if
they are reported to us in writing
within 180 days of the earlier of:

(1) the date of direct physical loss or
damage; or

(2) the end of the policy period.

b. The most we will pay under this Addi-
tional Coverage is 25% of:

(1) the amount we pay for the direct
physical loss of or damage to
Covered Property; plus

(2) the deductible in this Coverage
Form applicable to that loss or
damage.

But this limitation does not apply to
any additional debris removal limit
provided in the Limits of Insurance
section.

c. This Additional Coverage does not ap-
ply to the cost to:

(1) extract "pollutants" from land or
water; or

(2) remove, restore or replace pol-
luted land or water.

3. Fire Department Service Charge

When the fire department is called to save
or protect Covered Property from a Cov-
ered Cause of Loss, we will pay up to the
limit specified in the Declarations for this
Additional Coverage for your liability for
fire department service charges:

a assumed by contract or agreement
prior to loss; or

b. required by local ordinance.

No Deductible applies to this Additional
Coverage

4. Fire Protection Device Recharge

We will pay, up to the limit listed in the
Declarations for this Additional Coverage,
to recharge or refill your fire protective
devices that are permanently installed in
buildings at the described premises.

This Additional Coverage only applies
when such devices have been discharged
while being used to combat a covered fire.

5. Loss Data Preparation

We will pay, up to the limit listed in the
Declarations for this Additional Coverage,
for reasonable costs you incur in prepar-
ing loss data required by policy conditions
after a loss covered by this Coverage
Part. This includes the cost of taking in-
ventory, making appraisals and preparing
other data to determine the extent of your
loss. This does not include public adjustors
fees.

6. Pollutant Clean Up and Removal

We will pay your expense to extract "pol-
lutants" from land or water at the de-
scribed premises if the release, discharge
or dispersal of the "pollutants" is caused
by or results from a Covered Cause of
Loss that occurs during the policy period.
The expenses will be paid only if they are
reported to us in writing within 180 days
of the earlier of:

a  the date of direct physical loss or
damage; or

b. the end of the policy period.

The most we will pay for each location
under this Additional Coverage is stated in
the Declarations for the sum of all such
expenses arising out of Covered Causes
of Loss occurring during each separate 12
month period of this Policy

No Deductible applies to this Additional
Coverage

SB 86 02 (Ed. 04/99) XS                              8

F. COVERAGE EXTENSIONS

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises

1. **Newly Acquired or Constructed Property**

a You may extend the Insurance that applies to Building to apply to:

(1) your new buildings while being built on the described premises;

(2) buildings you acquire at locations, other than the described premises, intended for:

(a) similar use as the building described in the Declaration; or

(b) use as a warehouse.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations

b. You may extend the Insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

c. Insurance under this Extension for each newly acquired or constructed property will end when any of the following occurs:

(1) this Coverage Part expires;

(2) 90 days expire after you acquire or begin to construct the property; or

(3) you report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property

d. If the coverage provided by this extension has expired due to item (c) above, the Limit of Insurance shown in the Declarations for "At Any Other Location" will apply.

2. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants, piers, wharves, docks or retaining walls (not attached to buildings), including debris removal expense, caused by or resulting from any of the following causes of loss:

a. fire;

b. lightning;

c. explosion;

d. riot or Civil Commotion; or

e. aircraft.

The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

3. **Personal Effects**

You may extend the Insurance that applies to Your Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees.

The most we will pay for loss or damage under this Extension is stated in the Declarations for this Extension per each described premises. Our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

No Deductible applies to this Coverage Extension.

SB B6 02 (Ed. 04/99) XS                    9

4. **Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

## G. LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations. The limits applicable to the Coverage Extensions and all of the Additional Coverages are all in addition to the Limits of Insurance except for Collapse and Debris Removal. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. collapse;

2. debris removal; but if:

   a. the sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   b. the debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

we will pay up to the limit shown for Debris Removal on the Declarations for each location in any one occurrence under the Debris Removal Additional Coverage.

## H. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance. The Deductible clause does not apply to Business Income.

## I. OPTIONAL COVERAGES

1. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) the Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times;

      (2) the percentage of annual increase shown in the Declarations expressed as a decimal (example 8% is .08), times;

      3) the number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365

   **Example:**

   | If: | The applicable Limit of Insurance is | $100,000 |
   |---|---|---|
   | | and the annual percentage increase is | 8% |
   | | The number of days since the beginning of the policy year (or last policy change) is | 146 |
   | | The amount of increase is; $100,000 X .08 X 146 ÷365 = | $3,200 |

2. **Ordinance or Law**

   a. Each of the Coverages - Coverage A, Coverage B and Coverage C - applies only if that Coverage(s) is chosen by entry in the Declarations and then only with respect to the Building property identified for that Coverage(s) in the Declarations

b. We will not pay under this Optional Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"

c. Coverage A - Coverage for Loss to the Undamaged Portion of the Building

If there is a direct physical loss or damage from a Covered Cause of Loss to a covered Building property, we will pay under Coverage A for the loss in value of the undamaged portion of the building which is a consequence of enforcement of any ordinance or law that:

(1) requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

(2) regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(3) is in force at the time of the Covered Cause of Loss

d. Coverage B - Demolition Cost Coverage

If there is a direct physical loss or damage from a Covered Cause of Loss to covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law

If attached, the COINSURANCE Additional Condition Endorsement does not apply to Demolition Cost Coverage

e. Coverage C - Increased Cost of Construction Coverage

(1) If there is a direct physical loss or damage from a Covered Cause of Loss to the covered Building property, we will pay for the increased cost to:

(a) repair or reconstruct damaged portions of that Building property; and/or

(b) reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required

When the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law

However:

(a) This coverage applies only if the restored or remodeled property is intended for similar occupancy to the occupancy prior to the loss or damage unless such occupancy is not permitted by zoning or land use ordinance or law.

(b) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

If attached, the COINSURANCE Additional Condition Endorsement, does not apply to Increased Cost of Construction Coverage.

f. Loss Payment

(1) Coverage A

(a) If the replacement cost valuation applies and the property is repaired or replaced on the same or another premises we will not pay more than the lesser of:

(i) the amount you actually spend to repair, rebuild or reconstruct the building, but not more than the amount it would cost to restore the building on the same

SB 86 02 (Ed. 04/99) XS                    11

premises and to the same height, floor area, style and comparable quality of the original property insured; or

(ii) the Limit of Insurance shown in the Declarations as applicable to the covered building property.

(b) If the replacement cost valuation applies and the property is not repaired or replace, or if the replacement cost valuation does not apply we will not pay more than the lesser of:

(i) the actual cash value of the building at the time of loss; or

(ii) the Limit of Insurance shown in the Declarations as applicable to the covered building property.

(2) Coverage B

We will not pay more than the lesser of the following

(a) the amount you actually spend to demolish and clear the site of the described premise; or

(b) the applicable Limit of Insurance shown for Coverage B in the Declarations

(3) Coverage C

(a) We will not pay under Coverage C:

(i) until the property is actually repaired or replaced at the same or another premises; and

(ii) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend the period in writing during the two years

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premise, the most we will pay under Coverage C is the lesser of:

(i) the increased cost of construction at the same premises; or

(ii) the applicable Limit of Insurance shown for Coverage C in the Declarations

(c) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of:

(i) the increased cost of construction at the new premises; or

(ii) the applicable Limit of Insurance shown for Coverage C in the Declarations.

g. Under this Optional Coverage we will not pay for loss due to any ordinance or law that:

(1) you were required to comply with before the loss, even if the building was undamaged; and

(2) you failed to comply with.

3. Utility Services

a We will pay for direct physical loss or damage to Covered Property described in the Declarations by the interruption of any of the following

SB B6 02 (Ed. 04/99) XS                    12

services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises:

(1) Water Supply Services, meaning the following types of property supplying water to the described premises:

(a) pumping stations; and

(b) water mains.

(2) Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

(a) communication transmission lines, including optic fiber transmission lines;

(b) coaxial cables; and

(c) microwave radio relays except satellites

(3) Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

(a) utility generating plants;

(b) switching stations;

(c) substations;

(d) transformers; and

(e) transmission lines.

b. The Utility Services Limit of Insurance as shown on the Declarations is part of, not in addition to, the Limit of Insurance stated in the Declarations, as applicable to the Covered Property.

**J. DEFINITIONS**

1. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste Waste includes materials to be recycled, reconditioned or reclaimed

2 "**Stock**" means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

3 "**Specified Causes of Loss**" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) the cost of filling sinkholes; or

(2) sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss or damage to:

(1) personal property in the open; or

(2) the interior of a building or structure, or property inside a building or structure unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.



SB 86 05
(Ed. 11 97)

## SELECT BUSINESS POLICY
## BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights and duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H - DEFINITIONS

### A. COVERAGE

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property, including personal property in the open (or in a vehicle) within 1000 feet, of the premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss

If you are a tenant, your premises is the portion of the building that you rent, lease or occupy, including all routes within the building to gain access to the described premises and your personal property in the open (or in a vehicle) within 1000 feet your premises.

1. Business Income

   Business Income means the:

   a  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

   b  continuing normal operating expenses incurred, including payroll

### B. COVERED CAUSES OF LOSS

Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

1. excluded in Section C. Exclusions, of the Select Business Policy Building and Personal Property Coverage Form;

2. limited in Section D. Limitations of the Select Business Policy Building and Personal Property Coverage Form; or

3. excluded in Section C. Special Exclusions, below.

### C. SPECIAL EXCLUSIONS

We will not pay for:

1. Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of the covered building.

   But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

2. Any loss caused by or resulting from:
   a. damage or destruction of finished "stock"; or

   b. the time required to reproduce finished "stock".

This exclusion does not apply to Extra Expense.

SB 86 05
(Ed. 11 97)

3 Any increase of loss caused by or result-ing from:

a. delay in rebuilding, repairing or replac-ing the property or resuming "oper-ations", due to interference at the lo-cation of the rebuilding, repair or re-placement by strikers or other per-sons; or

b suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations" we will cover such loss that affects your Business Income during the "period of restoration".

4. Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

5. Any other consequential loss

6. Any loss caused by or resulting from damage or destruction of property in transit

## D. ADDITIONAL COVERAGES

### 1. Civil Authority

We will pay for the actual loss of Busi-ness Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the de-scribed premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss The coverage will apply for a period of up to three consecutive weeks from the date of that action.

### 2. Extended Business Income

We will pay for the actual loss of Business Income you incur during the period that:

a. begins on the date property (except finished "stock") is actually repaired, rebuilt or replaced and "operations are resumed; and

b. ends on the earlier of:

(1) the date you could restore you "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(2) 60 consecutive days after the date determined in b (1) above. However, Extended Business Income does not apply to loss of Business Income incurred as a result of un-favorable business conditions caused by the impact of the Covered Cause of Loss in the area where the de-scribed premise are located

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

### 3. Extra Expense

Extra Expense means necessary expenses you incur during the "period of restora-tion" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss

a. We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations:"

(1) at the described premises; or

(2) at the replacement premises or at temporary locations, including:

(a) relocation expenses; and

(b) costs to equip and operate the replacement or tempo-rary locations.

b. We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations "

c. We will pay any Extra Expense to:

(1) repair or replace any property; or

SB 86 05
(Ed. 11 97)

(2) research, replace or restore the lost information or damaged valuable papers and records;
to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

## E. COVERAGE EXTENSION

### 1. Newly Acquired Locations

a You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibits.

b The most we will pay, at each location, for loss under this Extension is the limit shown in the Declarations for this Coverage Extension

c Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) this policy expires:

(2) 90 days expire after you acquire or begin to construct the property; or

(3) you report values to us.

We will charge you additional premium for values reported from the date you acquire the property

### 2. Property At Any Other Location

a. You may extend your Business Income Coverage to apply to property at any location other than described premises or newly acquired locations.

b. The most we will pay, at each location, for loss under this extension is the limit shown on the Declarations for this Coverage Extension.

## F. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Extra Expense;

2. Civil Authority; or

3. Extended Business Income

## G. OPTIONAL COVERAGES

### 1. Dependent Property Business Income

a. When indicated in the Declarations, we will pay for the actual loss of business income you sustain due to necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss.

b. We will pay no more than the Limit of Insurance for Business Income or the limit in the Declarations for this Optional coverage, whichever is less.

c. The following is added to Select Business Policy Conditions, Loss Condition G. Resumption of Operations:

2. We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

a. source of materials; or

b. outlet for your products.

d. The following is added to the DEFINITIONS section:

1. "Dependent Property" means property operated by others whom you depend on to:

SB 86 05
(Ed. 11 97)

a  deliver materials or services to you, or to others for your account. Services does not mean water, communication or power supply services;

b  accept your products or services;

c  manufacture products for delivery to your customers under contract of sale; or

d  attract customers to your business

2. "Period of Restoration" with respect to "dependent property" is the period of time that:

a  begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

a. regulates the construction, use or repair, or requires the tearing down of any property; or

b. requires any insured or others to test for monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration"

2. Ordinance or Law - Increased Period of Restoration

a. When indicated in the Declarations that this coverage applies, if a Covered Cause of Loss occurs to property at the premises described in the Declaration, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of "operations" caused by or resulting from the enforcement of any ordinance or law that:

(1) regulates the construction or repair of any property;

(2) requires that tearing down of parts of any property not damaged by a Covered cause of Loss; and

(3) is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires any insured or other to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants".

b  The PERIOD OF RESTORATION definition is replaced by the following:

3. "Period of Restoration" means the period of time that:

a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b  ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

SB 86 05 (Ed. 11/97) XS                    4

SB 86 05
(Ed. 11 97)

"Period of Restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".

3. Unfinished Stock in Transit

When indicated in the Declarations page, we will pay for the loss of business income you sustain due to direct physical loss or damage by a Covered Cause of Loss to unfinished "stock" while in transit.

The most we will pay is the Limit of Insurance for Unfinished Stock in Transit shown on the Declarations.

4. Utility Services

a. When indicated in the Declarations that this Coverage applies, we will pay for loss of Business Income or Extra Expense, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described below, if the property is located outside of a covered building described in the Declarations:

(1) Water Supply Services, meaning the following types of property supplying water to the described premises:

(a) pumping stations; and

(b) water mains.

(2) Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

(a) communication transmission lines, including optic fiber transmission lines;

(b) coaxial cables; and

(c) microwave radio relays except satellites.

(3) Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

(a) utility generating plants;

(b) switching stations;

(c) substations;

(d) transformers; and

(e) transmission lines.

b The Utility Services Limit of Insurance as shown in the Declarations is part of, not in addition to, the Limit of Insurance stated in the Declarations, as applicable to the Business Income

H. DEFINITIONS

1. "Operations" means your business activities occurring at the described premises.

2. "Period of Restoration" means the period of time that:

a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. ends on earlier of:

(1) the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) the date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that;

SB 86 05
(Ed. 11 97)

a. regulates the construction, use or repair, or requires the tearing down of any property; or

b. requires any Insured or others to test for monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period or restoration".

3. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

4. "Stock" means merchandise held in storage or for sale, raw material and in process or finished goods, including supplies used in their packing or shipping.



### BUSINESS ELECTRONIC SYSTEMS
### AND TELECOMMUNICATIONS FORMS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F DEFINITIONS.

## A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property**, as used in this Coverage Form, means:

   a. Electronic Equipment - meaning your Electronic Data Processing, Information Technology Hardware, and Telecommunications Equipment, including their component parts;

   b. Data, Programs and Media

      (1) Data is information which has been converted to a form usable in Data Processing Equipment. Data includes Computer Programs and Instructions;

      (2) Media is the material on which Data is recorded; for example, magnetic disks and tapes.

   c. Property of Others - similar property of others in your care, custody or control, and for which you are legally responsible.

2. **Property Not Covered**

   Covered Property does not include:

   a Property you loan, rent or lease to others while it is away from your premises;

   b Data or Media which cannot be replaced with other of the same kind or quality, unless it is specifically described and scheduled with a separate Limit of Insurance in the Declarations.

   c Satellites, microwave towers and dishes, earth stations, telephone switching stations or similar property.

   d Accounts, bills, currency, securities, evidence of debt, valuable papers, abstracts, records, deeds, manuscripts or other documents, unless converted to Data, and then only in that form.

   e. Your stock in trade.

   f. Contraband, or property in the course of illegal transportation or trade

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions.

CM 76 58 (ed. 12/98) XS                    1

4. Additional Coverages

a. Extra Expense

(1) We will pay the actual and neces-
sary Extra Expense you sustain
from a Covered Cause of Loss,
due to direct physical loss of or
damage to:

(a) Covered Property at your
premises or in transit, within
the Coverage Territory;

(b) the building in which the
Covered Property is located,
provided the building is
damaged to an extent which
prevents access to the Cov-
ered Property;

(c) the air conditioning, voltage
regulator, line conditioner or
uninterruptable power supply
systems that specifically
service your data processing
operation;

(d) the electrical or telecom-
munication system that spe-
cifically services your data
processing operation, pro-
vided the damage to the
system occurs inside, or
within 100 feet of, the
building housing your data
processing operation.

(e) a building adjacent to a
scheduled location, when
access to the scheduled lo-
cation is prohibited by civil
authority. Coverage is limited
to no more than two (2)
weeks.

(2) Extra Expense means necessary
expenses you incur during the
"period of restoration" that you
would not have incurred if there
had been no direct physical loss
or damage to property:

(a) To avoid or minimize the
suspension of business and
to continue "operations":

(i) at the described prem-
ises; or

(ii) at replacement prem-
ises or at temporary
locations, including:

Relocation ex-
penses; and

Costs to equip and
operate the re-
placement or tem-
porary locations

(b) To minimize the suspension
of business if you cannot
continue "operations"; or

(c) (i) to repair or replace any
property; or

(ii) to research, replace or
restore the lost infor-
mation on damaged
valuable papers and
records;

but only to the extent it
reduces the amount of
loss that otherwise
would have been pay-
able under this Addi-
tional Coverage.

(3) The most we will pay for "loss" in
any one occurrence under this
Additional Coverage is the appli-
cable Extra Expense Limit of In-
surance shown in the Declara-
tions.

(b) Newly Acquired Electronic Equip-
ment

We will pay for "loss" to Newly Ac-
quired Electronic Equipment at each
location scheduled in the Declarations,
provided the value of the equipment is
reported to us within 60 days from
the time you acquired it. If it is not
reported within that time, or if the
policy period ends within that time,
coverage will cease. We will compute
the additional premium due from the
date you acquire the equipment.

CM 76 58 (ed. 12/98) XS                    2

The most we will pay for "loss" in any one occurrence under this Additional Coverage is 25% of the highest Limit of Insurance for any location shown in the Declarations, for coverage A 1 a Electronic Equipment, up to a maximum of $250,000.

### c. Newly Acquired Locations

We will pay for "loss" to Covered Property at any new location which you acquire, provided the new location is reported to us within 60 days from the time you acquired it. If it is not reported within that time, or if the policy period ends within that time, coverage will cease. We will compute any change in your premium from the date you occupy the new location.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is the In Transit/Any Other Location Limit shown in the Declarations.

### d. Temporary Locations

We will pay for "loss" to Covered Property while at temporary locations but only for the first 60 days that the property is located there, and not beyond the end of the policy period.

The most we will pay in any one occurrence under this Additional Coverage is the In Transit/Any Other Location Limit shown in the Declarations.

### e. Debris Removal

We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss.

The most we will pay for "loss" at each location under this Additional Coverage is 25% of the sum of the applicable location limits for Electronic Equipment and Data, Programs, Media Coverages up to a maximum of $100,000.

This Additional Coverage doesn't apply to the cost to:

(1) extract "pollutants" from land or water; or

(2) remove, restore or replace polluted land or water.

### f. Pollutant Clean Up and Removal

We will pay your necessary expense to extract "pollutants" from land or water at the premises described in the Declarations, if the release, discharge or dispersal of the "pollutants" results from a Covered Cause of Loss to Covered Property that occurs during the policy period. Your expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1) the date of the direct physical loss or damage; or

(2) the end of the policy period. The most we will pay for each location under this Additional Coverage is 10% of the sum of the applicable location limits for Electronic Equipment and Data, Programs, Media Coverages, up to a maximum of $10,000, for the sum of all such expenses for each separate 12 month policy period.

No deductible applies to this Additional Coverage

### g. Cost of Preparing a Statement of Loss

We will pay the cost of preparing a statement of loss or any other exhibits required in connection with any claim under this Coverage Form

The most we will pay for the cost of preparing a statement of loss or other exhibits under this Additional Coverage is $1,000.

This Additional Coverage does not include public adjuster's fees.

CM 76 58 (ed. 12/98) XS                                    3

**h. Duplicate Data**

We will pay for your "loss" of duplicate data stored at locations not scheduled on the Declarations. The most we will pay for "loss" under this Additional Coverage in any one occurrence is 25% of the highest Data, Programs, Media location limit up to a maximum of $100,000.

**i. Protective Equipment**

We will pay your necessary expenses to:

(1) Repair or replace (in excess of any amount covered by other Insurance);

(2) Recharge:

Your fire protection equipment that is used exclusively to protect the Covered Property.

We will pay if the damage or discharge is the result of a response to a fire, a false alarm, or another Covered Cause of Loss. But, we won't pay for discharge which occurs during installation, repair or recharge. Nor will we pay for gradual leakage from the system.

The most we will pay under this Additional Coverage in any one occurrence is $25,000.

These Additional Coverages have separate Limits of Insurance.

**B. EXCLUSIONS**

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   **a. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

**c. War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**d. Earth Movement**

(1) Any earth movement such as earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

(2) Volcanic eruption, explosion or effusion. But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

CM 76 58 (ed. 12/98) XS                    4

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

(a) airborne volcanic blast or airborne shock waves;

(b) ash, dust or particulate matter; or

(c) lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

e. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) foundations, walls, floors or paved surfaces;

(b) basements, whether paved or not; or

(c) doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Dishonest acts by you, your partners, officers or trustees, or your or their agents, or others to whom Covered Property is entrusted;

This exclusion will not apply to acts of destruction by an employee of yours; nor will it apply to bailees for hire (for example, truckers or warehousemen) But we will not pay for theft by your employees.

b. Delay, loss of market or loss of income;

c. The enforcement of any law which regulates the construction, repair or demolition of buildings or other structures;

d. Any change in, or interruption of:

(1) power supply; or

(2) telecommunications service if the change originates more than 100 feet away from the premises containing the Covered Property (equipment) But, if a loss or damage by fire, explosion or theft results, we will pay for that resulting "loss"

e. Programming errors or incorrect machine instructions. This does not include loss or damage by computer virus or other malicious software.

In addition to the above, we will not pay for any Extra Expense you incur due to:

f. Interference by strikers or other persons with repairs to damaged property, or with resumption of normal business "operations";

g. Mechanical or machinery breakdown of any property not named in the Extra Expense Additional Coverage;

CM 76 58 (ed. 12/98) XS                    5

h The suspension, lapse or cancel-
lation of any lease, license or
contract beyond the "period of
restoration";

i. Any other consequential "loss "

3 We will not pay for a "loss" caused by
or resulting from any of the following.
But if "loss" by a Covered Cause of
Loss results, we will pay for that re-
sulting "loss "

a. Weather conditions. But this ex-
clusion only applies if weather
conditions contribute in any way with a
cause or event excluded in Paragraph 1
above to produce the "loss."

b. Faulty, inadequate or defective
workmanship, repair, material
used in repair, upgrading or re-
modeling of Covered Property.

c Wear and tear, gradual deteriora-
tion or obsolescence.

## C. LIMITS OF INSURANCE

Except for the Additional Coverages
b,e,f,g,h and i, the most we will pay for
"loss" in any one occurrence is the ap-
plicable Limit of Insurance shown in the
Declarations  The Limits of Insurance for
Additional Coverages b,e,f,g,h and i, are
stated in those Additional Coverages.

## D. DEDUCTIBLE

We will pay only the amount of the ad-
justed "loss" in excess of the applicable
Deductible shown in the Declarations, up
to the applicable Limit of Insurance.

1. The Breakdown Deductible applies to
losses resulting from:

a. Mechanical breakdown, (for ex-
ample, head crash) of the Cov-
ered Property;

b. Short circuit, blow-out or other
electric or magnetic disturbance,
other than lightning, within elec-
trical equipment, apparatus or de-
vices;

c Any repairing, servicing or pro-
cessing operation;

d Damage to Data or Media when
Electronic Equipment breaks
down or malfunctions while Data
or Media is being run through the
system.

2 The All Other "Loss" Deductible applies
to all other losses under this Coverage
Form.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition
to the Commercial Inland Marine Condi-
tions and the Common Policy Conditions:

1. Coverage Territory

We cover Covered Property in transit
to, or from, and at:

a Locations shown in the Declara-
tions;

b. Newly acquired locations and
temporary locations as provided
in the Additional Coverages for
Newly Acquired Locations and
Temporary Locations;
all while in:

c The United States of America;

d Canada;

but we do not cover property in
transit by watercraft to or from
Alaska or Hawaii.

2. Valuation

The Valuation General Condition is re-
placed by the following:

a Electronic Equipment
We will adjust a "loss" to Elec-
tronic Equipment on the basis of
"replacement cost." The most we
will pay is the lesser of:

(1) the amount necessary to re-
pair the equipment; or

CM 76 58 (ed. 12/98) XS                              6

(2) the amount necessary to re-
place the equipment with:

(a) equipment of the same
kind and quality; or

(b) if Equipment cannot be
replaced by Equipment
of the same kind and
quality, new Equipment
capable of performing
the same functions.

(3) The applicable Limit of In-
surance

b. Data

Data (including Programs) will be
valued at the actual cost of re-
placing the Data. If it is not re-
placed or reproduced, we will
pay the cost of the blank Media.

c. Media

The value of the Media will be the
cost to replace the Media with
material of the same kind or qual-
ity.

3. Our Options

If we notify you in writing within thirty
(30) days after we receive your
signed, sworn statement of loss, we
may take all or part of the damaged
Covered Property at a value that we
will agree upon with you. If we
choose, we may also repair the
damaged Covered Property, or replace
it with similar property.

F. DEFINITIONS

1. "Loss" means accidental loss or dam-
age.

2. "Operations" means your business
activities occurring at the described
premises.

3. "Period of Restoration" means the
period of time that:

a. begins with the date of direct
physical loss or damage caused
by or resulting from any Covered
Cause of Loss at the described
premises; and

b. ends on the date when the prop-
erty at the described premises
should be repaired, rebuilt or re-
placed with reasonable speed and
similar quality.

"Period of Restoration" does not in-
clude any increased period required
due to the enforcement of any law
that regulates the construction, use or
repair, or requires the tearing down,
of any property.

The expiration date of this policy will
not cut short the "period of restora-
tion."

4. "Pollutants" means any solid, liquid
gaseous or thermal irritant or con-
taminant including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and
waste. Waste includes material to be
recycled, reconditioned or reclaimed.

5. "Replacement Cost" means the cost
to repair or replace the covered
property damaged or lost without de-
duction for depreciation. But, if you
choose not to repair or replace the
item, we will pay only the actual cash
value of the item, or its repair, with
proper deduction for depreciation.



CM 00 20
(Ed. 06 95)

### COMMERCIAL ARTICLES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this Insurance

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F - DEFINITIONS.

#### A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss

1. Covered Property, as used in this Coverage Form, means:

   a. cameras, projection machines, films and related equipment and accessories;

   b  musical instruments and related equipment and accessories; and

   c  similar property of others that is in your care, custody or control

2. Property Not Covered

   Covered Property does not include contraband or property in the course of illegal transportation or trade.

3. Covered Causes Of Loss
   Covered Causes of Loss means Risks of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions.

4. Additional Coverage - Collapse
   We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

a. fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

b. hidden decay;

c  hidden insect or vermin damage;

d. weight of people or personal property;

e. weight of rain that collects on a roof;

f. use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form

#### B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   a. Governmental Action

   Seizure or destruction of property by order of governmental authority. But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form

CM 00 20
(Ed. 06 95)

b. Nuclear Hazard

(1) any weapon employing atomic fission or fusion; or

(2) nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

c. War And Military Action

(1) war, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Delay, loss of use, loss of market or any other consequential loss

b. Dishonest or criminal act committed by:

(1) you, any of your partners, employees, directors, trustees, or authorized representatives;

(2) anyone else with an interest in the property, or their employees or authorized representatives; or

(3) anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such:

(1) persons are acting alone or in collusion with other persons; or

(2) acts occur during the hours of employment

This exclusion does not apply to:

(1) Covered Property that is entrusted to others who are carriers for hire; or

(2) acts of destruction by your employees. But theft by employees is not covered.

c Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

d. Unauthorized instructions to transfer property to any person or to any place

3. We will not pay for a "loss" caused by or resulting from any of the following But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss "

a Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the "loss."

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c Faulty, inadequate or defective:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) materials used in repair, construction, renovation or remodeling; or

CM 00 20
(Ed. 06 95)

(4) maintenance;

of part or all of any property wher-
ever located

d. Collapse except as provided in the
Additional Coverage-Collapse section
of this Coverage Form.

e. Wear and tear, any quality in the prop-
erty that causes it to damage or de-
stroy itself, gradual deterioraton; in-
sects, vermin or rodents.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one
occurrence is the applicable Limit of Insurance
shown in the Declarations

## D. DEDUCTIBLE

We will not pay for "loss" in any one occur-
rence until the amount of the adjusted "loss"
before applying the applicable Limits of Insur-
ance exceeds the Deductible shown in the
Declarations. We will then pay the amount of
the adjusted "loss" in excess of the Deduct-
ible, up to the applicable Limit of Insurance

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to
the Commercial Inland Marine Conditions and
the Common Policy Conditions:

### 1. Coverage Territory

We cover property wherever located.

### 2. Coinsurance

All items that are covered but not individ-
ually listed and described must be insured
for their total value as to the time of
"loss" or you will incur a penalty

The penalty is that we will pay only the
proportion of any "loss" to these items
that the Limit of Insurance shown in the
Declarations for them bears to their total
value as of the time of "loss."

### 3. Additional Acquired Property

If during the policy period you acquire
additional property of a type already cov-
ered by this form, we will cover such
property for up to 30 days, but not be-
yond the end of the policy period. The
most we will pay in a "loss" is the lesser
of:

a 25% of the total Limit of Insurance
shown in the Declarations for that type
of property; or

b. $10,000

You will report such property within 30
days from the date acquired and will pay
any additional premium due. If you do not
report such property, coverage will cease
automatically 30 days after the date the
property is acquired or at the end of the
policy period, whichever occurs first.

## F. DEFINITIONS

"Loss" means accidental loss or damage

CM 00 20 (Ed. 06/95) XS                    3



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL FINE ARTS COVERAGE FORM

Various provisions in this policy restrict coverage  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations The words "we," "us" and "our" refer to the Company providing this Insurance

Other words and phrases that appear in quotation marks have special meaning  Refer to Section F - DEFINITIONS.

A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. Covered Property, as used in this Coverage Form, means:

a. your fine arts; and

b. fine arts of others that are in your care, custody or control;
described in the Declarations.

2 Property Not Covered

Covered Property does not include:

a. property while on exhibition at fair grounds or on the premises of any national or international exposition; or

b  contraband, or property in the course of illegal transportation or trade.

3  Covered Causes Of Loss

Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions

4. Coverage Extension

Newly Acquired Property

a  We will cover other objects of art that you acquire during the policy period, but not beyond:

(1) 60 days; or

(2) the end of the policy period, whichever occurs first.

b. The most we will pay in a "loss" under this Coverage Extension is the lesser of:

CM 76 69 (Ed. 01/89) XS                              I

(1) 25% of the scheduled property total Limit of Insurance shown in the Declarations; or

(2) $25,000

c. You will report such property within 60 days from the date acquired and pay any additional premium that is due. If you do not report that property to us, coverage will end automatically at the earlier of:

(1) 60 days after the date you acquire the property; or

(2) the end of the policy period

The Additional Condition paragraph E 2 b , Coinsurance, does not apply to this Coverage Extension.

B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

a. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form

b. Nuclear Hazard

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

c. War and Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

d. Earth Movement

(1) Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

CM 76 69 (Ed. 01/89) XS                    2

(2) Volcanic Eruption, explosion or effusion  But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

(a) airborne volcanic blast or airborne shock waves;

(b) ash, dust or particulate matter; or

(c) lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

e. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) foundations, walls, floors or paved surfaces;

(b) basements, whether paved or not; or

(c) doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Delay, loss of use, loss of market or any other consequential loss

b. Dishonest acts by:

(1) you, your employees or authorized representatives; or

(2) anyone else with an interest in the property, or their employees or authorized representatives; or

(3) anyone entrusted with the property (except a carrier for hire).

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or whether or not such acts occur during the hours of employment.

CM 76 69 (Ed. 01/89) XS                                    3

c. Any repairing, restoration or retouching of the Covered Property.

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss."

b. Wear and tear, any quality in the property that causes it to damage or destroy itself, pollution damage, gradual deterioration; insects, vermin or rodents.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

1. Valuation

General Condition E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

a. The agreed value of each item of property that is individually listed and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item. In the event of total loss we will pay the applicable Limit of Insurance (less deductible) for that item

b The value of all other Covered Property, including newly acquired property, will be the least of the following amounts:

(1) the acquisition cost of that property;

(2) the market value of that property;

(3) the amount for which you are liable, if the property of another;

(4) the cost of reasonably restoring that property to its condition immediately before "loss"; or

(5) the cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

2. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

a. Coverage Territory

We cover property wherever located within:

CM 76 69 (Ed. 01/89) XS                     4

(1) the United States of America;

(2) Canada

**b. Coinsurance**

All items that are covered but not individually listed and described must be insured for their total value as of the time of "loss" or you will incur a penalty.
The penalty is that we will pay only the proportion of any "loss" to these items that the Limit of Insurance shown in the Declarations for them bears to their total value as of the time of "loss."

**c. Packing and Unpacking**

You agree that Covered Property will be packed and unpacked by competent packers.

**d. Pair or Sets**

Loss Condition G  Pair, Sets or Parts in the Commercial Inland Marine Conditions is replaced by the following:

(1) In case of total "loss" of any items that are part of a pair or set that is individually listed and described in the Declarations, we will pay the full Limit of Insurance shown in the Declarations for that pair or set. You will surrender to us the remaining items of the pair or set

(2) In case of "loss" to any part of a pair or set that is not individually listed and described in the Declarations, we may;

(a) repair or replace any part to restore the pair or set to its value before the "loss"; or

(b) pay the difference between the value of the pair or set before and after the "loss"

**e. Salvage**

Upon payment of a total "loss" to scheduled property, we are entitled to any salvage recovery.

**F. DEFINITIONS**

"Loss" means accidental loss or damage.

CM 76 69 (Ed. 01/89) XS                    5

COMMERCIAL PROPERTY
CP 00 40 06 95

# LEGAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F. – DEFINITION

## A. COVERAGE

We will pay those sums that you become legally obligated to pay as damages because of direct physical loss or damage, including loss of use, to Covered Property caused by accident and arising out of any Covered Cause of Loss. We will have the right and duty to defend any "suit" seeking those damages. However, we have no duty to defend you against a "suit" seeking damages for direct physical loss or damage to which this insurance does not apply. We may investigate and settle any claim or "suit" at our discretion. But:

(1) The amount we will pay for damages is limited as described in Section C. Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the Limit of Insurance in the payment of judgments or settlements.

### 1. Covered Property

Covered Property, as used in this Coverage Form, means tangible property of others in your care, custody or control that is described in the Declarations or on the Legal Liability Coverage Schedule.

### 2. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

### 3. Additional Coverage

Supplementary Payments. We will pay, with respect to any claim or any "suit" against you we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by you at our request, including actual loss of earnings up to $100 a day because of time off from work.

d. All costs taxed against you in the "suit".

e. Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

### 4. Coverage Extensions

a. Additional Insureds. If the Named Insured shown in the Declarations is a partnership or corporation, throughout this Coverage Form, the words "you" and "your" include partners, executive officers, trustees, directors and stockholders of such partnership or corporation, but only with respect to their duties as such.

b. Newly Acquired Organizations. Throughout this Coverage Form, the words "you" and "your" also include any organization (other than a partnership or joint venture) you newly acquire or form and over which you maintain ownership or majority interest if there is no other similar insurance available to that organization.

This Coverage Extension ends:

(1) 90 days after you acquire or form the organization; or

(2) At the end of the policy period shown in the Declarations;

whichever is earlier.

This Extension does not apply to direct physical loss or damage that occurred before you acquired or formed the organization.

        Copyright, ISO Commercial Risk Services, Inc., 1994

c. Newly Acquired Property

(1) You may extend the insurance that applies to Covered Property, as used in this Coverage Form, to apply to your liability for tangible property of others that comes under your care, custody or control after the beginning of the current policy period. This Extension is subject to the following:

(a) All terms and Conditions of this Coverage Form.

(b) Buildings must be intended for:

(i) Similar use as the building described in the Declarations or on the Legal Liability Coverage Schedule; or

(ii) Use as a warehouse.

The most we will pay as the result of any one accident for loss or damage to the total of all buildings covered under this Extension is $250,000 at each building.

(c) Personal property must be at a location:

(i) That you own; or

(ii) That is or comes under your care, custody or control;

other than at fairs or exhibitions.

The most we will pay as the result of any one accident for loss or damage to the total of all personal property covered under this Extension is $100,000 at each building.

(2) Insurance under this Extension for each item of property of others will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after the property has come under your care, custody or control; or

(c) You report values to us.

We will charge you additional premium for values reported from the date the property comes under your care, custody or control.

This Extension does not apply to direct physical loss or damage that occurred before the property came under your care, custody or control.

B. EXCLUSIONS AND LIMITATIONS

See applicable Causes of Loss Form as shown in the Declarations.

C. LIMITS OF INSURANCE

The most we will pay in damages as the result of any one accident is the applicable Limit of Insurance shown on the Legal Liability Coverage Schedule, or in the Declarations

Payments under the Additional Coverage and the Newly Acquired Property Coverage Extension are in addition to the Limits of Insurance

The existence of one or more:

1. Additional Insureds, or

2. Newly Acquired Organizations,

does not increase the Limit of Insurance.

D. LOSS CONDITIONS

The following conditions apply in addition to the Commercial Property Conditions:

1. Duties In The Event Of Accident, Claim Or Suit

a. You must see to it that we are notified promptly of any accident that may result in a claim. Notice should include:

(1) How, when and where the accident took place; and

(2) The names and addresses of any witnesses

Notice of an accident is not notice of a claim.

b. If a claim is made or "suit" is brought against you, you must see to it that we receive prompt written notice of the claim or "suit".

c. You must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to you because of damage to which this insurance may also apply.

    Copyright, ISO Commercial Risk Services, Inc., 1994    CP 00 40 06 95    □

d. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

2. **Legal Action Against Us**

   No person or organization has a right under this Coverage Form:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from you; or

   b. To sue us on this Coverage Form unless all of its terms have been fully complied with

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against you obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

3. **Other Insurance**

   You may have other insurance covering the same loss as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss. Our share is the proportion that the Limit of Insurance under this Coverage Form covering such loss bears to the Limits of Insurance of all insurance covering the loss.

4. **Transfer Of Rights Of Recovery Against Others To Us**

   If you have rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. You must do nothing after loss to impair them. At our request, you will bring "suit" or transfer those rights to us and help us enforce them

E. **ADDITIONAL CONDITIONS**

   The following conditions apply in addition to the Common Policy Conditions.

   1. **Amendment Of Commercial Property Conditions**

      None of the Commercial Property Conditions apply to this Coverage Form, except:

      a. Condition A., Concealment, Misrepresentation or Fraud;

      b. Condition C., Insurance Under Two or More Coverages; and

      c. Condition E., Liberalization.

   2. **Bankruptcy**

      Bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Coverage Form.

   3. **Policy Period, Coverage Territory**

      Under this Coverage Form:

      a. We will pay for loss or damage caused by an accident that occurs:

         (1) During the policy period shown in the Declarations; and

         (2) Within the coverage territory

      b. The coverage territory is:

         (1) The United States of America;

         (2) Puerto Rico; and

         (3) Canada.

   4. **Separation Of Insureds**

      The insurance under this Coverage Form applies separately to you and each additional insured, except with respect to the Limits of Insurance.

F. **DEFINITION**

   "Suit" includes an arbitration proceeding to which you must submit or submit with our consent.



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA  30326

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
ADDITIONAL COVERED PROPERTY

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
SELECT BUSINESS POLICY – BUILDING AND PERSONAL PROPERTY FORM

The following is withdrawn from PROPERTY NOT COVERED if an (" X ") is shown in parentheses in the Schedule below:

SCHEDULE*

|  | Prem. No. | Bldg. No. | Description of Property |
|---|---|---|---|
| ( ) |  |  | The cost of excavations, grading, backfilling or filling |
| ( X ) | ALL | ALL | Foundations of buildings, structures, machinery or boilers if their foundations are below:<br>(1) The lowest basement floor; or<br>(2) The surface of the ground, if there is no basement. |
| ( ) |  |  | Underground pipes, flues, or drains |
| ( X ) | ALL | ALL | Pilings, piers, wharves or docks |
| ( ) |  |  | Fences outside of buildings |
| ( ) |  |  | Retaining walls that are not part of the building |
| ( ) |  |  | Bridges, roadways, walks, patios or other paved surfaces |
| ( ) |  |  | Vehicles or self-propelled machines (including aircraft or watercraft) that:<br><br>(1) Are licensed for use on public roads;<br>(2) Are operated principally away from the described premises; or<br><br>This paragraph does not apply to:<br><br>(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;<br>(b) Vehicles or self-propelled machines, other than autos, you hold for sale; or<br>(c) Rowboats or canoes out of water at the described premises; |
| ( ) |  |  | Animals |
| ( ) |  |  | Underground pipes, including underground tanks and connections. But underground flues and drains are not covered. |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

CP 14 10 (09/88)                    Page 1 of 1

CM 78 68 (Ed. 07 99)



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA  30326

**BUILDERS RISK PLUS**
TIME ELEMENT COVERAGE SUPPLEMENTAL DECLARATIONS

| NAMED INSURED: | **Fraternal Property Management Association** | **POLICY PERIOD:** 04/01/2004  to     04/01/2005 |
|---|---|---|

Insurance under Time Element Coverage applies to only those Coverages shown by ( X ) below.

**COVERAGES**

(X) 1. "Soft Costs"

    (X) a.  Interest on money borrowed to finance construction (including costs which directly result from renegotiation of construction loan(s)),
    (X) b. Advertising and promotional expenses.
    (X) c. Realty taxes and other assessments; license and percent fees.
    (X) d. Architectural or Engineering Supervisory or consulting fees.
    (X) e. Costs resulting from the renegotiation of your lease(s).
    ( ) f.

(X) 2. "Rental Value"

**LIMIT OF INSURANCE:**

The most we will pay for your amount of loss under this endorsement is:

1. $100,000    for "Soft Costs"
2. $ 50,000    for "Rental Value"

**DEDUCTIBLE:**    (X) $2,500        ( )   days

Locations Covered:

( ) All jobsites described in the Builders Risk Plus Declarations

OR

SB 86 96 (11/97)        Page 1 of 6

(X) The following jobsite only: A     location while under constructi     or reconstruction that is listed on the statement of values on file with Hobbs group/Kirklin & Company, LLC at 12231 Emmet Street, Suite 5, Omaha, NE 68164 .

Words and phrases that appear in quotation marks have special meaning. Refer to Section F., DEFINITIONS, of this endorsement and of your Builders Risk Plus Coverage Form.

The following terms and conditions apply, in addition to all terms and conditions (except the Coinsurance, and Deductible provisions) of your Builders Risk Plus Coverage Form.

## COVERAGE

1. "Soft Costs"

   When indicated by an " X " in the applicable parentheses of your Time Element Coverage Supplemental Declarations, we will pay your "soft costs" during the "period of delay in completion." Such "soft costs" must result from "loss" from a Covered Cause of Loss which delays the completion of the "project" beyond the "planned completion date."

   Our payment for your "soft costs" is subject to the terms and conditions of this endorsement. Also, the amount we pay for items b., d., or f. (shown in the Supplemental Declarations) won't be more than your actual expense for each of these items prior to the "loss."

2. "Rental Value"

   When indicated by an " X " in the applicable parentheses of your Time Element Coverage Supplemental Declarations, we will pay the amount by which your "rental value" is actually reduced during the "period of delay in completion." Such reduction in "rental value" must result from "loss" from Covered Cause of Loss which delays the completion of the "project" beyond the "planned completion date."

   But if your Builders Risk Plus policy was endorsed to permit occupancy and the building or structure was occupied for its intended purpose at the time of "loss," we will pay the amount by which your "rental value" is actually reduced during the "post-loss period of construction."

3. Additional Coverages

   a. Expense to Reduce the "Loss Amount"

      We will pay the necessary expense you incur during the "post-loss period of construction" if you would not have incurred such expense had there not been "loss" from any of the Covered Causes of Loss which delayed the completion of the "project" beyond the "planned completion date." But we will not pay more for your expense than the amount by which such expense reduces the "loss amount" we would have otherwise paid under this endorsement.

SB 86 96 (11/97)                    Page 2 of 6

   b. Civil Authority

We will pay the "loss amount" incurred by you during the first two consecutive weeks after the "planned completion date" when a civil authority prohibits access to your "jobsite." The denied access must result from "loss" by a Covered Cause of Loss to property at a location other than the jobsite described in your Time Element Coverage Supplemental Declarations.

## A. EXCLUSIONS

We will not pay for the "loss amount" that is directly or indirectly due to an increase in the "post-loss period of construction" caused by any of the following. Such "loss amount" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the following:

1. Interference by strikers or other persons affecting the:

   a. construction or repair of the Covered Property; or

   b. operation or use of the "project" if your Builders Risk Plus policy is endorsed to permit occupancy, and the building or structure was occupied for its intended purpose at the time of "loss."

2. Irregularities in production, shipment or transportation of any property to be used in the construction or repair of the Covered Property.

3. Suspension, lapse or cancellation of any lease, permit, license, contract or order.

4. Breach of contract, late or noncompliance with orders or penalties of any nature.

5. Weather conditions.

6. Deficiencies in the original construction designs, specifications or materials.

7. Enforcement of any law that:

   a. regulates the construction, use or repair, or requires the tearing down of any property;

   b. requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants."

8. Lack of funds or lack of work force.

## B. LIMITS OF INSURANCE

The most we will pay for the "loss amount" incurred by you is the Limit of Insurance shown in the Time Element Coverage Supplemental Declarations.

Any payment made under this endorsement is in addition to the applicable Limits of Insurance shown elsewhere in this policy.

## C. DEDUCTIBLE

We will pay the amount of the adjusted "loss" in excess of the Deductible amounts shown in the Declarations, up to the applicable Limit of Insurance.

This deductible does not apply to insurance afforded under Section A 4., Additional Coverages.

## D. ADDITIONAL CONDITIONS

1. Your Duties in the Event of "Loss"

   You must do the following in the event of "loss" to Covered Property:

   a. Make every effort to meet the "planned completion date." This includes, but is not limited to:

      (1) resumption of, as soon as possible, all or any part of the construction or repair;
      (2) use of any machinery, equipment, supplies or materials that could reduce the "period of delay in completion"; and

      (3) resumption of, as soon as possible, the operation or use of any part of the "project," if your Builders Risk Plus policy states that permission to occupy is granted, and the building or structure was occupied for its intended purpose at the time of "loss."

      If you do not make every effort to meet the "planned completion date," or you do not resume the operation or use of any part of the "project" as soon as possible, we will only pay the "loss amount" that we would have otherwise paid if you had complied with the above conditions.

   b. Notify us of any payment you receive from others due to a delay in the completion of construction beyond the "planned completion date."

2. Determining the "Loss Amount"

   The "loss amount" will be determined based on:

   a. your actual and anticipated costs for the project had "loss" from any of the Covered Causes of Loss not occurred;

   b. Either:

      (1) your likely "rental value" during the "period of delay in completion" had "loss" from any of the Covered Causes of Loss not occurred; or

      (2) your likely "rental value" during the "post-loss period of construction" had "loss" from any of the Covered Causes of Loss not occurred, if your Builders Risk Plus policy states that permission to occupy is granted, and the building was occupied for its intended purpose at the time of "loss."

SB 86 96 (11/97)                    Page 4 of 6

    c.  your actual "rental valt.    before "loss" from any of the Cove    J Causes of Loss occurred, if your Builders' Risk Plus policy states that permission to occupy is granted, and the building was occupied for its intended purpose at the time of "loss";

    d.  other relevant sources of information that you must provide including, but not limited to:

        (1) your financial records and accounting procedures;

        (2) bills, invoices and other vouchers; and

        (3) deeds, liens and contracts.

    e.  any amounts by which the "loss amount" is reduced due to your failure to perform Your Duties in the Event of Loss outlined in this policy.

3. Liquidated Damages

If the construction contract for the "project" contains a clause that requires payments to you because of a delay in the completion of the "project" beyond the "planned completion date," we will subtract the amount due from others, whether you have collected it or not, from the "amount of loss" we would have otherwise paid.

## E. DEFINITIONS

"Loss Amount" means the sum of your actual "soft costs" or "rental value," as covered by this endorsement.

"Period of delay in completion" means the period of time that:

a. begins with the "planned completion date"; and

b. ends on the date when the "project" should be completed using reasonable speed and similar materials and workmanship.

"Planned completion date" means the date the "project" would be put into operation or use in the normal course of construction if "loss" from any of the Covered Causes of Loss had not occurred.

"Post-loss period of construction" means the period of time that:

a. begins with the date of the "loss" by any Covered Cause of Loss; and

b. ends on the date the "project" should be completed using reasonable speed and similar materials and workmanship.

"Project" means the total construction of all Covered Property at the jobsite or described in the Time Element Supplemental Declarations.

SB 86 96 (11/97)                    Page 5 of 6

**"Rental value"** means the s      of:

a. the total rental income from the tenant occupancy of the completed "project," as furnished and equipped by you;

b. the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

c. the fair rental value of any portion of the completed "project" which would have been occupied by you.

But Rental Value does not include normal operating expenses which are discontinued as a result of a "loss."

**"Soft costs"** means your actual and necessary costs in excess of your actual and anticipated amount for the "project" consisting only of the following for which an " X " appears in the applicable parentheses of your Time Element Coverage Supplemental Declarations:

a. interest on money borrowed to finance construction of the Covered Property (including costs which directly result from renegotiation of construction loan(s) e.g. Loan commitment fees, including prepaid interest and points);

b. advertising and promotional expenses;

c. realty taxes and other assessments, license and permit fees;

d. architectural or engineering supervisory or consulting fees;

e. costs resulting from renegotiating your lease(s) including:

　　(1) legal, accounting and administration fees;

　　(2) commissions.

f. other as specified in the Time Element Coverage Supplemental Declarations.

Other Terms Remain The Same



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA  30326

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE  READ IT CAREFULLY.

HURRICANE DEDUCTIBLE FORM

This endorsement modifies insurance provided under the Select Business Policy coverage part.

The deductible for loss or damage in any occurrence as respects "hurricane" are:

### SCHEDULE

| Loc. No(s). | Bldg. No(s). | Deductible |
|---|---|---|
| All property in first tier counties from Texas to Virginia | | $10,000 |

The following is added to the deductible section as respects loss or damage caused by "Hurricane"

A.  "Hurricane" is defined as:

   1.  To be a windstorm that :

      a)  Has sustained wind speed in excess of 74 miles per hour;

      or

      b)  Has been declared by the National Weather Service to be a hurricane, typhoon or tropical cyclone.

   AND

   2.  To include the time period:

      a)  72 hours prior to becoming a hurricane, typhoon or tropical cyclone

      and

      b)  for the entire duration of the hurricane, typhoon or tropical cyclone

      and

      c)  the 72 hours immediately following the downgrading of a hurricane, typhoon or tropical cyclone as declared by the National Weather Service.

Information required to complete this schedule on this endorsement will be shown in the declarations.

(10/01/2000)                    Page 1 of 1

COMMERCIAL INLAND MARINE
CM 00 01 09 00

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.
2. Give us prompt notice of the loss or damage. Include a description of the property involved.
3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.
2. We will not pay you more than your financial interest in the Covered Property.
3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.
4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

6. We will not be liable for any part of a loss that has been paid or made good by others.

F. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

G. Pair, Sets Or Parts

1. Pair Or Set

   In case of loss or damage to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

   b. Pay the difference between the value of the pair or set before and after the loss or damage.

2. Parts

   In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance; or

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you

This will not restrict your insurance.

GENERAL CONDITIONS

A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part

B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

Copyright, Insurance Services Office, Inc., 1999        CM 00 01 09 00

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period**

We cover loss or damage commencing:

1. During the policy period shown in the Declarations; and

2. Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

 RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

FLOOD COVERAGE ENDORSEMENT

Your policy is amended as follows:

A. COVERAGE

1. Covered Causes Of Loss Include:

a. Flood

Flood means a general and temporary condition of partial or complete inundation of normally dry land area from inland or tidal waters.

b. Surface Water & Mudslide

(1) Surface water means the unusual and rapid accumulation of water above the ground surface.

(2) Mudslide includes mudflow caused by surface water and is similar to a river of liquid and flowing mud on the surface of normally dry land area.

c. Tsunami

Tsunami means a large wave caused by earthquake or volcanic eruption.

d. Release of water impounded by a dam.

2. Limit of Insurance

(is shown only if it is different from the limit(s) for other Covered Causes of Loss). The most we will pay for water damage from a Covered Cause in any one "loss" is the lesser of the limit shown below or the limit in the Declarations.

Sublimits Premises Location

$5,000,000
$
$
$10,000 On business personal property at any other location not specifically identified above.
$5,000,000 In any one policy year.

CM 76 62 (Ed. 07 90)     page 1 of 3

3. Deductible: See Declarations Page for appropriate deductible based upon applicable flood zone.

Deductible: As respects your claim for "loss" to Covered Property caused by perils listed in paragraph 1. above, we will pay the amount of the adjusted "loss" in excess of the applicable deductible, or National Flood Insurance Program policy with limit equal to or greater than applicable policy deductible, up to the applicable Limit of insurance.  This deductible applies per occurrence/per location.

B. EXCLUSIONS

1. We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Governmental Action

   Seizure or destruction of property by order of governmental authority.

   b. Nuclear Hazard

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   c. War and Military Action

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (2) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

2. Under this extension of coverage, we will not pay for "loss" caused by or resulting from:

   a. Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks on or into Covered Property (This does not include backup of sewers or drains which is a covered cause of loss under this policy).

   c. Landslide

   d. The failure of power or other utility service supplied to a covered location, however caused, if the failure occurs away from the covered location.

Special Exclusions: If your policy covers time element loss (such as loss of income, rental value, or extra expense).  We will not pay for:

a. Any loss caused by or resulting from:

   (1) damage or destruction of "finished stock"; or

   (2) the time required to reproduce "finished stock."

CM 76 62 (Ed. 07 90)      page 2 of 3

This exclusion does not apply to extra expense coverage.

b. Any increase of loss caused by or resulting from:

    (1) delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

    (2) suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your business income during the "period of restoration."

c. Any extra expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

d. Any other consequential loss.

Other Terms Remain The Same

CM 76 62 (Ed. 07 90)        page 3 of 3



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

CM 76 61 (Ed. 11 99)

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.
EARTHQUAKE COVERAGE ENDORSEMENT

Your policy is amended as follows:

A. COVERAGE

    1. Covered Causes Of Loss include:

        a. Earthquake.

        b. Volcanic Eruption, meaning the eruption, explosion, or effusion of a volcano.

        c. Landslide

        All Earthquake shocks, Volcanic Eruptions or Landslides that occur within any 168 hour period will constitute a single Earthquake, Volcanic Eruption or Landslide. The expiration of this policy will not reduce the 168 hour period.

    2. Limit of Insurance

        (is shown only if it is different from the limit(s) for other Covered Causes of Loss). The most we will pay for loss caused by an Earthquake or Volcanic Eruption is the lesser of the limit shown below or the limit in the Declarations.

Sublimits    Premises Location

    $5,000,000.
    $
    $100,000 On property at any other location not specifically identified above.
    $5,000,000 In any one policy year.

    3. Deductible

        $25,000 (If different from deductible or shown on the Declarations page) for all property in all states except California.

        Percentage Deductible. 5% of the value of the Covered Property at the location(s) where the loss or damage occurs, but not less than $25,000 for all property in the state of California.

Deductible: As respects your claim for "loss" to Covered Property caused by Earthquake, Volcanic Eruption or Land e, we will pay the amount of the a sted "loss" in excess of the applicable deductible up to the applicable Limit of Insurance.  The applicable deductible applies per occurrence/per location.

B. EXCLUSIONS

1. We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Governmental Action

   Seizure or destruction of property by order of governmental authority.

   b. Nuclear Hazard

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   c. War and Military Action

   (1) war, including undeclared or civil war;

   (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

2. Under this extension of coverage, we will not pay for "loss" caused by or resulting from:

   a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

   b. Fire, explosion (other than volcanic explosion), tidal wave, tsunami, flood, surface water, water which backs up through sewers or drains, water below the surface of the ground (including that which flows, leaks or seeps on or into Covered Property), mudslide or mudflow, release of water impounded by a dam, even if attributable to an Earthquake, Volcanic Eruption or Landslide.

   c. Any Earthquake, Volcanic Eruption or Landslide that begins before the inception of this insurance.

   d. Earth movement other than Earthquake, such as landslide or earth sinking, rising or shifting. But if loss or damage by another Covered Cause of Loss results, we will pay for that resulting loss.

   e. The cost to remove volcanic ash, dust or particulate matter that does not cause direct physical loss to Covered Property.

CM 76 61 (Ed. 11 99)          page 2 of 3

f.  Utility Service Failure

The failure of power or other utility service supplied to a covered location, however caused, if the failure occurs away from the covered locations.

3. Special Exclusions: If your policy covers time element loss (such as loss of income, rental value, or extra expense).

We will not pay for:

(a)  Any loss caused by or resulting from:

(1)  damage or destruction of "finished stock"; or

(2)  the time required to reproduce "finished stock."

This exclusion does not apply to extra expense coverage.

(b)  Any increase of loss caused by or resulting from:

(1)  delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2)  suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your business income during the "period of restoration."

(c)  Any extra expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

(d)  Any other consequential loss.

Other Terms Remain The Same

CM 76 61 (Ed. 11 99)          page 3 of 3

COMMERCIAL INLAND MARINE
CM 00 66 06 95

# ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section E -- DEFINITIONS.

## A. COVERAGE

1. We will pay:

    a. All amounts due from your customers that you are unable to collect;

    b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    c. Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

    d. Other reasonable expenses that you incur to re-establish your records of accounts receivable;

    that result from Covered Causes of Loss to your records of accounts receivable

2. PROPERTY NOT COVERED

    Coverage does not apply to:

    a. Records of accounts receivable in storage away from the "premises" shown in the Declarations; or

    b. Contraband, or property in the course of illegal transportation or trade.

3. COVERED CAUSES OF LOSS

    Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to your records of accounts receivable except those causes of "loss" listed in the Exclusions.

4. ADDITIONAL COVERAGE – COLLAPSE

    We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

    a. Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

    b. Hidden decay;

    c. Hidden insect or vermin damage;

    d. Weight of people or personal property;

    e. Weight of rain that collects on a roof;

    f. Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation

    This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form

5. COVERAGE EXTENSION

    Removal

    If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of "loss", we will pay for "loss" while they are:

    a. At a safe place away from your "premises"; or

    b. Being taken to and returned from that place.

    This Coverage Extension is included within the Limit of Insurance applicable to the "premises" from which the records of accounts receivable are removed.

## B. EXCLUSIONS

1. We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

    a. GOVERNMENTAL ACTION

        Seizure or destruction of property by order of governmental authority.

But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b.** NUCLEAR HAZARD

    (1) Any weapon employing atomic fission or fusion; or

    (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

**c.** WAR AND MILITARY ACTION

    (1) War, including undeclared or civil war;

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for a "loss" caused by or resulting from any of the following:

**a.** Delay, loss of use, loss of market or any other consequential loss.

**b.** Dishonest or criminal act committed by:

    (1) You, any of your partners, employees, directors, trustees, or authorized representatives;

    (2) Anyone else with an interest in the property, or their employees or authorized representatives; or

    (3) Anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**c.** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding

**d.** Bookkeeping, accounting or billing errors or omissions.

**e.** Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

    (1) Programming errors or faulty machine instructions;

    (2) Faulty installation or maintenance of data processing equipment or component parts;

    (3) An occurrence that took place more than 100 feet from your "premises"; or

    (4) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**f.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**g.** Unauthorized instructions to transfer property to any person or to any place

**3.** We will not pay for "loss" that requires any audit of records or any inventory computation to prove its factual existence

**4.** We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**a.** Weather conditions But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss"

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, siting;

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    Copyright, Insurance Services Office, Inc , 1994    CM 00 66 06 95

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property wherever located.

d. Collapse except as provided in the Additional Coverage – Collapse section of this Coverage Form.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. ADDITIONAL CONDITIONS

### 1. DETERMINATION OF RECEIVABLES

General Condition E Valuation in the Commercial Inland Marine Conditions is replaced by the following:

a. If you cannot accurately establish the amount of accounts receivable outstanding as of the time of "loss", the following method will be used:

(1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the "loss" occurs; and

(2) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the "loss" occurred or for any demonstrated variance from the average for that month

b. The following will be deducted from the total amount of accounts receivable, however that amount is established:

(1) The amount of the accounts for which there is no "loss";

(2) The amount of the accounts that you are able to re-establish or collect;

(3) An amount to allow for probable bad debts that you are normally unable to collect; and

(4) All unearned interest and service charges.

## 2. RECOVERIES

The following is added to Commercial Inland Marine Loss Condition I. Recoveries:

You will pay us the amount of all recoveries you receive for a "loss" paid by us. But any recoveries in excess of the amount we have paid belong to you

3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

a. COVERAGE TERRITORY

We cover records of accounts receivable:

(1) Within your "premises"; and

(2) Away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

(a) The United States of America;

(b) Puerto Rico; and

(c) Canada.

b. COINSURANCE

All accounts receivable, except those in transit, must be insured for at least 80% of their total value as of the time of "loss" or you will incur a penalty.

The penalty is that we will pay only the proportion of any "loss" that the Limit of Insurance shown in the Declarations for Coverage Applicable at All Locations bears to 80% of the total value of all accounts receivable at all locations as of the time of "loss". This penalty will not apply to records of accounts receivable in transit, interest charges, excess collection expenses or expenses to re-establish your records of accounts receivable.

c. PROTECTION OF RECORDS

Whenever you are not open for business, and except while you are actually using the records, you must keep all records of accounts receivable in receptacles that are described in the Declarations.

## E. DEFINITIONS

1. "Loss" means accidental loss or damage.

2. "Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

COMMERCIAL INLAND MARINE
CM 00 67 09 00

# VALUABLE PAPERS AND RECORDS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F — Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss.

1. Covered Property, as used in this Coverage Form, means "valuable papers and records" that are your property or property of others in your care, custody or control.

2. **Property Not Covered**

   Covered Property does not include:

   a. Property not specifically declared and described in the Declarations if such property cannot be replaced with other property of like kind and quality;

   b. Property held as samples or for delivery after sale;

   c. Property in storage away from the "premises" shown in the Declarations; or

   d. Contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes Of Loss**

   Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE to Covered Property except those causes of loss listed in the Exclusions.

4. Additional Coverage – Collapse

   We will pay for direct loss or damage caused by or resulting from risks of direct physical loss or damage involving collapse of all or part of a building or structure caused by one or more of the following:

   a. Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; all only as insured against in this Coverage Form;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

5. **Coverage Extensions**

   a. Removal

      If you give us written notice within 10 days of removal of your "valuable papers and records" because of imminent danger of loss or damage, we will pay for loss or damage while it is:

      (1) At a safe place away from your "premises"; or

      (2) Being taken to and returned from that place.

      This Coverage Extension is included within the Limits of Insurance applicable to the "premises" from which the Covered Property is removed.

b. **Away From Your Premises**

We will pay up to $5,000 for loss or damage to Covered Property while it is away from your "premises".

But if a higher Limit of Insurance is specified in the Declarations, the higher limit will apply.

The limit for this Coverage Extension is additional insurance.

B. **Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   b. **Nuclear Hazard**

   (1) Any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

   c. **War And Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

Exclusions B.1.a. through B.1.c. apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

   a. Delay, loss of use, loss of market or any other consequential loss.

   b. Dishonest or criminal act committed by:

   (1) You, any of your partners, employees, directors, trustees, or authorized representatives;

   (2) A manager or a member if you are a limited liability company;

   (3) Anyone else with an interest in the property, or their employees or authorized representatives; or

   (4) Anyone else to whom the property is entrusted for any purpose.

   This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

   This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

   c. Errors or omissions in processing or copying.

   But we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

   d. Electrical or magnetic injury, disturbance or erasure of electronic recordings.

   But we will pay for direct loss or damage caused by lightning.

   e. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

   f. Unauthorized instructions to transfer property to any person or to any place.

   g. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

   a. Weather Conditions But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance;

      of part or all of any property wherever located.

   d. Collapse except as provided in the Additional Coverage -- Collapse Section of this Coverage Form.

   e. Wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration; insects, vermin or rodents

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. Deductible

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

## E. Additional Conditions

1. **Valuation -- Specifically Declared Items**

   The following is added to General Condition F. Valuation in the Commercial Inland Marine Conditions:

   The value of each item of property that is specifically declared and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item.

2. **Recoveries**

   The following is added to Loss Condition H. Recovered Property in the Commercial Inland Marine Conditions:

   If either you or we recover any property after loss settlement, that party must give the other prompt notice At your option, the property will be returned to you. If so, your loss or damage will be readjusted based on the amount you received for the property recovered, with allowance for recovery expenses incurred

3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

   a. **Coverage Territory**

      We cover property:

      (1) Within your "premises"; and

      (2) Away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

         (a) The United States of America (including its territories and possessions);

         (b) Puerto Rico; and

         (c) Canada.

   b. **Protection Of Records**

      Whenever you are not open for business, and except while you are actually using the property, you must keep all "valuable papers and records" in receptacles that are described in the Declarations.

## F. Definitions

1. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

   But "valuable papers and records" does not mean "money" or "securities", converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

2. "Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

3. "Money" means:

   a. Currency, coins and bank notes whether or not in current use; and

   b. Travelers checks, register checks and money orders held for sale to the public.

4. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets, revenue and other stamps whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

but does not include "money".



RSUI Group, Inc
945 East Paces Ferry Rd
Suite 1890
Atlanta, GA 30326

IL 09 03

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### MINE SUBSIDENCE SCHEDULE

This endorsement provides supplementary information to be used with one or more of the following as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND
HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES
COVERAGE FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement providing such coverage:

### SCHEDULE

| Coverage Part Or Coverage Form | Prem. No.    Bldg. No. | Limit of Insurance | Additional Premium |
|---|---|---|---|
| SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM | All covered structures in the Illinois counties of; | As per schedule on file. | Included |
| | Bond          Marion | | |
| | Bureau        Marshall | | |
| | Christian     Menard | | |
| | Clinton       Mercer | | |
| | Douglas       Montgomery | | |
| | Franklin      Peoria | | |
| | Fulton        Perry | | |
| | Gallatin      Putnam | | |
| | Grundy        Randolph | | |
| | Jackson       Rock Island | | |
| | Jefferson     St. Clair | | |
| | Knox          Saline | | |
| | LaSalle       Sangamon | | |
| | Logan         Tazewell | | |
| | McDonough     Vermilion | | |
| | Macoupin      Washington | | |
| | Madison       Williamson | | |
| | | | Total |

IL 09 03 (04/98)              Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

A. **Coverage**

Section A. is replaced by the following:

A. **Mine Subsidence Coverage**

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

1. **Covered Property**

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers;

d. Underground pipes, flues and drains.

2. **Property Not Covered**

Covered Property does not include:

a. Land; or

b. Personal Property.

3. **Covered Cause Of Loss**

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure. It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

4. **Additional Coverage**

**DEBRIS REMOVAL**

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence.

B. **Exclusions**

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

**EARTH MOVEMENT**

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting.

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part.

C. **Limits Of Insurance**

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations. However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

Copyright, Insurance Services Office, Inc., 1998

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998



RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1890
Atlanta, GA 30326

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**MINE SUBSIDENCE SCHEDULE**

This endorsement provides supplementary information to be used with one or more of the following as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND
HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES
COVERAGE FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement providing such coverage:

**SCHEDULE**

| Coverage Part Or Coverage Form | Prem. No.      Bldg. No. | | Limit of Insurance | Additional Premium Included |
|---|---|---|---|---|
| **SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM** | All covered structures in the Indiana counties of; | | As per schedule on file. | |
| | Clay | Owen | | |
| | Crawford | Parke | | |
| | Daviess | Perry | | |
| | Dubois | Pike | | |
| | Fountain | Posey | | |
| | Gibson | Putnam | | |
| | Greene | Spencer | | |
| | Knox | Sullivan | | |
| | Lawrence | Vanderburgh | | |
| | Martin | Vermillion | | |
| | Monroe | Vigo | | |
| | Montgomery | Warren | | |
| | Orange | Warrick | | |

Total

IL 09 03 (04/98)                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

## A. Coverage

Section A. is replaced by the following:

### A. Mine Subsidence Coverage

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

#### 1. Covered Property

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers;

d. Underground pipes, flues and drains.

#### 2. Property Not Covered

Covered Property does not include:

a. Land; or

b. Personal Property.

#### 3. Covered Cause Of Loss

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure. It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

#### 4. Additional Coverage

DEBRIS REMOVAL

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence.

## B. Exclusions

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

EARTH MOVEMENT

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting.

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part

## C. Limits Of Insurance

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations. However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

Copyright, Insurance Services Office, Inc., 1998

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies.

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998



IL 09 03 (Ed. 0₄

RSUI Group, Inc.
945 East Pacés Ferry Rd.
Suite 1890
Atlanta, GA  30326

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
MINE SUBSIDENCE SCHEDULE

This endorsement provides supplementary information to be used with one or more of the following
as shown in the Schedule:

> BUSINESSOWNERS PROPERTY COVERAGE FORM
> COMMERCIAL PROPERTY COVERAGE PART
> FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND
> HOUSEHOLD PERSONAL PROPERTY COVERAGE FORM
> FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES
> COVERAGE FORM
> SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement
providing such coverage:

### SCHEDULE

| Coverage Part Or Coverage Form | Prem. No. | Bldg. No. | Limit of Insurance | Additional Premium |
|---|---|---|---|---|
| SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM | All covered structures in the Kentucky counties of; | | As per schedule on file. | Included |

| | |
|---|---|
| Bell | Johnson |
| Boyd | Knott |
| Breathitt | Knox |
| Butler | Lawrence |
| Carter | Lee |
| Christian | Leslie |
| Clay | Martin |
| Daviess | McCreary |
| Edmonson | McLean |
| Elliott | Morgan |
| Floyd | Muhlenberg |
| Greenup | Ohio |
| Hancock | Perry |
| Harlan | Union |
| Henderson | Webster |
| Hopkins | Whitley |
| Jackson | Wolfe |

Total

IL 09 03 (04/98)                    Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KENTUCKY CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

A. **Coverage**

Section A. is replaced by the following:

A. **Mine Subsidence Coverage**

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

1. **Covered Property**

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers;

d. Underground pipes, flues and drains.

2. **Property Not Covered**

Covered Property does not include:

a. Land; or

b. Personal Property.

3. **Covered Cause Of Loss**

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure. It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

4. **Additional Coverage**

**DEBRIS REMOVAL**

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence.

B. **Exclusions**

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

**EARTH MOVEMENT**

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting.

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part.

C. **Limits Of Insurance**

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations. However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

**D. Deductible**

Section D. Is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies.

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998



RSUI, Inc.
945 East Paces Ferry Rd
Suite 1890
Atlanta, GA 30326

IL 09 03 (E

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### MINE SUBSIDENCE SCHEDULE

This endorsement provides supplementary information to be used with one or more of the following as shown in the Schedule:

BUSINESSOWNERS PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
FARM PROPERTY - FARM DWELLINGS, APPURTENANT STRUCTURES AND HOUSEHOLD
PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY - BARNS, OUTBUILDINGS AND OTHER FARM STRUCTURES COVERAGE
FORM
SELECT BUSINESS POLICY - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Mine Subsidence Coverage applies to the following Structure(s) as described in the endorsement providing such coverage:

### SCHEDULE

| Coverage Part Or Coverage Form | Prem. No. | Bldg. No. | Limit of Insurance | Additional Premium |
|---|---|---|---|---|
| SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM | All covered structures in the West Virginia counties of; | | As per schedule on file. | Included |

| | |
|---|---|
| Barbour | Mercer |
| Boone | Mineral |
| Braxton | Mingo |
| Brooke | Monongalia |
| Clay | Nicholas |
| Doddridge | Ohio |
| Fayette | Pocahontas |
| Gilmer | Preston |
| Grant | Putnam |
| Greenbrier | Raleigh |
| Hancock | Randolph |
| Harrison | Summers |
| Kanawha | Taylor |
| Lewis | Tucker |
| Lincoln | Tyler |
| Logan | Upshur |
| Marion | Wayne |
| Marshall | Webster |
| Mason | Wetzel |
| McDowell | Wyoming |

Total

IL 09 03 (04/98)                Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WEST VIRGINIA CHANGES – MINE SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Coverage Form to which this endorsement applies is extended to insure against direct loss by Mine Subsidence.

A. **Coverage**

Section A. is replaced by the following:

A. **Mine Subsidence Coverage**

We will pay for direct physical loss of or damage to Structures at the premises described in the Mine Subsidence Schedule or in the Declarations caused by or resulting from Mine Subsidence.

1. **Covered Property**

Covered Property, as used in this endorsement, means the following type of property for which a Limit of Insurance is shown in the Mine Subsidence Schedule or Declarations:

Structures, meaning buildings or fixtures permanently attached to real estate, including:

a. The cost of excavation, grading, backfilling or filling;

b. Foundations of building, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

c. Pilings and piers;

d. Underground pipes, flues and drains.

2. **Property Not Covered**

Covered Property does not include:

a. Land; or

b. Personal Property.

3. **Covered Cause Of Loss**

Mine Subsidence means the collapse of underground coal mines resulting in direct damage to a Structure.  It does not include loss caused by:

a. Earthquake or earth movement, landslide, water seepage or volcanic eruption; or

b. Collapse of storm or sewer drains.

4. **Additional Coverage**

DEBRIS REMOVAL

We will pay your expense to remove debris of Covered Property caused by or resulting from Mine Subsidence

B. **Exclusions**

The first sentence of the Earth Movement exclusion applicable to the Coverage Form to which this endorsement applies is replaced by the following:

EARTH MOVEMENT

Any earth movement such as an earthquake, landslide, or earth sinking, rising or shifting

This exclusion does not apply to direct loss caused by Mine Subsidence as covered under this Coverage Part.

C. **Limits Of Insurance**

Section C. is replaced by the following:

The most we will pay for loss or damage to any one Structure caused by mine subsidence in any one occurrence, including debris removal, is the Limit of Insurance for Mine Subsidence shown in the Mine Subsidence Schedule or in the Declarations  However, this limit will be reduced by the amount of loss payment which is due from the Mine Subsidence Insurance Fund but which we cannot collect from the Mine Subsidence Fund.

Copyright, Insurance Services Office, Inc , 1998

**D. Deductible**

Section D. is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds 2% of the Limit of Insurance. But this amount will not be;

   a. Less than $250; or

   b. More than $500.

   We will then pay the amount of loss or damage in excess of the amount determined above up to the applicable Limit of Insurance.

2. This section applies separately to each Structure to which this endorsement applies

**E. Additional Conditions**

The Coinsurance Additional Condition does not apply to this endorsement.

Copyright, Insurance Services Office, Inc., 1998

*This Endorsement Changes The Policy. Please Read It Carefully.*

## ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

This policy does not apply to any loss, demand, claim or suit arising out of or related in any way to asbestos or asbestos-containing materials.

The company shall have no duty of any kind with respects to any such loss, demand, claim or suit.

RSG 96013 1003



ELECTRONICALLY FILED
1/5/2007 2:20 PM
CIRCUIT COURT OF
PIKE COUNTY, ALABAMA
BRENDA PEACOCK, CLERK

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE & METRA HUGHES, d/b/a )
HISTORICAL RENTALS, INC., )
                               )
         Plaintiffs, )      CIVIL ACTION NUMBER:
                               )      CV 06-246-RWB
v. )
                               )
GAB ROBINS NORTH AMERICA, )
INC. and TROY RHOADES; HILB, )
ROGAL & HOBBS WHOLESALE )
INSURANCE SERVICES, INC.; )
KIRKLIN & CO., LLC, a/k/a )
HRH/KIRKLIN & CO., LLC and )
RSUI GROUP, INC. )
                               )
         Defendants. )

## HRH/KIRKLIN AND COMPANY, L.L.C.
## ANSWER TO PLAINTIFFS' COMPLAINT AND AMENDED COMPLAINT

COME NOW HRH/Kirklin and Company, L.L.C., ("HRH"), and

responds to Plaintiffs' Complaint and Amended Complaint as follows:

### STATEMENT OF THE PARTIES

       1.     For lack of information, this defendant can neither admit or deny the

averments of this paragraph, and it is therefore denied.

       2.     For lack of information, this defendant can neither admit or deny the

averments of this paragraph, and it is therefore denied.

       3.     For lack of information, this defendant can neither admit or deny the

averments of this paragraph, and it is therefore denied.

4.    Denied.

5.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

6.    Denied.

7.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 1

8.    No response required.

9.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

10.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

11.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

12.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

13.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

14.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

15.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and therefore it is denied.

## COUNT 2

16.    No response required.

17.    Denied.

18.    Denied.

19.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 3

20.    No response required.

21.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

22.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 4

23.    No response required.

24.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

25.    For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

26. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

27. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

## COUNT 5

28. No response required.

29. For lack of information, this defendant can neither admit or deny the averments of this paragraph, and it is therefore denied.

30. Denied.

31. Denied.

32. Denied.

## AFFIRMATIVE DEFENSES

1. This Defendant avers Plaintiffs' complaint fails to state claims for which relief can be granted and demands strict proof thereof.

2. This Defendant avers Plaintiffs' claims are barred by the applicable statutes of limitations.

3. This Defendant avers Plaintiffs' claims are barred by contributory negligence and/or assumption of the risk.

4. This Defendant avers superseding and/or intervening causes, including, but not limited to, a failure of Plaintiffs to perform under the terms of its

contract.

5.    There is no causal connection or relationship between any alleged negligence, fraud and breach of contract on the part of HRH and the Plaintiffs' alleged damages.

6.    This Defendant pleads that it is not guilty of the matters and things alleged in Plaintiffs' complaint and demands strict proof thereof.

7.    This Defendant pleads failure to mitigate damages.

8.    This Defendant pleads waiver.

9.    This Defendant pleads claims are barred by the loss of privity as between HRH and Donnie and Metra Hughes, d/b/a Historical Rentals, Inc.

10.    This Defendant pleads accord and satisfaction.

11.    This Defendant reserves its rights to amend its answer until all discovery has been completed.

                              /s/ Tom Burgess
                    Tom Burgess (BUR011)
                    Attorney for HRH/Kirklin & Co., L.L.C.


**OF COUNSEL:**
Burgess & Hale, L.L.C.
505 North 20th Street, Suite 300
Birmingham, Alabama 35203
Telephone (205) 715-4466; Fax; (205) 715-4454

## CERTIFICATE OF SERVICE

I hereby certify that on **January 5, 2007** I have served a copy of the above and foregoing on counsel for all parties by:

_____    Facsimile transmission;

_____    Hand delivery;

_____    Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to:

___✓___    Using the CM/ECF system which will send notification of such to the following:

N. J. Cervera, Esq.
Matthew Baker, Esq.
Cervera, Ralph & Reeves, LLC
914 South Brundidge Street
Troy, Alabama 36081
(334) 566-0116

Juan C. Ortego, Esq.
Alford, Clausen & McDonald
Suite 5000 St. Louis Center
Mobile, Alabama 36608
(251) 432-1600/Fax: (251) 432-1700

James S. Lloyd, Esq.
Karen D. Farley, Esq.
Taylor, Gray & Whitehead, P.C.
2501 Twentieth Place North, Ste. 300
Birmingham, Alabama 35203
(205) 967-8822/ Fax: 967-2389

_____/s/ Tom Burgess_____
OF COUNSEL

IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

DONNIE HUGHES and METRA )
HUGHES, d/b/a HISTORICAL )
RENTALS, INC., )
)
    Plaintiffs, )
)
v. )    CASE NO. CV-2006-246-RWB
)
GAB ROBINS NORTH AMERICA, )
INC., et al., )
)
    Defendants. )

## ACCEPTANCE AND WAIVER

TROY KING, Attorney General of the State of Alabama, acknowledges service of the Notice of Constitutional Challenge in the above-styled cause pursuant to §6-6-227 *Code of Alabama,* 1975 (Attached). The Attorney General, having filed this Acceptance and Waiver in this action, hereby waives any further service upon him of any pleadings, discovery and other matters filed in this cause and presently waives the right to be heard.

Respectfully submitted,

TROY KING, KIN047
ATTORNEY GENERAL

ROSA H. DAVIS, DAV043
ASSISTANT ATTORNEY GENERAL

JAN 2007
FILED
Brenda Meadows Peacock
Court Clerk
Pike Co. Ala

## CERTIFICATE OF SERVICE

I hereby certify that I have this 19th day of January, 2007, served a copy of the foregoing by first-class United States Mail, postage prepaid and addressed upon the following:

Helen Johnson Alford, Esquire
Juan C. Ortega, Esquire
Alford, Clausen & McDonald, L.L.C.
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602

N.J. Cervera, Esquire
Matthew Baker, Esquire
Cervera, Ralph & Reeves, L.L.C.
914 South Brundidge Street
Troy, Alabama 36081

James S. Lloyd, Esquire
Karen D. Farley, Esquire
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place North, Suite 300
Birmingham, Alabama 35223

Tom Burgess, Esquire
Burgess & Hale, L.L.C.
505 North 20th Street, Suite 300
Birmingham, Alabama 35203

ROSA H. DAVIS, DAV043
ASSISTANT ATTORNEY GENERAL

**ADDRESS OF COUNSEL:**
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130-0152
334-242-7300
334-353-8235 (Fax)



JAN 2007
FILED
Brenda Meadows Peacock
Court Clerk
Pike Co., Ala

§6-6-227. Persons to be made parties; rights of persons not parties.

All persons shall be made parties, who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.   In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party and shall be entitled to be heard; and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard.  (Act 1935, No 355, p. 777; Code 1940, T.7, § 166 )

